## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------  x
```
*In re*                                                :

                                                 :     Chapter 11

WASHINGTON MUTUAL, INC., *et al.*,[1]        :

                                                   :     Case No. 08-12229 (MFW)

                             Debtors.         :

                                                   :     Jointly Administered

```
--------------------------------------------------------  x
```
WASHINGTON MUTUAL, INC. AND       :
WMI INVESTMENT CORP.,               :

                                                   :     Adversary Proceeding No. \_\_\_\_\_

                          Plaintiffs,       :

                                                   :

                             v.                     :

                                                   :

JPMORGAN CHASE BANK, NATIONAL     :
ASSOCIATION,                                 :

                                                   :

                             Defendant.     :

```
--------------------------------------------------------  x
```

## COMPLAINT FOR TURNOVER OF ESTATE PROPERTY

        Plaintiffs Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment," and with WMI, "Plaintiffs" or "Debtors"), through their undersigned counsel, bring this turnover action against defendant JPMorgan Chase Bank, National Association ("JPMC"), and, in support thereof, respectfully allege as follows:

---

[1]     The Debtors in these chapter 11 cases (the "Chapter 11 Cases") and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).

## NATURE OF ACTION

1.     These Chapter 11 Cases have been pending for more than seven months. Incredibly, the Debtors have been proceeding without one of the most significant (and most liquid) assets of their estates – over $4 billion in cash placed on deposit in demand deposit accounts with their former bank subsidiaries Washington Mutual Bank, Henderson, Nevada ("WMB") and Washington Mutual Bank fsb, Park City, Utah ("WMB fsb," and together with WMB, the "Banks").  Now, the Debtors are prepared to move forward with developing a chapter 11 plan, but any such plan requires release and utilization of the Debtors' substantial cash assets currently being wrongfully withheld by JPMC.

2.     On September 25, 2008, JPMC purportedly purchased substantially all of WMB's assets (including the stock in WMB fsb) in exchange for payment of $1.88 billion and the assumption of all of WMB's deposit liabilities, including those deposit liabilities owed to the Debtors (the "P&A Transaction").  Shortly thereafter, JPMC assumed all of WMB fsb's deposit liabilities by merging WMB fsb with its own banking operations.

3.     The cornerstone of the agreement by which JPMC acquired the assets was that all Bank depositors would have immediate and ready access to their cash on deposit at JPMC.  Accordingly, that certain aptly titled Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 (the "P&A Agreement"), is clear with respect to JPMC's assumption of substantially all of WMB's liabilities, including, particularly, WMB's deposit liabilities.  Thus, the second recital of the P&A Agreement, found on the first page of the agreement specifically provides that JPMC "desires to purchase

2

substantially all of the assets and *assume all deposit and substantially all other liabilities"* of WMB. (Emphasis added.)

4.      Although the P&A Transaction significantly depleted the Debtors' assets (given the valuable assets delivered in exchange for underpriced consideration paid), and spurred the filing of the Chapter 11 Cases, the Debtors believed, like all other depositors of the Banks, that the P&A Transaction did not and could not operate to strip them of their more than $4 billion in cash deposits. Moreover, although they were faced with filing the Chapter 11 Cases, the Debtors contemplated that they would have access to their deposits which would serve as a source of creditor recoveries.

5.      Despite the Debtors' unquestionable right to their deposits, JPMC has refused to turn them over to the Debtors. There can be no serious dispute that these funds, now on deposit with JPMC, are demand deposits and property of the Debtors' estates. The funds were specifically intended to be held in demand deposit accounts for the Debtors' benefit. However, notwithstanding the lack of ambiguity in the P&A Agreement and in all parties' understanding of the P&A Transaction itself, JPMC has refused to pay them to the Debtors. By seeking to retain over $4 billion in deposits, JPMC is positioning itself to receive an enormous windfall of unprecedented dollar amounts over and beyond the significant profits it has already realized as a result of its fire-sale purchase of the Debtors' banking assets – a transaction which contributed significantly to JPMC's first quarter 2009 "record firmwide revenue."

6.      That JPMC claims it "purchased" in excess of $4 billion in cash deposits and that such cash deposits have somehow come to represent equity in WMB or WMB

fsb is both absurd, and not surprisingly, finds no support in the P&A Agreement or the undisputed facts, which clearly demonstrate that the funds represent deposit liabilities.

