UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

————————————————————————x
                                                    :
*In re*                                             :    Chapter 11
                                                    :
WASHINGTON MUTUAL, INC., *et al.*                   :    Case No. 08-12229 (MFW)
                                                    :
                        Debtors[1]                  :    Jointly Administered
                                                    :
                                                    :
————————————————————————:
                                                    :
WASHINGTON MUTUAL, INC. AND                         :
WMI INVESTMENT CORP.,                               :    Adv. Pro. No. 09-50934 (MFW)
                                                    :
                        Plaintiffs,                 :
                                                    :    **Oral Argument Requested**
            v.                                      :
                                                    :
JPMORGAN CHASE BANK,                                :
NATIONAL ASSOCIATION                                :
                                                    :
                        Defendant.                  :
————————————————————————x

## OPENING BRIEF OF DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION IN SUPPORT OF ITS MOTION TO DISMISS

Adam G. Landis (I.D. 3407)
Matthew B. McGuire (I.D. 4366)
LANDIS RATH & COBB LLP
919 Market Street Suite 1800
Wilmington, DE 19899
Tel: (302) 467-4400

(Additional Counsel Listed on Signature Page)

*Counsel for JPMorgan Chase Bank,
National Association*

May 13, 2009

---

[1]    The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share the principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................1

SUMMARY OF ARGUMENT ........................................................................2

STATEMENT OF FACTS ............................................................................4

    A.    The Failure and Rescue of Washington Mutual Bank and
           Plaintiffs' Bankruptcy ................................................................4

    B.    The FDIC's Disallowance of Plaintiffs' Deposit Claims and the
           District Court Litigation ..............................................................5

    C.    JPMC's Adversary Proceeding Against Plaintiffs .............................5

    D.    Plaintiffs' Response to JPMC's Adversary Proceeding ......................7

ARGUMENT ..........................................................................................8

I.    PLAINTIFFS' TURNOVER ACTION SEEKING POSSESSION OF
    ADMITTEDLY DISPUTED PROPERTY MUST BE DISMISSED FOR
    FAILURE TO STATE A CLAIM .............................................................9

    A.    Plaintiffs' Complaint Should be Dismissed Because It Fails to
           Plead an Undisputed Interest in the Disputed Accounts. ..................11

    B.    Bona Fide Disputes Exist Concerning Ownership of the Disputed
           Accounts, Precluding Turnover as a Matter of Law. ......................13

    C.    Plaintiffs' Interpretation of the P&A Agreement Does Not Bar
           Dismissal of the Complaint. .......................................................15

II.    ALTERNATIVELY, PLAINTIFFS' ACTION SHOULD BE
    CONSOLIDATED WITH JPMC'S ADVERSARY PROCEEDING .................16

CONCLUSION .......................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Buck* v. *Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ...................................................................................9

*Cal. Pub. Employees' Ret. Sys.* v. *Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ...................................................................................8

*Great Lakes Rubber Corp.* v. *Herbert Cooper Co.*,
    286 F.2d 631 (3d Cir. 1961) .................................................................................17

*In re Aerni*,
    86 B.R. 203 (Bankr. D. Neb. 1988) ......................................................................17

*In re Allegheny Health, Educ. & Research Found.*,
    233 B.R. 671 (Bankr. W.D. Pa. 1999) ..............................................................2, 10

*In re Asousa P'ship*,
    264 B.R. 376 (Bankr. E.D. Pa. 2001) .....................................................................9

*In re Chick Smith Ford, Inc.*,
    46 B.R. 515 (Bankr. M.D. Fla. 1985) ...................................................................13

*In re FLR Co.*,
    58 B.R. 632 (Bankr. W.D. Pa. 1985) ....................................................................10

*In re Hechinger Inv. Co. of Del., Inc.*,
    282 B.R. 149 (Bankr. D. Del. 2002) ...........................................................9, 10, 12

*In re Johnson*,
    215 B.R. 381 (Bankr. N.D. Ill. 1997) ...................................................................10

*In re Lexington Healthcare Group, Inc.*,
    363 B.R. 713 (Bankr. D. Del. 2007) ...............................................................*passim*

*In re Satelco, Inc.*,
    58 B.R. 781 (N.D. Texas 1986) ............................................................................13

*In re Student Fin. Corp.*,
    335 B.R. 539 (D. Del. 2005) ..........................................................................*passim*

*In re Ven-Mar Int'l, Inc.*,
  166 B.R. 191 (Bankr. S.D. Fla. 1994) ........................................................................10

