# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WASHINGTON MUTUAL, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>Jointly Administered |
| WASHINGTON MUTUAL, INC. and<br>WMI INVESTMENT CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Adv. Pro. No. 09-50934 (MFW) |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO INTERVENE
## OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER

Robert S. Brady
M. Blake Cleary
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the
Federal Deposit Insurance Corporation, as
Receiver for Washington Mutual Bank

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

# Table of Contents

                                                              Page

Table of Authorities ................................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

       A.      WMI's Receivership Claim and the District Court Action ................................... 3

       B.      The Adversary Proceedings ................................................................................. 5

ARGUMENT -- THE MOTION TO INTERVENE SHOULD BE GRANTED ......................... 6

I.       The FDIC-Receiver Is Entitled to Intervene as of Right .................................................. 6

       A.      This Motion Is Timely ......................................................................................... 7

       B.      The FDIC-Receiver Has Substantial Interests in this Adversary Proceeding ....... 8

              1.      Ensuring Uniformity in the Application of the FDIC's Governing Statute ................................................................................. 8

              2.      Preventing Adverse Precedents That Would Deter Future Purchasers of Failed Bank Assets ....................................................... 12

              3.      Protecting the FDIC-Receiver's Interests As Potential Indemnitor ......... 13

       C.      Disposition of This Action Could Impair or Impede the Rights of the FDIC-Receiver, and JPMC Will Not Protect Those Interests ........................... 13

II.      In the Alternative, the FDIC-Receiver Should Be Granted Permissive Intervention Under Federal Rule 24(b) ............................................................................................. 14

CONCLUSION ......................................................................................................................... 16

# Table of Authorities

|   | Page |
|---|---|
| **Cases** | |

*Allentown Cement Co., Inc. v. Hong Sung Indus., Ltd. (In re United Minerals & Grains Corp.,* 76 B.R. 991 (Bankr. E.D. Pa. 1987) ............................................................................7

*Amsave Credit Corp. v. R.T.C. (In re American Mortgage & Inv. Servs.),* 141 Bankr. 578 (Bankr. D.N.J. 1992) ............................................................................9

*Arends v. Eurobank & Tr. Co.* 146 F.R.D. 42 (D.P.R. 1993) ............................................................................2-3, 13, 14

*Cons. Swinc Estate v. Ace USA, Inc. (In re Stone & Webster, Inc.),* 380 B.R. 366 (Bankr. D. Del. 2008) ............................................................................6

*First Gibraltar Bank fsb v. Bradley,* 98 F.3d 1338, 1996 WL 556852 (5th Cir. 1996) ............................................................13

*Heaton v. Monogram Credit Card Bank of Georgia* 297 F.3d 416 (5th Cir. 2002) ............................................................................2, 7, 13

*Hindes v. F.D.I.C.* C.A. No. 94-2355, 1995 WL 534248 (E.D. Pa. Sept. 6, 1995), *aff'd* 137 F.3d 148 (3d Cir. 1998) ............................................................................12

*Holloway v. Whaley* 116 F.R.D. 675 (D.N.J. 1987) ............................................................................15

*Home Capital Collateral v. F.D.I.C.* 96 F.3d 760 (5th Cir. 1996) ............................................................................11

*Metro Transp. Co. v. Balboa Ins. Co.* 118 F.R.D. 423 (E.D. Pa. 1987) ............................................................................15

*National Union Fire Ins. Co. v. City Sav., F.S.B.* 28 F.3d 376 (3d Cir. 1994) ............................................................................2, 8-9

*NCNB Texas Nat'l Bank v. Cowden* 895 F.2d 1488 (5th Cir. 1990) ............................................................................9

*Pennsylvania Truck Lines, Inc. v. Int'l Brotherhood of Teamsters* No. 88-6968, 1990 WL 59305 (E.D. Pa. May 4, 1990) ............................................8, 14

*Pernie Bailey Drilling Co. v. F.D.I.C.* 905 F.2d 78 (5th Cir. 1990) ............................................................................13

