# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | : |
|  | :    Chapter 11 |
| WASHINGTON MUTUAL, INC., <u>et al.</u>,[1] | : |
|  | :    Case No. 08-12229 (MFW) |
| Debtors. | : |
|  | :    Jointly Administered |
|  | : |
|  | : |
| JPMORGAN CHASE BANK, N.A., | : |
|  | : |
| Plaintiff, | :    Adversary Proceeding No. 09-50551 |
|  | :    (MFW) |
| v. | : |
|  | : |
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP., | : |
|  | : |
| Defendants, | : |
|  | : |
| - and - | : |
|  | : |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : |
|  | : |
| Additional Defendant. | : |
|  | : |

## BRIEF IN SUPPORT OF THE MOTION OF THE
## FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER,
## IN THE ALTERNATIVE, FOR LEAVE TO APPEAL

(Caption continued on next page)

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

| | |
|---|---|
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : |
| Plaintiffs, | : : Adv. Pro. No. 09-50934 (MFW) : : |
| v. | : : |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : : : |
| Defendant. | : : |

## BRIEF IN SUPPORT OF THE MOTION OF THE
## FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER,
## IN THE ALTERNATIVE, FOR LEAVE TO APPEAL

Robert S. Brady (Bar No. 2847)
M. Blake Cleary  (Bar No. 3614)
Jaime N. Luton (Bar No. 4136)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395
rbrady@ycst.com
mbcleary@ycst.com
jluton@ycst.com

- and -

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

Attorneys for the
Federal Deposit Insurance Corporation, as
Receiver for Washington Mutual Bank

Dated:  July 10, 2009

# Table of Contents

                                                             **Page**

Table of Authorities ...................................................................................................... ii

QUESTION TO BE PRESENTED ON APPEAL ....................................................... 1

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF ARGUMENT ................................................................................. 4

STATEMENT OF FACTS AND NATURE AND STAGE OF PROCEEDINGS ......... 5

        A.      The WMB Receivership, WMI's Receivership Claims
               and WMI's District Court Action Against the FDIC ............................... 5

        B.      Proceedings in the Bankruptcy Court .................................................... 8

ARGUMENT --

IF THE ORDERS ARE NOT APPEALABLE AS OF RIGHT,
THIS COURT SHOULD GRANT THE FDIC-RECEIVER LEAVE TO APPEAL .................... 10

I.      THE ORDERS ARE APPEALABLE AS OF RIGHT ....................................... 10

II.     IN THE ALTERNATIVE, LEAVE TO APPEAL SHOULD BE GRANTED ................. 12

        A.      The Appeal Concerns a "Controlling Question of Law" ....................................... 13

        B.      There Is Substantial Ground for Difference of Opinion
               With Respect to the Bankruptcy Court's Orders .................................................... 14

        C.      Immediate Appeal Will Materially Advance the
               Ultimate Termination of the Litigation .................................................. 23

III.    THE BANKRUPTCY COURT'S REFUSAL TO APPLY THE
       FIRST-FILED RULE WAS ALSO ERROR ..................................................... 23

CONCLUSION .......................................................................................................... 25

# Table of Authorities

Page

## Cases

*Beckley Coal Mining Co. v. United Mine Workers of Am.*,
    98 B.R. 690 (D. Del. 1988)................................................................................14

*Blachy v. Butcher*,
    221 F.3d 896 (6th Cir. 2000) .........................................................................22

*Cohen v. Beneficial Ind. Loan Corp,*.
    337 U.S. 541 (1949).................................................................................3, 10

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941)............................................................................23

*E.E.O.C. v. University of Pennsylvania*,
    850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ........................................23

*F.D.I.C. v. Shain, Schaeffer & Rafanello*,
    944 F.2d 129 (3d Cir. 1991)........................................................................ 20-21

*Freedom Mortgage Corp. v. Irwin Fin. Corp.*,
    C.A. No. 08-146-GMS, 2009 WL 763899 (D. Del. Mar. 23, 2009)................................. 23-24

*Gibbons v. Stemcor USA Inc. (In re B.S. Livingston & Co.)*,
    186 B.R. 841 (D.N.J. 1995) .......................................................................14, 23

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
    485 U.S. 271 (1988)......................................................................................10

*Henrichs v. Valley View Development*,
    474 F.3d 609 (9th Cir. 2007) ....................................................................... 20-21

*Hudson United Bank v. Chase Manhattan Bank*,
    43 F.3d 843 (3d Cir. 1994)..................................................................9, 14, 18, 19

*Intersearch Worldwide Ltd. v. Intersearch Group, Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) .................................................................24

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974)....................................................................... 12-13

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952)............................................................................... 23-24

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985).................................................................................11

*N. Fork Bank v. Abelson,*
   207 B.R. 382 (E.D.N.Y. 1997) .............................................................13

*Nat'l Cable Television Coop. v. Broadstripe, LLC (In re Broadstripe, LLC),*
   No. 09-10006, 2009 WL 774401 (D. Del. Mar. 26, 2009) .......................12

*National Union Fire Ins. Co. v. City Sav., F.S.B.,*
   28 F.3d 376 (3d Cir. 1994)..................................................... 10, 17-20

*Noletto v. Nationsbanc Mortgage Corp. (In re Noletto),*
   244 B.R. 845 (Bankr. S.D. Ala. 2000) ..................................................22

*Official Bondholders Committee v. Chase Manhattan Bank (In re Marvel
   Entertainment Group, Inc.),* 209 B.R. 832 (D. Del. 1997) ......................3, 12, 13, 14

*Patrick v. Dell Fin. Servs.,*
   366 B.R. 378 (M.D. Pa. 2007) ....................................................13, 14, 23

*Praxis Props. Inc. v. Colonial Sav. Bank,*
   947 F.2d 49 (3d Cir. 1991)......................................................3, 10, 11, 20

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
   506 U.S. 139 (1992).............................................................................11

*Rosa v. R.T.C.,*
   938 F.2d 383 (3d Cir.), *cert. denied,* 502 U.S. 981 (1991)................. 14, 15-20, 22

*Smith v. McIver,*
   22 U.S. 532 (1824) .............................................................................23

