## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
```

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : | Case No. 08-12229 (MFW) |
| | : | |
| Debtors. | : | |

```
-------------------------------------------------------x
```

| | | |
|---|---|---|
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : | |
| | : | |
| Plaintiffs, | : | Adversary No. 09-50934 (MFW) |
| | : | |
| v. | : | |
| | : | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| and | : | |
| | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | |
| | : | |
| Intervenor-Defendant. | : | **Re:  Docket No. 121** |

```
-------------------------------------------------------x
```

## DEBTORS' OPENING BRIEF IN SUPPORT OF MOTION
## TO DISMISS AMENDED COUNTERCLAIMS OF JPMORGAN CHASE BANK, N.A.

---

[1]    The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are:  (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................................. 2

SUMMARY OF ARGUMENT .......................................................................................... 3

FACTUAL BACKGROUND ............................................................................................. 6

I.   THE CLOSURE OF WMB, THE TITLE 12 RECEIVERSHIP, AND THE DC
     ACTION ............................................................................................................. 6

II.  THE BANKRUPTCY CASES AND ADVERSARY PROCEEDINGS
     COMMENCED THEREIN ....................................................................................... 7

     A.    The JPMC Adversary Proceeding ............................................................... 7

     B.    The Court's Ruling Denying JPMC's Motion to Stay and Rejecting JPMC's
           Arguments Concerning the FDI Act's Jurisdictional Bar ............................... 8

     C.    JPMC's Continued Refusal to Acknowledge, and Attempts to Frustrate,
           the Court's Rulings ................................................................................. 8

ARGUMENT ............................................................................................................... 9

I.   JPMC'S COUNTERCLAIMS MUST BE DISMISSED AS DUPLICATIVE AND
     IN CONTRAVENTION OF THIS COURT'S RULING ................................................. 10

II.  COUNT IV FOR FRAUD MUST BE DISMISSED (I) AS UNTIMELY, (II) FOR
     FAILURE TO STATE A CLAIM, AND (III) AS BARRED BY IN PARI
     DELICTO ......................................................................................................... 13

     A.    JPMC Should Not be Permitted to Assert Count IV Over Three Months
           After the Bar Date Has Passed ................................................................ 14

     B.    Count IV Fails to Plead Damages .............................................................. 21

     C.    Count IV Fails to Plead a False Representation and Fails to Plead with the
           Requisite Particularity ............................................................................ 25

     D.    Count IV Fails to Plead Reliance .............................................................. 28

     E.    Count IV is Barred by *In Pari Delicto* ...................................................... 30

III. COUNTS I AND VI SHOULD BE DISMISSED FOR FAILURE TO STATE A
     CLAIM AND PURSUANT TO THE LAW OF THE CASE .......................................... 31

i

     A.      JPMC's Counterclaims Ignore the Law of the Case ................................................ 32

     B.      Amended Counterclaims I and VI Fail to State a Claim ...................................... 33

CONCLUSION ................................................................................................................ 39

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abercrombie v. Andrew College,*
    438 F. Supp. 2d 243 (S.D.N.Y. 2006) ...............................................................25

*Arizona v. California,*
    460 U.S. 605 (1983) .................................................................................................11

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009)..............................................................................................10

*Auction Co. of Am. v. FDIC,*
    141 F.3d 1198 (D.C. Cir. 1998).............................................................................34

*Bank of China v. NBM LLC,*
    359 F.3d 171 (2d Cir. 2004) ...................................................................................28

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................10

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) .....................................................................................3

*Bueford v. RTC,*
    991 F.2d 481 (8th Cir. 1993) ..................................................................................36

*Chemetron Corp. v. Jones,*
    72 F.3d 341 (3d Cir. 1995) ...............................................................................14, 15

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ...........................................................................................11, 12

*Denaxas v. Sandstone Court of Bellevue,*
    63 P.3d 125 (Wash. 2003) .......................................................................................31

*FDIC v. McFarland,*
    243 F.3d 876 (5th Cir. 2001) ..................................................................................35

*FDIC. v. Shain, Schaffer & Rafanello,* 944 F.2d 129 (3d Cir. 1991) ............................................34

*First Global Commc'ns., Inc. v. Bond,*
    2006 U.S. Dist. LEXIS 5919 (W.D. Wash. Jan. 27, 2006) ...................................27

*Frederico v. Home Depot,*
    507 F.3d 188 (3d Cir. 2007) ...................................................................................25

*Golberg v. Sanglier,*
    639 P.2d 1347 (Wash. 1982) ..................................................................................30

*Hanscom Retail Foods, Inc.*,
  96 B.R. 33 (Bankr. E.D. Pa. 1988) ..................................................................15

*Hanson PLC v. Nat'l Union Fire Ins. Co.*,
  794 P.2d 66 (Wash. Ct. App. 1990)................................................................24

*Hudson United Bank v. Chase Manhattan Bank of Conn.*,
  43 F.3d 843 (3d Cir. 1994) ............................................................................35

*In re Asia Global Crossing, Ltd.*,
  333 B.R. 199 (Bankr. S.D.N.Y. 2005)............................................................23

*In re Calpine Corp.*,
  No. 07-8493, 2007 U.S. Dist. LEXIS 86514 (S.D.N.Y. Nov. 21, 2007) ...........17, 18

*In re Dublin Secs., Inc.*,
  133 F.3d 377 (6th Cir. 1997) .........................................................................30

*In re Dunhill Res., Inc.*,
  2006 Bankr. LEXIS 1592 (Bankr. S.D. Tex. June 27, 2006) ..........................24

*In re Emerald Int'l Invs., Inc.*,
  190 B.R. 701 (S.D. Fla. 1995 ........................................................................36

*In re Enron Corp.*,
  419 F.3d 115 (2d Cir. 2005) ..........................................................................18

*In re First Republicbank Corp.*,
  1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) .........................36

*In re Himoff Mar. Enters., Ltd.*,
  1979 Bankr. LEXIS 696 (Bankr. S.D.N.Y. 1979)............................................10

*In re Imperial Credit Indus.*,
  527 F.3d 959 (9th Cir. 2008) .........................................................................23

*In re Int'l Horizons, Inc.*,
  751 F.2d 1213 (11th Cir. 1985) .....................................................................15

*In re Lehigh Valley Prof'l Sports Clubs*,
  No. 001296, 2002 WL 975876 (Bankr. E.D.Pa. Feb. 4, 2002) .......................20

*In re Metro Transp. Co.*,
  117 B.R. 143 (Bankr. E.D. Pa. 1990) .....................................................passim

*In re Pigott*,
  684 F.2d 239 (3d Cir. 1982) ....................................................................14, 15

*In re Porter*, 295 B.R. 529
  (Bankr. E.D. Pa. 2003) ............................................................................11, 12

*In re Smidth & Co.*,
  No. 08-10516 (KG), 2009 WL 704062 (Bankr. D. Del. Mar. 16, 2009)..........15, 21

iv

*In re Smith,*
    165 Fed. Appx. 961 (3d Cir. 2006) ..........................................................................11, 33

*In re Vertientes, Ltd.,*
    845 F.2d 57 (3d Cir. 1988) ....................................................................................20, 21

*In re Walker,*
    168 B.R. 114 (D. La. 1994) ..........................................................................................24

*In re Walker,*
    51 F.3d 562 (5th Cir. 1995) ..........................................................................................24

*IOTEX Commc'ns., Inc. v. Defries,*
    1998 Del. Ch. LEXIS 236 (Del. Ch. Dec. 21, 1998) ....................................................28

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.,*
    Adv. Proc. No. 09-50551 ................................................................................................1

*Kost v. Kozakiewicz,* 1 F.3d 176 (3d Cir. 1993) ....................................................................9

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004) ..........................................................................................25

*Maggio v. Zeitz,*
    333 U.S. 56 (1948) ........................................................................................................10

*McKernan v. Aasheim,*
    687 P.2d 850 (1984) ......................................................................................................24

*Mortgage & Sec. Co. v. PricewaterhouseCoopers, LLP,*
    2005 U.S. Dist. LEXIS 39851 (E.D. Wash. Dec. 21, 2005) ..........................................30

*Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.,* 28 F.3d 376 (3d Cir. 1994) ..........................34

*Noyes v. State Farm Gen. Ins. Co.,*
    2009 U.S. Dist. LEXIS 26920 (W.D. Wash. Apr. 1, 2009) ..........................................25

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,*
    267 F.3d 340 (3d Cir. 2001) ..........................................................................................30

*O'Melveny & Myers v. FDIC,*
    512 U.S. 79 (1994) ........................................................................................................31

*Pinter v. Dahl,*
    486 U.S. 622 (1988) ......................................................................................................30

*Pioneer Ins. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993) ......................................................................................................20

*Rosa v. R.T.C.,*
    938 F.2d 383 (3d Cir.), 502 U.S. 981 (1991) ......................................................34, 36, 37

*RTC v. Elman,*
    761 F.Supp. 245 (S.D.N.Y. 1991) ..........................................................................34, 36

*Segal v. Gordon,*
    467 F.2d 602 (2d Cir. 1972) ..................................................................25

*Soviero v. Franklin Nat'l Bank,*
    328 F.2d 446 (2d Cir. 1964) ..................................................................10

*Stiley v. Block,*
    925 P.2d 194 (Wash. 1996) ...................................................................28

*Sturm v. Boker,*
    150 U.S. 312 (1893) ..............................................................................30

*Szatkowski v. Meade Tool & Die Co.,*
    164 F.2d 228 (6th Cir. 1947) ................................................................15

*Tara M. v. City of Phila.,*
    1998 U.S. Dist. LEXIS 12184 (E.D. Pa. Aug. 7, 1998) ......................12

*Taylor v. Freeland & Kronz,*
    503 U.S. 638 (1992) ..............................................................................21

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,*
    906 A.2d 168 (Del.Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007) ..............28, 29

*United States v. Haytian Republic,*
    154 U.S. 118 (U.S. 1894) ...................................................................7, 12

*Village of Oakwood v. State Bank & Trust Co.,*
    539 F.3d 373 (6th Cir. 2008) ................................................................37

*Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.,*
    Adv. Proc. No. 09-50934 ...........................................................1, 22, 27

## <u>STATUTES</u>

11 U.S.C. § 101 ......................................................................................................7

11 U.S.C. § 502(d) ..............................................................................................23

11 U.S.C. § 542(b) ................................................................................................2

11 U.S.C. § 548(a)(1)(A) ....................................................................................23

11 U.S.C. § 550(a) .........................................................................................23, 36

12 U.S.C. § 1821(d) .........................................................................................6, 34

12 U.S.C. § 1821(d)(5)(A)(i) ...............................................................................7

12 U.S.C. § 1821(d)(6)(A) ....................................................................................7

## RULES

Fed. R. Bankr. P. 3003(c)(3) .................................................................15

Fed. R. Bankr. P. 7012(b) .......................................................................9

Fed. R. Bankr. P. 9006 .........................................................................21

Fed. R. Civ. P. 12(b)(6) ..........................................................................9

Fed. R. Civ. P. 15 .................................................................................13

# PRELIMINARY STATEMENT

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment," and with WMI, "Debtors") respectfully submit this opening brief in support of their motion to dismiss (the "Motion") the amended counterclaims (the "Amended Counterclaims") asserted by JPMorgan Chase Bank, National Association ("JPMC") in this adversary proceeding captioned, *Washington Mutual, Inc. et al.* v. *JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action").