7.  Because JPMC cannot seriously contest the nature of the funds on deposit, JPMC has suggested it has a right of set-off as a basis to continue to withhold the funds. However, any purported right of setoff against the deposits is meaningless without a valid claim to offset. Similarly, JPMC also has asserted that it holds a security interest in certain of the deposits; however, any purported security interest is of no legal significance in the absence of an obligation owed JPMC to be secured. Recognizing this, JPMC has asserted illegitimate claims to manufacture grounds to retain the funds and to justify the prejudice it is causing the Debtors' estates by failing to pay them what it owes and has wrongfully withheld. Whatever else may be said for these claims however, under any circumstances, any such claims do not belong to JPMC because under the express and unambiguous terms of the P&A Agreement, JPMC did not acquire any claims against the Debtors from the Banks.

8.  Moreover, even if the P&A Agreement is interpreted to transfer claims held by the Banks to JPMC (which it does not), any such claims would have been transferred on the literal eve of the Chapter 11 Cases. The Bankruptcy Code expressly prohibits any claims acquired in the 90-day period immediately preceding the commencement of the Debtors' Chapter 11 Cases from being utilized to setoff amounts owed the Debtors where they were insolvent or rendered insolvent at the time of the transfer. The Bankruptcy Code similarly prohibits the use of any claims acquired post-petition, without regard to the Debtors' solvency, to setoff amounts owed the Debtors. Therefore, JPMC has absolutely no setoff basis to withhold the Debtors' cash deposits,

because assuming JPMC acquired claims against the Debtors pursuant to the P&A Transaction or thereafter, the Debtors were either insolvent at the time of, or rendered insolvent by, the P&A Transaction. Moreover, to the extent any claims were acquired from WMB fsb post-petition, JPMC has absolutely no basis to setoff such claims against the Debtors' cash deposits, irrespective of the Debtors' solvency.

9.     JPMC has no basis to withhold the Debtors' funds and the funds are accruing interest at a rate significantly less than what the Debtors' estates would otherwise be earning. Yet, based upon JPMC's average return on interest-earning assets, by retaining the Debtors' deposits, JPMC could earn as much as $200 million per year. As a result, this Complaint seeks turnover of the more than $4 billion in Debtor funds on deposit with JPMC in demand deposit accounts that are property of the Debtors' estates and restitution in connection with JPMC's unjust enrichment.

## JURISDICTION AND VENUE

10.     This is an action pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. §§ 541 and 542.

11.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

12.     Venue is proper in this Court under 28 U.S.C. § 1409(b).

13.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

## THE PARTIES

14.     Plaintiff WMI is a corporation organized under the laws of the State of Washington with its principal place of business located at 1301 Second Avenue, Seattle, Washington 98101.

15. Plaintiff WMI Investment is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1301 Second Avenue, Seattle, Washington 98101.

16. On September 26, 2008 (the "Petition Date"), WMI and WMI Investment filed petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Plaintiffs are debtors in the jointly-administered Chapter 11 Cases and are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

17. Defendant JPMC is a national banking association organized under the laws of the United States with its principal place of business in Columbus, Ohio. JPMC is a wholly-owned subsidiary of JPMorgan Chase & Co., a corporation organized under the laws of Delaware.

## FACTUAL BACKGROUND

### A. THE DEBTORS' DEMAND DEPOSIT ACCOUNTS

18. On September 25, 2008, the Debtors had cash on deposit with the Banks in excess of $3.8 billion, consisting of more than $135 million in demand deposit accounts at WMB ("WMB Accounts," with the funds therein defined as the "WMB Deposits") and approximately $3.668 billion in a demand deposit account at WMB fsb (the "WMB fsb Account," with the funds therein defined as the "WMB fsb Deposits," and with the WMB Accounts and the WMB Deposits, respectively, the "Accounts" and the "Deposits").