*In re Washington Mfg. Co.*,
  118 B.R. 555 (Bankr. M.D. Tenn. 1990) .....................................................................17

*Kost* v. *Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ...........................................................................................8

*Lopez* v. *Howard*,
  No. 06-2361, 2007 WL 708989 (3d Cir. Mar. 9, 2007) ...............................................9

*Morse* v. *Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) .....................................................................................8-9

*Southmark Prime Plus, L.P.* v. *Falzone*,
  776 F. Supp. 888 (D. Del. 1991) .................................................................................9

*United States* v. *Inslaw, Inc.*,
  932 F.2d 1467 (D.C. Cir. 1991) ..............................................................................9-10

*United States ex rel. Geisler* v. *Walters*,
  510 F.2d 887 (3d Cir. 1975) .......................................................................................9

*Village of Oakwood* v. *State Bank & Trust Co.*,
  539 F.3d 373 (6th Cir. 2008) ....................................................................................11

*Young* v. *West Coast Indus. Relations Ass'n*,
  763 F. Supp. 64 (D. Del. 1991) ..................................................................................8

## STATUTES AND RULES

11 U.S.C. § 553(a)(2) .....................................................................................................14

11 U.S.C. § 1821(d)(13)(D) ...........................................................................................11

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 8

Fed. R. Civ. P. 13(a) .....................................................................................................17

Fed. R. Bankr. P. 7012 ...............................................................................................1, 8

Fed. R. Bankr. P. 7013 ..................................................................................................17

Defendant JPMorgan Chase Bank, National Association ("JPMC"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012 for an order dismissing plaintiffs Washington Mutual, Inc.'s and WMI Investment Corp.'s (collectively, "Plaintiffs" or "WMI") Complaint for Turnover of Estate Property, or, in the alternative, consolidating this adversary proceeding with JPMC's earlier-filed adversary proceeding pending before this Court, which adversary proceeding puts at issue and would resolve all disputes with respect to the accounts at issue here.  In support of its motion, JPMC respectfully states as follows.

## NATURE AND STAGE OF THE PROCEEDING

This proceeding is a turnover action brought pursuant to 11 U.S.C. § 542 by Plaintiffs, who are also the Debtors in the above-captioned chapter 11 proceedings.  Plaintiffs' claims relate to six accounts that purportedly contain $4 billion in alleged demand deposits (the "Disputed Accounts") that were maintained at Washington Mutual Bank, Henderson, Nevada ("WMB") and /or its subsidiary Washington Mutual Bank fsb ("WMB fsb") when the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for WMB.  On December 30, 2008, pursuant to Title 12 of the United States Code, Plaintiffs submitted claims to the FDIC receivership, including claims that asserted Debtors' interests in the Disputed Accounts.  On January 23, 2009, the FDIC disallowed Debtors' claims.  On March 20, 2009, Plaintiffs sued the FDIC for disallowance of their claims in the U.S. District Court for the District of Columbia, *Washington Mutual, Inc., et al.* v. *FDIC*, Civil Action No. 1:09-cv-00533 (RMC) (the "D.C. Action").  JPMC has moved to

intervene in the D.C. Action. On March 24, 2009, JPMC also commenced an adversary action against Plaintiffs, Adversary Proceeding No. 09-50551 (MFW) (Bankr. D. Del.) ("JPMC's Adversary Proceeding"), which includes claims related to the Disputed Accounts and a rule interpleader count to resolve all claims that any person may have in or to the Disputed Accounts, including the Federal Deposit Insurance Corporation as receiver for WMB.

Notwithstanding these pending disputes, Plaintiffs filed the instant complaint against JPMC seeking turnover of the same funds purportedly held in the Disputed Accounts, as well as restitution for alleged unjust enrichment. On April 29, 2009, the Official Committee of Unsecured Creditors filed a motion to intervene in this action.

## SUMMARY OF ARGUMENT

1.      Well-settled law—recently applied by this Court—provides that turnover actions pursuant to 11 U.S.C. § 542 are inappropriate, and may not be brought, to obtain property that is in dispute. *See, e.g.*, *In re Lexington Healthcare Group*, 363 B.R. 713, 716 (Bankr. D. Del. 2007). Turnover pursuant to section 542 is not "a remedy to determine disputed rights of parties to property." *In re Allegheny Health, Educ. & Research Found.*, 233 B.R. 671, 677 (Bankr. W.D. Pa. 1999).