Page

*Rosa v. R.T.C.*
  938 F.2d 383 (3d Cir. 1991) .................................................................................9

*Sahni v. American Diversified Partners*
  83 F.3d 1054 (9th Cir. 1996) ........................................................................13, 14

*Village of Oakwood v. State Bank & Tr. Co.*
  539 F.3d 373 (6th Cir. 2008) ..........................................................................2, 11

*Washington Bancorp v. F.D.I.C. (In re Washington Bancorp.)*
  C.A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar. 19, 1996) ................... 9, 11-12

**Statutes and Rules**

11 U.S.C. § 542 .................................................................................................................1

12 U.S.C. § 1821(d)(5) .....................................................................................................8

12 U.S.C. § 1821(d)(6)(A) ..........................................................................................8, 10

12 U.S.C. § 1821(d)(13)(D) ..................................................................................... *passim*

Financial Institutions Reform, Recovery and Enforcement Act of 1989,
  Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA") ............................................... 8-12

Bankruptcy Rule 7024 ..................................................................................................1, 6

Federal Rule of Civil Procedure 24 ........................................................................ *passim*

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO INTERVENE OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER

Proposed intervenor-defendant the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this memorandum of law in support of its motion to intervene as a defendant in this adversary proceeding for the limited purpose of moving to stay proceedings in this action until judgment has been entered in a prior filed action involving substantially similar issues that is pending in the U.S. District Court for the District of Columbia, *Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-cv-0533 (RMC) (D.D.C.).[1]

## INTRODUCTION

Pursuant to Bankruptcy Rule 7024 and Federal Rule of Civil Procedure 24(a)(2), the FDIC-Receiver moves to intervene in this adversary proceeding as of right for the purpose of seeking a stay of all proceedings in this action.[2] The complaint against JPMorgan Chase Bank, N.A. ("JPMC") in this adversary proceeding seeks turnover pursuant to 11 U.S.C. § 542 of the balances held in certain disputed demand deposit accounts that the debtors Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together, the "Debtors") contend are property of their estate. To the extent that JPMC has any interest in or claim against the disputed funds, such an interest or claim arises under a Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "P&A Agreement") under which JPMC purchased from the FDIC-

---

[1] In accordance with Federal Rule of Civil Procedure 24(c), as incorporated by Bankruptcy Rule 7024, the FDIC-Receiver has attached as an exhibit to its motion to intervene its proposed motion to stay, or in the alternative, to dismiss this adversary proceeding for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted.

[2] Briefly stated, this adversary proceeding and the adversary proceeding styled *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc., et al.*, Adv. Proc. No. 09-50551 (MFW), both should be stayed until judgment has been entered in the Debtors' pending district court action against the FDIC-Receiver, which involves substantially overlapping factual and legal issues.

Receiver substantially all of the assets of Washington Mutual Bank ("WMB") and assumed all deposit and substantially all other liabilities of WMB. *See* Turnover Compl., ¶ 3.

"One of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation." *National Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994). Intervention by the FDIC-Receiver as of right in this adversary proceeding is warranted because the claims against JPMC violate the jurisdictional bar provided under that statute. *See* 12 U.S.C. § 1821(d)(13)(D); *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008). JPMC and the Debtors disagree as to whether the Debtors own the balances in the disputed accounts or if, in fact, JPMC obtained assets under the P&A Agreement that correspond with the alleged deposit liabilities claimed by the Debtors. This proceeding unquestionably seeks "a determination of rights with respect to the assets of" a failed depository institution, namely, WMB, and also asserts claims that relate to acts or omissions of the FDIC-Receiver. In both respects, this adversary proceeding runs afoul of the jurisdictional bar.

The FDIC-Receiver's intervention is necessary to protect this central component of its governing statutory scheme. *See Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 424 (5th Cir. 2002) (FDIC entitled to intervene as of right given "broader interest in protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system").