*Time Warner Cable, Inc. v. GPNE Corp.,*
   497 F. Supp. 2d 584 (D. Del. 2007)................................................ 23-24

*Trinsey v. K. Hovnanian at Upper Merion, Inc.,*
   841 F. Supp. 694 (E.D. Pa. 1994) .........................................................21

*Village of Oakwood v. State Bank & Tr. Co.,*
   539 F.3d 373 (6th Cir. 2008) ........................................................ 12, 21-22

Statutes and Rules

12 U.S.C. § 1821(d)(5)(D)(i) ........................................................................7

12 U.S.C. § 1821(d)(6)(A).......................................................................7, 18

12 U.S.C. § 1821(d)(13)(D) (text at page 15) ................................................ *passim*

12 U.S.C. § 1821(j) .................................................................................. 17

28 U.S.C. § 158(a)(1) ........................................................................... 3, 4, 10

28 U.S.C. § 158(a)(3) .............................................................................. *passim*

28 U.S.C. § 1292(b) ................................................................................ 3, 13

28 U.S.C. § 1334 ...................................................................................... 22

Defendant and intervenor-defendant the Federal Deposit Insurance Corporation, in its capacity as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this brief in support of its motion, in the alternative, for leave to appeal Orders of the United States Bankruptcy Court for the District of Delaware (Walrath, J.), entered on July 6, 2009 (the "Orders"), which denied motions to stay these two adversary proceedings until judgment has been entered in a previously filed action against the FDIC-Receiver that concerns the same issues and is pending in the United States District Court for the District of Columbia.[2]

## QUESTION TO BE PRESENTED ON APPEAL

Did the Bankruptcy Court commit legal error when it held that the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D) did not deprive that court of subject matter jurisdiction over two adversary proceedings in which the parties, on the face of the pleadings, seek determinations of rights with respect to assets of a failed bank and assert claims relating to acts or omissions of the FDIC as receiver of a failed bank?

## PRELIMINARY STATEMENT

The Orders that are the subject of this appeal by the FDIC-Receiver reflect clear legal error by the Bankruptcy Court, which in making the ruling reflected in those Orders failed to apply the plain and unambiguous text of 12 U.S.C. § 1821(d)(13)(D). That statutory jurisdictional bar provides that "*no court* shall have jurisdiction over" (i) "any claim or action for payment from, or any action seeking a determination of rights with respect to[] the assets of any" failed depository institution for which the FDIC has been appointed receiver, or (ii) "any claim relating to any act or omission of such institution or the Corporation as receiver," except to the extent section 1821(d) permits actions in the district court for a judicial determination of disallowed receivership claims. 12 U.S.C. § 1821(d)(13)(D) (emphasis added).

_____

[2] Copies of the Orders are attached as Exhibit A and Exhibit B to the accompanying motion.

1

In the proceedings below, the FDIC-Receiver moved pursuant to section 1821(d)(13)(D) for a stay of two adversary proceedings that are part of the bankruptcy cases of Washington Mutual, Inc. ("WMI") and its subsidiary WMI Investment Corp. (together, the "Debtors"). In the two adversary proceedings, the Debtors and JPMorgan Chase Bank, N.A. ("JPMC") assert a variety of claims against one another concerning the ownership of various assets of WMI's former subsidiary, Washington Mutual Bank ("WMB"). JPMC purchased substantially all of WMB's assets from the FDIC-Receiver soon after WMB was closed and the FDIC-Receiver was appointed as its receiver. In denying the FDIC-Receiver's motions, and a parallel motion by JPMC, the Bankruptcy Court concluded that it had subject matter jurisdiction and that it would not defer to proceedings in a district court action that the Debtors had filed earlier against the FDIC with respect to the same issues pursuant to the FDIC's governing statute.

The Bankruptcy Court mistakenly held that it was not subject to the jurisdictional bar of section 1821(d)(13)(D) even though the claims and counterclaims in those actions, on their face, seek " a determination of rights with respect to assets of" WMB, which is a failed depository institution, and also obviously assert claims that relate to "acts or omissions" of the FDIC-Receiver as its receiver. For example, one of the Debtors' claims in the Bankruptcy Court is that the entire purchase and assumption transaction under which the FDIC-Receiver sold WMB's assets to JPMC should be unwound as a purportedly fraudulent transfer. The Bankruptcy Court made no effort to square this claim, or many others asserted by the Debtors, with the plain language of the jurisdictional bar. In several different decisions, the Third Circuit has applied the plain language of the jurisdictional bar, yet the Bankruptcy Court concluded that it was constrained by Third Circuit authority in reaching its decision to ignore the statute. This was further error.

The Bankruptcy Court's failure to follow the plain language of the jurisdictional bar and permit collateral challenges to a purchase and assumption agreement entered into by the FDIC as receiver of a failed bank raises significant policy concerns for the FDIC. The FDIC-Receiver believes the decisions below warrant a direct appeal to the Third Circuit and, separately, it plans to pursue such a direct appeal under 28 U.S.C. § 158(d)(2). Whether or not such a direct appeal is allowed, however, under Bankruptcy Rule 8001(f)(1) a timely appeal to the District Court is required.

The Orders are appealable to the District Court as of right pursuant to 28 U.S.C. § 158(a)(1) under the collateral order doctrine. *See Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 546 (1949); *Praxis Props. Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 54 (3d Cir. 1991) (order limiting RTC to 45-day stay rather than 90-day stay provided under statute was appealable as of right).

In the alternative, however, the FDIC-Receiver has filed this motion requesting leave of this Court to appeal the Orders pursuant to 28 U.S.C. § 158(a)(3). District courts considering whether to grant leave to appeal from an interlocutory order of the bankruptcy court under section 158(a)(3) have looked to the standard for permissive appeals from the district courts to the courts of appeal under 28 U.S.C. § 1292(b), which permits appeal of interlocutory orders that involve a controlling question of law as to which there is substantial ground for difference of opinion and where an immediate appeal may materially advance the ultimate termination of the litigation. *See, e.g., Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entertainment Group, Inc.)*, 209 B.R. 832, 837 (D. Del. 1997).