The Debtors commenced this Turnover Action, seeking the turnover of more than $4 billion in deposits (the "Deposits") formerly kept with their subsidiaries, Washington Mutual Bank ("WMB") and Washington Mutual Bank fsb ("WMB fsb"), to adjudicate efficiently and expeditiously their unquestionable right to the Deposits. JPMC – in possession, and liable on account of all these Deposits – sought to have the Turnover Action dismissed or, in the alternative, consolidated with an adversary proceeding that JPMC had commenced, captioned *JPMorgan Chase Bank, N.A.* v. *Washington Mutual, Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding"; together with the Turnover Action, the "Adversary Proceedings"). The Court denied that motion. Undeterred by this Court's ruling, JPMC now asserts these Amended Counterclaims, the majority of which are identical to the claims it already asserted in the JPMC Adversary Proceeding. Thus, JPMC seeks to do what this Court has already rejected – effectively consolidate the JPMC Adversary Proceeding with the Turnover Action. The Court should reject this latest act of gamesmanship and dismiss as duplicative those claims that JPMC re-asserts in an end-run around this Court's prior ruling.

Perhaps to add a flavor of legitimacy to its tactical maneuvers, JPMC also asserts three "new" claims. But none of these states a viable cause of action. Two of these purportedly new claims have already been decided by this Court and JPMC is seeking appeal from that decision.

1

The third claim, alleging fraud, is new (it was not mentioned in any of JPMC's 40 proofs of claim nor when it commenced the JPMC Adversary Proceeding), but for that reason it is barred as untimely. Further, the claim fails to allege three critical elements of common law fraud: false representation, reliance, or damages. Moreover, notwithstanding JPMC's amendment, the claim fails to plead fraud with the requisite particularity, instead offering speculative conclusions unsupported by fact, and is barred by *in pari delicto* in any event.

In short, the Amended Counterclaims represent JPMC's latest attempt to control, delay, and impede the Debtors' chapter 11 cases. JPMC has sought to withdraw the reference to this Court and to have the District Court transfer the Adversary Proceedings to the District of Columbia notwithstanding this Court's denial of motions by JPMC and the Federal Deposit Insurance Corporation ("FDIC") to stay or transfer the Adversary Proceedings to D.C. on June 24, 2009. And, in several instances, JPMC has advanced to this Court and to the District Court its own redefined interpretation of this Court's ruling concerning the inapplicability of the FDI Act's jurisdictional bar, claiming that it is limited only to certain of the Debtors' counterclaims. Finally, in spite of this Court's ruling, JPMC continued to seek dismissal of this Turnover Action based on the asserted applicability of the FDI Act's jurisdictional bar.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This Turnover Action was commenced by the Debtors on April 27, 2009, under the Bankruptcy Code's turnover provision (11 U.S.C. § 542(b)). On May 13, 2009, JPMC filed a motion to dismiss or, in the alternative, consolidate the Turnover Action with the JPMC Adversary Proceeding (the "Motion to Dismiss/Consolidate"). The Debtors opposed the Motion to Dismiss/Consolidate, and JPMC filed a reply brief on June 3, 2009. At a hearing held on June 24, 2009 (the "June 24 Hearing"), the Court denied JPMC's Motion to Dismiss/Consolidate, and

on July 6, 2009, the Court entered an order to that effect (the "July 6 Order").[2]  On that same day, JPMC answered the Debtors' complaint and asserted counterclaims.[3]  After the Debtors had filed their motion to dismiss JPMC's counterclaims on July 27, 2009, on August 10, 2009, JPMC filed its Answer and Amended Counterclaims.

## SUMMARY OF ARGUMENT

1.  The Debtors commenced this Turnover Action to adjudicate efficiently and expeditiously their unquestionable right to their Deposits.  JPMC – in possession of these Deposits – sought to have the action dismissed or, in the alternative, consolidated with the JPMC Adversary Proceeding.  The Court denied that motion.  JPMC's subsequent steps to consolidate the Adversary Proceedings should be rejected.

2.  Additionally, JPMC has asserted three "new" claims which could not have been asserted as a matter of right in its own adversary proceeding.  One of the "new" claims asserted by JPMC is a common law fraud count concerning the prepetition transfer of Deposits from WMB to WMB fsb.  However, this is the first time that the Debtors, their creditors, or this Court have ever been put on notice of this specious claim.  The bar date, as ordered by this Court, operates to block the claim.  JPMC has not moved for relief and has no basis to do so given that there is no new information or discovery that JPMC has uncovered that would justify this late

---

[2]   A copy of the July 6 Order (Docket No. 64) is attached as hereto as **Exhibit 1**.  The Court may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claims asserted therein, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[3]   On May 19, 2009, Debtors filed their Motion for Summary Judgment in the Turnover Action, in which they present extensive and compelling evidence demonstrating that they in fact are owed the Deposits and that they are entitled to have JPMC promptly remit those funds.  JPMC's initial responsive papers were filed on July 24, 2009, with supplemental opposition – following the deposition of Doreen Logan – being due on September 11, 2009.  The Debtors' reply is due on September 18, 2009.  If the Court's schedule permits, the parties hope to have the matter heard shortly after briefing has been completed.

3

amendment. Moreover, JPMC could have no excuse for failing to discover any basis for the allegations earlier given that JPMC has long had possession of all of the Debtors' banking subsidiaries' books and records and substantially litigated issues related to Debtors' Deposits.

3. Since filing its original counterclaims, JPMC has amended its "fraud" claim to add the names of the persons who allegedly implemented the transfer and certain details of how it was accounted for. But JPMC was unable to add the critical specificity about the supposed fraud, such as who made a misrepresentation at a time when the speaker knew it was false. Furthermore, when it comes to the critical allegation that WMI knew that WMB would be placed in receivership, there is no detail about who had this knowledge and how they could have learned it. Without allegations concerning the specifics of the alleged fraud, rather than the underlying transaction, the amended fraud counterclaim fails to meet the heightened pleading standard for fraud.

4. Furthermore, JPMC's fraud claim fails because the persons who allegedly made fraudulent misrepresentations or omissions to WMB fsb were in fact officers and directors of WMB fsb. Thus, it appears JPMC is alleging that they lied to, or concealed from, themselves. As a matter of law, this means that JPMC's claim cannot prove the requisite element of reliance by WMB fsb because its own officers and directors were aware of the true facts, even under JPMC's theory. Similarly, JPMC's claim is barred by the doctrine of *in pari delicto.*

5. Moreover, JPMC's claim fails to – and cannot – plead damages because the alleged harm to WMB fsb never materialized. JPMC claims that WMI improperly made WMB transfer deposit liabilities to WMB fsb in exchange for an intercompany receivable from WMB, an entity headed for receivership. But those theoretical damages never came to fruition. On the contrary, JPMC assumed the deposit and intercompany liabilities of both banks and combined

4

their operations. Thus, WMB's debt to WMB fsb was satisfied one way or another when JPMC assumed WMB's liabilities or when the entire issue of intercompany liability between the two now-consolidated entities collapsed and whatever possible harm that could potentially have taken place did not. As a matter of law, therefore, JPMC's claim must fail because it has not and cannot allege any damages as a result of the alleged fraud.

6. JPMC's two other "new" claims are "new" only with respect to the Turnover Action. However, the Court has seen these before. Referencing the FDIC's disallowance of the Debtors' distinct claims against WMB in receivership, JPMC now informs the Court that, with respect to the Debtors' claims against JPMC, "both the Debtors and this Court are bound to honor and respect the determination under Title 12." (Amended Counterclaims ¶ 6.) First, this "theory" necessarily rests upon a premise already rejected by this Court – that the Debtors' claims asserted in the District of Columbia against the FDIC are the same claims asserted herein against JPMC. Second, even if the claims were in fact the same – which they are clearly not – the case law is clear that the receiver's summary disallowance is not binding on any federal court. In fact, the FDI Act itself provides for *de novo* review of such disallowance. Accepting the facts as pleaded, there is no basis in law to find that the disallowance of certain Debtor claims in the FDI Act's claims administration process has any binding effect upon this Court's resolution of distinct claims asserted against JPMC that are not subject to the FDI Act's administrative claims procedure. JPMC understands that the Court resolved this. A review of the notice of issues JPMC has presented to the District Court for the District of Delaware in connection with its appeal of this Court's ruling on the FDIC's and JPMC's motions to stay makes clear that JPMC is appealing the very issue that it now asks this Court to grant relief upon again. These "new" claims should be dismissed pursuant to the doctrine of the law of the case.

## FACTUAL BACKGROUND

### I. THE CLOSURE OF WMB, THE TITLE 12 RECEIVERSHIP, AND THE DC ACTION

On September 25, 2008, WMB was closed and placed into receivership with the FDIC appointed receiver. On the same day, the FDIC purportedly sold substantially all of WMB's assets, including the stock of its subsidiary WMB fsb, to JPMC for $1.88 billion, and the assumption of all of WMB's deposit liabilities, including those deposit liabilities owed the Debtors (the "P&A Transaction"), pursuant to that certain Purchase and Assumption Agreement Whole Bank (the "P&A Agreement"). Shortly thereafter, JPMC assumed all of WMB fsb's deposit liabilities, including those deposit liabilities owed the Debtors, by merging WMB fsb with its own banking operations.