19. The following chart illustrates the Accounts and Deposits therein as of September 30, 2008:

| Debtor | Bank | Last Four Digits of Account No. | Deposit as of September 30, 2008 |
|--------|------|--------------------------------|----------------------------------|
| WMI | WMB fsb | 4234 ("Account 4234") | $3,667,943,172 |
| WMI | WMB | 1206 ("Account 1206") | $52,600,201 |
| WMI | WMB | 0667 ("Account 0667") | $264,068,186 |
| WMI | WMB | 9626 | $4,650 |
| WMI | WMB | 9663 | $747,799 |
| WMI Investment | WMB | 4704 ("Account 4704") | $53,145,275 |

Copies of the September 2008 "Washington Mutual Internal Checking Detail Information" forms which reflect monthly balance and transactions for the Accounts, addressed to WMI or WMI Investment (the "Account Statements"), are attached hereto as Exhibit A.

20.     Just prior to the Petition Date, WMI's Account with the largest balance was Account 4234. Approximately $3.67 billion of WMI's deposits were held in Account 4234, making such Deposits one of the most significant non-contingent assets of the Debtors' estates.

21.     Account 4704 is owned by WMI Investment; the remainder of the Accounts are owned by WMI. The Accounts were listed on the Debtors' Schedules of Assets and Liabilities filed with this Court [Docket No. 475 and 619].

22.     Each of the Accounts was established and maintained in accordance with internal policies and procedures of WMI and its subsidiaries governing "On-Us," or intra-corporate, deposit accounts. Per WMI's "GL Administration Policy," a document used to

"communicate policies for the establishment and usage of 'On-Us' bank accounts for all Washington Mutual entities and departments," On-Us accounts are internal "corporately owned Demand Deposit Account accounts." A copy of the GL Administration Policy is attached hereto as Exhibit B.

23. JPMC continues to issue Account Statements to the Debtors, notably with the following disclosure: "Deposit accounts now held by JPMorgan Chase Bank., N.A." A copy of the March 2009 Account Statements are attached hereto as Exhibit C. Upon information and belief, subsequent to the P&A Transaction, JPMC has reported the Deposits as deposit liabilities to the Office of the Comptroller of the Currency and has paid federal deposit insurance premiums on the Deposits, as it does for all of its deposit liabilities and as the Banks themselves did prior to the P&A Transaction.

24. Each of the Accounts was accounted for in the books and records of WMB or WMB fsb, as the case may be, as a demand deposit account and a deposit liability owing to either WMI or WMI Investment, as appropriate. Demand deposit accounts, in contrast to term deposit accounts, are accounts from which deposited funds can be withdrawn at any time without any notice to the depository institution.

### B. WMI MOVES PRIMARY CHECKING ACCOUNT TO WMB FSB

25. Account 0667, a WMB Account, had served as WMI's long-time primary checking account at WMB. From this account, WMI serviced its outstanding debt, paid dividends on its preferred and common equity, and disbursed payments on account of tax obligations and myriad other operating expenses. Account 0667 was WMI's primary non-interest bearing checking account and, therefore, was very active and typically had approximately 10 to 15 transactions per day.

26.     On or about September 18, 2008, WMI determined that it would transfer its primary checking account from its direct wholly-owned subsidiary, WMB, to its indirect wholly-owned subsidiary, WMB fsb. The end result was that the deposit liability owed to WMI became a deposit liability of WMB fsb.

27.     As is customary with any transfer to a newly-established deposit account, this transfer was to be effectuated by submitting a "New Account Request Form" utilized to open a new demand deposit account at either Bank and completing a "Journal Entry Posting Form," accounting for the transfer of Deposits from Account 0667 to a new account at WMB fsb. Although the New Account Request Form (the "First Initial Account Request Form") properly indicated that the account was to be opened at WMB fsb, an administrative processing error caused a new account to be first opened at WMB (Account No. xxx-xxx421-8, "Account 4218"). Thus, $3.674 billion in Deposits may have initially been transferred to Account 4218 at WMB.

28.     On September 22, 2008, a revised New Account Request Form (the "Revised Account Request Form") was created and the mistake was corrected, retroactively to September 19, 2009, with the creation of Account 4234 at WMB fsb. Thus, as initially intended, $3.674 billion in Deposits was properly transferred to Account 4234, a WMB fsb Account. Account 4218 was closed while Account 0667 remained a WMB Account. The September 2008 Account Statement for Account 0667 reflects an opening balance of $4.541 billion and shows four debits on September 19, 2009 in an aggregate amount of $3.674 billion. The September 2008 Account Statement for Account 4234 at WMB fsb shows four corresponding credits (deposits), effective September 19, 2009, in an aggregate amount of $3.674 billion.