2.      Plaintiffs' purported interests in the Disputed Accounts are hotly contested and are the subject of two pending litigations: (1) the D.C. Action instituted by Plaintiffs challenging the FDIC's disallowance of their claims in the receivership administrative process, including their claims to the Disputed Accounts, and (2) JPMC's Adversary Proceeding, which (among other things) asks this Court to

rule on whether claims related to the Disputed Accounts must be adjudicated in the D.C. Action. The pleadings in the D.C. Action and JPMC's Adversary Proceeding raise numerous issues of fact concerning the nature and character of the Disputed Accounts and the parties' relative rights to amounts in the Disputed Accounts. JPMC's Adversary Proceeding asserts JPMC's interests in the Disputed Accounts, and requests by rule interpleader "that all claims to the amounts . . . be adjudged [by the Court] and the funds . . . be properly disbursed." (A116, Adv. Compl. ¶ 212.)

3.      In connection with the proof of claim process in the chapter 11 proceedings, the FDIC and at least two groups of WMB's bondholder creditors have asserted their own claims of interest in the Disputed Accounts.

4.      Plaintiffs' complaint itself acknowledges (albeit mischaracterizes) the existence of a dispute that makes their turnover claim improper, by alleging that "JPMC claims it 'purchased' in excess of $4 billion in cash deposits and that such cash deposits have somehow come to represent equity in WMB or WMBfsb." (Turnover Compl. ¶ 43.)

5.      Nonetheless, through this action, Debtors ask the Court to ignore these pending disputes, which make their turnover claim inappropriate. *See In re Student Fin. Corp.*, 335 B.R. 539, 554 (D. Del. 2005). Debtors seek to bypass JPMC's pending interpleader claim, which would ensure that other parties may raise their claims to the Disputed Accounts. And Plaintiffs seek to sidestep adjudication in the District Court of the claims they brought themselves in the D.C. Action, which they commenced to challenge the FDIC's disallowance of their claims that relate to the very amounts that are the subject of this purported turnover action. Plaintiffs

instead seek the payment of approximately $4 billion, despite significant questions as to what funds stand behind this purported liability, who would be responsible for paying the liability, and whether this is in whole or in part a liability at all. For all these reasons, Plaintiffs' complaint should be dismissed.

6. Alternatively, Plaintiffs' claims are manifestly compulsory counterclaims to those raised in JPMC's Adversary Proceeding, and should thus be litigated in that action to the extent the issues are not litigated in the D.C. Action. Therefore, if Plaintiffs' complaint is not dismissed in its entirety, the Court should consolidate this action with JPMC's Adversary Proceeding, which was filed more than a month earlier and could resolve all claims—including the FDIC's claims—to the Disputed Accounts at issue here.

## STATEMENT OF FACTS

### A. The Failure and Rescue of Washington Mutual Bank and Plaintiffs' Bankruptcy

On September 25, 2008, the Director of the Office of Thrift Supervision ("OTS") appointed the FDIC as receiver for WMB. The failure of WMB—a former bank subsidiary of WMI—stands as the single largest bank failure in U.S. history. Immediately after taking possession of WMB, the FDIC entered into that Purchase & Assumption Agreement (Whole Bank) with JPMC, dated September 25, 2008 (the "P&A", *see* A129 – A170.) Pursuant to the P&A, JPMC acquired substantially all of WMB's assets. Following the failure of WMB, Plaintiffs filed petitions for relief under chapter 11 of title 11 of the United States Code. *In re Washington Mutual, Inc.*, No. 08-12229 (MFW) (Bankr. D. Del.). In their Schedules

of Assets and Liabilities filed with this Court in the chapter 11 proceedings, Plaintiffs identified, among other things, the Disputed Accounts. (Turnover Compl. ¶ 21.)

**B.     The FDIC's Disallowance of Plaintiffs' Deposit Claims and the District Court Litigation**

On December 30, 2008, Plaintiffs asserted claims against the Receivership by filing a proof claim with the FDIC. Plaintiffs' proof of claim included a purported "Deposit Claim" concerning Plaintiffs' alleged interests in the six Disputed Accounts they claimed to hold at WMB and/or WMB fsb.