The FDIC-Receiver also has a substantial interest in this action because disputes such as this one could have a chilling effect in the future on potential purchasers of failed bank assets, impacting the FDIC's ability to quickly and efficiently resolve future receiverships at the least possible cost to its deposit insurance fund. *See Arends v. Eurobank & Tr. Co.*, 146 F.R.D. 42,

44-49 (D.P.R. 1993) ("If a P&A Agreement comes under attack, whether by local or state authorities or other interested parties, FDIC naturally must do what it can to avoid precedents that may hinder future agreements regarding bank transfers.").

While the FDIC-Receiver respectfully submits that it is entitled to intervene as of right, in the alternative, the FDIC-Receiver moves for permissive intervention under Federal Rule 24(b), the criteria for which it also readily satisfies.

## BACKGROUND

### A. <u>WMI's Receivership Claim and the District Court Action</u>

On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC-Receiver to serve as its receiver. Immediately after its appointment, the FDIC-Receiver entered into the P&A Agreement with JPMC, under which JPMC purchased substantially all of WMB's assets and assumed most of its liabilities, including all of its deposit liabilities.

The FDIC-Receiver established December 30, 2008 as the bar date for filing claims against the WMB receivership. On that date, WMI and certain of its subsidiaries filed a proof of claim with the FDIC-Receiver. *See* District Court Compl., ¶ 10; *see generally* WMI Receivership Proof of Claim dated December 30, 2008.[3] In its receivership proof of claim and in its later district court complaint, WMI asserted various claims, including claims for the balances

---

[3] Copies of the relevant complaints in the three actions at issue are attached as exhibits to the FDIC-Receiver's motion to stay, or in the alternative, to dismiss this adversary proceeding, a copy of which is attached as <u>Exhibit A</u> to the motion to intervene. To avoid an unnecessary burden on the Court, the FDIC-Receiver has not attached duplicate copies of the relevant complaints as exhibits to the motion to intervene or this memorandum, but incorporates those exhibits by reference. The complaint in the district court action (the "<u>District Court Complaint</u>") is attached as Exhibit 1 to the motion to stay or dismiss; the complaint in *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.* (the "<u>JPMC Complaint</u>") is attached as Exhibit 2 to that motion; the complaint in this adversary proceeding (the "<u>Turnover Complaint</u>") is attached as Exhibit 3 to that motion; and a copy of WMI's proof of claim in the WMB receivership (the "<u>WMI Receivership Proof of Claim</u>") is attached as Exhibit 4 to that motion.

held in the demand deposit accounts that are at issue in this adversary proceeding. *See* WMI Receivership Proof of Claim, ¶¶ 43-46; District Court Compl., ¶¶ 47-50. Among other things, WMI asserted in its receivership proof of claim:

> In the event that Claimants' rights to the [accounts] are in any way compromised or modified, WMI asserts a claim against WMB for any lost value or other consequential damages. Without prejudice to WMI's position that it is a depositor of JPMorgan Chase, Claimants hereby assert a protective claim for the outstanding balance on each of the [accounts] in the event FDIC exercises any rights it may have under the [P&A Agreement], or otherwise, with respect to the [accounts].
>
> \*       \*       \*
>
> In addition, by reason of the Receivership and the subsequent sale of substantially all of WMB's assets to JPMorgan Chase, Claimants were denied access to, control, and use of the WMB Deposit Accounts and the FSB Deposit Account by JPMorgan Chase and were unable to, among other things, invest the funds in [those accounts], move the funds to another institution, or transfer the funds to interest-bearing accounts. Accordingly, Claimants hereby assert a claim against WMB for damages, including interest, for the lost use of the funds in the WMB Deposit Accounts and the FSB Deposit Account from September 25, 2008, until such time as Claimants were able to transfer, or will in the future be able to transfer, such funds to interest bearing accounts at other institutions.

WMI Receivership Proof of Claim, ¶¶ 45-46; *see* District Court Compl., ¶¶ 49-50. By letter dated January 23, 2009, the FDIC-Receiver timely disallowed all of these receivership claims for a variety of reasons. District Court Compl., ¶ 63.