This standard is amply satisfied here. As a result of the Orders denying the FDIC-Receiver's motions, the Bankruptcy Court has determined to exercise subject matter jurisdiction

over disputes for which a federal statute expressly deprives *all courts* of such jurisdiction. An immediate appeal is necessary to spare all parties the expense and delay that will result if the Court's legal error is not addressed until after judgment has been entered.

Accordingly, if it is determined that the Orders are not appealable as of right, the FDIC-Receiver respectfully requests leave of this Court to appeal the Orders to allow the lower court's fundamental legal error to be corrected promptly before substantial further proceedings have occurred.

## SUMMARY OF ARGUMENT

1.      Solely in the event that it is determined that the Orders are not appealable as of right, the FDIC-Receiver moves in the alternative for leave to appeal two Orders of the Bankruptcy Court. However, the Orders are appealable to this Court as of right under 28 U.S.C. § 158(a)(1) pursuant to the collateral order doctrine. The Orders conclusively determine a disputed question, resolve an important issue that is completely separate from the merits and would be effectively unreviewable on appeal from a final judgment because they deprive the FDIC-Receiver of its statutory protection from collateral challenges to its acts as receiver and from actions that seek to determine rights with respect to receivership assets outside of the receivership claims process under 12 U.S.C. § 1821(d).

2.      In the unlikely event that the Orders are not appealable as of right, leave to appeal should be granted by this Court under 28 U.S.C. § 158(a)(3).

a.      The Orders concern a controlling question of law, namely, whether the Bankruptcy Court has subject matter jurisdiction. If erroneous, the Court's determination that it may exercise jurisdiction despite the plain language of 12 U.S.C. § 1821(d)(13)(D) to the contrary will require reversal of any judgment ultimately entered in the adversary proceedings.

b.　　There is substantial ground for difference of opinion concerning the Orders. The Bankruptcy Court's conclusion that section 1821(d)(13)(D) "only bars claims against a receiver or an institution in receivership" is directly contrary to the plain language of the statute. Moreover, the Third Circuit has repeatedly construed the jurisdictional bar in accordance with its literal meaning. The Bankruptcy Court's conclusion that it was constrained by Third Circuit authority to ignore the plain language of the statute was further error.

c.　　An immediate appeal from the Orders will materially advance the ultimate termination of the litigation. Because the Bankruptcy Court's determination that it had subject matter jurisdiction constitutes clear legal error, any final judgment entered in the adversary proceedings will be reversible on appeal, resulting in delay and needless expenditure of resources by the parties and the courts.

3.　　The Bankruptcy Court's refusal to stay the two adversary proceedings in favor of the first-filed action in the United States District Court for the District of Columbia was also erroneous. Under the first-filed rule, in all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it. That court is the District Court for the District of Columbia.

### STATEMENT OF FACTS AND NATURE AND STAGE OF PROCEEDINGS

**A.　The WMB Receivership, WMI's Receivership Claims and WMI's District Court Action Against the FDIC**

The debtor WMI was a thrift holding company, the principal thrift subsidiary of which was WMB. In an order issued on September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") closed WMB and appointed the FDIC-Receiver as its receiver.

The FDIC-Receiver thereafter entered into a Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 with JPMC (the "P&A Agreement"), under which

JPMC purchased substantially all of WMB's assets and assumed most of its liabilities, including all of WMB's deposit liabilities. In addition to the assumption of liabilities, JPMC paid the FDIC-Receiver approximately $1.9 billion. As a result of the transaction, the largest bank failure in United States history was resolved without cost to the FDIC's deposit insurance fund and with no loss to any WMB depositor.

On September 26, 2008, the day after WMB was closed by the OTS, the Debtors filed their petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Those bankruptcy cases are pending before United States Bankruptcy Judge Mary F. Walrath.

In accordance with its governing statute, the FDIC-Receiver established December 30, 2008 as the bar date for filing claims against the WMB receivership. On that date, WMI filed a proof of claim with the FDIC-Receiver asserting claims relating to a variety of WMB assets that WMI asserted it owned. *See* Motion for Leave, Exh. D(4). Among others, the debtor WMI asserted claims against the WMB receivership for: (1) income tax refunds and other tax related assets; (2) certain trust preferred securities with a liquidation preference of $4 billion that had been issued by a subsidiary of WMB; (3) recovery of $6.5 billion in capital contributions made by WMI to WMB before the receivership, as allegedly fraudulent transfers; (4) certain employee benefit plans, insurance policies and trusts; and (5) for the balances held in certain alleged demand deposit accounts that WMI claimed it had maintained with WMB or its subsidiary Washington Mutual Bank fsb ("WMBfsb"), which according to WMI amounted to approximately $4 billion. By letter dated January 23, 2009, the FDIC-Receiver disallowed all of WMI's claims because they had not been proved to the satisfaction of the receiver. *See* 12 U.S.C. § 1821(d)(5)(D)(i).

Under the Federal Deposit Insurance Act, as amended, *inter alia*, by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), a claimant whose receivership claim has been disallowed must within 60 days either pursue an administrative appeal of the disallowance within the FDIC or commence an action in United States District Court seeking a judicial determination of the claims. *See* 12 U.S.C. § 1821(d)(6)(A).[3] Other than as thus provided, "no court shall have jurisdiction" over any claim or action concerning a receivership. 12 U.S.C. § 1821(d)(13)(D).

WMI recognized the jurisdictional significance of these provisions. On March 20, 2009, although they were chapter 11 debtors with bankruptcy cases pending before Judge Walrath, WMI and WMI Investment Corp. filed a complaint against the FDIC (both as receiver and in its corporate capacity) in the United States District Court for the District of Columbia, seeking a judicial determination of WMI's disallowed receivership claims pursuant to 12 U.S.C. § 1821(d)(6)(A) and asserting a variety of other claims. The action is styled *Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-cv-0533 (RMC) (D.D.C.) (the "District Court Action"). *See* Motion for Leave, Exh. D(1). On June 11, 2009, the FDIC-Receiver filed its answer with respect to WMI's receivership claims and filed a motion to dismiss other claims that had been included in the complaint but had not been part of WMI's receivership claims.[4] The District Court Action is pending.