In connection with WMB's receivership, as required by section 11(d) of the FDI Act (12 U.S.C. § 1821(d)), the FDIC set December 30, 2008, as the last day to file claims against WMB. The Debtors timely filed substantial claims. On January 23, 2009, the FDIC disallowed the Debtors' claims in a one-page notice of disallowance (the "Disallowance Notice"). Because the FDI Act's claims administration procedures required the Debtors to challenge the disallowance of claims within 60 days,[4] the Debtors filed a Complaint in the District Court for the District of

---

[4] The Disallowance Notice stated in part: "[I]f you do not agree with this disallowance, you have the right to file a lawsuit on your claim ... in the United States District (or Territorial) Court for the District within which the failed Institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice. **IF YOU DO NOT FILE A LAWSUIT ... BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. Section 1821(d)(6)(B)."** (Emphasis and capitalization in original.)

Columbia, on March 20, 2009, challenging the FDIC's disallowance of claims (the "DC Action," with the claims asserted therein referred to as the "DC Claims").[5]

## II. THE BANKRUPTCY CASES AND ADVERSARY PROCEEDINGS COMMENCED THEREIN

On September 26, 2008, (the "Petition Date") the Debtors each commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*(the "Bankruptcy Code").

### A. The JPMC Adversary Proceeding

On March 24, 2009, JPMC commenced the JPMC Adversary Proceeding in which JPMC asserts an ownership interest in various assets that it allegedly purchased from the FDIC pursuant to the P&A Agreement, including the Trust Securities, Tax Refunds, the Debtors' Deposit Accounts, Goodwill Litigation, Rabbi Trusts, Pension and 401(k) Plans, Bank Owned Life Insurance Policies, Visa Shares, and certain Intangible Assets (each as defined in the complaint filed in the JPMC Adversary Proceeding).[6] On May 29, 2009, the Debtors filed their answer to JPMC's complaint including eighteen counterclaims asserting, among other things, affirmative claims under the Bankruptcy Code's avoidance provisions and under state law as incorporated by the Bankruptcy Code for the avoidance of more than $10 billion in preferential and fraudulent prepetition transfers of the Debtors' assets that were transferred to JPMC (the "Debtors' Counterclaims").

---

[5] Once a creditor files a claim with the agency, the FDIC has 180 days to either allow or disallow it. 12 U.S.C. § 1821(d) (5)(A)(i). A claimant who is dissatisfied with the agency's determination then has 60 days either to request administrative review or to file suit on the claim. 12 U.S.C. § 1821(d)(6)(A). The claimant is authorized to bring suit either in "the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia." *Id.*

[6] A copy of JPMC's complaint filed in the JPMC Adversary Proceeding is attached hereto as **Exhibit 2**.

**B.    The Court's Ruling Denying JPMC's Motion to Stay and Rejecting JPMC's Arguments Concerning the FDI Act's Jurisdictional Bar**

JPMC and the FDIC filed motions to stay the Adversary Proceedings, in which both parties argued that the Turnover Action and the Debtors' Counterclaims are jurisdictionally barred under section 1821(d)(13)(D) of the FDI Act.  The issue was fully briefed and extensively argued by the Debtors, JPMC, and the FDIC at the June 24 Hearing.  The Court properly denied the motions.[7]  The Court, applying controlling Third Circuit authority, found that the FDI Act applies to claims against the FDIC for assets in receivership and that the Debtors' claims against a successor bank, JPMC, are appropriately before it.  (Tr. 6/24/09 at 93-94.)  The Court also rejected arguments by the FDIC and JPMC, which invoked the "first filed rule" as an alternative basis to defer to the DC Action, reasoning that the Court has "exclusive" jurisdiction over the Turnover Action and the Debtors' Counterclaims and noting that the DC Action and the Adversary Proceedings do not involve "the same claims."  (Tr. 6/24/09 at 94-95.)  JPMC and the FDIC have sought leave to appeal this Court's rulings with respect to both Adversary Proceedings.

**C.    JPMC's Continued Refusal to Acknowledge, and Attempts to Frustrate, the Court's Rulings**

Well after the FDIC's and JPMC's motions to stay the Adversary Proceedings were fully briefed by all three parties, on the literal eve of the June 24 Hearing, JPMC filed a motion to withdraw the reference of both Adversary Proceedings to the District Court for the District of Delaware, seeking to have the actions transferred to the District Court for the District of Columbia.  In its reply papers filed on July 15, 2009, JPMC continues to assert the applicability

---

[7]      Copies of the Court's orders are attached as hereto as **Exhibit 3**.

of the FDI Act's jurisdictional bar to the Debtors' Counterclaims and the Turnover Action, notwithstanding controlling Third Circuit case law and this Court's clear ruling to the contrary.

In the JPMC Adversary Proceeding, JPMC filed a motion to dismiss the Debtors' Counterclaims on June 18, 2009. JPMC's position is based on the identical argument that the Court rejected—*i.e.*, that section 1821(d)(13)(D) of the FDI Act bars the Debtors' Counterclaims against JPMC. In light of the Court's ruling that the bar does not apply, the Debtors contacted JPMC, by email dated June 26, 2009, and requested that JPMC withdraw the motion to dismiss. JPMC declined to do so without explanation, and, again, has elected to continue to pursue an argument that the Court has specifically rejected. The Debtors filed their opposition to JPMC's motion to dismiss on July 2, 2009, and JPMC filed a reply brief on July 10, 2009. In its reply brief, JPMC has taken it upon itself to demarcate the confines of this Court's ruling, stating that it "plainly does not reach" one of the Debtors' Counterclaims that was already asserted by the Debtors and considered by this Court at the time of the June 24 Hearing. (JPMC Adversary Proceeding, Dkt. No. 80, at 1-2.) Oral argument on JPMC's motion to dismiss the Debtors' Counterclaims is scheduled to occur on the date hereof.

## ARGUMENT

A motion to dismiss pursuant to Federal Rule of Civil Procedure (the "Federal Rules") 12(b)(6), made applicable to the Adversary Proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, serves to test the sufficiency of the allegations in the plaintiff's complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The plaintiff is required to "set forth sufficient information to outline the elements of [its] claim or to permit inferences to be drawn that these elements exist." *Id.* (quotation omitted).

While, in evaluating a motion to dismiss, factual allegations in the complaint are to be treated as true, the Court "is not required to accept legal conclusions either alleged or inferred

from the pleaded facts." *Id.* Moreover, JPMC must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This determination will be "a context-specific task that requires the [Court] to draw on its judicial experience and common sense" regarding JPMC's asserted claims. *See id.* at 1950.

## I. JPMC'S COUNTERCLAIMS MUST BE DISMISSED AS DUPLICATIVE AND IN CONTRAVENTION OF THIS COURT'S RULING

The Debtors commenced the Turnover Action as a separate proceeding because they deemed it to be in the best interests of their estates to obtain a prompt recovery of estate property – and because the issue of liability for turnover is narrow and discrete. Adjudication of the Turnover Action should be expeditious and efficient and therefore should not be needlessly linked to resolution of the disputes concerning the litany of Other Assets (as defined in the Amended Counterclaims). This approach is consistent with the pre-Bankruptcy Code roots of the turnover provision. *See Maggio v. Zeitz*, 333 U.S. 56, 61 (1948) (turnover "is a judicial innovation by which the court seeks efficiently and expeditiously to accomplish ends prescribed by the [Bankruptcy] statute"); *Soviero v. Franklin Nat'l Bank*, 328 F.2d 446, 448 (2d Cir. 1964) (same); *In re Himoff Mar. Enters., Ltd.*, 1979 Bankr. LEXIS 696, at *36 (Bankr. S.D.N.Y. 1979) (same).

JPMC responded to the Turnover Action by first moving unsuccessfully to dismiss or consolidate that action with the JPMC Adversary Proceeding. In its Motion to Dismiss/Consolidate, JPMC requested that the Court consolidate the Turnover Proceeding with the JPMC Adversary Proceeding, arguing that it would be more efficient to consolidate the Adversary Proceedings under Bankruptcy Rule 7042, and that the Debtors' turnover claim "can be resolved efficiently . . . in JPMC's Adversary Proceeding." (JPMC Motion to

Dismiss/Consolidate at 17.) JPMC stated further, "to the extent the Court does not dismiss [the Turnover Action] in its entirety, JPMC respectfully submits that any remaining claims . . . should be consolidated with the [JPMC Adversary Proceeding]." (*Id.* at 16.) The Debtors responded, arguing that consolidation would promote only delay and inefficiency and JPMC replied. JPMC's motion was denied.

Notwithstanding the foregoing, JPMC has attempted to award itself the same relief under the guise of asserting counterclaims in the Turnover Proceeding. JPMC admits, and it is clear from even a cursory review of the Amended Counterclaims, that it has "cut and pasted" the complaint filed in the JPMC Adversary Proceeding into the Amended Counterclaims asserted in this Turnover Action. (Amended Counterclaims at ¶¶ 1, 74, 113 ("Certain of these counterclaims and cross-claims are among the claims that have already been asserted in [the JPMC Adversary Proceeding]."))

The "law of the case" doctrine instructs that "when a court decides upon a rule of law, the decision should continue to govern the same issues in subsequent stages in the same case." *In re Smith*, 165 Fed. Appx. 961, 965 & n.8 (3d Cir. 2006). The "law of the case" doctrine directs the court's discretion not to rehear matters *ad nauseam*. *Arizona v. California*, 460 U.S. 605, 618, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983). This doctrine applies regardless of whether the issue was decided expressly or by necessary implication. *FDIC v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001).