29. The transfer of WMI's Deposits from WMB to WMB fsb did not change the nature of the Deposits as compared to when they were included in Account 0667. Both the Initial and Revised Account Request Forms and the supporting Journal Entry Posting Forms indicate that each of short-lived Account 4218 and new Account 4234 was intended to be a demand deposit account for the benefit of WMI. The transfer simply moved the Deposits from one Bank to the other.

30. In both instances, the Initial and Revised Account Request Forms prepared to establish Account 4218 and Account 4234, respectively, denoted expressly that the new account was to be an "On-Us" corporate checking account to be assigned a product code of "B3." Copies of the Initial and Revised Account Request Forms are attached hereto as Exhibit D. The GL Administration Policy provides that "B3's are non-interest bearing DDA accounts," and makes clear that "DDA" is an abbreviation that signals a Demand Deposit Account. The GL Administration Policy likewise provides that "On-Us" accounts are "Demand Deposit Accounts."

31. Moreover, the Journal Entry Posting Forms used to account for the transfer of funds from Account 4218 to Account 4234 denote that Account 4234 was to be a "DDA" account. The September 2008 Account Statement for Account 4234, evincing the transfer of Deposits, properly reflects such amounts as "Customer Deposits."

32. New Account Request Forms may be used to open several different account types (*e.g.*, loss drafts, commercial loans, insurance drafts, investors/custodial accounts, "on us" accounts, and public funds). However, in each instance the forms are used to create a deposit account. Thus, it is clear that the Accounts are deposits subject to turnover in this proceeding.

## C. JPMC's Acquisition of WMB and Assumption of the Deposit Liabilities

33.     On September 25, 2008, substantially all the assets of WMB, including the stock of its subsidiary WMB fsb, were purportedly sold to JPMC for the purchase price of $1.88 billion, pursuant to the P&A Agreement (publicly available at http://www.fdic.gov/about/freedom/popular.html).     Additionally, JPMC expressly assumed all deposit liabilities and substantially all other liabilities of WMB.  (P&A Agreement § 2.1).  All depositors were ensured a "seamless transition" and that they were to be "fully protected."     (Federal Deposit Insurance Corporation, Press Release, *JPMorgan Chase Acquires Banking Operations of Washington Mutual*, Sept. 25, 2008).

34.     Under section 2.1 of the P&A Agreement, JPMC "expressly assumes . . . and agrees to pay, perform, and discharge, all of the liabilities of [WMB] . . . including the Assumed Deposits . . . ."  (P&A Agreement § 2.1).  "Assumed Deposits" is defined to mean "Deposits" which is defined to include the WMB Deposits, subject only to two inapplicable exceptions.  (P&A Agreement § 2.1).

35.     Further, under section 5.1 of the P&A Agreement, JPMC agreed to "pay all properly drawn checks, drafts and withdrawal orders of [WMB] depositors . . . to the extent that the Deposit balances to the credit of the respective makers or drawers . . . are sufficient to permit payment thereof . . . ."  (P&A Agreement § 5.1).

36.     Thus, the P&A Agreement is clear that JPMC unambiguously assumed liability under the P&A Agreement for the WMB Deposits in each of the WMB Accounts.

37.     Under the P&A Agreement, WMB fsb became the wholly-owned subsidiary of JPMC when JPMC acquired the equity interests of WMB fsb.  (P&A

Agreement § 3.1). Pursuant to the subsequent merger of JPMC and WMB fsb, JPMC assumed all deposit liabilities of WMB fsb, including with respect to WMI as depositor of the WMB fsb Account (*i.e.*, Account 4234).

38.     The P&A Transaction was extremely profitable for JPMC. In 2008, JPMC realized a $1.9 billion after-tax extraordinary gain from "merger-related items" in connection with the P&A Transaction. *See* JPMorgan Chase & Co., Form 10-K for the fiscal year ended December 31, 2008, at 26. The actual windfall to JPMC was even greater, including an immediate effect on JPMC's revenues. Having acquired the Banks at fire-sale prices, JPMC has achieved "record firmwide revenue" in first quarter 2009 and has enjoyed growth in retail banking deposits by 62% and in checking accounts by 126%.[2] JPMC is now seeking to increase its windfall by $4 billion.