On January 23, 2009, the FDIC issued its formal determination disallowing Plaintiffs' Deposit Claim. (*See* A53, Exhibit 2 to DDC Compl.) On March 20, 2009, Plaintiffs elected to litigate this dispute by instituting the D.C. Action against the FDIC in the U.S. District Court for the District of Columbia. In the D.C. Action, Plaintiffs once again asserted their Deposit Claim and specifically acknowledged the existence of a dispute, stating that "the FDIC and JPMorgan Chase continue to reserve certain rights with respect to the [six Disputed Accounts] . . . including rights under the Purchase and Assumption Agreement. (A37, DDC Compl. ¶ 49.) Because Debtors' claims in the D.C. Action challenge JPMC's ownership of assets it acquired from the FDIC, JPMC has moved to intervene in the action "to protect its significant property interests in those disputed assets." (A171 – A186, JPMC Motion to Intervene filed in the D.C. Action.) The FDIC has supported JPMC's intervention. (A258 – A260, Response of FDIC.) WMI has opposed it.

## C.    JPMC's Adversary Proceeding Against Plaintiffs

Debtors' Schedules of Assets and Liabilities claim interests in or ownership of assets JPMC purchased from the FDIC as receiver for WMB pursuant to the P&A in accordance with Title 12 of the United States Code.  Accordingly, to preserve its rights, JPMC commenced an adversary action against Plaintiffs in their chapter 11 proceedings before this Court.

JPMC's adversary complaint includes claims relating to the Disputed Accounts.  JPMC asserts that to the extent the Disputed Accounts reflect capital contributions, they are the property of JPMC under the terms of the P&A.  (A87, Adv. Compl. ¶ 103.)  JPMC also asserts that to the extent the Disputed Accounts reflect deposits, it has certain setoff rights.  (A87 – A91, Adv. Compl. ¶¶ 104-115 (explaining how WMI's policies "created a broad contractual right of setoff against the [Disputed Accounts] . . . for the benefit of the Affiliated Banks and their subsidiaries.").)  In addition, JPMC's complaint alleges that certain entries in the Disputed Accounts reflect amounts, such as credits for tax refunds, that are the property of JPMC.  (A92 – A93, Adv. Compl. ¶¶ 119-121.)

JPMC's complaint also alleges that between September 19, 2008 and September 24, 2008, in the days immediately preceding the FDIC receivership, WMI directed the recording of various book entries purporting to transfer approximately $3.67 billion from WMB to WMB fsb.  (A90 – A91, Adv. Compl. ¶ 114.)  On September 24, 2008, general ledger entries were posted with a "retro" date of September 19, 2008, that describe it as "WMI contributes to FSB."  (*Id.*)  However,

no cash or other funds were actually moved to or received by WMB fsb in connection with the purported transfer. (*Id.*)

Based upon these and other facts, JPMC's Adversary Proceeding seeks, among other forms of relief, (i) a declaration that WMI must proceed with its claims relating to the Disputed Accounts in the D.C. Action, (ii) a declaration that no valid deposit liability was created because of the $3.67 billion book entry, (iii) a declaration determining JPMC's right to setoff, recoupment, imposition of a constructive trust, and/or enforcement of its security interest, and (iv) to interplead any remaining funds that constitute deposit liabilities so that all claims to the amounts can be adjudged and the funds can be properly disbursed, without subjecting JPMC to potential double-jeopardy for turning over funds (if that is deemed appropriate) to the wrong party.

### D. Plaintiffs' Response to JPMC's Adversary Proceeding

On April 20, 2009, Debtors requested, and JPMC consented to, a four-week extension of time to answer or otherwise respond to JPMC's Adversary Proceeding. Rather than raise their assertions as counterclaims in JPMC's Adversary Proceeding, where they are indisputably compulsory counterclaims, Plaintiffs instead then filed this turnover complaint.

Although to establish their turnover claim the Debtors must show that there is *no* dispute concerning ownership of the Disputed Accounts, their complaint fails to mention that the Disputed Accounts are at issue in: (i) Plaintiffs' December 30, 2008 proof of claim submitted in the FDIC Receivership and disallowed by the FDIC on January 23, 2009, (ii) Plaintiffs' complaint against the FDIC in the D.C.

Action, (iii) JPMC's motion to intervene and proposed Answer and Counterclaim in the D.C. Action, (iv) JPMC's Adversary Proceeding, (v) a proof of claims submitted by WMB Bondholders, asserting that "the purported deposits are properly viewed, or should be treated, as capital contributions for which WMB and WMB's receivership estate have sole ownership" (*see* A227, Proof of Claim of Bank Bondholders ¶ 11), and (vi) a proof of claim filed by the FDIC, reserving its right to take certain actions to "defeat any claim asserted by the Debtors" with respect to the Disputed Accounts "[p]ending further investigation" (A197, Proof of Claim of FDIC ¶ 24 ). Plaintiffs also acknowledge in their pleadings that a dispute exists between them and JPMC concerning the accounts. (Turnover Compl. ¶ 43.)