On March 20, 2009, WMI and its subsidiary WMI Investment Corp. filed their complaint against the FDIC-Receiver (and against the FDIC in its corporate capacity) in the U.S. District Court for the District of Columbia. On March 30, 2009, JPMC filed a motion to intervene in the district court action, which the Debtors opposed. In response to the motion, the FDIC-Receiver informed the district court that it believed that JPMC's intervention in that action was

appropriate to allow JPMC to protect its own interests raised in that action directly. The motion to intervene has been fully briefed but has not yet been decided.

### B. The Adversary Proceedings

On March 24, 2009, JPMC commenced its adversary proceeding in this Court against the Debtors, the FDIC-Receiver and the FDIC in its corporate capacity. In its complaint, JPMC seeks declaratory relief and asserts other claims with respect to many of the same assets and liabilities that are the subject of the Debtors' claims against the FDIC-Receiver in its district court complaint.

JPMC's complaint raises a number of factual issues regarding the alleged deposit accounts, including that a purported transfer of balances from $3.67 billion from WMB to WMBfsb in September 2008 was a "mere book entry" that was not accompanied by the movement of "good funds" from one bank to the other, *id.*, ¶¶ 113-18, and that some of the funds in the accounts arise from income tax refunds and other payments as to which JPMC claims a property interest, *id.*, ¶¶ 119-21. JPMC also notes that the balances are subject to the FDIC-Receiver's rights under section 9.5 of the P&A Agreement, under which it may direct JPMC to withhold "all or any portion of any deposit" assumed by JPMC under that agreement. *Id.*, ¶¶ 122-24.

Among other claims, JPMC seeks a declaratory judgment that (i) to the extent the Debtors assert an entitlement to the funds in the deposit accounts, they must do so through their district court action against the FDIC, or (ii) in the alternative that "there is no valid deposit liability due to Debtors" with respect to the majority of those funds. JPMC Compl., ¶ 204. JPMC also asserts an interpleader claim with respect to the deposit accounts as to which it names

the FDIC-Receiver (and the FDIC in its corporate capacity) as additional defendants. *Id.*, ¶¶ 210-12.

On April 27, 2009, the Debtors commenced this adversary proceeding against JPMC, seeking turnover of the alleged balances held in six demand deposit accounts that were already the subject of the Debtors' district court action against the FDIC-Receiver and JPMC's adversary proceeding against the Debtors. *See* Turnover Compl., ¶¶ 18, 20, 56-72. JPMC moved to dismiss the Turnover Complaint on May 18, 2009. The Debtors moved for summary judgment on May 19, 2009 and responded to JPMC's motion to dismiss on May 27, 2009. The FDIC-Receiver is not named as a defendant in the turnover proceeding.

## ARGUMENT

## THE MOTION TO INTERVENE SHOULD BE GRANTED

### I. The FDIC-Receiver Is Entitled to Intervene as of Right

The FDIC-Receiver meets the requirements for intervention in this adversary proceeding as of right under Federal Rule of Civil Procedure 24(a)(2), as incorporated by Bankruptcy Rule 7024. To intervene as a matter of right:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Cons. Swinc Estate v. Ace USA, Inc. (In re Stone & Webster, Inc.)*, 380 B.R. 366, 370 (Bankr. D. Del. 2008); *see* Fed. R. Civ. P. 24(a)(2).[4]

---

[4] Federal Rule of Civil Procedure 24(a)(2) provides:

(a)     Intervention of Right. On timely motion, the court must permit anyone to intervene who:

                   \*                    \*                    \*

A.  **This Motion Is Timely**

This proceeding is in its earliest stages, and no prejudice will result from the FDIC-Receiver's intervention at this juncture. *See Allentown Cement Co., Inc. v. Hong Sung Indus., Ltd. (In re United Minerals & Grains Corp.)*, 76 B.R. 991, 997 (Bankr. E.D. Pa. 1987) (timeliness factors include "[H]ow far the proceedings have gone when the movant seeks to intervene . . . [2] prejudice which resultant delay might cause to other parties, and [3] the reason for the delay") (citations omitted); *see also Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422-423 (5th Cir. 2002).