---

[3] The statute specifies that such an action must be brought either in the United States District Court for the District of Columbia or in the district in which the failed bank had its principal place of business, which in the case of WMB would be the Western District of Washington. *Id.*

[4] The FDIC-Receiver also moved to dismiss WMI's claim for recovery of capital contributions on the ground that the allegations of the complaint itself demonstrated that WMI had failed to state a claim for fraudulent transfer with respect to those contributions.

### B.   Proceedings in the Bankruptcy Court

On March 24, 2009, JPMC commenced an adversary proceeding in the Bankruptcy Court

against the Debtors and the FDIC, both as receiver and in its corporate capacity, styled

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW) (the

"JPMC Adversary Proceeding"). *See* Motion for Leave, Exh. D(2). JPMC's complaint sought

declaratory and other relief with respect to many of the assets that were the subject of WMI's

receivership claim and the ensuing District Court Action. On May 29, 2009, the Debtors filed

their answer and asserted a number of counterclaims against JPMC. *See* Motion for Leave,

Exh. F. In many respects, the Debtors' counterclaims essentially track the claims the Debtors are

pursuing against the FDIC-Receiver in their pending District Court Action. The counterclaims

include, among others, a claim that the entire P&A Agreement between JPMC and the FDIC-

Receiver was a fraudulent transfer that should be unwound by the Bankruptcy Court.

Separately, on April 27, 2009, the Debtors commenced an adversary proceeding against

JPMC seeking immediate turnover of the alleged balances held in six demand deposit accounts

that the Debtors contend are property of their estate and that were already a subject of the

Debtors' District Court Action and of the JPMC Adversary Proceeding. That second adversary

proceeding is styled *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No.

09-50934 (MFW) (the "Turnover Proceeding"). *See* Motion for Leave, Exh. D(3).

On June 1, 2009, the FDIC-Receiver filed motions in the Bankruptcy Court to stay all

proceedings in both the JPMC Adversary Proceeding and the Turnover Proceeding until

judgment is entered by the district court in the Debtors' earlier-filed District Court Action.[5] *See* Motion for Leave, Exhs. D, E. The motions argued that the two adversary proceedings should be stayed because litigation of the issues in the Bankruptcy Court would violate the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D), as was demonstrated by the assertion of essentially the same claims by the Debtors against the FDIC in their district court complaint. In addition, the motions argued that the adversary proceedings should be stayed under the first-filed doctrine. On the same date, JPMC moved to stay the Turnover Proceeding on the same grounds.

The Bankruptcy Court heard argument on the motions at a hearing on June 24, 2009. *See* Motion for Leave, Exh. C (excerpt of transcript). At the hearing, the Bankruptcy Court stated that it would deny the motions, ruling that FIRREA is not "a jurisdictional bar to the debtors' claims to property that is no longer in the hands of the FDIC as receiver, but are in the hands of JPMC," Tr. at 93, and that the Third Circuit's opinion in *Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843 (3d Cir. 1994) "made it clear that FIRREA only bars claims against a receiver or an institution in receivership." *Id.* The court also concluded that FIRREA does not "bar[] any claims, or any dispute over what assets were transferred," *id.* at 94, that the jurisdictional bar did not apply to "the turnover action where the debtor asserts that it has title to funds in the possession of JPMC," and that the bar did not apply to "the counterclaims in the JPMC adversary, [where] the debtor is asserting a claim against JPMC to assets that the debtor claims are property of the estate," *id.* Finally the Court held that it "ha[s] exclusive jurisdiction to decide what is property of the estate." *Id.*

---

[5] Because the FDIC-Receiver was not at that time a party in the Turnover Proceeding, it simultaneously filed a motion to intervene in that action for the purpose of making its motion to stay, or in the alternative to dismiss, that proceeding. In a separate order that is not the subject of the appeal, the Bankruptcy Court granted the FDIC-Receiver's motion to intervene for this purpose. Since the Orders were entered, JPMC has asserted a cross-claim against the FDIC-Receiver in the Turnover Proceeding and the FDIC-Receiver therefore is now a party in both of the adversary proceedings for all purposes.

At the conclusion of the hearing, the court accepted the offer by the Debtors' counsel to prepare and submit forms of order reflecting the Court's rulings. *Id.* at 117. The parties thereafter conferred as to the forms of order. On July 6, 2009, the Bankruptcy Court entered the Orders denying the motions of the FDIC-Receiver, as defendant and intervenor-defendant, to stay the two adversary proceedings and denying the motion of JPMC to stay the Turnover Proceeding. *See* Motion for Leave, Exhs. A, B.

On July 10, 2009, the FDIC-Receiver timely filed a notice of appeal from the Orders together with this motion seeking, in the alternative, leave of this Court to appeal in the event it is determined that the Orders are not appealable as of right.

## ARGUMENT

## IF THE ORDERS ARE NOT APPEALABLE AS OF RIGHT, THIS COURT SHOULD GRANT THE FDIC-RECEIVER LEAVE TO APPEAL

I.     **THE ORDERS ARE APPEALABLE AS OF RIGHT**

The Orders are appealable as of right pursuant to 28 U.S.C. § 158(a)(1) under the collateral order doctrine, which permits appeal of orders that do not terminate the underlying litigation where the order appealed from "conclusively determine[s] the disputed question," "resolve[s] an important issue completely separate from the merits of the action," and would be "effectively unreviewable on appeal from a final judgment." *Praxis Props. Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 54 (3d Cir. 1991) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988)) (citations omitted); *see Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 546 (1949).

The Orders here satisfy all of these requirements. The Bankruptcy Court's ruling "for all intents and purposes finally resolved" the question whether the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) requires the Bankruptcy Court to defer to proceedings in the District Court

Action. *Praxis*, 947 F.2d at 56. That issue is obviously an "important issue," indeed, the Bankruptcy Court's conclusion is unprecedented that the jurisdictional bar does not deprive it of jurisdiction over disputes that are essentially identical to those that already have been presented in a parallel district court action under 12 U.S.C. § 1821(d)(6)(A). The issue is also "completely separate from the merits of the action" – this Court will only be considering a question of law and "need not consider the correctness of the [parties'] version of the facts, nor even determine whether the [parties'] allegations actually state a claim." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

Finally, the question will be "effectively unreviewable on appeal" after final judgment because it concerns an "asserted right which would be destroyed if not vindicated before trial." *Praxis*, 947 F.2d at 58; *see Mitchell*, 472 U.S. at 526 (qualified immunity was an "immunity from suit rather than mere defense to liability, and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial"); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1992) (same in appeal involving Eleventh Amendment immunity).