Separately, as part of its general power to administer its docket, a federal court may stay or dismiss a suit that is duplicative of another federal suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817(1976) ("[T]he general principle is to avoid duplicative litigation."); *In re Porter*, 295 B.R. 529, 544 (Bankr. E.D. Pa. 2003) (dismissing duplicative

adversary proceeding brought in bankruptcy court asserting *the same cause of action* as prior

pending adversary proceeding). "[T]hough no precise rule has evolved," the complex problems

that can arise from duplicative litigation do not call for application of a rigid test, but instead

require the court to consider the equities of the situation when exercising its discretion. *See*

*Colo. River,* 424 U.S. at 817. "For an action to be deemed duplicative, there must be the same

parties, or at least such as represent the same interest; *there must be the same rights asserted and*

*the same relief prayed for*; the relief must be founded upon the same facts; and the essential basis

of the relief sought must be the same." *Tara M. v. City of Phila.*, 1998 U.S. Dist. LEXIS 12184,

at *6 (E.D. Pa. Aug. 7, 1998) (dismissing duplicative action asserting same rights and seeking

same relief) (quoting *United States v. Haytian Republic*, 154 U.S. 118, 124 (U.S. 1894))

(emphasis added).[8]

The Debtors submit that the Amended Counterclaims were filed in spite of the law of the

case and primarily to delay and bog down the Turnover Action and should be dismissed as

duplicative on that basis. The Debtors commenced the Turnover Action asserting claims that

they have not asserted elsewhere. The Turnover Action is not duplicative. In contrast, the

majority of the Amended Counterclaims are exact replicates of already asserted claims, asserting

the same causes of action, concerning the same purported rights, and seeking the same relief.

The Debtors should not be required to defend against such claims repeatedly.

Further, although JPMC will argue that its claims in the JPMC Adversary Proceeding are

necessary to adjudicate the issue of setoff in the Turnover Action, its argument is flawed. JPMC

simply has no right of setoff because each and every one of its claims asserted against the

---

[8] When duplicative litigation is discovered, judicial power typically will be directed against the
second of the two claims. *In re Porter*, 295 B.R. at 543-44.

Debtors relate to acts, omissions, or other events which occurred on or before the date of the P&A Transaction. However, the P&A Agreement is crystal clear that JPMC did not acquire any prepetition claims against WMI, leaving JPMC holding only the liability side of a setoff.[9] Thus, there is no compelling reason to consolidate these Adversary Proceedings.

Furthermore, JPMC has taken this opportunity to assert new claims (*i.e.*, Counts I, IV, and VI) which, if asserted in the JPMC Adversary Proceeding, could not be brought as a matter of course. *See* Fed. R. Civ. P. 15 (once responsive pleading is served, amendment only permitted upon written consent or with leave of court when justice so requires); *see also* II.A., *infra* (discussing bar date). Rather than seek leave to amend the complaint in the JPMC Adversary Proceeding, JPMC has chosen to assert the Amended Counterclaims in the Turnover Action. JPMC's vexatious litigation strategy requires dismissal of the Amended Counterclaims (duplicative and new).

## II. COUNT IV FOR FRAUD MUST BE DISMISSED (I) AS UNTIMELY, (II) FOR FAILURE TO STATE A CLAIM, AND (III) AS BARRED BY IN PARI DELICTO

JPMC's fourth count alleges that WMI committed fraud when it transferred its deposit account from WMB to WMB fsb. WMB fsb then loaned the funds in that account back to

---

[9]    Section 3.1 of the P&A Agreement, which concerns the purchase of WMB's assets by JPMC, is expressly made subject to Section 3.5. (P&A Agreement § 3.1.) That provision, in turn, is captioned "Assets Not Purchased by Assuming Bank" and incorporates Schedule 3.5. (P&A Agreement § 3.5.) Of direct significance here, Schedule 3.5 excludes from any purchased assets, among other things, "any interest, right, action, claim, or judgment against . . . any shareholder or holding company of [WMB] . . . ." (P&A Agreement, Schedule 3.5 (emphasis added).) Schedule 3.5 further clarifies that these claims carved out from the P&A Agreement, relate to "acts, omissions or other events" which "shall have occurred *on or before*" the closing of WMB by the OTS "regardless of when any such claim is discovered." *Id.* (emphasis added). Thus, according to the plain terms of the P&A Agreement, JPMC did not acquire any claim against WMI, WMB's former sole shareholder and holding company, that arises out of facts and occurrences that pre-dated WMB's closing. Each of JPMC's proofs of claims filed in the Debtors' chapter 11 cases fits this description squarely. Therefore, JPMC holds no claims to setoff against the Deposits owed WMI.

WMB. JPMC alleges that this transfer was made in a way that could harm WMB fsb, because, JPMC contends, WMI knew WMB could be unable to repay this loan. This count fails for a number of reasons. As an initial matter, this claim is time barred because it was not included in JPMC's proofs of claim and there is no new information or other excuse for JPMC missing the bar date. It also fails on the substance for failure to allege damages because the alleged potential harm that could come from this intercompany transfer was entirely eliminated when JPMC purchased the assets of both companies and assumed all of WMB's intercompany liabilities. Moreover, JPMC does not plead the fraud claim with the sufficient specificity. Although it has added names and dates for who purportedly caused the underlying transactions, it does not plead who made a specific misrepresentation to whom knowing that it was false when made. In fact, JPMC's list of omissions appears to suggest that WMB fsb officers failed to disclose information to WMB fsb itself, which falls far short from showing that an unknowing individual relied on the misrepresentations of others. These defects justify dismissal and also reveal this claim for what it is – an unfounded conspiracy theory meant to distract the Court from the simple issue posed in this Turnover Action.

### A. JPMC Should Not be Permitted to Assert Count IV Over Three Months After the Bar Date Has Passed

Count IV should be dismissed in the first instance because it was not included in JPMC's proofs of claim. As the Third Circuit has recognized, a principal purpose of bankruptcy law is to secure the efficient administration and settlement of a debtor's estate within a reasonably limited period of time. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). Deadlines for filing proofs of claim are to be "strictly construed" to ensure the efficient administration of bankruptcy cases and to provide all parties with finality. *In re Pigott*, 684 F.2d 239, 242 (3d Cir. 1982); *In re Smidth & Co.*, No. 08-10516 (KG), 2009 WL 704062, at *3 (Bankr. D. Del. Mar.

16, 2009) ("[Fed. R. Bankr. P. 3003(c)(3)] contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate."). A bar date is not intended to be merely a suggestion, but rather a date certain by which claims must be filed against the estate. *Chemetron*, 72 F.3d at 344; *see also Smidth & Co.*, 2009 WL 704062, at *1 (dismissing claims filed six weeks after bar date). Here, because JPMC did not include any claim for fraud in its proofs of claim, it should be dismissed.

### 1. Count IV is a New Claim, Not an Amendment to JPMC's Proofs of Claim

Although a creditor may, under certain circumstances, amend a timely-filed proof of claim, "purported amendments will not be permitted if they actually constitute 'new claims.'" *In re Metro Transp. Co.*, 117 B.R. 143, 147-48 (Bankr. E.D. Pa. 1990) (citing *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985); *Szatkowski v. Meade Tool & Die Co.*, 164 F.2d 228, 230 (6th Cir. 1947); *In re G. L. Miller & Co.*, 45 F.2d 115, 116 (2d Cir. 1930)). Purported amendments must be "scrutinized very closely." *In re Metro Transp. Co.*, 117 B.R. at 147 (quotation omitted). When a "'new claim' is being asserted subsequent to the bar date, an objection to its filing must be sustained.'" *Id.* (quoting *Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr. E.D. Pa. 1988)). This is because "[t]o permit the filing of a proof of claim under the guise of an amendment months out of time. . . would militate against the efficient administration of bankruptcy proceedings." *Pigott*, 684 F.2d at 245.

More than three months after filing more than 40 proofs of claim and the passage of the March 31, 2009 bar date established in the Debtors' chapter 11 cases (the "Bar Date"),[10] JPMC attempts to assert a "fraud" claim against the estate for the first time. JPMC offers no

---

[10] The Court entered an order establishing March 31, 2009 as the deadline for filing proofs of claim against the Debtors on January 30, 2009 (the "Bar Date Order"). A copy of the Bar Date Order is attached hereto as **Exhibit 4.**

explanation or excuse why this "fraud" claim was not asserted in advance of the Bar Date when it commenced its own Adversary Proceeding.

Count IV is based on allegations that WMI failed to disclose certain information to WMB fsb or failed to seek WMB fsb's consent with respect to a prepetition $3.67 billion transfer of the Deposits. However, nowhere in JPMC's proofs of claim[11] (or in the JPMC Adversary Proceeding) is there any mention of fraud, any alleged failure on WMI's part to disclose information to WMB fsb, or any reference to punitive damages. Also unveiled for the first time in Count IV is the incredulous theory that WMI had "knowledge" of the impending seizure of WMB. (Amended Counterclaims ¶ 87.) It is clear that Count IV does not purport to cure a defect in JPMC's previously asserted claims, describe the previously asserted claims in more detail, or simply increase the dollar amount claimed. *See Metro Transp. Co.*, 117 B.R. at 148. And it is not enough that the late-filed claim refers to some of the facts in JPMC's timely filed proofs of claim with respect to Deposit funds. *See Horizons*, 751 F.2d at 1217 (holding that the late filed claim was an impermissible new claim – not a permissible amendment to a timely claim – even though both claims related to tax liability issues); *Metro Transp. Co.*, 117 B.R. at 148 (noting that "attempts to change the nature of a proof of claim" are "generally disallowed" and that even where "the original claim provided notice of the existence, nature, and amount of the claim," a purported amendment that would "prejudice the opposing party" may not be permitted).

In ruling upon the propriety of a post-bar date amendment filed by the IRS, the bankruptcy court in *Metro Transportation* considered the following five equitable factors: (1) "whether the bankrupt and creditors relied upon the . . . earlier proofs of claim or whether they

---

[11]    A copy of the pertinent proof of claim is attached hereto as **Exhibit 5**.

had reason to know that subsequent proofs of claim" would be filed; (2) "[w]hether the other

creditors would receive a windfall to which they are not entitled on the merits by the court not

allowing this amendment to the . . . proof of claim"; (3) "[w]hether [the claimant] intentionally or

negligently delayed in filing the proof of claim"; (4) "[t]he justification, if any, for the failure of

[the creditor] to file for a time extension" of the bar date; and (5) "[w]hether or not there are any

other considerations which should be taken into account in assuring a just and equitable result."

*In re Metro Transp. Co.*, 117 B.R. at 149.