### D.     THE ACCOUNT STIPULATION

39.     On October 14, 2008, the Debtors entered into a stipulation with JPMC (the "Account Stipulation"), pursuant to which JPMC agreed with the Debtors that the Accounts (in addition to various other deposit accounts held by WMB by certain of WMI's non-Debtor subsidiaries),[3] were deposit accounts of the Debtors. A copy of the

---

[2]     *See* JPMC Press Release, *JPMorgan Chase Reports First-Quarter 2009 Net Income of $2.1 Billion, or $0.40 per Share,* April 16, 2009. Specifically, net income in JPMC's Retail Financial Services division "was $474 million, compared with a net loss of $311 million in the prior year" due, in part, to the "positive impact of the Washington Mutual transaction . . . ." Net income in JPMC's Commercial Banking division "was $338 million, an increase of $46 million, or 16%, from the prior year, driven by higher net revenue reflecting the impact of the Washington Mutual transaction . . . ." "Net interest income [at JPMorgan Chase] was $15.5 billion, up by $6.1 billion, or 65%, due to the impact of the Washington Mutual transaction," among other things.

[3]     There are twenty-nine deposit accounts which were the subject of the Account Stipulation, including the six Accounts. The last four digits of each deposit

Account Stipulation is attached hereto as Exhibit E. The Account Stipulation was based upon the fact that the Deposits were property of the Debtors' estates. The Debtors contemplated that the Deposits – one of the largest of their estates' assets – were to be the cornerstone of a successful chapter 11 plan and would be used to fund distributions to creditors.

40.     Upon receipt of this Court's approval of the Account Stipulation, JPMC had agreed to transfer the Deposits "as the Debtors, in their sole and absolute discretion, may direct," with the exception of Account 1206 which was the subject of an Account Security Agreement, dated as of May 31, 2002 in favor of WMB (the "Security Agreement"). The Account Stipulation provided further that the Deposits were to remain subject to claims, rights and remedies that JPMC may have had, and afforded JPMC replacement liens to the extent of any such interests, but did not expressly enumerate or provide the basis for any such claims. The Account Stipulation further contemplated that the Deposits were to be used to pay administrative expenses of the Chapter 11 Cases and to make distributions to the Debtors' creditors pursuant to a chapter 11 plan.

41.     On January 26, 2009, the Debtors were forced to withdraw their motion seeking the Court's approval of the Account Stipulation when JPMC would not agree to a form of order approving the Account Stipulation. Since then, the Deposits have

---

account number are: 1206, 0844, 4234, 2184, 3525, 0667, 9626, 9663, 8359, 7731, 7187, 3411, 6282, 3429, 3487, 3495, 6290, 6307, 3445, 3461, 3479, 7719, 6323, 3672, 7873, 9697, 4704, 5081, and 5099. Of the twenty-three accounts that are owned by non-Debtor WMI subsidiaries, seventeen have been moved to other financial institutions, two have been closed, and four remain at JPMC.

continued to remain in JPMC's possession, enriching JPMC unjustly while accruing interest for the benefit of the Debtors' estates at a less than market rate.[4]

## E.    JPMC HAS REFUSED TO TURN OVER THE ACCOUNTS

42.    JPMC has no ownership interest in the Deposits.  As discussed herein, the Deposits are matured debts owed, and payable on demand, to the Debtors that JPMC assumed pursuant to the P&A Agreement and transactions subsequent to and in connection therewith.

43.    On numerous occasions since the Petition Date, the Debtors have requested that JPMC confirm that the Accounts are demand deposit accounts and property of the Debtors, but JPMC has refused to do so, or has imposed unreasonable conditions on doing so, the Account Stipulation notwithstanding.

44.    On October 28, 2008, the Debtors requested that JPMC turnover control of the Accounts to the Debtors.  On numerous occasions thereafter, the Debtors have reiterated their request that JPMC turnover control of the Accounts to the Debtors, but JPMC has refused to do so, or has imposed unreasonable conditions on doing so, thereby denying the Debtors' estates use of the Deposits.

45.    After several weeks of negotiations following October 28, 2008, JPMC finally agreed to allow interest to accrue on the Deposits, but only at a nominal rate. Thus, every day that JPMC continues to withhold the Deposits, realizing an economic advantage while enjoying increased liquidity, the Debtors' estates suffer further damage

---

[4]    In stark contrast to the nominal rate of return JPMC has agreed to make applicable to the Deposits, JPMC's average rate of return on interest-earning assets is 5.36%. *See* JPMorgan Chase & Co., Form 10-K, at 22 *Distribution of assets, liabilities and stockholders' equity; interest rates and interest differentials.*

because the Deposits are earning interest at a significant discount to a market rate and the estates' assets are not being maximized.