## ARGUMENT

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012 serves to test the sufficiency of the complaint. *Kost* v. *Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The burden of demonstrating that the plaintiff has failed to state a claim upon which relief can be granted rests on the movant. *Young* v. *West Coast Indus. Relations Assoc., Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991).

In deciding a motion to dismiss for failure to state a claim, the Court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. However, the Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost*, 1 F.3d at 183. In ruling on a motion to dismiss, the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Cal. Pub. Employees' Ret. Sys.* v. *Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (quoting *Morse* v. *Lower Merion Sch. Dist.*, 132

F.3d 902, 906 (3d Cir. 1997)). In addition to the complaint itself, the Court may

consider "items subject to judicial notice" and "matters of public record." *Buck* v.

*Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).[2]

## I.   PLAINTIFFS' TURNOVER ACTION SEEKING POSSESSION OF ADMITTEDLY DISPUTED PROPERTY MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

"Turnover under 11 U.S.C. § 542 is a remedy available to debtors to

obtain what is *acknowledged* to be property of the bankruptcy estate." *In re*

*Hechinger Inv. Co. of Del., Inc.*, 282 B.R. 149, 161-62 (Bankr. Del. 2002) (quoting *In*

*re Asousa P'ship.*, 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001)). Consequently, this

Court and courts throughout this Circuit recognize that "[t]urnover actions cannot be

used to demand assets whose title is in dispute." *In re Student Fin. Corp.*, 335 B.R.

539, 554 (D. Del. 2005) (citing *In re Allegheny Health, Educ. & Res. Found.*, 233

B.R. 671, 677-78 (Bankr. W. D. Pa. 1999); *In re Lexington Healthcare Group*, 363

B.R. 713, 715 (Bankr. D. Del. 2007); *see also, e.g.*, *United States* v. *Inslaw, Inc.*, 932

F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the

turnover provisions to liquidate contract disputes or otherwise demand assets whose

---

[2]      JPMC respectfully requests that the Court take judicial notice of the contents of the documents contained in the attached Appendix in Support of Defendant JPMorgan Chase, National Association's Motion to Dismiss Adversary Proceeding, consisting of pleadings and related document filed in proceedings before this Court and in the D.C. Action. *See Southmark Prime Plus, L.P.* v. *Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991) (noting that pursuant to Federal Rule of Evidence 201(b)(2), "the Court can take judicial notice of the contents of court records from another jurisdiction," including "the briefs and petitions of the parties."). *See also United States ex rel. Geisler* v. Walters, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (stating that the court "of course" takes judicial notice of the briefs and petitions in other actions); *Lopez* v. *Howard*, No. 06-2361, 2007 WL 708989, *1 (3d Cir. Mar. 9, 2007) (taking judicial notice of court records as to litigation events).

title is in dispute."); *In re Ven-Mar Int'l, Inc.*, 166 B.R. 191, 192-93 (Bankr. S.D. Fla. 1994) ("Section 542 does not provide trustees and debtors in possession with the ability to recover property where a dispute exists between the parties.")

The fact that a dispute over an asset exists defeats a motion for turnover because "turnover under § 542 of the Code is not intended as a remedy to determine disputed rights of parties to property." *In re Allegheny Health*, 233 B.R. at 677 (quoting *In re Johnson*, 215 B.R. 381, 386 (Bankr. N.D. Ill. 1997)); *see also In re FLR Co., Inc.*, 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985) ("Implicit in the bankruptcy concept is the idea that the property being sought is clearly property of the Debtor but not in Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes."). Thus this Court has observed, "[w]here there is legitimate dispute about the ownership of property a trustee seeks to recover, turnover under section 542 is not appropriate." *In re Lexington Healthcare Group*, 363 B.R. at 716. Therefore, courts routinely dismiss purported turnover actions for failure to state a claim where plaintiffs have improperly sought to use Section 542 to obtain property currently the subject of dispute. *See, e.g., id.* at 717 ("Because a dispute exists about whether the security deposit is property of the estate, this Court concludes that the Trustee cannot state a claim for turnover."); *In re Student Fin. Corp.*, 335 B.R. at 554; *In re Hechinger Inv. Co. of Del., Inc.*, 282 B.R. at 161-62.

Here, the Plaintiffs have acknowledged and the record before the Court establishes that a bona fide dispute exists that requires dismissal of the complaint.[3]

### A. Plaintiffs' Complaint Should be Dismissed Because It Fails to Plead an Undisputed Interest in the Disputed Accounts.