The Debtors filed their adversary complaint in this action on April 27, 2009. Through its counsel, the FDIC-Receiver informed the Court that it would seek to stay this adversary proceeding at a hearing less than one month later, on May 20, 2009, only two days after JPMC filed its motion to dismiss the Debtors' complaint.

To date, no discovery has been conducted by the parties and, while the Debtors filed a motion for summary judgment on May 19, 2009, a briefing schedule for that motion has not yet been established and JPMC has suggested that its motion to dismiss could eliminate the need for briefing and argument of that motion. There can be no suggestion that the FDIC-Receiver delayed its intervention motion at all, much less that it has done so for any strategic reason. Indeed, all three of the actions at issue in the FDIC-Receiver's motion to stay, including this one, are in their initial stages. In that regard, under the existing schedule, the FDIC-Receiver's response to the Debtors' complaint in the district court action is not due until June 15, 2009.

---

(2)  claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

B. **The FDIC-Receiver Has Substantial Interests in this Adversary Proceeding**

The FDIC-Receiver has significant interests in this proceeding that warrant intervention as a matter of right.

    1. **Ensuring Uniformity in the Application of the FDIC's Governing Statute**

Intervention as of right is warranted because the Debtors' claims against JPMC in this adversary proceeding directly implicate the jurisdictional bar set forth in the FDIC-Receiver's governing statute, the Federal Deposit Insurance Act as amended, *inter alia*, by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"). *See* 12 U.S.C. §§ 1821(d)(13)(D)(i), (ii).

The FDIC-Receiver has a clear and recognized interest in ensuring the uniform application and enforcement of that statute. *See Heaton*, 297 F.3d at 424 (intervention warranted given FDIC's "broader interest in protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system."); *accord Pennsylvania Truck Lines, Inc. v. Int'l B'hood of Teamsters*, No. 88-6968, 1990 WL 59305, at *5 (E.D. Pa. May 4, 1990) ("[w]ith its significant role in preventing and remedying unfair labor practices, the NLRB has a legal, jurisdictional, public interest sufficient to warrant intervention in this action."). Under FIRREA, claims against a failed financial institution must be filed with the FDIC as receiver in accordance with the statute, *see* 12 U.S.C. § 1821(d)(5), and only thereafter may litigation be brought regarding the issues in limited circumstances and in specified courts, *see* 12 U.S.C. § 1821(d)(6)(A).

"One of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation." *National Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388

(3d Cir. 1994). Thus, 12 U.S.C. § 1821(d)(13)(D)(i) provides that "no court shall have jurisdiction over . . . any claim or action for payment from, or any action seeking a determination of rights with respect to the assets of" any failed financial institution. Similarly, section 1821(d)(13)(D)(ii) bars "any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii); *see Rosa v. R.T.C.*, 938 F.2d 383, 396 (3d Cir. 1991) (primary purpose of exclusive claims procedures is to allow a receiver "to quickly and efficiently resolve claims against a failed institution without resorting to litigation") (citing H.R. Rep. No. 101-54(I) 2, 418-19, *reprinted in* 1989 U.S.C.C.A.N. 86, 214-15).[5]

This jurisdictional bar "prohibits any court from asserting subject matter jurisdiction over any assets, disputed or not, in which the [FDIC], as conservator or receiver of a failed depository institution claims an ownership interest unless and until the claims procedure has been exhausted." *Amsave Credit Corp. v. R.T.C. (In re American Mortgage & Inv. Servs.)*, 141 Bankr. 578, 587 (Bankr. D.N.J. 1992); see *National Union*, 28 F.3d at 383. For these purposes, an "asset of a failed depository institution" is anything the failed institution owned that the FDIC as receiver might liquidate for the receivership. *Washington Bancorp v. F.D.I.C. (In re Washington Bancorp.)*, C.A. No. 95-1340, 1996 WL 148533, at *4 (D.D.C. Mar. 19, 1996); *see also NCNB Texas Nat'l Bank v. Cowden*, 895 F.2d 1488, 1499 (5th Cir. 1990).