As the Third Circuit has recognized, "[o]ne of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation," *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994). The Orders deprive the FDIC-Receiver of this statutory benefit by opening the field to simultaneous litigation of substantially identical disputes in the Bankruptcy Court and the United States District Court for the District of Columbia. While such a circumstance does not benefit any of the parties, or either of the two courts involved, in section 1821(d)(13)(D) Congress has expressly granted protection to the

FDIC-Receiver from such simultaneous litigation so that the receiver can focus its energies on its statutory duties for the good of claimants, the deposit insurance fund and, ultimately, the taxpayers of the United States.

This conclusion is not altered by the fact that the Debtors have elected to assert their redundant claims in the Bankruptcy Court against JPMC, the assuming bank under a purchase and assumption agreement with the FDIC-Receiver, rather than against the FDIC-Receiver itself. The Sixth Circuit recently rejected precisely this argument against the application of the jurisdictional bar, finding that to accept such an argument "'would encourage the very litigation that FIRREA aimed to avoid.'" *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (quoting district court opinion). In any event, the FDIC-Receiver is a party to both of the adversary proceedings in the Bankruptcy Court, and the Orders therefore will require the FDIC-Receiver to participate in impermissible and burdensome duplicative litigation in violation of its statutory bar.

## II.    IN THE ALTERNATIVE, LEAVE TO APPEAL SHOULD BE GRANTED

Even if the Orders are not appealable as of right, this Court should grant the FDIC-Receiver leave to appeal pursuant to 28 U.S.C. § 158(a)(3). "Granting leave is appropriate where the proposed appeal concerns (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation . . ." *Nat'l Cable Television Coop. v. Broadstripe, LLC (In re Broadstripe, LLC)*, No. 09-10006, 2009 WL 774401, at *2 (D. Del. Mar. 26, 2009) (internal quotation and citation omitted); *see also Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entertainment Group, Inc.)*, 209 B.R. 832, 837-38 (D. Del. 1997). "Granting leave is further appropriate," as in this case, "where doing so promotes the

avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the

avoidance of possible wasted trial time and litigation expense." *Broadstripe*, 2009 WL 774401,

at *2 (internal quotation and citation omitted); *see Katz v. Carte Blanche Corp.*, 496 F.2d 747,

754 (3d Cir. 1974) (discussing interlocutory appeals from district court under 28 U.S.C.

§ 1292(b)).[6] An immediate appeal of the Orders here amply satisfies these criteria.

### A.   The Appeal Concerns a "Controlling Question of Law"

A controlling question of law "at the very least encompasses a ruling which, if erroneous,

would be reversible error on appeal." *Marvel Entertainment*, 209 B.R. at 837 (citing *Katz*, 496

F.2d at 755); *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 385-86 (M.D. Pa. 2007).  Decisions

concerning a court's subject matter jurisdiction, such as the Orders below, have been recognized

to constitute such controlling questions since an erroneous determination that a court has subject

matter jurisdiction over an action would require reversal on appeal following a final judgment.

*See, e.g., Patrick*, 366 B.R. at 386 ("If the Bankruptcy Court grants Debtors' motion to certify a

national class action, and Debtors succeed on the merits at trial, an erroneous determination by

the court that it had subject matter jurisdiction would lead to a reversal on appeal of the final

judgment."); *N. Fork Bank v. Abelson*, 207 B.R. 382, 390 (E.D.N.Y. 1997) (denial of motion to

dismiss for lack of subject matter jurisdiction involved controlling question of law).

Here, the Orders of the Bankruptcy Court, if erroneous (as they are), will require reversal

on a later appeal.  The jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D), by its plain language,

provides that "no court shall have jurisdiction" over any claim or action seeking a determination

---

[6]"Although 28 U.S.C. § 158(a)(3) permits the Court to entertain appeals from interlocutory orders, the statute does not provide any criteria that would enable the Court to assess whether leave to appeal is appropriate . . . courts in the Third Circuit have imported the criteria of 28 U.S.C. § 1292(b) – the statutory provision governing appeals of interlocutory orders from district courts – to determine whether to accept an appeal from an interlocutory order of a bankruptcy court." *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 385 (M.D. Pa. 2007) (citations omitted).

of rights with respect to the assets of a failed depository institution or any claim that relates to the acts or omission of the FDIC as receiver of such an institution. 12 U.S.C. § 1821(d)(13)(D). In denying the FDIC-Receiver's motions to stay the two adversary proceedings on the basis of this jurisdictional bar, the Bankruptcy Court concluded that it was not subject to this clear statutory mandate and that it could exercise subject matter jurisdiction over the matters before it. *See* Tr. at 93-94. If that conclusion is incorrect, then any judgment entered by the Bankruptcy Court in the adversary proceedings will be reversible for want of subject matter jurisdiction.

Because "this appeal involves a very real legal and possibly outcome determinative dispute" regarding the application and effect of the FIRREA jurisdictional bar, a controlling question of law is clearly presented. *Gibbons v. Stemcor USA Inc. (In re B.S. Livingston & Co.)*, 186 B.R. 841, 850 (D.N.J. 1995).

### B.     There Is Substantial Ground for Difference of Opinion With Respect to the Bankruptcy Court's Orders

In general, "substantial grounds for difference of opinion" exist with respect to a decision if there is "genuine doubt as to the correct legal standard." *Patrick*, 366 B.R. at 386. Courts in the Third Circuit also have recognized, however, that an order that is contrary to clearly established law can satisfy this element of the standard. *See, e.g., Marvel Entertainment*, 209 B.R. at 837-38; *Beckley Coal Mining Co. v. United Mine Workers of Am.*, 98 B.R. 690, 693 (D. Del. 1988).