Here, each of the factors militates in favor of dismissing Count IV. First, the Debtors,

and their creditors, had no reason to know that JPMC would assert a fraud claim after the Bar

Date. As discussed above, JPMC made no such assertions in two instances: the JPMC

Adversary Proceeding and its more than 40 proofs of claim. In neither instance were parties in

interest provided fair notice of JPMC's novel (indeed, absurd) theory of recovery. *See, e.g., In re

Calpine Corp.*, No. 07-8493, 2007 U.S. Dist. LEXIS 86514, at *9-16 (S.D.N.Y. Nov. 21, 2007)

(concluding that attempted supplement of prior proofs of claims was ineffective and prohibited

by the bar date, because "[g]iven the novel nature of the [claims], the catch-all provision would

not have provided the Debtors reasonable notice that the [creditors] were asserting claims for

breach of those rights"). Moreover, it is not that JPMC had just recently conducted discovery.

JPMC has had possession of WMB's and WMB fsb's books and records since the time of the

P&A Transaction – more than six months prior to the Bar Date. Additionally, as this Court is

well aware, JPMC has spent considerable time considering the Deposits.[12] Thus, JPMC had

---

[12]     JPMC negotiated and entered into a stipulation with the Debtors concerning the Deposits back in
October 2008 (the "Deposit Stipulation"). The Deposit Stipulation was ultimately withdrawn, in
part, due to JPMC's insistence on examining all possible issues related to those Deposits. (*See* Tr.
10/20/08 at 7 ("[W]e simply need to regroup and go back on our side of the table and determine
(footnote continued)

significant time in advance of the Bar Date to investigate all possible claims and was in possession of all the pertinent information. During all of this time, not once has JPMC even suggested the possibility of "fraud." *See Horizons*, 751 F.2d at 1217-18 (dismissing late-filed claim and noting that parties met to discuss tax liability issues months prior to bar date and no mention was made of claim until filing four months after bar date).

Further, JPMC's "boiler plate" reservation of rights language in its proof of claim cannot save JPMC's tardiness. *See In re Enron Corp.*, 419 F.3d 115, 120, 134 (2d Cir. 2005) (rejecting claimant's late filed claim, notwithstanding reservation of rights provision in timely filed proof of claim where claimant purported to "reserve[] the right to amend, supplement, or otherwise modify . . . at any time"); *Calpine*, 2007 U.S. Dist. LEXIS 86514, at *15-16 (broad language in proof of claim form did not preserve claims that were "both novel and substantively dissimilar to the specific claims made in the Original Claims"). Permitting such a reservation of rights to enable JPMC to amend its proof of claim under these circumstances would prejudice the Debtors and run counter to the goals of efficiency and finality in the administration of bankruptcy proceedings.

Second, there is no concern that the Debtors' other creditors would receive a windfall if Count IV is dismissed. The funds are the Debtors' Deposits formerly held by their subsidiary banks, representing value that the Debtors' legitimate creditors assessed and relied upon before entering into a debtor-creditor relationship with the Debtors.

Third, assuming there is any legitimate basis for Count IV, it is apparent that JPMC was at best negligent – without excuse – in not asserting the claim earlier. The failure of JPMC to

what it is that we can agree to, without undue risk. And that's what we're asking for the time to do. We're hoping we can do it fairly quickly.").)

raise this issue for the more than nine months it has held the Debtors' Deposits and books and records is telling. *See Metro Transp. Co.*, 117 B.R. at 150 (it "was the [creditor's] responsibility to investigate its claim and make the true nature of its claim known to the court in a timely manner" and that party "simply failed, without just cause, to meet this responsibility").

Fourth, JPMC did in fact seek an exclusive extension of the Bar Date. (Dkt. No. 578 at 12; Tr. 1/29/09 at 41.) The Court properly rejected that request, making clear to JPMC that it would need to investigate and present its claims by the specified deadline. (Tr. 1/29/09, at 65 ("[A] bar date is essential to move a case, and I think it's essential that JPM file their proof of claim [by the Bar Date].").) JPMC understood and acknowledged that its claims would need to be filed in advance of the Bar Date. (*See* Tr. 1/29/09 at 50-51 ("If in fact this Court orders us to file proofs of claims by March 31, that is what we will do.").) When JPMC's request for an exclusive extension of the bar date was rejected, it still had two months to continue its assessment. *See Metro Transp. Co.*, 117 B.R. at 150 (finding that whatever the creditor knew at the time it filed its late claim, "it knew or should have known prior to the bar date").

Finally, there are other considerations which should be taken into account to assure a just and equitable result, *i.e.*, the dismissal of Count IV. Count IV is without merit. As discussed below, even assuming fraudulent conduct, JPMC, as the purchaser of substantially all of WMB's assets, including the equity interests in WMB fsb, suffered no damages. JPMC has asserted this "fraud" claim only to improve its bargaining position in the context of its already vexatious litigation with the Debtors.

For all of the foregoing reasons, Count IV should not be deemed an allowable amendment to JPMC 's proof of claim. Rather, it is a new claim that should be dismissed pursuant to the Court-ordered Bar Date.

2.   JPMC's Count IV is Barred Because JPMC Did Not Make a Subsequent
     Request for an Extension and Cannot Demonstrate Excusable Neglect

Count IV of the Amended Counterclaims must be dismissed because JPMC cannot

demonstrate excusable neglect in failing to file the claim prior to the Bar Date.  Moreover, the

Court has already rejected JPMC's initial request for an extension of the Bar Date.  *See In re*

*Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir. 1988) ("[T]he bankruptcy court's discretion to extend

time is limited to two situations – requests made before the expiration of the originally

prescribed time limitation, and where failure to act was due to excusable neglect.").

JPMC now seeks to make an end-run around the Bar Date Order by filing the "fraud"

counterclaim without offering any reason – as required under Fed. R. Bankr. P. 3003(c) and

9006(b)[13] – that it should now be entitled to the relief this Court previously rejected.[14]  Only for

"cause shown" may a court extend the time within which to file a proof of claim.  Fed. R. Bank.

P. 3003(c)(3).  A party that fails to file claims prior to the bar date has the burden of

demonstrating "excusable neglect" pursuant to Fed. R. Bank. P. 9006.  *See Pioneer Ins. Servs.*

*Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993) ("The 'excusable neglect'

standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases[.]").

JPMC has failed to file the requisite motion to enlarge the time for filing Count IV.  The

Third Circuit has held that once the bar date has passed, failure to argue excusable neglect

---

[13]   Fed. R. Bankr. P. 9006, provides, in pertinent part: "[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act  to be done where the failure to act was the result of excusable neglect."

[14]   Nor did JPMC reach agreement with the Debtors to file its late claim.  *See In re Lehigh Valley Prof'l Sports Clubs*, No. 001296, 2002 WL 975876 (Bankr. E.D.Pa. Feb. 4, 2002), at *4 (noting that debtor had agreed to permit party to answer complaint and file counterclaims past the Bar Date).

renders the court without "discretion to allow [a claimant] to file a late proof of claim." *Vertientes*, 845 F.2d at 60; *see also Smidth & Co.*, 2009 WL 704062, at *4 n.24 (disallowing claim filed after bar date; noting that claimant "never filed a motion to enlarge the time for filing a proof of claim based on excusable neglect as required by Rule 9006(b)(1)"). The Debtors submit that JPMC's failure to submit the required motion under Fed. R. Bankr. P. 3003(c) and Fed. R. Bankr. P. 9006(b) requires dismissal of Count IV. *Cf. Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality.").

### B.     Count IV Fails to Plead Damages

JPMC's fraud claim also fails because it does not – and cannot – plead any damage from the purportedly fraudulent intercompany transfer because JPMC acquired all of the assets, and assumed all of the pertinent liabilities, of both WMB and WMB fsb. Consolidated as such, it matters not whether the intercompany receivable WMB fsb acquired was owed to it by an entity headed for receivership.

In particular, JPMC's fraud claim alleges that WMI caused to be transferred liability for its own Deposits from WMB to WMB fsb "to benefit WMI at the expense of WMB fsb in the event of any receivership of WMB, and the transaction was one that *potentially* left WMB fsb exposed for lending $3.67 billion to an institution that had no reasonable chance of repaying it outside a receivership." (Amended Counterclaims ¶ 93 (emphasis added).)

In fact, however, this *potential* harm was never realized. Although WMB was placed into receivership, its assets were purchased, and its liabilities assumed by JPMC and combined with those of WMB fsb. As alleged, JPMC "acquired the business and related assets of WMB, including ownership of all of WMB's direct and indirect subsidiaries, and all right, title and interest of the Receiver in those assets." (Amended Counterclaims ¶ 4.) Thus, JPMC purchased

substantially all of WMB's assets, including the equity interests in WMB fsb and shortly thereafter merged WMB fsb into itself. (Amended Counterclaims ¶ 100.) Due to the P&A Transaction, WMB fsb was not harmed as its receivable was assumed[15] and then collapsed by JPMC via merger. Accordingly, any transfer of value from WMB fsb to WMB (or vice versa) would have ended up in exactly the same place – JPMC's pockets. Further, JPMC alleges no dissipation of assets, nor any dividends, waste, or looting on the part of parent WMI. In other words, under JPMC's theory, any assets not transferred from WMB to WMB fsb in connection with the transfer were acquired by JPMC in any event.[16]

More specifically, JPMC asserts that WMB fsb has suffered damages that arise from:

> (a) any deposit liability of WMI that it is required to repay without funds or collateral from WMI that fully offsets that liability; (b) any funds it is required to repay as the recipient of funds credited to the Disputed Accounts that can be recovered by a third party, including funds recovered by a third party as fraudulently transferred; and (c) defrauding WMB and its successors of the valuable right of setoff.

(Amended Counterclaims ¶ 99). However, upon inspection, each of the foregoing fails to form the basis for any WMB fsb damages based upon the facts as pled in the Amended Counterclaims.

---

[15]    JPMC assumed "all of the liabilities of [WMB]" other than "[p]referred stock and litigation pending against the Failed Bank related to liabilities retained by the receiver, [s]ubordinated debt, [s]enior debt," and certain other exceptions not relevant here. (P&A Agreement at § 2.1, Schedule 2.1.) Thus, the intercompany WMB loan that JPMC claims WMB fsb was left "holding the bag" (*see* Amended Counterclaims ¶ 91) with was assumed (and effectively satisfied in full) by JPMC. Thus, WMB fsb suffered no harm whatsoever. Moreover, JPMC, as the "Assuming Bank" under the P&A Agreement (Amended Counterclaims ¶ 10), would have assumed the Debtors' Deposits had they remained at WMB (as JPMC did for all of WMB's deposit liabilities, including the Debtors').