46.     Nonetheless, JPMC continues to issue Account Statements indicating that the Deposits are deposit liabilities, and on information and belief, JPMC reports the Accounts as deposit liabilities to the Office of the Comptroller of the Currency and pays federal deposit insurance premiums on the Deposits, as it does for all of its deposit liabilities.

47.     Further, in a proof of claim filed in the Chapter 11 Cases concerning certain federal tax refunds wired post-petition by the IRS to Account 0667, JPMC's understanding of the nature of the Account is made evident, stating that "[o]n September 30, 2008, the IRS wired the [tax refunds] *to WMI*." (Emphasis added.) Thus, JPMC recognizes the nature of the Accounts and the ownership of any funds deposited into the Accounts.

**F.     THE DEBTORS OWE NO AMOUNTS TO JPMC**

48.     JPMC does not possess any valid claims against the Debtors' estates arising prior to, or after, the Petition Date.  Thus, even if JPMC had a legitimate basis for claiming set-off rights (which it does not), it holds no claim against the Debtors to apply such rights, leaving no conceivable basis for JPMC's refusal to pay the Deposits to the Debtors.

49.     JPMC cannot assert any claims against the Debtors purportedly acquired pursuant to the P&A Transaction that would initially have inured to the benefit of WMB or WMB fsb, if any.  The P&A Agreement expressly so provides.  Section 3.1 of the P&A Agreement concerns the purchase of WMB's assets by JPMC.  (P&A Agreement §

3.1). However, that section is expressly made subject to section 3.5, which provides that Schedule 3.5, "Certain Assets Not Purchased," enumerates certain assets not purchased, acquired, or assumed by JPMC under the P&A Agreement. (P&A Agreement § 3.5). Listed on Schedule 3.5 is "any interest, right, action, claim, or judgment against . . . any shareholder or holding company of [WMB] . . . ." (P&A Agreement, Schedule 3.5). A copy of Schedule 3.5 to the P&A Agreement is attached hereto as <u>Exhibit F</u>. Therefore, the P&A Agreement unambiguously provides that JPMC did not acquire any interest, right, action, claim, or judgment against WMI, WMB's former sole shareholder and holding company.

50.     Thus, because JPMC asserts no claims other than those allegedly derived from WMB or WMB fsb,[5] there are no grounds for the assertion of any purported rights of setoff by JPMC.

51.     Similarly, without any valid claim against the Debtors, JPMC has no basis for asserting any lien or security interest in the Deposits in Account 1206, or any other Account, pursuant to the Security Agreement. Without the existence of obligations owed JPMC, there is nothing for any purported security interest to secure.

52.     Moreover, even if JPMC did acquire some claim against the Debtors from WMB pursuant to the P&A Transaction or shortly thereafter from WMB fsb by merger (which it did not), such claims were transferred to JPMC from the Banks within the period commencing 90 days prior to the Petition Date. Therefore, because WMI was either insolvent at the time of, or rendered insolvent by, the P&A Transaction, the plain

---

[5]     The only claims that JPMC could possibly have against the Debtors that are not derivative of the Banks relate to administrative services rendered by JPMC. These, however, are being paid in the ordinary course and are immaterial to the Deposits in any event.

language of section 553(a)(2) of the Bankruptcy Code provides that JPMC cannot possess any right of setoff, as a result of acquiring such claims from the Banks, that would act as a defense to payment of the Deposits to the Debtors.

53.     Further, to the extent any claims were acquired from WMB fsb after the commencement of the Chapter 11 Cases, the plain language of section 553(a)(2) of the Bankruptcy Code provides that JPMC has absolutely no basis to setoff such claims against the Debtors' Deposits, irrespective of the Debtors' solvency.

54.     Setoff is also unavailable to JPMC where mutuality of parties does not exist due to the Bankruptcy Code's prohibition on triangular setoffs.  The Deposits in WMI Investment Account 4704 are owed WMI Investment by JPMC.  Even if JPMC did acquire some claim against the Debtors, such claim is asserted against WMI (and not WMI Investment).  A setoff by JPMC of the Deposits JPMC owed WMI Investment against amounts JPMC claimed it was owed by WMI would be triangular and, therefore, prohibited due to a lack of mutuality.