Plaintiffs' attempt to use the turnover provision of 11 U.S.C. § 542 to obtain possession of the Disputed Accounts is manifestly inappropriate under settled law. Far from pleading "an absolute and undisputed right to recover" the Disputed Accounts, *In re Lexington Healthcare Group*, 363 B.R. at 715, Plaintiffs in their turnover complaint plead the opposite, asserting that "JPMC claims it 'purchased' in excess of $4 billion in cash deposits and that such cash deposits have somehow come to represent equity in WMB or WMBfsb." (Turnover Compl. ¶ 43.) [4]

---

[3]    JPMC believes that the Debtors' independent turnover action, in addition to failing on the merits, also must be dismissed for lack of subject matter jurisdiction in this Court to the extent the Disputed Accounts are at issue in the D.C. Action or subject to the receivership process. JPMC reserves all of its rights with respect to the jurisdictional issues presented. The procedures set forth in Title 12 of the United States Code govern "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any" failed depository institution or "any claim relating to any act or omission of" either a failed institution or the FDIC as its receiver. 12 U.S.C. §§ 1812(d)(13)(D)(i), (ii). This jurisdictional bar operates in actions against a bank purchasing assets out of the receivership process because, to "permit claimants to avoid [the jurisdictional bar] by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA sought to avoid." *Village of Oakwood* v. *State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008).

[4]    Plaintiffs assert in paragraph 41 of their turnover complaint that they withdrew their motion seeking approval of the Account Stipulation when "JPMC would not agree to a form of order approving the Account Stipulation." This statement is patently false. In fact, the Account Stipulation was withdrawn following objections filed by certain creditors of the receivership and the FDIC. (A84 – A85,

Although WMI mischaracterizes JPMC's claims, WMI's acknowledgement of the existence of a dispute is fatal to its complaint. As the Court in *In re Student Fin. Corp.* observed, the analysis under Rule 12(b)(6) of a purported turnover claim in light of an acknowledged dispute concerning the subject property is straightforward:

> [I]n order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate. Here, the Trustee has not made, and cannot make, that allegation. Accordingly, the Court will dismiss Count VIII of the Complaint pursuant to Rule 12(b)(6).

335 B.R. at 554. Here, Plaintiffs cannot make the allegation that the Disputed Accounts are the "undisputed property of the bankruptcy estate," but have instead acknowledged that "the interests in question here . . . are very much in dispute." *Id.* (*See, e.g.*, Turnover Compl. ¶¶ 5, 44.) Accordingly, Plaintiffs' turnover action must be dismissed. *In re Student Fin. Corp.*, 335 B.R. at 554; *In re Hechinger Inv. Co.*, 282 B.R. at 161-62; *In re Lexington Healthcare Group*, 363 B.R. at 716-17.[5]

---

Adv. Compl. ¶ 95; *see* A1 – A13 (Objection of WMB Noteholder Group), A14 – A20 (Response and Limited Objection of FDIC).)

[5]    Plaintiffs' reliance on account statements issued by JPMC (Turnover Compl. ¶ 23) is unavailing and cannot be relied upon to deny the existence of a genuine dispute as to the nature of the accounts and as to any amounts in them. Those account statements are generated by JPMC in the ordinary course of its operations, are dependent upon information that is itself in dispute, post-date the activities that give rise to the disputes, have been issued subject to a full reservation of rights, and do not inform the dispute as to the nature of the accounts.

**B.** **Bona Fide Disputes Exist Concerning Ownership of the Disputed Accounts, Precluding Turnover as a Matter of Law.**

Even in the absence of Plaintiffs' dispositive admissions, Plaintiffs' turnover action must be dismissed because the Disputed Accounts are central to ongoing litigation. *In re Student Fin. Corp.*, 335 B.R. at 554. Although tellingly omitted from their complaint, the Disputed Accounts are the subject of Debtors' lawsuit against the FDIC pending in the U.S. District Court of the District of Columbia and JPMC's Adversary Proceeding. In such circumstances, the law is clear that a turnover action under Section 542 is improper and must be dismissed: "Unless there is no question remaining as to the liability of the defendant to the estate, *e.g.*, a final judgment from a court of competent jurisdiction or a stipulation by the defendant, it cannot be said that no dispute exists, and the money Debtor seeks to recover is not with the Debtor's constructive possession [for purposes of turnover pursuant to 11 U.S.C. § 542]." *In re Satelco, Inc.*, 58 B.R. 781, 786 (Bankr. N.D. Tx. 1986); *see also In re Chick Smith Ford, Inc.*, 46 B.R. 515, 518 (Bankr. M.D. Fla. 1985) ("To approve the proposition urged by the Debtor would be without a doubt, a gross violation of the most basic concepts of due process to which every Defendant is entitled, which involves at least the right to enjoy all the procedural safeguards otherwise available to all litigants in civil litigation.").