---

[5] 12 U.S.C. § 1821(d)(13)(D) provides:

(D)     Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over –

    (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

    (ii)     any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

Only after the FDIC as receiver has disallowed a timely claim against the receivership may a claimant commence litigation relating to receivership assets, and even then the courts in which such an action may be brought are limited to the district courts for the District of Columbia or for the district in which the failed institution had its principal place of business (in this case, the Western District of Washington). *See* 12 U.S.C. § 1821(d)(6)(A).

The Debtors understood this claims procedure. They filed a claim against the receivership that included among other matters a claim relating to the disputed deposit accounts at issue in this adversary proceeding. *See* WMI Receivership Proof of Claim, ¶¶ 43-46. After that claim was disallowed, the Debtors commenced an action against the FDIC-Receiver in the U.S. District Court for the District of Columbia citing, *inter alia*, the venue and jurisdiction provisions of FIRREA. *See* District Court Compl., ¶¶ 6, 79 (citing 12 U.S.C. § 1821(d)(6)(A)).

In this adversary proceeding, the Debtors seek immediate possession of the balances allegedly held in six of the disputed deposit accounts. See Turnover Compl., ¶¶ 56-67. JPMC has raised a number of issues regarding that claim, including whether the alleged deposit liabilities to WMI that it assumed pursuant to the P&A Agreement include tax refunds and other commingled funds that are the property of WMB and whether a September 2008 transfer from WMB to WMBfsb was accompanied by actual assets or was instead a mere "book entry." *See* JPMC Compl., ¶¶ 113-18. Without question, in this dispute the parties are seeking a "determination of rights with respect to assets" of WMB.

The Debtors' actions support this conclusion. As mentioned, their receivership proof of claim included a claim relating to the disputed deposit accounts that are the subject of this adversary proceeding. *See* WMI Receivership Proof of Claim, ¶¶ 43-46. The Debtors' district court complaint against the FDIC-Receiver also asserts a claim concerning those accounts. In

both, the Debtors assert a "protective claim" for the outstanding balance of each of the accounts in the event that the FDIC-Receiver (or the FDIC in its corporate capacity) exercises any rights it may have with respect to the accounts under the P&A Agreement "or otherwise." District Court Compl., ¶ 49; WMI Receivership Proof of Claim, ¶ 45. The Debtors also assert a claim for interest on the alleged basis that they have been "denied access to, control, and use of" the accounts "by reason of the Receivership and the subsequent sale of substantially all of WMB's assets to JPMorgan Chase . . . ." District Court Compl., ¶ 50; WMI Receivership Proof of Claim, ¶ 46.

Even if this adversary proceeding did not directly seek a determination of rights with respect to assets of WMB, as it plainly does, it would still implicate the jurisdictional bar of section 1821(d)(13)(D)(ii), which deprives courts of jurisdiction over any "claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. 1821(d)(13)(D)(ii). Here, the Debtors' complaint includes numerous assertions regarding the meaning and effect of provisions of the P&A Agreement on the Debtors' entitlement to the alleged deposit balances at issue. *See* Turnover Compl., ¶¶ 2, 3, 4, 5, 6, 8, 33-37, 49, 52. Those allegations make clear that the Debtors' turnover claim "relat[es] to [an] act or omission" of the FDIC-Receiver, namely, the sale to JPMC pursuant to the P&A Agreement itself.[6] S*ee Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (claim by creditor of failed bank against assuming bank under purchase and assumption agreement related to acts of the FDIC as receiver and was subject to jurisdictional bar); *see also Home Capital Collateral v. F.D.I.C.*, 96 F.3d 760, 763 (5th Cir. 1996) (action against R.T.C. for alleged breach of post-receivership contract was barred by

---

[6] The Debtors' complaint expressly incorporates the P&A Agreement by reference. *See* Turnover Compl., ¶ 33 (citing publicly available location of P&A Agreement at http:/www.fdic.gov/about/freedom/popular.html).

section 1821(d)(13)(D)(ii)); *Washington Bancorp v. F.D.I.C*, 1996 WL 148533, at *5 (declaratory judgment action brought by counterparty to settlement agreement with FDIC as receiver that had been approved by the Bankruptcy Court was barred under § 1821(d)(13)(D)(ii)).