In this instance, the Bankruptcy Court Orders that are the subject of the FDIC-Receiver's appeal are contrary to the plain language of section 1821(d)(13)(D) and the decisions of the Third Circuit applying that statute. Indeed, the only Third Circuit decision that was mentioned by the Bankruptcy Court in its bench ruling, *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994), actually made clear that the Third Circuit

"construe[s] § 1821(d)(13)(D) literally," *id.* at 848 n.10 (discussing *Rosa v. R.T.C.*, 938 F.2d 383, 393-94 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991)).

Section 1821(d)(13)(D) provides:

> (D)     **Limitation on judicial review**
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii)     any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

The two adversary proceedings pending before the Bankruptcy Court run afoul of two separate provisions of the statute.  First, the claims between the Debtors and JPMC in those two actions unquestionably "seek[] a determination of rights with respect to[] the assets of" WMB, which is a "depository institution for which the [FDIC] has been appointed receiver."  Second, those claims arise from the FDIC-Receiver's sale of assets to JPMC pursuant to the P&A Agreement and therefore constitute claims "relating to any act or omission of . . . the [FDIC] as receiver."

In the proceedings below, the Debtors argued that the jurisdictional bar did not deprive the Bankruptcy Court of subject matter jurisdiction because the Debtors had not asserted a "claim" against the FDIC-Receiver in the adversary proceedings, citing the Third Circuit's decision in *Rosa v. R.T.C.* as purportedly supporting this construction of the statute.  But the Third Circuit in *Rosa* never held that the jurisdictional bar *only* applied to actions that seek

payment from the FDIC or a failed bank receivership, nor can such an interpretation be squared with the plain language of the statute.

In *Rosa*, beneficiaries of a bank pension plan had obtained a preliminary injunction from a federal district court preventing a number of different parties from terminating the plan and ordering those defendants "to make all contributions due and owing, as well as future contributions when they become due," to the plan. 938 F.2d at 390. The pension plan at issue had been established by City Federal Savings Bank ("City Federal"), a bank that later was closed and the Resolution Trust Corporation ("RTC") appointed its receiver. The RTC as receiver subsequently transferred certain assets and liabilities of City Federal to a new bank, City Savings Bank, F.S.B. ("City II"), for which the RTC was acting as conservator but not as receiver.

City II agreed to assume and continue the pension plan "[a]s a means of encouraging employees to remain with" City II. *Id.* at 389. The next year, however, the RTC as conservator determined to terminate the plan and return it to the City Federal receivership. City II then stopped making contributions to the plan, and City II distributed a notice of plan termination to participants and began plan termination proceedings. *Id.* Later that year, the OTS closed City II and appointed the RTC as its receiver. The RTC then sold certain assets and liabilities of City II to another new bank, City Savings, F.S.B. ("City III"), for which the RTC served as conservator (but not receiver). *Id.* at 390.

The district court entered its preliminary injunction against the RTC, in its corporate and receivership capacities, City Federal, City II and City III, all of which asserted on appeal that the order violated the jurisdictional bar of section 1821(d)(13)(D). The *Rosa* court agreed that the plain language of the jurisdictional bar prohibited the injunction as to City Federal and City II,

since the order essentially sought payment from the assets of those receiverships, but concluded that the statute did not bar the injunction against City III. *Id.* at 393.

The *Rosa* court concluded that section 1821(d)(13)(D) did not bar an action requiring City III to make plan contributions under ERISA because City III was not a "depository institution for which RTC [had] been appointed receiver," and the plain language of the statute therefore did not apply. *Id.* at 394.[7] In reaching its holdings, the Third Circuit expressly rejected the plaintiffs' argument, also adopted by the Debtors here, that the bar only applied to "claims against a 'failed institution.'" *Id.* at 392. Unlike the disputes at issue in the adversary proceedings in this case, however, the ERISA claims against City III in *Rosa* did not seek a determination of rights with respect to the assets of a failed bank, *id.* at 394, and the second phrase of section 1821(d)(13)(D)(i) therefore was not at issue.

In its later decision in *National Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376 (3d Cir. 1994), the Third Circuit was presented with circumstances that required it to apply the provision of the jurisdictional bar that had not been addressed in *Rosa*. In *National Union*, insurance companies brought a declaratory judgment action seeking a determination that they could rescind insurance policies that they had issued to a failed bank. After the district court dismissed the action as violating the jurisdictional bar, the insurers appealed arguing (as did the Debtors below in this case) that the bar did not apply because their action did not assert a "claim for payment" from the receivership and that they therefore could not exhaust administrative remedies in the receivership claims process with respect to it. *See Nat'l Union*, 28 F.3d at 385-86 (citing *Rosa*).

---

[7] Later in the decision, the Third Circuit reversed the injunction as to both City III and the RTC as its conservator on the separate ground that the order violated 12 U.S.C. § 1821(j), which provides that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." *Rosa*, 938 F.2d at 398.

The Third Circuit rejected this argument, holding that it was "obliged to give effect, if possible, to every word Congress used," *id.* at 389, and the plain language of section 1821(d)(13)(D), "in addition to barring 'any claim . . . for payment'" provides for "a bar against 'any action seeking a determination of rights with respect to [] the assets of any depository institution for which the Corporation has been appointed receiver,'" *id.* (quoting 12 U.S.C. § 1821(d)(13)(D)(i)). Because the declaratory judgment action sought a determination of rights with respect to insurance policies that were "assets" of the failed bank, the *National Union* court concluded that the action was barred even if it was not capable of resolution through the receivership claims process.[8]

There can be no significant dispute that in the two adversary proceedings pending before the Bankruptcy Court here, both the Debtors and JPMC seek a determination of rights with respect to a variety of assets of WMB. In numerous respects, the Debtors' counterclaims against JPMC in its adversary proceeding essentially track the claims the Debtors have asserted against the FDIC-Receiver in their District Court Action, demonstrating by the Debtors' own allegations that they are seeking a determination of rights with respect to assets of WMB in the JPMC Adversary Proceeding. The Debtors' efforts to obtain immediate possession of disputed deposit balances from JPMC in their Turnover Proceeding similarly contravenes the jurisdictional bar.