[16]    In light of JPMC's assertions of "fraud," it bears mentioning here that notwithstanding JPMC's allegations that the transfer was effectuated without actual cash movement, the fact remains that by structuring the transaction as it did, Washington Mutual acted to preserve and maintain – rather than detract from – WMB's liquidity. Had the transfer of the deposit liabilities been matched with a withdraw of "good funds" from WMB to WMB fsb (as JPMC apparently argues was appropriate), then WMB's liquidity could potentially have been compromised in a way that it undeniably was not.

First, JPMC acknowledges that WMB fsb did in fact receive an asset that "offsets" the deposit liability it assumed – an intercompany receivable owed WMB fsb by WMB. (Amended Counterclaims ¶ 91.) As discussed above, that intercompany loan was assumed by apparently solvent JPMC and thus WMB fsb was not harmed. Moreover, as made clear in the Amended Counterclaims, JPMC has effectively consolidated WMB and WMB fsb, thereby satisfying any intercompany liabilities between the entities. JPMC cannot escape the reality that neither WMB fsb nor JPMC was harmed by the transfer of deposit liabilities from WMB to WMB fsb.

JPMC's second basis for damages – related to any "funds it is required to repay" to third parties – is similarly deficient. First, JPMC's "fraud" claim implies that WMB fsb was not a transferee, but an entity that was forced to incur an obligation – the deposit liabilities. This distinction[17] makes clear that, based upon the facts pled by JPMC, WMB fsb is not the "recipient of funds" that could lead to fraudulent transfer liability. In other words, it simply does not follow from JPMC's allegations that WMB fsb could suffer damages as a result of being the recipient of what may someday be alleged by some third party to have been a fraudulent transfer, particularly when JPMC's overarching theory is that WMB fsb was victimized through the incurrence of an obligation and that WMB fsb did not ever receive a "single penny" or other "funds or collateral." *See, e.g.,* 11 U.S.C. § 550(a) (providing for recovery by the debtor from various transferees, but not entities who incurred obligations). Putting aside that JPMC fails to plead facts that could give rise to such liability, what JPMC's outlandish damages theory boils down to is one of

---

[17]     *See* 11 U.S.C. § 548(a)(1)(A) (providing for the avoidance of a transfer made by the debtor or an obligation incurred by the debtor); *see also In re Imperial Credit Indus.,* 527 F.3d 959, 972 (9th Cir. 2008) ("related statutes addressing fraudulent conveyances recognize the distinction between avoiding an obligation and recovering a transfer"); *In re Asia Global Crossing, Ltd.,* 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (holding that 11 U.S.C. § 502(d) , providing for disallowance of claim filed by any entity that has received an avoided *transfer* unless that entity first returns the property transferred, like section 550, applies only to avoidable transfers and not to avoidable obligations).

contribution for contingent harm. But the law is clear that should JPMC's theoretical harm materialize, it would have no claim against WMI for contribution. *See, e.g., In re Walker*, 51 F.3d 562, 565-67 (5th Cir. 1995) (noting that there is no express or implied right to contribution under the Bankruptcy Code); *In re Dunhill Res., Inc.*, 2006 Bankr. LEXIS 1592, at *10-11 (Bankr. S.D. Tex. June 27, 2006) (citing cases which have declined to find contribution rights in avoidance actions); *In re Walker*, 168 B.R. 114, 118 (D. La. 1994) (same). Further, these "damages" are at best speculative where JPMC has not even been named in a fraudulent transfer action. Contingent, speculative damages such as these cannot form the basis for recovery under Washington law. *See McKernan v. Aasheim*, 687 P.2d 850, 855 (1984); *Hanson PLC v. Nat'l Union Fire Ins. Co.*, 794 P.2d 66, 73 (Wash. Ct. App. 1990).

Finally, JPMC nonsensically asserts that WMB fsb has suffered damages arising out of "defrauding WMB and its successors of the valuable right of setoff." (Amended Counterclaims ¶ 99.) As a threshold matter, it is clear that what JPMC is really doing here is pleading damages suffered by WMB, not WMB fsb. Here again, there are no damages, because even if the deposit liabilities were not "fraudulently" transferred from WMB to WMB fsb, JPMC would have no right of setoff because, as discussed above, the P&A Agreement is plain in that JPMC did not acquire any WMB claims against WMI. Thus, it would still have no right of setoff. Any JPMC argument that the plain and unambiguous language of the P&A Agreement is not controlling is belied by the fact that the FDIC is simultaneously asserting each of the WMB claims that JPMC alleges it would have a right to setoff WMB Deposits with. In the FDIC's Opposition to the Debtors' Motion for Summary Judgment, the FDIC asserts the same "WMB" claims to "tax refunds and other tax assets, [and] claims of $4 billion relating to certain trust preferred securities." (Memorandum of Law of FDIC in Opposition to Debtors' Motion for Summary

24

Judgment at 13.)  This reinforces the plain fact that JPMC, as acquirer of WMB's assets, has no right of setoff.  Thus, JPMC yet again fails to plead damages.

## C. Count IV Fails to Plead a False Representation and Fails to Plead with the Requisite Particularity

In order to satisfy Rule 9(b)'s strict standard, the party "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200-01 (3d Cir. 2007).  The purpose of Rule 9(b)'s particularity requirements is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quotation omitted).  Rule 9(b) is intended to "ensure that 'a complaint alleging fraud' is filed 'only after a wrong is reasonably believed to have occurred,' and 'not to find one.'" *See, e.g., Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006) (quoting *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972)).  Under Washington law, to succeed with a common law fraud claim, a plaintiff must prove the following:  "(1) a representation of an existing fact, (2) the fact's materiality, (3) falsity, (4) the speaker's knowledge of the falsity or ignorance of its truth, (5) the speaker's intention that it be acted upon by the plaintiff, (6) the plaintiff's ignorance of its falsity, (7) reliance, (8) plaintiff's right to rely, and (9) damages." *Noyes v. State Farm Gen. Ins. Co.*, 2009 U.S. Dist. LEXIS 26920, *9 (W.D. Wash. Apr. 1, 2009).

In JPMC's amended pleading, JPMC has added facts about the actors who supposedly affected the transaction, such as Mr. Williams and Mr. Casey directing a transfer of Deposits and an administrator named Ms. Noblezada preparing records to reflect the transfer.  What is

strikingly absent, however, are facts about who said anything that was false and known to be false.

Indeed, JPMC's allegations of actual misrepresentations are limited to a single paragraph. Specifically, JPMC asserts that Robert Williams, WMI President and Treasurer who also served as an officer of WMB fsb, and Thomas Casey, WMI Chief Financial Officer who also served as a director of WMB fsb allegedly made the following supposed representations:

> (a) directing a representation be made on the general ledger that a purported deposit liability was created at WMB fsb on September 24, 2008, with an effective date of September 19, 2008, when no actual funds were actually wired to WMB fsb to fund this supposed new deposit liability; (b) directing that the Master Note between WMB and WMB fsb be increased by approximately $5 billion on or about September 19, 2008, without increasing collateral as required by the Asset Pledge Agreement to the Master Note; and (c) representing that WMI was the owner of funds purportedly credited to the Disputed Accounts in connection with the $3.67 Billion Book Entry Transfer . . . .

(Amended Counterclaims ¶ 95.)

In fact, the first two – alleging that Messrs. Williams and Casey directed that the general ledger reflect a deposit liability was transferred to WMB fsb and that the Master Note be increased – are nothing more than descriptions of the mechanics of the transfer, rather than false statements known to be false at the time. Although JPMC tries to frame them in an untoward light by alleging that there were no actual funds transferred or appropriate collateral pledged, that does not make these actions fraudulent misrepresentations. This is especially true as JPMC has pled this claim "in the event it is determined that the $3.67 Billion Book Entry Transfer created a deposit liability at WMB fsb." (Amended Counterclaims ¶ 86.) Notably, JPMC does not allege that a general ledger entry was made on WMB fsb's books that reflected the receipt of cash nor does it allege that Williams or Casey represented that under the Asset Pledge Agreement there were no pertinent collateral requirements. (Amended Counterclaims ¶ 93.) There is no assertion

26

of inaccurate or false accounting here and thus, there is no false representation. At best, such assertions amount to no more than a simple instruction to account for the transfer on Washington Mutual's books and records and an instruction to increase borrowing capacity such that WMB fsb would be able to loan funds to WMB.

While the third purported misrepresentation at least alleges an actual representation rather than simply accounting acts or procedure, it fails to – and cannot – allege with specificity that Messrs. Williams or Casey made specific statements that they knew at the time to be false. Specifically, JPMC asserts that Mr. Williams or Mr. Casey represented that WMI was the "owner of funds purportedly credited" to the Deposits when such funds may have been owned by other entities, including WMB or some unnamed third parties. (Amended Counterclaims ¶ 95.) Putting aside the question of whether JPMC has a good faith basis to believe that WMI's Deposits, held in the name of WMI, actually belong in part to someone else, it does not and cannot allege that Messrs. Williams and Casey believed that WMI was not the owner of the funds when they initiated the transfer. In this regard, Count IV continues to fail to provide any particulars, such as when or how this claim of ownership was fraudulently made, nor to whom was it made. *See First Global Commc'ns., Inc. v. Bond*, 2006 U.S. Dist. LEXIS 5919, *17-19 (W.D. Wash. Jan. 27, 2006) (dismissing fraud claim that did not "satisfy the time and place particularity requirements of Rule 9(b)"). Similarly, Count IV's assertion that Mr. Williams and Mr. Casey were "acting with knowledge" that WMB "would be shortly seized by the regulators," is wholly unsubstantiated and made without any further detail or explanation. (Amended Counterclaims ¶ 87.) Even where knowledge may be averred generally, when pleading a claim of fraud that has at its core a charge that the defendant knew something, "there must, at least, be sufficient well-pleaded facts from which it can reasonably be inferred that this 'something' was

knowable and that the defendant was in a position to know it." *IOTEX Commc'ns., Inc. v. Defries*, 1998 Del. Ch. LEXIS 236, 12-13 (Del. Ch. Dec. 21, 1998). Speculative conclusions unsupported by fact do not allege fraudulent conduct. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207-11 (Del.Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007).