55.     Therefore, there exists no basis to support or defend JPMC's refusal to pay the Deposits.

## FIRST CLAIM FOR RELIEF

### Turnover Pursuant to 11 U.S.C. § 542

56.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs 1-55.

57.     The Deposits are debts owed to the Debtors' estates that are matured and payable on demand.

58.     The Debtors' estates have been without use of the Deposits.

59. JPMC has no right of setoff under section 553 of the Bankruptcy Code or any other applicable law with respect to the Deposits in the Accounts because JPMC does not possess any valid claims against the Debtors' estates.

60. To the extent it is determined that JPMC does hold claims against the Debtors' estates, JPMC has no right of setoff under section 553 of the Bankruptcy Code because any such claims were acquired within the period commencing 90 days prior to the Petition Date through the date hereof. Any claims acquired from WMB fsb would have been acquired after the commencement of the Chapter 11 Cases. Therefore, with respect to the approximately $3.7 billion in WMB fsb Deposits, no such claims will provide JPMC with a right of setoff pursuant to section 553 of the Bankruptcy Code or any other applicable law.

61. WMI was either insolvent at the time of, or rendered insolvent by, the P&A Transaction. Therefore, any claims acquired from WMB will not provide JPMC with a right of setoff pursuant to section 553 of the Bankruptcy Code or any other applicable law.

62. Additionally, with respect to the Deposits in WMI Investment Account 4704, JPMC has no right of setoff under section 553 of the Bankruptcy Code or any other applicable law due to a lack of mutuality of claims as of the Petition Date.

63. Pursuant to section 542 of the Bankruptcy Code, JPMC is required to pay the Deposits in the Accounts, including pre-judgment interest at the highest applicable rate to be determined by the Court, to Plaintiffs WMI and WMI Investment.

64. Alternatively, the Deposits in the Accounts are property that Debtors WMI and WMI Investment may use pursuant to section 363 of the Bankruptcy Code.

65.     JPMC has possession and custody of the Deposits in the Accounts and continues to exercise control over the Accounts.

66.     The funds in the Accounts are of substantial value to the Debtors' estates.

67.     Pursuant to section 542 of the Bankruptcy Code, JPMC is required to deliver to the Debtors the Deposits in the Accounts, including pre-judgment interest at the highest applicable rate to be determined by the Court.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

68.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs 1-67.

69.     JPMC has been enriched unjustly, realizing an economic advantage, by retaining possession of the Deposits and utilizing something of value that belongs to the Debtors.

70.     JPMC has retained the benefit of the Deposits at the expense of the Debtors and their creditors in the Chapter 11 Cases.  Retaining the Deposits at the Debtors' expense is contrary to the principles of equity and good conscience.

71.     Plaintiffs do not have an adequate remedy of law.

72.     Plaintiffs seek an order that JPMC has been unjustly enriched and directing JPMC to provide restitution to Plaintiffs in an amount to be determined by the Court.

## RESERVATION OF RIGHTS

73.     This complaint is being filed now because the Debtors deem it in the best interests of their estates to do so.  The Debtors believe that additional claims in favor of one or more of the Debtors' estates against the Defendant may exist.  Thus, the claims

asserted herein are brought without prejudice to any and all other rights, claims and defenses the Debtors' may have, and the Debtors' rights to amend the Complaint to assert additional rights, claims and defenses is reserved expressly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs WMI and WMI Investment respectfully request that the Court enter judgment in favor of Plaintiffs

A.     Ordering JPMC to pay the Deposits, including pre-judgment interest, in the Accounts to WMI and WMI Investment;

B.     Ordering JPMC to pay restitution to WMI and WMI Investment in an amount equal to JPMC's unjust enrichment;

C.     Awarding Plaintiffs costs of suit herein; and

D.     Granting Plaintiffs such other legal or equitable relief as is just.

Dated: April 27, 2009          **ELLIOTT GREENLEAF**
      Wilmington, Delaware

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: nrl@elliottgreenleaf.com

-and-

**QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP**
Peter E. Calamari
Michael B. Carlinsky
Susheel Kirpalani
David Elsberg
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Proposed Special Litigation and Conflicts
Co-Counsel to the Plaintiffs*