Moreover, although this motion is constrained by the facts alleged in Plaintiffs' complaint and those available for judicial notice, even that limited record clearly establishes that the disputes before this Court and the D.C. District Court are complex. By way of example, the book entry transfer that purportedly created a $3.7

billion liability never resulted in the transfer of funds. (A90 – A91, Adv. Compl. ¶¶ 100, 113-14.) Further complicating matters are Plaintiffs' arguments about setoff rights. Plaintiffs note that in adjudicating any dispute regarding these accounts (both in this action and, presumably, in JPMC's Adversary Proceeding) they intend to argue that Section 553(a)(2) limits the ability of JPMC to assert setoff rights. Section 553(a)(2) states, in part, that a creditor's setoff rights may be affected if the debt owed to the creditor was incurred "while the debtor was insolvent." Therefore, any Section 553(a)(2) analysis in this case will require adjudication of Plaintiffs' claim that "WMI was either insolvent at the time of, or rendered insolvent by, the P&A transaction." (Turnover Compl. ¶ 61.) This will require a detailed analysis of the financial condition of WMI and expert testimony. Moreover, because Debtors' solvency analysis depends on final adjudication of the effect of the P&A, a necessary predicate to the Court addressing Debtors' solvency assertion is resolution of *all* of the claims in JPMC's Adversary Proceeding relating to what JPMC or WMI owned at the time of receivership and following the P&A transaction. Given these disputes, Plaintiffs' attempt summarily to dismiss JPMC's setoff rights is improper. Moreover, Plaintiffs' setoff arguments run headlong into the dispute created by JPMC's Adversary Proceeding, underscoring why this turnover action should be dismissed.

By way of another example, Plaintiffs assert that all of the funds in the Disputed Accounts "were specifically intended to be held in demand deposit accounts for the Debtors' benefit." (Turnover Compl. ¶ 5.) The allegations in JPMC's Adversary Proceeding throw this allegation into dispute, by describing the $234 million in tax refunds paid to Plaintiffs but due and rightly delivered to JPMC. (A92

-14-

– A93, Adv. Compl. ¶¶ 119-121.) Moreover, Exhibit A to Plaintiffs' turnover complaint underscores the problem by listing two book entry transfers from WMB on September 19, 2008—of $177 million and $145 million respectively—that raise similar issues of fact with respect to tax amounts that are not for Debtors' benefit.

The existence of these disputes not only defeats Plaintiffs' turnover claim, but it highlights the importance JPMC's interpleader claim. This Court should be provided the opportunity to hear from all interested parties concerning the Disputed Accounts so that it can determine whether these are deposit accounts backed by funds and, if so, can ensure that any funds are properly disbursed, without subjecting JPMC to potential double-jeopardy for turning over assets to the wrong party.

## C. Plaintiffs' Interpretation of the P&A Agreement Does Not Bar Dismissal of the Complaint.

In an attempt to minimize the extent of the dispute, Plaintiffs next assert that the P&A precludes JPMC from asserting any claims against WMI. (*See* Turnover Compl. ¶¶ 49-50.) To begin, a further possible dispute between the parties as to their respective rights to assert claims related to the Disputed Accounts is simply another basis for dismissal of Plaintiffs' complaint. Even if, however, the Court were to entertain this argument, it has no merit.

Plaintiffs challenge Section 3.5 of the P&A, which sets forth a narrow class of assets that JPMC did not purchase from the FDIC. Specifically, the FDIC maintained its right to assert certain claims against "any shareholder or holding company of" WMB were not assigned. (A168, Schedule 3.5 to P&A.) Plaintiffs

-15-

creatively interpret this provision (i) as barring JPMC from bringing certain claims against WMI, and (ii) providing a third-party benefit to WMI or other wrongdoing shareholders. What Plaintiffs plainly overlook is that the P&A did not divest JPMC of any rights it had before or after the transaction with the FDIC. The P&A does not strip JPMC of rights as owner of assets. The P&A also does not alter JPMC's rights as successor-in-interest to WMB that arise from its acquisition of the assets of WMB. The P&A speaks only to specific rights reserved by the FDIC. The P&A does not waive JPMC's right to pursue its own claims against Plaintiffs, including claims arising from Plaintiffs' inclusion of JPMC's assets in their Schedules of Assets and Liabilities filed with this Court in the chapter 11 proceedings *after* the P&A was executed.[6]