Further, the Debtors' demand for turnover of the disputed balances directly implicates the FDIC-Receiver's rights under section 9.5 of the P&A Agreement, which permits the FDIC-Receiver, in its discretion, to direct JPMC to withhold any deposit balance. *See* District Court Compl., ¶ 49; *see also* JPMC Compl., ¶¶ 122-23 (discussing section 9.5). Although the FDIC-Receiver has not, to date, exercised this authority with respect to the disputed account balances, the potential for it to do so is an apparent subtext to the parties' litigation positions with respect to that issue.

Because the positions of both the Debtors and JPMC directly implicate the jurisdictional bar arising under section 1821(d)(13)(D), the FDIC-Receiver's substantial interest in this adversary proceeding is clear.

### 2. Preventing Adverse Precedents That Would Deter Future Purchasers of Failed Bank Assets

Another purpose of the statutory framework established by FIRREA was to protect the FDIC's deposit insurance fund and thereby "'minimize future taxpayer expense in resolving failed commercial banks.'" *Hindes v. F.D.I.C.*, C.A. No. 94-2355, 1995 WL 534248, at *3 (E.D. Pa. Sept. 6, 1995), *aff'd*, 137 F.3d 148 (3d Cir. 1998). In this case, that interest is threatened by the chilling effect that disputes such as this one might have on future purchasers of failed bank assets.

The FDIC-Receiver has a substantial interest in participating in this adversary proceeding to protect against such a result, which could make it more difficult for the FDIC to resolve future

receiverships at the lowest possible cost to its deposit insurance fund, indirectly harming not only the taxpayers of the United States but also depositors in other banks who rely on the FDIC's deposit insurance. *See Arends v. Eurobank & Tr. Co.*, 146 F.R.D. 42, 48 (D.P.R. 1993) ("If a P&A Agreement comes under attack, whether by local or state authorities or other interested parties, FDIC naturally must do what it can to avoid precedents that may hinder future agreements regarding bank transfers."); *see generally Sahni v. American Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir. 1996) ("The FDIC's power to liquidate the assets of a failed institution is critical to its ability to rescue failed institutions and the FDIC would suffer injury if this power was constrained.").

### 3. Protecting the FDIC-Receiver's Interests As Potential Indemnitor

While it reserves all of its rights in this regard, the FDIC-Receiver also has an interest in this case as a potential indemnitor of JPMC under the P&A Agreement. *See* P&A Agreement, § 12.1(a). Courts have recognized a party's interest in participating in actions based on similar indemnification provisions. *First Gibraltar Bank fsb v. Bradley*, 98 F.3d 1338, 1996 WL 556852, at *4 & n.9 (5th Cir. 1996) (*per curiam*) ("Given the agency's obligation to indemnify FGB, the acquiring bank, FDIC had a concrete financial interest in the litigation that would justify its status as a party."); *Pernie Bailey Drilling Co. v. F.D.I.C.*, 905 F.2d 78, 80 (5th Cir. 1990) ("[t]he designation of FDIC as a proper party stems in part from its obligation to indemnify NCNB under the terms of the P&A Agreement.").