---

[8] The Bankruptcy Court mistakenly relied on the subsequent Third Circuit decision in *Hudson United Bank* in concluding that the jurisdictional bar did not apply. *See* Tr. at 93 ("Hudson made it clear that FIRREA only bars claims against a receiver or an institution in receivership."). In fact, *Hudson* involved an interpretation of the FIRREA venue provision, 12 U.S.C. § 1821(d)(6)(A), and not the jurisdictional bar of section 1821(d)(13)(D). In a footnote addressed to one of the appellant's arguments construing the venue provision, the Third Circuit observed that "in *Rosa*, we held 12 U.S.C. § 1821(d)(13)(D) parts (i) and (ii) applied only to the claims specified." *Hudson United Bank*, 43 F.3d at 848 n.10. Inconsistent with its own previous literal reading of section 1821(d)(13)(D) in *Rosa*, however, the court then paraphrased its *Rosa* holding that "(i) applied only to claims against failed institutions while (ii) applied to claims against failed institutions specified in (i) as well as to claims against the receiver of such institutions." *Id.* The court's use of the word "against" rather than "concerning" in its shorthand footnote summary of *Rosa* does not alter either the plain language of the statute itself or the actual holdings of the Third Circuit in *Rosa* or *National Union*.

The Debtors' district court complaint also asserted claims against the FDIC-Receiver with respect to the same accounts, and the Debtors' own submissions in that proceeding to date indicate that there is a significant question of fact as to the source of the funds in those accounts and that the disputed accounts very well might include commingled funds that are assets of WMB.

Even though it apparently recognized that the proceedings before it sought determinations of rights with respect to the assets of a failed bank, the Bankruptcy Court erroneously concluded that the jurisdictional bar did not apply because the assets that were the subject of the parties' disputes are "no longer in the hands of the FDIC as receiver, but are in the hands of JPMC. . . . And I'm not prepared to find that the FIRREA bar bars any claims, or any dispute over what assets were transferred." Tr. at 93-94. The effect of this ruling will be to subject every future purchase and assumption agreement entered into by the FDIC as receiver to the possibility of collateral attack in bankruptcy courts and other courts around the nation instead of requiring competing claimants, such as the Debtors here, to pursue claims against the FDIC as receiver as FIRREA expressly requires.

The Bankruptcy Court's conclusion cannot be reconciled with either the plain language of the statute itself or the many Third Circuit decisions that have addressed the meaning of and purpose behind the jurisdictional bar. *See Hudson United Bank*, 43 F.3d at 849 (relied on by the Debtors and the Bankruptcy Court) ("the purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs to file their claims under FIRREA's administrative claims procedures before filing them in federal court"); *Nat'l Union*, 28 F.3d at 388 ("One of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation."); *Rosa*, 938 F.2d at 396

("The primary purpose underlying FIRREA's exhaustion scheme is to allow RTC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation."); *Praxis Prop.*, 947 F.2d at 63 ("FIRREA expressly limits a claimant's ability to circumvent the above administrative claims procedure, providing for a strict limitation on judicial review"); *F.D.I.C. v. Shain, Schaeffer & Rafanello*, 944 F.2d 129, 134 (3d Cir. 1991) ("In short, it is FDIC's position that SS&R may not circumvent FIRREA's claim procedure merely by asserting a valid state common law lien, even though in almost every other circumstance, SS&R would prevail by summary disposition with such a lien. We agree.").

In the proceedings below, the Debtors argued that the construction of the jurisdictional bar that was ultimately adopted by the Bankruptcy Court was supported by the Ninth Circuit decision in *Henrichs v. Valley View Development*, 474 F.3d 609 (9th Cir. 2007). This argument misreads *Henrichs*. In *Henrichs*, a private party who had lost a state court quiet title action sought to overturn that decision in federal court on the ground that he had obtained his interest in the note and deed in question from the FDIC as receiver and therefore the jurisdictional bar should apply. The Ninth Circuit noted that "[a]t the time of the state court litigation, the FDIC had no interest in the note because it had already assigned the note." *Id.* at 614. Indeed, by the time of the litigation, the receivership had been resolved and no longer existed. The litigation at issue involved no dispute as to whether the note was or was not an asset of the failed bank, and the jurisdictional bar therefore was not implicated.

The *Henrich* court's abbreviated conclusion, that "the statute does not reach assignees of assets once owned by the FDIC," *id.*, cannot be read, as the Debtors advocated here, as an abrogation of the plain language of section 1821(d)(13)(D). As the Third Circuit has observed,

"[t]he whole point of receivership is to make creditors go after the estate as it existed on the day the failed bank was taken over." *Shain, Schaffer & Rafanello*, 944 F.2d at 135. The fact that the FDIC-Receiver decided, in this instance, to sell substantially all of WMB's assets to JPMC soon after it was appointed receiver does not alter the statutory requirement that WMB's former holding company must look to the receivership claims process – and not to JPMC in a bankruptcy court litigation – if it wishes to assert an ownership interest in those assets. *See, e.g., Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 841 F. Supp. 694, 695-96 (E.D. Pa. 1994) ("It is clear that Rebel Hill was an asset of Nassau when the RTC became receiver, and that the RTC acted within its powers in auctioning the property and conveying it to Hovnanian. It is also the case that Trinsey is seeking a determination of rights with respect to an asset previously owned by an institution for which the RTC was appointed receiver, and then disposed of through an act of the RTC. Accordingly, the above-cited jurisdictional provisions of the Act appear to bar my consideration of Trinsey's claims . . . .").

Finally, in its bench ruling the Bankruptcy Court made no effort to reconcile its conclusion with subparagraph (ii) of section 1821(d)(13)(D), which bars "any claim relating to any act or omission" of the FDIC as receiver. That provision also squarely applies to the two adversary proceedings below, in which, among other claims, the Debtors assert a claim against JPMC to unwind the entire P&A Agreement between it and the FDIC-Receiver as an allegedly fraudulent transfer. The Sixth Circuit's recent decision in *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008), makes clear that such an end-run around the jurisdictional bar is not permitted.