In sum, JPMC's frivolous fraud claim is exactly the sort of speculative claim that Rule 9(b) is intended to prevent – spurious charges of fraudulent behavior made with unspecific, broad-brush generalities. For these reasons, and because it simply fails to plead a false representation, Count IV should be dismissed.

### D.    Count IV Fails to Plead Reliance

Under Washington law, a plaintiff asserting a fraud claim must plead and prove that it justifiably relied on allegedly fraudulent misrepresentations. *See Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996). Here, JPMC cannot plead this element because the misrepresentations and omissions it alleges were carried out by officers and directors of WMB fsb – the very party for whom JPMC is ostensibly asserting Count IV. All of the misrepresentations pled in Count IV were purportedly made by Mr. Williams or Mr. Casey (Amended Counterclaims ¶ 95), individuals that JPMC itself admits two paragraphs later were also an officer and a director of WMB fsb, respectively. (Amended Counterclaims ¶ 98.) Therefore, to the extent WMB fsb relied upon such misrepresentations, it relied upon itself and its own senior management, not upon WMI. As a matter of law, an entity "cannot rely on misrepresentations unless its agents or employees rely on those misrepresentations." *Bank of China v. NBM LLC*, 359 F.3d 171, 179 (2d Cir. 2004). It follows that if an entity's officers were aware of, and in fact participated in a defendant's allegedly fraudulent activities, then neither they, nor the entity could have relied on the purported misrepresentations. *See id.*

*Trenwick* is instructive here. In *Trenwick*, the Court of Chancery dismissed a common law fraud claim, brought by a trust litigating on behalf of a debtor, Trenwick America, against the debtor's directors, due to (among other things) a failure to plead reliance. 906 A.2d at 207, 211. The court found that the plaintiff's "extremely odd claim" "depend[ed] on the notion that Trenwick America's controlling stockholder, Trenwick, and Trenwick America's board, in particular, Billett, who was on [Trenwick's] board as well, knew facts about Trenwick America that they concealed from Trenwick America." *Id.* at 207. Because Trenwick America's directors knew the true facts about all the issues said to have been misrepresented, the court found that "Trenwick America - as an entity - did not rely to its detriment on any of the misstatements, despite the cursory statement in the complaint" to the contrary. *Id.* at 211. The court found that the allegation of reliance made "no sense because the complaint alleges that those who controlled Trenwick America knew the statements were inaccurate." *Id.* at 211-12. Confidently, the court summed up the deficiency of the fraud claim: "The reason is simple, the entity would not have been relying to its detriment on the fraudulent statement because its controllers were aware of the actual state of affairs." *Id.*

Just as in *Trenwick*, Count IV depends on the notion that WMB fsb's controlling shareholder, WMI, and Mr. Williams or Mr. Casey, individuals who were officers and directors of both parent WMI and WMB fsb, knew that WMB would be "shortly seized by regulators", would not be "financially able to repay the money" that was being loaned to WMB fsb, and that funds associated with the transfer "did not belong to WMI". (Amended Counterclaims ¶¶ 87, 97.) JPMC alleges that the purported bad actors, officers and directors of the purportedly damaged entity – WMB fsb – made misrepresentations they knew were inaccurate and/or concealed facts from WMB fsb. However, Mr. Williams or Mr. Casey could not have relied

upon statements they themselves purportedly made and knew to be inaccurate. In turn, WMB fsb could not have relied upon such statements. Similarly, neither Mr. Williams, Mr. Casey, nor WMB fsb could have concealed facts from themselves. For all of these reasons, Count IV fails to plead reliance and for that reason the claim must be dismissed.

### E. Count IV is Barred by *In Pari Delicto*

Count IV must also be dismissed based on the doctrine of *in pari delicto, potior est conditio defendentis* ("in pari delicto"). *See Sturm v. Boker*, 150 U.S. 312 (1893). "The general rule of in pari delicto is that when the parties are of equal guilt" – that is, where a plaintiff participates in the same wrongdoing as the defendants – "the defendant will prevail." *Metro. Mortgage & Sec. Co. v. PricewaterhouseCoopers, LLP*, 2005 U.S. Dist. LEXIS 39851, at 15-16 (E.D. Wash. Dec. 21, 2005); *Golberg v. Sanglier*, 639 P.2d 1347, 1353(Wash. 1982). As the U.S. Supreme Court has explained, the modern common law has "expanded the defense's application to situations more closely analogous to those encompassed by the 'unclean hands' doctrine, where the plaintiff has participated 'in some of the same sort of wrongdoing' as the defendant." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988). JPMC "stands in the shoes" of WMB fsb, and is subject to in pari delicto to the same extent as WMB fsb would be. *Cf. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001) (finding in pari delicto applicable to trustees and creditors' committees standing in the shoes of the debtor).

The in pari delicto defense may be applied on a motion to dismiss where the complaint "establishes conclusively" that the defense applies. *In re Dublin Secs., Inc.*, 133 F.3d 377, 380 (6th Cir. 1997) (dismissing complaint upon finding that the complaint conceded the debtors' instrumental role in perpetrating fraud on investors). Here, in pari delicto is clearly applicable. In certain instances, in applying in pari delicto, courts have weighed the respective culpability of the plaintiff and the defendant. Such an analysis is unnecessary here because, as plead, both

WMI and WMB fsb are of equal guilt. As alleged, Count IV concedes that directors and officers of WMB fsb engaged in the alleged wrongdoing. JPMC's theory is based upon imputing Messrs. Williams's and Casey's conduct to WMI. However, Messrs. Williams and Casey, officers and directors of WMB fsb in addition to WMI, both were agents possessing sufficient, actual authority such that their knowledge and conduct must also be imputed to WMB fsb. *See Denaxas v. Sandstone Court of Bellevue*, 63 P.3d 125, 130 (Wash. 2003).[18] The result is that in pari delicto precludes Count IV because the facts as pled indicate that WMB fsb participated in the allegedly harmful transaction to the same extent as WMI.

## III. COUNTS I AND VI SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AND PURSUANT TO THE LAW OF THE CASE

In Counts I and VI, JPMC requests a declaratory judgment finding that (i) the Debtors "are bound by the disallowance of their claim" to their Deposits and to the Other Assets and "have no right to assert such a claim against JPMC", and (ii) "any challenge by Debtors to the disallowance of their claim to the [Debtors' Deposits and Other Assets] must proceed" in the DC Action. (Amended Counterclaims ¶¶ 74, 113.) In essence, JPMC is now asserting that the Turnover Action and the Debtors' Counterclaims are barred by the FDIC's disallowance of the DC Claims, notwithstanding the fact that such claims are clearly distinct from each other as recognized by this Court and the Court of Appeals for the Third Circuit. JPMC's claims must be dismissed based on the law of the case doctrine and because they fail to state a claim upon which relief can be granted.

---

[18] State law generally provides the substantive law governing imputation for state law claims. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 84, 85, 87-89 (1994) (holding, in the FDIC receivership context, that, without an "explicit federal statutory provision" or special federal interest, state law "governs the imputation of knowledge to corporate victims of alleged negligence").

## A.     JPMC's Counterclaims Ignore the Law of the Case

In determining that the "first filed rule" was inapplicable to the Turnover Action, the

Court has already rejected Counts I and VI of the Amended Counterclaims pursuant to its

determination that the Debtors' claims asserted in the Turnover Action (and the Debtors'

Counterclaims) are separate and distinct claims from the DC Claims and therefore, not barred by

the FDIC's Disallowance Notice.  Specifically, this Court has already correctly recognized that

the DC Action and the Turnover Action "are not . . . dealing with the same claims . . . [but] are

distinct claims against distinct parties." (Tr. 6/24/09 at 94-95.)  Thus, the underpinnings of

JPMC's strained legal theory have already been rejected by this Court.

JPMC is fully aware of the fact that by asserting Counts I and VI, it is raising the same

allegations already set forth and rejected by this Court on June 24, 2009.  As clear and

convincing evidence of this, JPMC's Statement of Issues Presented ("Statement of Issues") filed

with the Court for transmittal to the District Court for the District of Delaware, in connection

with JPMC's appeal of this Court's rulings, includes Counts I and VI's assertions as issues for

which JPMC seeks appeal.  *See* JPMC Statement of Issues Presented and Designation of Record

on Appeal [Dkt. Nos. 89, 90].[19]   The Statement of Issues sets forth the following issue:  "Does

FIRREA bar these Debtors, who have availed themselves of the FIRREA claims process, whose

claims have been disallowed, and when their appeal of that disallowance is pending before the

D.C. District Court, from bringing separate claims, this time as against a purchaser from the

FDIC, to collaterally attack in the Bankruptcy Court the disallowance of their claims?"

(Statement of Issues ¶ 2.)  Counts I and VI assert the identical theory:  that the Debtors "asserted

a claim . . . in the Receivership and [their] claims were disallowed by the Receiver"; "WMI is

---

[19]      A copy of the Statement of Issues is attached hereto as **Exhibit 6**.

currently challenging the disallowance of its claims in the D.C. Action to the same assets"; the Debtors "have no right to assert such a claim against JPMC"; and the Debtors "are bound by the disallowance." (Amended Counterclaims ¶¶ 71-74, 110-13.) Thus, at the same time JPMC is seeking to appeal this Court's ruling that the claims are distinct claims asserted against distinct parties – the assertion of which would not constitute a collateral attack of the FDIC's disallowance – it is unabashedly re-asserting its rights on the issue via the Amended Counterclaims.

The issue was fully-briefed, argued, and ruled upon by this Court. The determination that the claims were distinct was integral to the Court's finding regarding the inapplicability of the "first filed" rule and its ultimate denial of the FDIC's and JPMC's motions to stay. JPMC's claim that the Debtors "have no right to continue to claim" the Deposits or the Other Assets is in direct contravention of this Court's findings on June 24, 2009 and therefore should be dismissed pursuant to the law of the case doctrine. *See Smith*, 165 Fed. Appx. at 965 & n.8 ("[W]hen a court decides upon a rule of law, the decision should continue to govern the same issues in subsequent stages in the same case.").