## II. ALTERNATIVELY, PLAINTIFFS' ACTION SHOULD BE CONSOLIDATED WITH JPMC'S ADVERSARY PROCEEDING.

Alternatively, to the extent the Court does not dismiss Plaintiffs' complaint in its entirety, JPMC respectfully submits that any remaining claims— which constitute mandatory counterclaims to JPMC's adversary complaint[7]—should be consolidated with the proceedings on JPMC's earlier-filed adversary complaint.

---

[6]    Plaintiffs' interpretation of the P&A is tantamount to contending that had WMI stolen $100 million from JPMC the day before or the day after the receivership, the P&A would bar JPMC from pursuing a claim against WMI for recovery of its money. What is at issue between the parties and what gives rise to JPMC's right to setoff are WMI's efforts to lay claims to assets and interests that JPMC rightfully acquired from the FDIC as receiver. Thus, JPMC's claims against WMI are for actions WMI took to interfere with JPMC's acquisition following the filing of its bankruptcy petition and remain the right of JPMC to pursue.

[7]    Plaintiffs assert a second claim for unjust enrichment based upon the same assertions that the Disputed Accounts are Plaintiffs' property. Once the turnover

Under Federal Rule of Civil Procedure 13 and Federal Rule of Bankruptcy 7013, Plaintiffs' claims in this action to the Disputed Accounts are mandatory counterclaims to JPMC's earlier-filed adversary complaint involving JPMC's claims to the same accounts. *See* Fed. R. Civ. P. 13(a); *In re Washington Mfg. Co.*, 118 B.R. 555, 563-64 (Bankr. M.D. Tenn. 1990) (claims raised in trustee's adversary complaint filed day after creditor's adversary complaint constituted compulsory counterclaims to the creditor's claims as "offshoots of the same basic controversy") (quoting *Great Lakes Rubber Corp.* v. *Herbert Cooper Co.*, 286 F.2d 631, 634 (3rd Cir. 1961).) In light of the goals of Rule 13 of promoting efficiency by requiring all claims arising out of the same "transaction or occurrence" to be adjudicated in the same proceeding, "it is much more efficient to have the [two] adversary proceedings consolidated under Bankruptcy Rule 7042." *In re Washington Mfg. Co.*, 118 B.R. at 564; *In re Aerni*, 86 B.R. 203, 206 (Bankr. D. Neb. 1988) ("Rule 13 prevents an unnecessary multiplicity of litigation, and promotes the prompt resolution of all disputes involving common matters.").

Plaintiffs' claim to the Disputed Accounts can be resolved efficiently, along with all other claims to the Disputed Accounts, in JPMC's Adversary Proceeding. As a result, plaintiffs' turnover action should be consolidated with JPMC's earlier filed adversary action. *In re Washington Mfg. Co.*, 118 B.R. at 564.

---

claim is dismissed, there is no sensible basis for the stand-alone unjust enrichment claim to survive as a separate adversary proceeding. This claim should be dismissed and Debtors should be instructed to file it as a compulsory counterclaim in JPMC's Adversary Proceeding.

## CONCLUSION

For the foregoing reasons, JPMC respectfully submits that the claims raised in Plaintiffs' turnover complaint should be dismissed. In the alternative, to the extent the Court determines the claims raised in Plaintiffs' turnover complaint may proceed, JPMC respectfully submits proceedings on those claims should be consolidated with proceedings on JPMC's earlier-filed adversary action.

Dated: May 13, 2009
       Wilmington, Delaware

Respectfully submitted,

Adam G. Landis (I.D. 3407)
Matthew B. McGuire (I.D. 4366)
LANDIS RATH & COBB LLP
919 Market Street Suite 1800
Wilmington, DE 19899
Tel: (302) 467-4400
Fax: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

– and –

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Tel: (310) 712-6600
Fax : (310) 712-8800
sacksr@sullcrom.com
feldsteinh@sullcrom.com

Bruce E. Clark
David H. Braff
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel : (212) 558-4000
Fax (212) 558-3588
clarkb@sullcrom.com
braffd@sullcrom.com
friedmans@sullcrom.com

*Counsel for JPMorgan Chase Bank,*
*National Association*