### C. Disposition of This Action Could Impair or Impede the Rights of the FDIC-Receiver, and JPMC Will Not Protect Those Interests

For the same reasons that the FDIC-Receiver has a substantial interest in the defense of this action, its absence from the action could impair or impede that interest. The FDIC-Receiver cannot rely on a private defendant, JPMC, to defend the agency's unique public mission. *See*

*Heaton*, 297 F.3d at 424 (protection of the broad public interest by itself justifies intervention by the FDIC); *Sahni*, 83 F.3d at 1057 (affirming intervention by FDIC as receiver in actions seeking rescission of sales of limited partnerships); *Arends*, 146 F.R.D. at 48 (allowing FDIC intervention in action against assuming bank by former employees of failed bank); *see also Pennsylvania Truck Lines, Inc.* 1990 WL 59305, at *5 (NLRB intervention).

Nor will JPMC adequately represent the interests of the FDIC-Receiver. A proposed intervenor's burden as to this element is "minimal." *Pennsylvania Truck Lines*, 1990 WL 59305, at *6. In any event, the FDIC-Receiver amply than satisfies this requirement. As a private party, JPMC has no interest in ensuring the uniform application of the FDIC's governing statute. Indeed, as a potential claimant against the FDIC-Receiver under the indemnification provision in the P&A Agreement, as a regulated national bank and as a potential purchaser of failed bank assets from the FDIC in the future, JPMC's interests could be antagonistic to those of the FDIC-Receiver in numerous ways that are as yet unforeseen.

## II. In the Alternative, the FDIC-Receiver Should Be Granted Permissive Intervention Under Federal Rule 24(b)

The FDIC-Receiver respectfully submits that it is entitled to intervene as of right for the reasons set forth above. Even if the Court disagrees, however, the Court should permit the FDIC-Receiver to intervene with permission under Federal Rule 24(b).[7] The Court has wide

---

[7] Federal Rule 24(b) provides:
   (b)    Permissive intervention.
          (1)    In General. On timely motion, the court may permit anyone to intervene who:
               \*        \*        \*
               (B)    has a claim or defense that shares with the main action a common question of law or fact.

discretion to permit a motion to intervene under Rule 24(b). *Holloway v. Whaley*, 116 F.R.D. 675, 677 (D.N.J. 1987). Permissive intervention is granted liberally to governmental agencies "because they purport to speak for the public interest." *See Metro Transp. Co. v. Balboa Ins. Co.*, 118 F.R.D. 423, 424 (E.D. Pa. 1987).

As discussed above, the claims and defenses of the parties in this action directly implicate a "statute . . . administered" by the FDIC as contemplated for permissive intervention by a government officer or agency under Rule 24(b)(2), namely, the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D). The FDIC-Receiver's substantial interest in the uniform application of that statute justifies intervention here.

The jurisdictional bar also constitutes a "defense that shares with the main action a common question of law or fact," as required for permissive intervention under Federal Rule 24(b)(1). Indeed, the FDIC-Receiver has set forth that defense in its proposed motion to stay or dismiss the adversary complaint in this action that accompanies this motion to intervene.

Finally, as already discussed, no party will be unduly delayed or prejudiced by permitting the FDIC-Receiver to intervene.

---

(2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
    (A) a statute or executive order administered by the officer or agency; or
    (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.
(3) Delay or prejudice. In exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

## **CONCLUSION**

For the foregoing reasons, the FDIC-Receiver respectfully requests that the Court grant its motion to intervene in this action and grant the FDIC-Receiver such other relief as it may deem just and proper.

Date: Wilmington, Delaware
June 1, 2009

                                      YOUNG CONAWAY STARGATT
                                      & TAYLOR, LLP

                                      /s/ *signature*
                                      Robert S. Brady (No. 2847)
                                      M. Blake Cleary (No. 3614)
                                      The Brandywine Building
                                      1000 West Street, 17th Floor
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 655-5000
                                      Facsimile: (302) 658-6395

                                              - and -

                                      Thomas R. Califano
                                      John J. Clarke, Jr
                                      DLA PIPER LLP (US)
                                      1251 Avenue of the Americas
                                      New York, New York 10020
                                      Telephone: (212) 335-4500
                                      Facsimile: (212) 335-4501

                                      Attorneys for the FDIC-Receiver