In *Village of Oakwood*, uninsured depositors of a failed bank sued the assuming bank under a purchase and assumption agreement for losses they allegedly sustained as a result of

their bank's failure; the FDIC was not initially named. Finding that the claims against the assuming bank were subject to FIRREA's exclusive claims process, the district court granted summary judgment, and the Sixth Circuit affirmed. In doing so, the appellate court considered and rejected the argument that claims against the assuming bank were beyond the scope of the jurisdictional bar because they were not "claims against a depository institution for which the [FDIC was] receiver," concluding that "[t]he problem with this novel argument is that all of their claims against State Bank are directly related to acts or omissions of the FDIC as receiver of Oakwood." *Id.* at 386. Therefore, to "permit[] claimants to avoid [the] provisions of [12 U.S.C. § 1821](d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid." *Village of Oakwood*, 539 F.3d at 386. Similar reasoning applies with full force here.[9]

### C. Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation

The Orders of the Bankruptcy Court misconstrued the jurisdictional bar and concluded that the Bankruptcy Court has jurisdiction when a federal statute plainly states that it does not. An immediate appeal of that issue will materially advance the ultimate termination of the

---

[9] The Bankruptcy Court also erroneously reasoned that "I do have exclusive jurisdiction to decide what is property of the estate." Tr. at 95. First, there is no bankruptcy court exception to the plain language of section 1821(d)(13)(D), which provides that "no court shall have jurisdiction" over the covered matters. Second, contrary to the apparent reasoning of the Bankruptcy Court, federal law does not grant exclusive jurisdiction to the bankruptcy courts to decide what is property of the estate. To the contrary, 28 U.S.C. § 1334(e) only provides for exclusive jurisdiction in a debtor's "home court" for *in rem* claims relating to a "specific item of property held by a debtor or all debtors." As for controversies seeking to determine whether a given asset is or is not property of the bankruptcy estate, the bankruptcy courts share jurisdiction with state and federal courts. *See Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845, 852-54 (Bankr. S.D. Ala. 2000) (analyzing statute and legislative history); *see also Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000) ("We agree . . . that a bankruptcy court can share its jurisdiction with other courts."). No statutory conflict therefore exists between the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) and the bankruptcy jurisdiction and venue provision of 28 U.S.C. § 1334. Even if such a statutory conflict did exist, however, the jurisdictional bar would govern. *See Rosa*, 938 F.2d at 391 ("we are satisfied that § 1821(d)(13)(D), to the extent that it conflicts with a provision of ERISA granting the district court jurisdiction, prevails with respect to the subject matter jurisdiction of the district court").

litigation. Absent an appeal now, the parties and the Bankruptcy Court will devote significant time and resources to the prosecution and defense of adversary proceedings over which an appellate court is likely to later conclude the Bankruptcy Court lacks subject matter jurisdiction. *See Patrick*, 366 B.R. at 387 (if leave to appeal not granted "there is a grave risk that the parties will expend significant time and resources litigating [this action] over which the Bankruptcy Court did not have jurisdiction to hear in the first instance"); *In re B.S. Livingston & Co.*, 186 B.R. at 849-50 ("Certainly, if the bankruptcy court lacked subject matter jurisdiction, it is far better to know that now, rather than after a trial in this matter").

## III.   THE BANKRUPTCY COURT'S REFUSAL TO APPLY THE FIRST-FILED RULE WAS ALSO ERROR

In denying the FDIC-Receiver's motions and entering the Orders, the Bankruptcy Court also rejected the FDIC-Receiver's argument that the Bankruptcy Court should defer to proceedings in the District Court Action under the first-filed rule. That principle holds that "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824) (Marshall, C.J.); *see, e.g., Freedom Mortgage Corp. v. Irwin Fin. Corp.*, C.A. No. 08-146-GMS, 2009 WL 763899, at *5 (D. Del. Mar. 23, 2009) (transferring action to another district in the interests of justice and under first-filed rule); *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 591 (D. Del. 2007) (dismissing second action under rule).

The first-to-file rule is based on principles of comity, judicial efficiency and a policy to avoid inconsistent judgments. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941); *see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) (application of rule governed by "[w]ise judicial administration, giving regard to conservation of

judicial resources and comprehensive disposition of litigation"). The rule "reduces the possibility of dispositive differences between the jurisdictions and ensures that litigants receive a single determination of their controversy, rather than decisions which may conflict and require separate appeals." *Time Warner Cable*, 497 F. Supp. 2d at 588.

Application of the first-filed rule "hinge[s] on whether the issues in the two cases [concern] 'the same set of facts' . . . ." *Id.* at 589. The rule does not require that the proceedings involve the exact same parties or individual claims or issues. *E.E.O.C.*, 850 F.2d at 971; *Time Warner Cable*, 497 F. Supp. 2d at 589; *Freedom Mortgage Corp.*, 2009 WL 763899, at *4. The rule is satisfied if "some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 189 F.2d 31 (3d Cir. 1951), *aff'd*, 342 U.S. 180 (1952)).

Ultimately, the three actions at issue – the District Court Action, the JPMC Adversary Proceeding and the Turnover Proceeding – concern a common issue: what assets were transferred to, and what liabilities were assumed by, JPMC under the P&A Agreement with the FDIC-Receiver? A determination with respect to that issue in one action could significantly impact the litigation of the other actions, mandating that the later filed (and, in any event, statutorily barred) adversary proceedings should be stayed.

**CONCLUSION**

For the foregoing reasons, the FDIC-Receiver respectfully requests that, in the event it is

determined that the Orders of the Bankruptcy Court are not appealable as of right, this Court

grant the FDIC-Receiver leave to appeal those Orders pursuant to 28 U.S.C. § 158(a)(3).

Dated: Wilmington, Delaware
      July 10, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Jaime N. Luton (No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
       mbcleary@ycst.com
       jluton@ycst.com

- and -

Thomas R. Califano
John J. Clarke, Jr
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
thomas.califano@dlapiper.com
john.clarke@dlapiper.com

Attorneys for the FDIC-Receiver