**B.      Amended Counterclaims I and VI Fail to State a Claim**

JPMC seeks a judgment that the Debtors "are bound by the [FDIC's] disallowance of their claim to the [Deposit Accounts and the Other Assets] and have no right to assert such a claim against JPMC to the same assets." (Amended Counterclaims ¶¶ 74, 113.) Notwithstanding JPMC's willfully blind eye, the Debtors' claims are clearly distinct from the DC Claims (disallowed by the FDIC and challenged in the DC Action) and are asserted not against assets of the failed depository institution – WMB – but against assets to which JPMC asserts title. There is no theory of law – under the FDI Act or otherwise – that would function to bar the Debtors' assertion of claims distinct from claims previously asserted and disallowed by the

33

FDIC. The FDIC's disallowance has no legal effect on the Debtors' distinct claims asserted against JPMC and not subject to the FDI Act claims procedure, which procedure only concerns claims against a failed depository institution in receivership. *See generally* 12 U.S.C. § 1821(d)(3)-(13) (administrative claims procedure contemplates claims of a "depository institution's creditors"); *see also Rosa v. R.T.C.*, 938 F.2d 383 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991) (recognizing the distinction between claims asserted against a successor bank concerning assets acquired from the FDIC as receiver for a failed depository institution and distinct claims based upon substantially identical legal theories as asserted against the failed depository institution in receivership).

It is well settled – and hardly remarkable – that the FDI Act's administrative claims procedure concerns claims against failed depository institutions in receivership. *See Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 386 (3d Cir. 1994) ("the administrative claims procedure of FIRREA contained in § 1821 (d)(3), (d)(5) and (d)(6) addresses a debtor-creditor relationship"); *FDIC. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3d Cir. 1991) ("FIRREA's claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over *any claim to a failed bank's assets* that are made outside [such procedures].") (emphasis added); *Rosa*, 938 F.2d at 394-95 ("The claims procedure provides RTC with the authority to determine claims, to allow and disallow claims, and to pay creditor claims") (internal quotations and citations omitted); *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998) (12 U.S.C. § 1821(d)(6) "provides for administrative determination of 'any claim against a depository institution for which the Corporation is receiver' and thereafter for adjudication in district court"). Courts are clear that with respect to claims for assets which the FDIC does not purport to own, the FDI Act's administrative claims procedures, and its

jurisdictional bar, are simply inapplicable. Indeed, any application of such procedures would be

"absurd." *See FDIC v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("It would be absurd for us

to interpret [the FDI Act's jurisdictional bar] as assignable to the current holder [of former asset

of failed depository institution]. The claim procedures articulated in 12 U.S.C. § 1821(d)(5)-(11)

are predicated on the FDIC's possession of the property in question. When the FDIC

relinquishes ownership, the procedures governing its role as a receiver no longer apply to the

property."). This is exactly the case with respect to each of the Deposits and the Other Assets –

assets the FDIC and JPMC claim to have been transferred to JPMC pursuant to the P&A

Transaction. Thus, just as JPMC had no legal basis to argue that the jurisdictional bar applied to

claims against such assets, it has no legal basis to argue that the disallowance of the Debtors' DC

Claims (against separate assets – those in receivership) has any implication whatsoever on claims

against JPMC. *Hudson United Bank v. Chase Manhattan Bank of Conn.*, 43 F.3d 843, 849-50

(3d Cir. 1994) (finding that the administrative claims procedure and the jurisdictional bar have

"concurrent scope").

Specifically, the Turnover Action has nothing whatsoever to do with the assets of WMB

or any debtor-creditor relationship between WMI and WMB – the depository institution in

receivership. First, prior to the receivership of WMB, the great majority of the Deposits were in

an account at WMB fsb, a bank that was not seized by the FDIC and whose assets were never

part of the receivership estate. Second, any Deposits that were in receivership have been

assumed by JPMC and no longer are in receivership. Thus, the Turnover Action names JPMC as

the sole defendant, and not the FDIC. As already made clear to this Court in determining the

inapplicability of the FDI Act's jurisdictional bar, the Debtors' Turnover Action is not a case

involving "the assets of [a] depository institution" in receivership. As such, the Turnover Action

– and the claims asserted therein – are not subject to the FDI Act's administrative claims procedure.

The same is true with respect to the Debtors' Counterclaims. The Debtors seek declaratory relief that the Other Assets (which JPMC asserts to have purchased pursuant to the P&A Agreement) are in fact property of their estates. The Debtors also assert various avoidance actions against JPMC as subsequent transferee seeking to avoid preferential and fraudulent transfers of estate assets. These are distinct claims as specifically contemplated by the Bankruptcy Code. *See* 11 U.S.C. § 550(a) (providing for recovery by transferor from "any immediate or mediate transferee of such initial transferee"). The FDI Act does not operate as a bar to such actions. *See In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840, at *18 (Bankr. N.D. Tex. June 19, 1990) ("Congress can, but has not provided that Section 548 of the Bankruptcy Code not apply to FDIC bank assistance packages given under Section 13(c) of the Federal Deposit Insurance Act."). The Debtors' Counterclaims, as is the Turnover Action, are distinct from the DC Claims, and there is no legal basis to find that the Disallowance Notice operates to bind these distinct claims.[20]

---

[20] Even assuming that the Turnover Action and the Debtors Counterclaims were in fact reasserting the DC Claims, which they are clearly not, the FDIC's disallowance would not operate to "bind" any subsequent challenge. Title 12 provides that a court's review is *de novo*, moreover, and is without deference to the FDIC's disallowance of the claim. *See, e.g., Rosa*, 938 F.2d at 393 ("claims are subject to de novo judicial action following the initial determination by RTC"); *Bueford v. RTC*, 991 F.2d 481, 486 (8th Cir. 1993) ("FIRREA is not a model of statutory clarity . . . However, a reading of the statute as a whole clearly spells out when and how judicial review is available. We are particularly persuaded by the interpretation advanced by other circuits that section 1821(d)(5)(E) directs the district courts to analyze claims against failed banking institutions de novo"); *In re Emerald Int'l Invs., Inc.*, 190 B.R. 701, 703 (S.D. Fla. 1995) ("Congress instructed district courts to determine claims against failed banks *de novo* rather than merely to review the receiver's initial determination for error or abuse of discretion"); *RTC v. Elman*, 761 F.Supp. 245, 247 (S.D.N.Y. 1991) ("If the claimant is unhappy with the outcome of the initial claim review procedure, she may request either an administrative review in accordance with the statute, or file suit on that claim and obtain a de novo judicial review of the RTC's initial
(footnote continued)

One can infer that JPMC's absurd claims are based upon the inapposite holding of the

Sixth Circuit in *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008). In

*Oakwood*, a case that is not controlling on this Court, the claimants conceded that they "failed to

comply with the administrative-claims process" under the FDI Act and the court refused to allow

the claimants to dress up those same claims and assert them against a third party successor bank.

*Id.* at 386 ("Moreover, because the claims that the Uninsured Depositors are attempting to assert

are disallowed as a result of their failure to comply with the administrative-claims process, they

have no further rights or remedies ***with respect to such claims*** despite the fact that they purport

to bring them against State Bank rather than the FDIC") (emphasis added and internal quotation

omitted). Integral to the court's holding was its determination that the putative claimants had no

valid claim against the purchasing bank. Unlike here, however, the *Oakwood* plaintiffs,

uninsured depositors of the failed bank, held deposits that were not transferred by the purchase

and assumption agreement between the FDIC and the successor bank. *Id.* at 375-76. Thus,

although the plaintiffs ostensibly brought suit against the successor bank, they had no viable

claim for their deposits against that successor institution and were in reality pursuing relief

available only through the receivership. The court recognized that the plaintiffs were pursuing

an "attempt to recover the value of their uninsured deposits." *Id.* at 375. The court therefore

applied the FDI Act's jurisdictional bar and rejected plaintiffs' argument that their claims were

not "claims against a depository institution for which the [FDIC] was receiver." *Id.* at 386. By

contrast, the Debtors in the Adversary Proceedings are asserting claims against JPMC, as this

Court has already found, and as the Third Circuit in *Rosa* recognized. Clearly, *Oakwood* does

---

determination. . . .In addition, the statute provides for expedited determination of claims by the
RTC in certain instances.") (internal citations omitted).

not stand for the (potentially boundless) proposition that the disallowance of the Debtors' claims by the FDIC "binds" the Debtors from asserting distinct claims against third parties, such as JPMC.[21]

JPMC also seeks a declaration that "any challenge by Debtors to the disallowance of their claim[s]" must proceed in the DC Action. This request only highlights the absurdity of the first prong of JPMC's claim. The Debtors are doing just that in the District Court for the District of Columbia. However, they are challenging the FDIC's disallowance only with respect to the DC Claims asserted against, and disallowed by, the FDIC – claims distinct from those asserted against JPMC in the Adversary Proceedings.

*(Remainder of page intentionally left blank)*

---

[21]    JPMC's legal theory would lead to absurd results, requiring every former WMB depositor to have filed a claim with the FDIC. Any depositor that failed to file such a claim, or any depositor whose claim was disallowed by the FDIC, would be "bound" by such disallowance, having effectively foregone its deposit which would amount to an undeserved multi-billion dollar windfall for JPMC – the assumer of all of WMB's deposit liabilities.

## CONCLUSION

For the reasons discussed, Debtors respectfully request that the Court grant the Motion

and dismiss JPMC's Counterclaims with prejudice.


Dated: August 24, 2009          **ELLIOTT GREENLEAF**
        Wilmington, Delaware

                     /s/ Neil R. Lapinski
               Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
               Neil R. Lapinski (DE Bar No. 3645)
               Shelley A. Kinsella (DE Bar No. 4023)
               1105 North Market Street, Suite 1700
               Wilmington, Delaware 19801
               Telephone:  (302) 384-9400
               Facsimile: (302) 384-9399
               E-mail:  rxza@elliottgreenleaf.com
               E-mail:  nrl@elliottgreenleaf.com
               E-mail:  sak@elliottgreenleaf.com

               -and-

               QUINN EMANUEL URQUHART
               OLIVER & HEDGES, LLP
               Peter E. Calamari
               Michael B. Carlinsky
               Susheel Kirpalani
               David Elsberg
               51 Madison Avenue
               New York, New York 10010
               Telephone:  (212) 849-7000
               Facsimile:  (212) 849-7100

               *Special Litigation and Conflicts Co-Counsel to Washington Mutual, Inc. and WMI Investment Corp.*