# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------- x
------                                             :    Chapter 11
In re                                              :
                                                   :    Case No. 08-12229 (MFW)
WASHINGTON MUTUAL, INC., et                        :
al.,¹                                              :    Jointly Administered
                                                   :
                                                   :
        Debtors.                                   x
                                                   :
------------------------------------------------- :    Adversary Proceeding No. 09-50934
------                                             :    (MFW)
WASHINGTON MUTUAL, INC. AND                        :
WMI INVESTMENT CORP.,                              :
                                                   :
        Plaintiffs and Counterclaim                :
        Defendants,                                :
                                                   :
               v.                                  :
                                                   :
JPMORGAN CHASE BANK,                               :
NATIONAL ASSOCIATION,                              x
                                                   :
        Defendant and Counterclaimant.             :
------------------------------------------------- :
------

                                                   x
                                                   :
                                                   :
                                                   :
```

---

¹       The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).  The Debtors continue to share the principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

```
------------------------------------------------  :
------                                            :
                                                  :
JPMORGAN CHASE BANK,                              :
NATIONAL ASSOCIATION,                             :
                                                  :
        Cross-Claimant,                           :
                                                  :
        v.                                        :
                                                  :
FEDERAL DEPOSIT INSURANCE                         :
CORPORATION, as Receiver of                       :
Washington Mutual Bank, Henderson,            x
Nevada,
        Cross-Claim Defendant.
------------------------------------------------
------
```

## ANSWERING BRIEF OF DEFENDANT JPMORGAN CHASE BANK, N.A. TO DEBTORS' MOTION TO DISMISS AMENDED COUNTERCLAIMS

Adam G. Landis (I.D. 3407)
Matthew B. McGuire (I.D. 4366)
LANDIS RATH & COBB LLP
919 Market Street Suite 1800
Wilmington, Delaware 19899
Tel:  (302) 467-4400

– and –

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067
Tel:  (310) 712-6600

Bruce E. Clark
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000

*Counsel for JPMorgan Chase Bank, National Association*

September 8, 2009

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT ..................................................................................2

ARGUMENT ..........................................................................................................5

I.     THIS COURT IS DIVESTED OF JURISDICTION TO CONSIDER DEBTORS' MOTION TO DISMISS THOSE CLAIMS ..................................6

II.    JPMC'S COUNTERCLAIMS ARE PROPER..................................................8

     A.    JPMC's Compulsory and Permissive Counterclaims Are Proper..........9

     B.    Debtors' Characterization of JPMC's Counterclaims as Duplicative and Contrary to this Court's Rulings Is Inaccurate and Not Grounds for Dismissal. ....................................................................17

III.    COUNT ONE AND COUNT SIX EACH STATES A VALID CLAIM UPON WHICH RELIEF CAN BE GRANTED. ...........................................19

IV.    JPMC'S FRAUD CLAIM (COUNT FOUR) IS PROPERLY PLEADED. ....22

     A.    The Bar Date Does Not Preclude JPMC's Fraud Claim......................22

     B.    The Fraud Claim is Plead With the Requisite Particularity.................28

     C.    Reliance is Properly Pleaded Because the Interests of Messrs. Williams and Casey Were Adverse to the Interests of WMB fsb........32

     D.    The Fact-Intensive Affirmative Defense of *In Pari Delicto* Does Not Bar the Fraud Claim....................................................................34

     E.    Damages Are Properly Pleaded In Accordance with Rule 9(b). .........36

CONCLUSION......................................................................................................39

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abercrombie* v. *Andrew College*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006).................................................................................28

*Ariav* v. *Mesch, Clark, & Rothschild, P.C.*,
No. CV 03-464-TUC-MHM, 2005 WL 3008616 (D. Ariz. Nov. 8, 2005) ...............................8

*Arizona* v. *San Carlos Apache Tribe of Arizona*,
463 U.S. 545 (1983).................................................................................................14

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009).............................................................................................6

*Astropower Liquidating Trust* v. *KMPG LLP*,
Civ. A. No. 06-469-JJF, 2007 WL 1549048 (D. Del. May 25, 2007) .............................35

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007)................................................................................................6

*Brach* v. *Amoco Oil Co.*,
677 F.2d 1213 (7th Cir. 1982) .................................................................................16

*Bracken* v. *Matgouranis*,
296 F.3d 160 (3d Cir. 2002).....................................................................................20

*Bro-Tech Corp.* v. *Thermax, Inc.*,
No. 05-cv-2330, 2009 WL 737349 (E.D. Pa. Mar. 19, 2009) ...........................10, 16

*Carino* v. *Stefan*,
376 F.3d 156 (3d Cir. 2004)......................................................................................29

*Citizens Bank of Maryland* v. *Strumpf*,
516 U.S. 16 (1995)..................................................................................................15

*Colorado River Water Conservation Dist.* v. *United States*,
424 U.S. 800 (1976)................................................................................................18

*Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*,
186 F. Supp. 2d 567 (E.D. Pa. 2002)..........................................................................7

-ii-

*Cottman Trans. Sys., Inc.* v. *Dubinsky*,
   95 F.R.D. 351 (E.D. Pa. 1982)........................................................................31

*Crown Kent, L.L.C.* v. *First Western Investments, Inc.*,
   No. 40906-9-I, 1998 WL 808256 (Wash. Ct. App. Nov. 23, 1998) ........................31

*Death Row Prisoners of Penn.* v. *Ridge*,
   948 F. Supp. 1282 (E.D. Pa. 1996) ..............................................................6, 7

*Delta Dev. & Inv. Co.* v. *Hsiyuan*,
   2002 WL 31748937 (Wash. Ct. App. Dec. 9, 2002) ...........................................33

*Dussault ex rel. Walker-Van Buren* v. *Am. Int'l Group, Inc.*,
   99 P.3d 1256 (Wash. Ct. App. 2004)................................................................31

*Geddes* v. *Anaconda Copper Mining Co.*,
   254 U.S. 590 (1921) ...................................................................................33

*Great Lakes Rubber Corp.* v. *Herbert Cooper Co., Inc.*,
   286 F.2d 631 (3d Cir. 1961).....................................................................10, 14

*Griggs* v. *Provident Consumer Discount Co.*,
   459 U.S. 56 (1982)....................................................................................2, 6

*Iadanza* v. *Mather*,
   820 F. Supp. 1371 (D. Utah 1993)...................................................................36

*In re Am. Bus. Financ. Serv., Inc.*,
   384 B.R. 80 (Bankr. D. Del. 2008) .................................................................38

*In re Astropower, Inc.*,
   335 B.R. 309 (Bankr. D. Del. 2005) ...............................................................34

*In re AWC Liquidation Corp.*,
   292 B.R. 239 (D. Del. 2003) ...........................................................................7

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
   896 F.2d 54 (3d Cir. 1990)............................................................................15

*In re Burlington Coat Factory Secs. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)...........................................................................5

*In re Calderone*,
   166 B.R. 825 (Bankr. W.D. Pa. 1994) .............................................................28

*In re DiLoreto*,
   277 B.R. 607 (Bankr. E.D. Pa. 2000) ................................................................3

*In re Edison Bros. Stores, Inc.*,
   No. 99-532 (JCA), 2002 WL 999260 (Bankr. D. Del. May 15, 2002) ....................................22

*In re First New England Dental Ctrs., Inc.*,
   291 B.R. 229 (D. Mass. 2003) .............................................................................28

*In re Fulcrum Direct, Inc.*,
   No. 98-1767, 2003 WL 1878070 (Bankr. D. Del. 2003) .............................................9

*In re Initial Public Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003) .....................................................................37

*In re Int'l Horizons, Inc.*,
   751 F.2d 1213 (11th Cir. 1985) .............................................................................26

*In re Integrated Res., Inc.*,
   157 B.R. 66 (S.D.N.Y. 1993) ................................................................................25

*In re Kolstad*,
   928 F.2d 171 (5th Cir. 1991) ................................................................................27

*In re Lehigh Valley Prof'l Sports Clubs, Inc.*,
   No. 00-11296DWS, 00-0173, 2002 WL 975876 (Bankr. E.D. Pa. Feb. 4, 2002) .........18, 2325

*In re LG.Phillips Displays USA, Inc.*,
   395 B.R. 864 (Bankr. D. Del. 2008) .......................................................................9

*In re MacMillan, Inc.*,
   186 B.R. 35 (Bankr. S.D.N.Y. 1995) ......................................................................23

*In re Mazzocone*,
   Civ. A. No. 94-5201, 1995 WL 113110 (E.D. Pa. Mar. 16, 1995) ..............................6

*In re Metro Transp. Co.*,
   117 B.R. 143 (Bankr. E.D. Pa. 1990) ..............................................................23-24

*In re Norvergence, Inc.*,
   405 B.R. 709 (Bankr. D. N.J. 2009) .......................................................................35

*In re Philip Servs. (Del.), Inc.*,
   267 B.R. 62 (Bankr. D. Del. 2001) ........................................................................27

*In re Porter*,
   295 B.R. 529 (Bankr. E.D. Pa. 2003) .....................................................................18

*In re Reading Broadcasting, Inc.*,
   390 B.R. 532 (Bankr. E.D. Pa. 2008) .....................................................................36

*In re Sacred Heart Hosp. of Norristown*,
    133 F.3d 237 (3d Cir. 1998)................................................................2, 7, 8

*In re Sacred Heart Hosp. of Norristown*,
    204 B.R. 132 (E.D. Pa. 1997) ....................................................................7

*In re Tel. Co. of Cent. Fla.*,
    308 B.R. 579 (Bankr. M.D. Fla. 2004) ....................................................26

*In re Washington Mutual, Inc.*,
    Case No. 08-12229 (MFW) (Bankr. D. Del. Mar. 30, 2009)....................37

*Jama* v. *Esmore Corr. Serv., Inc.*,
    No. Civ. 97-3093 DRD, 2005 WL 2901899 (D. N.J. Nov. 1, 2005) .........6

*Leveto* v. *Lapina*,
    258 F.3d 156 (3d Cir. 2001).....................................................................35

*Lum* v. *Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)................................................................28-29

*Meadors* v. *Walter*,
    58 F.R.D. 634 (W.D. Pa. 1973) ...............................................................16

*Morel* v. *INS*,
    144 F.3d 248 (3d Cir. 1998).....................................................................21

*Oates* v. *Taylor*,
    199 P.2d 924 (Wash. 1948)......................................................................31

*Official Comm. of Unsecured Creditors* v. *R.F. Lafferty & Co., Inc.*,
    267 F.3d 340 (3d Cir. 2001)................................................................33, 35

*Pepper* v. *Litton*,
    308 U.S. 295 (1939).................................................................................26

*Plant* v. *Blazer Fin. Servs., Inc. of Ga.*,
    598 F.2d 1357 (5th Cir. 1979) .................................................................14

*Polycast Tech. Corp.* v. *Uniroyal, Inc.*,
    728 F. Supp. 926 (S.D.N.Y. 1989) ..........................................................31

*Post* v. *Maryland Cas. Co.*,
    97 P.2d 173 (Wash. 1939).................................................................33, 35-36

*Rochez Bros., Inc.* v. *Rhoades*,
    491 F.2d 404 (3d Cir. 1973).....................................................................27

*S & C Rest. Corp.* v. *Sofia's Diner Rest., Inc.*,
 No. Civ. A. 98-5972, 1999 WL 627914 (E.D. Pa. Aug. 18, 1999)............................29

*Stewart* v. *Donges*,
 915 F.2d 572 (10th Cir. 1990) .................................................................................8

*Tara M.* v. *City of Philadelphia*,
 No. Civ. A. 97-1041, 1998 WL 464910 (E.D. Pa. Aug. 6, 1998).............................19

*Travelers Cas. & Sur. Co. of Am.* v. *A.G. Cullen Constr.*,
 Civ. A. No. 07-0765, 2008 WL 4816477 (W.D. Pa. Nov. 4, 2008) ........................36

*Trenwick Am. Litig. Trust* v. *Ernst & Young, LLP*,
 906 A.2d 168 (Del. Ch. 2006).................................................................................33

*United States* v. *Leppo*,
 634 F.2d 101 (3d Cir. 1980).............................................................................2, 6, 7

*United States* v. *Stavriotis*,
 129 B.R. 527 (N.D. Ill. 1991), *aff'd*, 977 F.2d 1202 (7th Cir. 1992)......................25

*United States* v. *Thermo Contracting Corp.*,
 437 F. Supp. 195 (D. N.J. 1976) ......................................................................14, 16

*Washington Mutual, Inc., et al.* v. *FDIC*,
 Civil Action No. 1:09-cv-00533 (RMC) (the "D.C. Action") ........................ *passim*

*Watson* v. *Abington Twp.*,
 No. Civ. A. 01-5501, 2002 WL 32351171 (E.D. Pa. Aug. 15, 2002)......................28

**STATUTES, RULES & REGULATIONS**

11 U.S.C. § 542.................................................................................................... *passim*

11 U.S.C. § 542(b) ....................................................................................................11

Financial Institutions Reform, Recovery, and Enforcement
 Act of 1989 ("FIRREA") ...................................................................3,14, 16, 20

12 C.F.R. § 563.161(a)(1) ..........................................................................................30

Fed. R. Bankr. P. 7013 ............................................................................................2, 12

Fed. R. Bankr. P. 7015 ............................................................................................2, 21

Fed. R. Bankr. P. 7042 ................................................................................................3

Fed. R. Bankr. P. 8001(a) ...........................................................................................20

Fed. R. Civ. P. 9(b) .................................................................................................27, 34

Fed. R. Civ. P. 13 ...................................................................................................2, 5, 13

Fed. R. Civ. P. 13(a)(1) .................................................................................................6

Fed. R. Civ. P. 13(a)(2)(A) .........................................................................................12

Fed. R. Civ. P. 13(b) ...................................................................................................13

Fed. R. Civ. P. 15 ...........................................................................................21, 22, 25

Fed. R. Civ. P. 15(a)(3) .................................................................................................2

Fed. R. Civ. P. 15(c)(1)(B) ..........................................................................................21

Fed. R. Civ. P. 42(b) ...........................................................................................3, 6, 16

## MISCELLANEOUS

OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF THE TREASURY, DIRECTORS'
RESPONSIBILITY GUIDE 16 (2008)......................................................................31

JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this Opposition to Debtors' Motion to Dismiss JPMC's Counterclaims (the "Motion").

## NATURE AND STAGE OF PROCEEDINGS

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (collectively, "Debtors") filed this turnover action against JPMC pursuant to 11 U.S.C. § 542 in an attempt to isolate a single claim that is inseparable from disputes between the parties already pending in two courts. In this proceeding, Debtors seek turnover of approximately $4 billion that was purportedly credited to six accounts (the "Disputed Accounts") at Washington Mutual Bank, Henderson, Nevada ("WMB") and Washington Mutual Bank fsb ("WMB fsb") as of the date the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for WMB. Debtors prematurely moved for summary judgment before any discovery was permitted to take place and without regard to the many factual and legal issues implicated by Debtors' claim to amounts credited to the Disputed Accounts. Debtors now ask the Court to dismiss all of JPMC's Amended Counterclaims ("JPMC's Counterclaims"), most of which are compulsory counterclaims, based on a series of arguments that lack substance. This is a further effort by Debtors to prevent JPMC from raising those intertwined and related issues for resolution in the same action as Debtors' claim, as the Federal Rules of Civil Procedure expressly contemplate and authorize. Debtors' Motion should be denied.

# SUMMARY OF ARGUMENT

1.      As a threshold matter, JPMC respectfully submits that this

Court does not have jurisdiction to rule on Debtors' motion to dismiss while the very

subject matter jurisdiction of the Court is being challenged on appeal. At the August

24, 2009 hearing, this Court clarified that its earlier ruling regarding subject matter

jurisdiction was "law of the case" and that claims involving JPMC are "not barred by

FIRREA." (B616, Aug. 24, 2009 Tr. at 105:19-25.) JPMC has appealed that ruling.

It is well-settled that "the filing of a notice of appeal is an event of jurisdictional

significance—it confers jurisdiction on the court of appeals and divests the

[bankruptcy] court of its control over those aspects of the case involved in the

appeal." *Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). This

rule applies to appeals under the collateral order doctrine, not just to appeals from

final judgments. *United States* v. *Leppo*, 634 F.2d 101, 104 (3rd Cir. 1980); *In re

Sacred Heart Hosp. of Norristown*, 204 B.R. 132, 143 (E.D. Pa. 1997). JPMC's

appeal involves this Court's subject matter jurisdiction to hear this action,[2] and

because subject matter jurisdiction is a necessary predicate to any ruling on the

pending motion, this Court is divested of subject matter jurisdiction to consider

Debtors' motion until the U.S. District Court for the District of Delaware resolves the

pending appeal.

---

[2]     *See, e.g.*, B377, JPMorgan Chase Bank, N.A.'s Statement in Support of Appeal Under the Collateral Order Doctrine Or, in the Alternative, Brief in Support of its Motion for Leave to Appeal at 25 (D.I. 79) ("If this Court were to determine that the Bankruptcy Court erred and the FIRREA jurisdictional bar did apply, this would require not just reversal of the Orders, but also dismissal of Debtors' Turnover proceeding for lack of subject matter jurisdiction and stay of [] JPMC's Adversary Proceeding.").

2.	In the event this Court proceeds to resolve Debtors' motion, JMPC's counterclaims must not be dismissed. Most of JPMC's Counterclaims are compulsory and the remainder are permissive. All are properly asserted in this adversary proceeding under Fed. R. Civ. P. 13, as made applicable by Fed. R. Bankr. P. 7013, and Debtors have identified no proper legal basis to dismiss any of them.[3]

3.	Debtors' argument that JPMC's Counterclaims create duplicative litigation that require their dismissal is simply wrong. In electing to commence this turnover action and assert claims to ownership of amounts credited to the Disputed Accounts, Debtors themselves asserted claims that are duplicative of claims already pending in the JPMC Adversary Proceeding, and redundant of claims they are pursuing in *Washington Mutual, Inc., et al.* v. *FDIC*, Civil Action No. 1:09-cv-00533 (RMC) (the "D.C. Action"). If this proceeding goes forward—and JPMC believes it should not—there is no legal basis to preclude JPMC from asserting counterclaims that are within the scope of Fed. R. Civ. P. 13, state claims for relief, and fairly protect JPMC's rights. If at an appropriate time Debtors believe that specific claims or issues should be tried separately, they have the right to move this Court for that relief, including severance under Fed. R. Civ. P. 42(b), as made

---

[3]	Furthermore, Debtors' motion should be denied as untimely. On August 10, 2009, JPMC filed and electronically served its amended answer and counterclaims. Debtors' response to JPMC's Counterclaims was due on August 20, 2009, the same day that the FDIC filed its answer to the counterclaims. *See* Fed. R. Civ. P. 15(a)(3); Fed. R. Bankr. P. 7015; *In re DiLoreto*, 277 B.R. 607, 610 (Bankr. E.D. Pa. 2000) (noting that deadlines in bankruptcy proceedings must be "strictly enforced"). Debtors did not seek an extension of time to move or answer from the Court or from the parties, and did not file or serve this motion until August 24, 2009.

applicable by Fed. R. Bankr. P. 7042, if warranted. But none of this provides any basis for a motion to dismiss properly asserted counterclaims.

    4.  If the Court concludes it is not divested of jurisdiction, Count One and Count Six of JPMC's Counterclaims (seeking a declaratory judgment that Debtors are bound by the disallowance of their claims to the Disputed Accounts and the Other Assets,[4] respectively, and that any challenge to that disallowance must proceed in the D.C. Action) are properly pleaded and should proceed to a hearing on the merits. Debtors' overbroad position is effectively that this Court's ruling on June 24, 2009 (and the July 6, 2009 Order to that effect, the "July 6 Order"), bars all merits arguments under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") in this proceeding, and that any continued attempt to rely on FIRREA is precluded. However, the July 6 Order does not consider the effect of the disallowance by the receiver of Debtors' claim to the same assets they seek in this proceeding. Entirely apart from the July 6 Order, the Court may determine that the receiver's disallowance precludes a contrary claim here. And once this Court hears evidence on the scope of the FDIC's disallowance and the status of Debtors' challenge to that disallowance, it may determine that Debtors' claims belong in the D.C. Court. Likewise, once the Court determines that Debtors do not have any

---

[4]  The "Other Assets" include: (i) intercompany amounts in certain accounts not included in Debtors' turnover complaint; (ii) certain trust securities in an aggregate face amount of approximately $4 billion; (iii) tax refunds that WMB is or was entitled to receive; (iv) the proceeds of goodwill litigation; (v) ownership of certain Rabbi trusts and benefit plans; (vi) ownership of certain life insurance policies; (vii) ownership of certain class B shares of common stock in Visa, U.S.A., Inc.; and (viii) ownership or rights to certain intellectual property, contracts and intangible assets. (*See* B503-04, JPMC Counterclaims ¶ 108.)

ownership interest in various assets, including based upon the disallowance by the receiver, it may determine that Debtors' claims cannot be pursued against JPMC. None of these issues, however, is properly the subject of a motion to dismiss.

5.      Count Four of JPMC's Counterclaims contains a properly pleaded claim for fraud that may be prosecuted irrespective of the Bar Date in Debtors' chapter 11 proceedings (the "Bar Date"). The fraud claim is pleaded with sufficient particularity. It explicitly alleges facts that support a conclusion that WMB fsb (on whose behalf JPMC is suing as successor) justifiably relied on misrepresentations by WMI senior management who forced WMB fsb accept a $3.67 billion purported "deposit" without the delivery of good funds, while simultaneously requiring a "loan" of the funds that were never delivered, and that WMB fsb was damaged as a result. Debtors' response is to layer their contrary views of the facts over the allegations of the amended counterclaims. Debtors' factual allegations are neither accurate nor a proper basis for a motion to dismiss, which requires all facts and reasonable inferences from those facts to be viewed in JPMC's favor.

## **ARGUMENT**

Pending appeal, this court is deprived of jurisdiction to rule on Debtors' motion. However, in the event this court proceeds to resolve Debtors' motion, like any motion to dismiss, the Court must "accept[] all well pleaded allegations in the complaint as true, and view[] them in the light most favorable to plaintiff." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted); *see also Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555-56 (2007). Counterclaims for this purpose are treated like claims in a complaint.

## I. THIS COURT IS DIVESTED OF JURISDICTION TO CONSIDER DEBTORS' MOTION TO DISMISS THOSE CLAIMS.

In its July 6 Order, this Court found that it has subject matter jurisdiction to hear all claims involving JPMC because they are "not barred by FIRREA." (B616, Aug. 24, 2009 Tr. at 105:19-25.) JPMC has appealed the July 6 Order under the collateral order doctrine.[5] It is well-settled that "the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs*, 459 U.S. at 58 (emphasis added); *see also Leppo*, 634 F.2d at 104 (3rd Cir. 1980) ("Of course, in the absence of a finding that the motion is frivolous, the trial court must suspend its proceedings once a notice of appeal is filed."); *In re Mazzocone*, Civ. A. No. 94-5201, 1995 WL 113110, at *4 (E.D. Pa. Mar. 16, 1995). This same rule applies to orders that are immediately

---

[5]    JPMC has, alternatively, sought leave to pursue an interlocutory appeal. If that issue is reached and leave to appeal is granted, this Court would still be divested of jurisdiction to hear issues that are now before the U.S. District Court of the District of Delaware. *See, e.g., Jama* v. *Esmore Corr. Serv., Inc.*, No. Civ. 97-3093 DRD, 2005 WL 2901899, at *2 (D. N.J. Nov. 1, 2005) (holding that divestiture upon appeal "applies to interlocutory orders as well as final orders"); *Death Row Prisoners of Penn.* v. *Ridge*, 948 F. Supp. 1282, 1286 (E.D. Pa. 1996) ("If the law provides a party with a right to an interlocutory appeal . . . the normal rule of jurisdictional transfer will be applied with respect to those matters from which the appeal is taken."). Thus, JPMC's appeal as of right to the Delaware District Court divests this Court of jurisdiction over all matters covered by the appeal and, even if the District Court were subsequently to conclude that the collateral order doctrine does not apply, a decision by the District Court to permit JPMC to pursue an interlocutory appeal would equally divest this Court of jurisdiction.

appealable under the collateral order doctrine, unless they are frivolous. *See, e.g.,*
*Sacred Heart Hosp. of Norristown*, 204 B.R. at 143, *aff'd* 133 F.3d 237, 241 (3d Cir.
1998) (expressly recognizing the district court's holding that the "bankruptcy court
lacked jurisdiction over the adversary proceeding after . . . [an appeal] pursuant to the
collateral order" doctrine was brought); *Leppo*, 634 F.3d at 105 (on appeal of ruling
under collateral order doctrine, "in the absence of a finding that the motion is
frivolous, the trial court must suspend its proceedings once a notice of appeal is
filed"); *Death Row Prisoners of Penn. v. Ridge*, 948 F. Supp. 1282, 1286 (E.D. Pa.
1996); *Coregis Ins. Co.* v. *Law Offices Of Carole F. Kafrissen, P.C.*, 186 F. Supp. 2d
567, 574 (E.D. Pa. Feb 11, 2002). And this "fundamental tenet of federal civil
procedure"— that the filing of an appeal divests the lower court of jurisdiction over
matters covered by the appeal—applies with equal force to appeals from bankruptcy
courts. *In re AWC Liquidation Corp.*, 292 B.R. 239, 242 (D. Del. 2003) ("[T]he
filing of a notice of appeal from the final judgment of a trial court divests the trial
court of jurisdiction and confers jurisdiction upon the appellate court. This rule
applies with equal force to bankruptcy cases."); *Sacred Heart*, 204 B.R. at 143 ("The
filing of that notice of appeal automatically divested the bankruptcy court of
jurisdiction.").

Given the jurisdictional nature of the Court's July 6 Order, the filing of
JPMC's appeal under the collateral order doctrine divested this Court of jurisdiction
to proceed further with matters that would be within the scope of FIRREA's
jurisdictional bar as appealed. *See* Bankruptcy Rule 8001(a); *see also In re Sacred*
*Heart Hosp. of Norristown*, 204 B.R. 132, 143 (E.D. Pa. 1997) ("[Defendant]'s filing

of the notice of appeal . . . completely divested the bankruptcy court of jurisdiction because the issue in that appeal is a complete defense to the lawsuit. . . .").  Debtors concede that at least certain issues in this motion were the subject of JPMC's jurisdictional challenge and are likewise the subject of JPMC's pending appeal (and therefore cannot be reviewed by this Court), including Counterclaims I and IV that Debtors assert raise issues of law that were "fully-briefed, argued, and, ruled upon by this Court" in its July 6 Order.  (Mot. at 32-33.)  But, the divestiture of jurisdiction is broader than that.  JPMC's appeal challenges this Court's right to exercise subject matter jurisdiction over essentially all claims in this case.  Because as a predicate to ruling on this motion this Court would first have to find that FIRREA's jurisdictional bar does not deprive it of subject matter jurisdiction to proceed, this Court is divested of the ability to hear this motion until the pending appeal is resolved.  Where, as here, "the central issue in the appeal is the defendant's asserted right not to have to proceed to trial," no action should be taken that implicates this Court's uncertain jurisdiction, until that issue is resolved on appeal.  *Stewart* v. *Donges*, 915 F.2d 572, 574-75 (10th Cir. 1990); *see also Ariav* v. *Mesch, Clark & Rothschild, P.C.*, No. CV 03-464-TUC-MHM, 2005 WL 3008616, at *1 (D. Ariz. Nov. 8, 2005).

## II.     JPMC'S COUNTERCLAIMS ARE PROPER.

Even if this Court proceeds to resolve Debtors' motion, JPMC is permitted as a matter of law to assert its counterclaims in this turnover action.  Most of the Counterclaims are compulsory and several are permissive, but all are properly before the Court under Fed. R. Civ. P. 13, as made applicable to these proceedings by

Fed. R. Bankr. P. 13. Debtors' desire to isolate a single issue (turnover) they want determined and tried in a vacuum without regard to all of the other issues related to the Disputed Accounts is not a basis for dismissing counterclaims that are properly pleaded, relate to the same matters, and seek protection and adjudication of JPMC's rights. Debtors' (mis)characterization of these claims as duplicative, filed "to delay and bog down" proceedings (Mot. at 12), effectively a motion to amend JPMC's Adversary Proceeding (Mot. at 13), raising *Colorado River* abstention issues (Mot. at 11), and contrary to this Court's previous ruling (Mot. at 12), is completely at odds with the facts and procedural history and, in any event, not a basis for a motion to dismiss. Rather, if Debtors ultimately decide to move this Court for permission to proceed to trial on one or more claims, then at the appropriate time in advance of trial they have the right to move to sever or bifurcate issues for trial pursuant to Federal Rule of Civil Procedure 42(b).

### A. JPMC's Compulsory and Permissive Counterclaims Are Proper.

JPMC's Counterclaims are all properly asserted counterclaims. The ordinary rules governing the assertion of counterclaims apply to turnover actions as they do to other civil actions. *See, e.g., In re LG.Phillips Displays USA, Inc.*, 395 B.R. 864, 867 (Bankr. D. Del. 2008); *In re Fulcrum Direct, Inc.*, No. 98-1767, 2003 WL 1878070, at *7 (Bankr. D. Del. 2003) (defendant pleaded counterclaims in action seeking turnover pursuant to Section 542).

The Third Circuit has defined a compulsory counterclaim under Federal Rule 13(a)(1) to mean that the counterclaim bears a "logical relationship" to plaintiff's claims. *Great Lakes Rubber Corp.* v. *Herbert Cooper Co., Inc.*, 286 F.2d

631, 634 (3d Cir. 1961); *see also* Fed. R. Civ. P. 13(a)(1). Claims bear a "logical relationship" to each other "where separate trials . . . would involve a substantial duplication of effort and time by the parties and the courts" and involve "the same factual or legal issues." *Bro-Tech Corp.* v. *Thermax, Inc.*, No. 05-cv-2330, 2009 WL 737349, *3 (E.D. Pa. Mar. 19, 2009) (citing *Great Lakes Rubber Corp.*, 286 F.2d at 634).

Here, Counts One through Five of JPMC's Counterclaims are compulsory because they directly relate to the parties' interests in, and ownership of, the Disputed Accounts and any actual funds in those Accounts. These five counterclaims have far more than a mere "logical relationship" to Debtors' claim seeking turnover under Section 542 of amounts credited to the Disputed Accounts, indeed they are wholly intertwined, both factually and legally, with Debtors' claim. Debtors' argument that these claims are not properly brought as counterclaims is baseless.

Count One concerns Debtors' right to proceed with this claim in light of the FDIC's disallowance of their "Deposit Claim" in the receivership proceeding. As the Court will recall, on December 30, 2008, Debtors filed claims in the receivership for, among other things, ownership of the Disputed Accounts and funds credited to those accounts. On January 23, 2009, the receiver disallowed Debtors' claims. On March 20, 2009, Debtors commenced an action in the United States District Court for the District of Columbia seeking, among other things, to overturn

the receiver's disallowance of their claims to the Disputed Accounts.[6]  Count One

seeks a declaration that gives effect to the disallowance of Debtors' claim to the

Disputed Accounts.  Debtors' disallowed claim in the D.C. Action is directly

intertwined with Debtors' affirmative claim in this action and involves the same

underlying facts and questions of law that must be considered in determining whether

Debtors' claim is cognizable or can succeed on its merits.  Discovery will show the

scope of that disallowance and permit the parties to litigate its preclusive effect.

Count Two seeks, among other things, a determination that there is no

valid deposit liability due to Debtors.  Again, this counterclaim implicates the same

facts that must be determined in order to adjudicate Debtors' turnover claim—

whether amounts credited to the Disputed Accounts are deposit liabilities due to

Debtors as they assert.  This includes, among other things, the facts involving the

establishment of the Disputed Accounts, determination of whether amounts credited

to the accounts represent actual funds or otherwise, determination of whether any

such funds belong to persons other than Debtors, and determination of the effect of

the highly suspect purported transfer of a $3.67 billion deposit liability from WMB to

WMB fsb through a roundtrip transaction using only book entries (the "$3.67 Billion

Book Entry") on the eve of receivership, which purported to create more than 90% of

the alleged deposit liability being claimed by Debtors.  It also involves the same legal

issues that the Court will be required to consider in adjudicating Debtors' claims—

laws relating to establishing deposit accounts, rights of financial institutions in

---

[6]     On July 13, 2009, the FDIC named JPMC as a defendant to certain
counterclaims asserted in the D.C. Action relating to the Disputed Accounts.

intercompany deposit accounts, and banking and other laws affecting relationships and transactions between a holding company and its regulated bank or thrift subsidiary.

Count Three asserts that Debtors' claim is limited or foreclosed by JPMC's recoupment, setoff and other equitable rights (a claim that is also an affirmative defense in this action). The factual issues underlying this counterclaim, which requires a determination of the circumstances giving rise to and magnitude of JPMC's countervailing claims against Debtors, are entirely intertwined with issues raised by Debtors' affirmative claim. Before Debtors can obtain turnover of any funds (even if any funds exist and are otherwise found to be a deposit liability owing to Debtors), the extent of JPMC's setoff and recoupment rights must be determined because Debtors could only be entitled to turnover of amounts in the Disputed Accounts that exceed the value of JPMC's countervailing rights.[7] Similarly, the legal issues raised—including the legal basis for JPMC's claims against Debtors for which it is entitled to exercise rights of setoff and recoupment—must also be determined as part of any adjudication of Debtors' affirmative claim.

Count Four claims that Debtors' conduct in connection with the $3.67 Billion Book Entry transaction gives rise to a claim for fraud. Because this transfer is

---

[7]     Debtors also make the merits argument that based on their interpretation of particular provisions of the P&A Agreement, JPMC's claim for setoff is barred. (Mot. at 13, n.9.) Setting aside that Debtors are not parties to the P&A Agreement, are not third party beneficiaries of that agreement, and have no knowledge of the intent of the parties with respect to that agreement, even the plain language of the P&A Agreement does not support their interpretation. The P&A Agreement does not divest JPMC of any rights it had before or after the transaction with the FDIC and does not strip JPMC of rights as owner of WMB's assets.

the basis for more than 90% of the amounts Debtors claim in this action, the factual underpinnings of that last-minute purported transfer to and loan from WMB fsb— including how the transaction came to be, who was responsible for it, why it was attempted, whether it was properly authorized and effectuated, whether any funds were actually transferred and whether any funds provided security for the simultaneous loan back that Debtors directed to occur—will be at the heart of any adjudication of Debtors' affirmative claim to turnover of the $3.67 billion purportedly credited to an account at WMB fsb. The very same facts underlying that extraordinary $3.67 Billion Book Entry transaction provide the basis for JPMC's fraud counterclaim.

Count Five is an interpleader claim that seeks to resolve competing claims (including the FDIC's claims) to any funds credited to the Disputed Accounts. The facts underlying the interpleader claim are necessarily among the facts that must be resolved in order to adjudicate Debtors' affirmative claim to turnover. To the extent persons other than Debtors or JPMC are entitled to some or all of any funds in the Disputed Accounts, for example, WMB bondholders (who have asserted a claim) or the FDIC (which has a right to clawback any funds under Section 9.5 of the Purchase and Assumption Agreement with JPMC, dated September 25, 2008 (the "P&A Agreement")), those funds do not belong to Debtors and they cannot be the subject of turnover under Section 542. To the extent JPMC or the WMB bondholders or the FDIC has a substantial claim to those funds, a turnover proceeding does not lie. Any legal issues raised by competing claims to the same assets are among the issues that will have to be addressed in the course of considering Debtors' turnover claim.

All five of these counterclaims are compulsory counterclaims that are appropriately before the Court. All five are central to providing complete relief to the parties in this action. *See Plant* v. *Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1364 (5th Cir. 1979) ("one of the purposes of the compulsory counterclaim rule is to provide complete relief to the defendant"); *United States* v. *Thermo Contracting Corp.*, 437 F. Supp. 195, 200 (D. N.J. 1976) (noting that one "objective of the Federal Rules with respect to counterclaims is to provide complete relief to the parties"); *see also Arizona* v. *San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 570 (1983) (noting "general judicial bias against piecemeal litigation"). Moreover, hearing these counterclaims separately would result in a substantial duplication of effort and a waste of resources—circumstances that evidence persuasively why these are compulsory counterclaims. *Great Lakes Rubber Corp.*, 296 F.2d at 634 (holding counterclaim was compulsory where "separate trials on each of the[] respective claims would involve a substantial duplication of effort and time by the parties and the courts").

Counts Six through Nine are also compulsory counterclaims because they are "logically related" to Debtors' claim under Section 542, implicating common factual and legal issues. Counts Six through Nine ask this Court to determine the parties' rights in, and ownership of, the Other Assets. Determining who owns the Other Assets is a necessary predicate to determining the extent of JPMC's right to setoff.[8] Making this determination is also necessary because Debtors have elected to

---

[8]    Setoff is a defense to Debtors' turnover action. *See* 11 U.S.C. § 542(b); *see also Citizens Bank of Maryland* v. *Strumpf*, 516 U.S. 16, 20 (1995); *In*

inject the issue of WMI's (in)solvency into this case and determining ownership of the Other Assets is an essential part of any solvency analysis. (B87-88, Compl. ¶ 52.) As expert evidence that JPMC has already offered in opposing summary judgment demonstrates (*see* Declaration of Thomas Blake (D.I. 103)), no determination of WMI's (in)solvency can be made without determining who owns the approximately $14 billion in assets that Debtors claim belong to WMI. Thus, adjudicating ownership of the Other Assets as Counts Six through Nine seek involves determining the very same issues, based upon the very same facts, that must be considered in adjudicating Debtors' turnover claim and the applicability of setoff rights in defense to that claim.

JPMC has the right to assert these compulsory counterclaims in this action, even where they mirror claims in other proceedings. The applicable Rule, Fed. R. Civ. P. 13(a)(2)(A) (applicable to this proceeding pursuant to Fed. R. Bankr. P. 7013), gives a party the right to elect to assert, or to elect not to assert, a compulsory counterclaim when it is already the subject of another pending action. Fed. R. Civ. P. 13(a)(2)(A) (stating that the "pleader *need not* state the [compulsory

---

*re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990) (recognizing that a valid right to setoff defeats a claim for turnover). Here, setoff is pleaded as both an affirmative defense and a counterclaim in this action. Debtors can hardly claim it is not part of this case, particularly where they spend nearly half of their motion for summary judgment preemptively attacking JPMC's claims of setoff. (Debtors' Motion for Summary Judgment at 18-25 (D.I. 15).) Debtors' misguided attempt to argue that JPMC "simply has no right of setoff" under Schedule 3.5 of the P&A Agreement is meritless. The P&A Agreement does not divest JPMC of rights it would succeed to as the owner of WMB's assets. The P&A Agreement speaks only to specific rights reserved by the FDIC because it seized WMB. There is simply nothing in the P&A Agreement that supports Debtors' position that setoff is precluded as a matter of law. (*See generally*, P&A Agreement.)

-15-

counterclaim] if . . . the claim was the subject of another pending action") (emphasis added); *see, e.g., Meadors* v. *Walter*, 58 F.R.D. 634, 636 (W.D. Pa. 1973); *Brach* v. *Amoco Oil Co.*, 677 F.2d 1213, 1226 (7th Cir. 1982) (holding that a defendant may treat a counterclaim as compulsory even though the claim was the subject of another action). While JPMC was not required to assert these compulsory counterclaims, to the extent they are already the subject of JPMC's Adversary Proceeding, the applicable Federal Rules of Civil Procedure and of Bankruptcy Procedure authorize it to do so. To the extent this action is going to proceed, these counterclaims may also proceed.

The remainder of JPMC's Counterclaims (Count Ten for administrative expenses and Count Eleven for indemnification), even if not compulsory counterclaims, are permissive counterclaims that should be considered in this action so that the Court may provide complete relief to the parties. *Cf. Thermo Contracting Corp.*, 437 F. Supp. at 200. JPMC has the right to assert permissive counterclaims against Debtors pursuant to Federal Rule of Civil Procedure 13(b), which authorizes a party to assert, at its election, any non-compulsory claim against an opposing party. There is no basis, as a matter of law, to dismiss these claims. And there is no practical reason to do so given that all of the claims before the Court arise from the same transaction. The inclusion of these claims simply provides a platform for the Court to decide at the appropriate time (as discussed below) how best to try these matters. *See Bro-Tech Corp.*, 2009 WL 737349, at *3 (holding that where claims and counterclaims are "plainly offshoots of the same basic controversy

-16-

between the parties[,] . . . to hear them separately would be duplicative and wasteful of judicial and party resources") (internal quotation omitted).

All of JPMC's Counterclaims are proper under Rule 13. While Debtors do not like JPMC's counterclaims, they have offered no legal justification for dismissing them. Their motion to dismiss should, therefore, be denied.

### B. Debtors' Characterization of JPMC's Counterclaims as Duplicative and Contrary to this Court's Rulings Is Inaccurate and Not Grounds for Dismissal.

Debtors' assertion (Mot. at 11-12) that JPMC's Counterclaims create duplicative litigation that is contrary to this Court's previous order is misdirected. Had Debtors wished to proceed in just one adversary proceeding, Debtors should have limited themselves to the turnover claim they brought in the JPMC Adversary Proceeding.[9] Or Debtors should limit themselves to the adjudication of these issues in their own first-filed D.C. Action, which they commenced in accordance with FIRREA, and where both JPMC and the FDIC agree these issues should be resolved.

Debtors instead chose to assert their turnover claim in this separate action—an action that by Debtors' own making is duplicative. JPMC has properly responded with counterclaims and affirmative defenses that JPMC has determined are necessary to protect its rights in response to the claims Debtors have raised in this action. There is no legal basis for dismissing those counterclaims simply because Debtors want to segregate one claim from other claims, particularly where the claims

---

[9]        Debtors' argument that the "Turnover Action is not duplicative" and asserts claims that "they have not asserted elsewhere" (Mot. at 12) is false and misleading. Debtors' Thirteenth Counterclaim in the JPMC Adversary Proceeding is a claim for turnover pursuant to 11 U.S.C. § 542 seeking the amounts credited to the Disputed Accounts. (B218, Debtors' Counterclaims, ¶¶ 172-74.)

and counterclaims involve the same underlying events and are intertwined through common factual and legal issues. To the extent that Debtors are permitted to assert their turnover claims, JPMC must be allowed to present its claims and defenses as well. *See In re Lehigh Valley Prof'l Sports Clubs, Inc.*, No. 00-11296DWS, 00-0173, 2002 WL 975876, at *5 (Bankr. E.D. Pa. Feb. 4, 2002) (holding that "it would be a miscarriage of justice to bifurcate the claims and counterclaims as Debtor urges").

There is also nothing to Debtors' argument that JPMC breached a prior Court order regarding consolidated proceedings that gives rise to law of the case arguments. (Mot. at 10-11.) This Court has never ruled that JPMC is precluded as a matter of law from bringing compulsory or permissive counterclaims; indeed, it has never considered the issue. The cases Debtors cite for the proposition that JPMC's counterclaims must be dismissed do not support Debtors' position. Debtors' reliance on *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800 (1976) and its progeny is inexplicable. *Colorado River* simply authorizes federal courts to abstain from exercising jurisdiction in exceptional circumstances when an action in federal court duplicates an action pending in state court. *Id.* at 813-18. There is no pending state court proceeding involved here.

Along the same lines, Debtors' citation of *In re Porter*, 295 B.R. 529 (Bankr. E.D. Pa. 2003), makes no sense. In that case, the Court dismissed an *entire adversary proceeding*—not one party's counterclaims—as duplicative in order to "foster judicial economy and the 'comprehensive disposition of litigation.'" *Id.* at 543. Basically, *In re Porter* stands for the proposition that this entire proceeding should be dismissed by the Court because the claims asserted by Debtors on which it

-18-

is founded are already the subject of two other cases. *See also Tara M.* v. *City of Philadelphia*, No. Civ. A. 97-1041, 1998 WL 464910, at *2 (E.D. Pa. Aug. 6, 1998) (dismissing entire duplicative action). But if the entire action is not going to be dismissed, none of these authorities provides any basis to strip out only JPMC's Counterclaims and dismiss them.

If Debtors do not want the burden of the additional proceeding they instituted, including the counterclaims JPMC has brought, Debtors are free to dismiss this case. And if Debtors wish to proceed to trial on less than all the claims and defenses before the Court, then at the appropriate time in advance of trial they have the right to move to sever or bifurcate issues for trial pursuant to Federal Rule of Civil Procedure 42(b). After discovery, such a motion may be sensible, or it may not. But in any event, at this pleading stage, Debtors' complaints are not grounds for dismissal of JPMC's Counterclaims.

## III. COUNT ONE AND COUNT SIX EACH STATES A VALID CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Debtors argue that the Court's July 6 Order regarding the scope of the jurisdictional bar imposed by FIRREA precludes JPMC, as a matter of law, from asserting Count One and Count Six. Count One (relating to the Disputed Accounts) and Count Six (relating to the Other Assets) request a declaratory judgment finding that Debtors are "bound by" the FDIC's disallowance of their claims, cannot proceed against JPMC, and must proceed "in the D.C. Action." (B493, 505, JPMC Counterclaims ¶¶ 74, 113.) These counterclaims require examination of the merits of the disallowance making dismissal on the pleadings inappropriate.

The July 6 Order did not consider the legal effect of the disallowance by the receiver of Debtors' claims, once the merits of that disallowance is before the Court, to the same assets they seek in this proceeding. Nothing in the July 6 Order even remotely suggests, as Debtors' argument appears to assume, that the disallowance by the receiver of Debtors' claims is a nullity that they can freely ignore as though it never happened. The July 6 Order is a jurisdictional ruling that arose in response to motions to stay or dismiss. The Court held that it has "jurisdiction to decide what is property of the estate." (B321, Jun. 24, 2009 Tr. at 95:7-8.)

The July 6 Order did not resolve any of the foregoing issues, which are implicated by JPMC's Counterclaims. In connection with the July 6 Order, there was no argument or briefing on whether Debtors' claims fail on the merits as a collateral attack on the FDIC's disallowance. There has been no presentation of evidence on the scope of the FDIC's disallowance at all. There is nothing in the Court's July 6 Order that precludes this Court from concluding, as the merits of the underlying claims are developed, that Debtors must proceed in the D.C. Action for any of these reasons. For example, if this Court decides that the assets at issue were or are assets of the WMB receivership, the Court could validly find that Debtors' recovery is limited to the recovery available under FIRREA's exclusive claims process. *See Bracken* v. *Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002) ("[T]his Court has a continuing obligation to *sua sponte* raise the issue of subject matter jurisdiction if it is in question."); *Morel* v. *INS*, 144 F.3d 248, 251 n.3 (3d Cir. 1998) (same).

Not surprisingly, there is no case holding that the FDIC's disallowance is not binding on Debtors. Nor is there any case permitting a party whose claim has

-20-

been disallowed by a receiver from bringing a claim in disregard of that disallowance. Accordingly, once the Court has that evidence before it, it may (and should) conclude that unless and until Debtors are able to overturn the receiver's disallowance of their claims in the D.C. Action, they have no right to bring a collateral challenge in this Court.

Debtors themselves have argued for this result to this Court (when it suited their interests in opposing claims against the Debtors' estates) that the FDIC's disallowance is subject to FIRREA's exclusive review process and does not allow a collateral right of recovery:

> [A] disallowance by the FDIC does not in any way create a fallback right of recovery against these Chapter 11 estates. Certainly if the FDIC disallows the trustee's claim, and the trustee disagrees with that, he has statutory remedies under banking laws, specifically 12 USC [section] 1821, which allows claimants the option to seek administrative review of the FDIC's disallowance of a claim or commence a lawsuit to have a court determine that claim.

(B429, Jul. 27, 2009 Tr. at 43:16-24.) Just as the receiver's disallowance does not create a fallback right of recovery against the Debtors, the receiver's disallowance of Debtors' claims does not create a "fallback right" for the Debtors to assert the same claims to the same assets against parties who acquired them from the receiver.

## IV. JPMC'S FRAUD CLAIM (COUNT FOUR) IS PROPERLY PLEADED.

Debtors do not want this Court to hear JPMC's fraud claim. The merits of this claim will show that Debtors were not only responsible for the largest bank failure in the history of the United States, but also that in the days leading up to the bank's failure, Debtors perpetrated a fraud involving billions of dollars that they

have asked this Court to turn over to them without significant examination. Debtors'
use of selective quotations from JPMC's Counterclaims does not change the fact that
JPMC has the right to bring this claim and, when examined in whole, it has pleaded
fraud with sufficient particularity and has properly pleaded reliance and damages.
The motion to dismiss this claim, which goes to the heart of Debtors' misconduct,
should be denied.

### A. The Bar Date Does Not Preclude JPMC's Fraud Claim.

Debtors' motion to dismiss asserts that JPMC's fraud claim constitutes
a new claim and does not relate back to the originally filed proof of claim such that it
is a proper amendment of that proof of claim. In considering whether an amendment
is appropriate, courts generally apply the standard in Bankruptcy Rule 7015 for
relation back of amendments and then consider the amendment under equitable
principles. JPMC's fraud claim is appropriate under both tests.

Under the relation back test, an amendment is proper if the claim
"arose out of the conduct, transaction, or occurrence set out—or attempted to be set
out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *In re Edison Bros. Stores,
Inc.*, No. 99-532 (JCA), 2002 WL 999260, at *4 (Bankr. D. Del. May 15, 2002)
("Under Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15 the timing of
the amendment relates back to the date of filing of the original proof of claim since
the amendment arises out of the same conduct, transaction or occurrence."). Here,
JPMC's fraud claim relates to and is well within the scope of JPMC's original proof
of claim concerning the Disputed Accounts. (B5-11, JPMC Intercompany Deposit
Accounts Proof of Claim, "JPMC's Accounts Proof of Claim".) JPMC's Accounts

-22-

Proof of Claim questioned the validity of the $3.67 Billion Book Entry transaction. JPMC's submission also asserted that neither WMB fsb nor JPMC ever received good funds at any time as a result of that purported transaction, the key factual underpinnings of the fraud claim. (*See id.*, alleging that "neither WMBfsb nor JPMCB ever received cash or other funds at any time from or after the establishment of that [WMB fsb] account.") Because the original proof of claim identifies as a factual matter problems with the $3.67 Billion Book Entry, adding an additional and related legal theory—fraud—based upon that same transaction is appropriate. JPMC is simply "plead[ing] a new theory of recovery on the facts set forth in the original [proof of] claim." *In re Metro Transp. Co.*, 117 B.R. 143, 147 (Bankr. E.D. Pa. 1990); *see also In re Lehigh Valley*, 2002 WL 975876, at *4 (denying motion to dismiss fraud counterclaim that related back to timely filed proof of claim); *In re MacMillan, Inc.*, 186 B.R. 35, 49-50 (Bankr. S.D.N.Y. 1995).

Debtors essentially argue that because they concealed certain of the details about the fraud involving the $3.67 Billion Book Entry transaction, and the specific details regarding the Debtors' concealment were not set forth in JPMC's proof of claim, JPMC's fraud claim should be dismissed. JPMC's proof of claim, however, expressly encompasses the $3.67 Billion Book Entry transaction and challenges its *bona fides*. The Debtors' position is thus untenable: Debtors' concealment of certain details of their misconduct cannot be a basis to dismiss the fraud claim, a different legal theory directed to the very transaction addressed in the proof of claim. Basic principles of "relation back" under Rule 15 compel this conclusion and the equitable factors cited in *In re Metro Transp. Co.* (and relied upon

by Debtors) further support it. Debtors' attempt to gain a windfall by having concealed the detailed manner in which they carried out their misconduct should not be rewarded by the Court.

The equitable factors also weigh in favor of permitting the amendment because there is no prejudice to the Debtors to allow this post-Bar Date fraud claim to proceed. The parties have yet to even enter a scheduling order in the underlying adversary proceeding, let alone embark on discovery. Moreover, this is a liquidation, not a reorganization. And, looking to the equitable factors cited in *In re Metro Transp. Co.* (and relied upon by Debtors), it is clear that JPMC's amendment is appropriate because (a) Debtors had notice of potential additional claims relating to the Disputed Accounts, (b) the claim is timely, and (c) dismissal of the claim would be a windfall to Debtors and their creditors.

*First*, JPMC's Accounts Proof of Claim properly encompasses the fraud claim. In a section entitled "The September $3.67 Billion Book Entry Transfer for Account No. 44100000064234", JPMC details concerns about the irregular and highly suspicious transaction based upon its then-existing state of knowledge, including that "[i]t appears that neither WMBfsb nor JPMCB ever received cash or other funds at any time from or after the establishment of that account." (B9, JPMC's Accounts Proof of Claim.) Debtors were on notice of potential additional claims. JPMC's Accounts Proof of Claim clearly reserved JPMC's right to amend its proof of claim, stating:

> JPMCB reserves all rights to amend, augment, supplement, reduce or withdraw, in whole or in part, this proof of claim, including, without limitation, to: cure a defect in the original

> claim, correct the claim amount or priority status, include
> additional supporting documents, describe the claim in greater
> detail, *add additional claims presently unknown to JPMCB*
> that, if known, could have affected this claim or resulted in the
> assertion of additional damages.

(*Id.* at B11 (emphasis added).) The possibility of further allegations related to the

Disputed Accounts was therefore known to Debtors since JPMC's proofs of claim

were filed on March 31, 2009. *See United States* v. *Stavriotis*, 129 B.R. 527, 530 n.2

(N.D. Ill. 1991), *aff'd*, 977 F.2d 1202 (7th Cir. 1992) (disallowing a post-bar date

amendment by the IRS, and noting that "all the IRS need have done was reserve the

right to amend . . . .").

     *Second*, JPMC's amendment is timely. Debtors have repeatedly

asserted to JPMC and the Court that the $3.67 Billion Book Entry is backed by funds

they own. Now Debtors argue that because certain details establishing the fraud were

uncovered after the proof of claim was filed, the fraud claim should be dismissed. If

that were the law, then any debtor could escape the consequence of its fraud by

simply concealing some of the details of their misconduct until after the Bar Date.

That is not the law. Fraud theories may be added where, as here, they arise from the

"conduct, transaction or occurrence" at the heart of the originally filed proof of claim.

*In re Integrated Res., Inc.*, 157 B.R. 66, 72 (S.D.N.Y. 1993); *accord In re Lehigh*

*Valley*, 2002 WL 975876, at *4. This is particularly true where the investigation into

the fraud has been hampered by Debtors' own conduct. *Cf. In re Tel. Co. of Cent.*

*Fla.*, 308 B.R. 579, 583 (Bankr. M.D. Fla. 2004) (allowing IRS to file an amended

claim where delay caused in part by debtors' lack of cooperation); *see also In re Int'l*

*Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985) (quoting *Pepper* v. *Litton*, 308

U.S. 295, 305 (1939)) (in evaluating post-bar date amendments, "courts will act to assure that 'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'").

Here, certain details of the fraud were hidden by Debtors' current employees in nearly five petabytes of data (more than 2.2 trillion pages). By way of example, only after the Bar Date did JPMC learn that the accounting maneuver used to effectuate the $3.67 Billion Book Entry transfer was done solely for the benefit of WMI and without seeking or obtaining the approval of WMB fsb and that no additional collateral was to be posted in support of the extraordinary $5 billion increase to Master Note that was used to facilitate a transaction at the heart of the turnover proceeding. Along the same lines, in connection with Debtors' $4 billion motion for summary judgment in this proceeding, based on the affidavit of a single individual, Debtors refused JPMC the opportunity to depose their affiant and only reversed their position after JPMC filed its papers in opposition to the motion for summary judgment when the Official Committee of Unsecured Creditors arranged for that deposition to go forward on August 26. Debtors should not benefit from their concealment efforts. There has been, and can be, no suggestion that JPMC was not diligent in asserting the fraud theory promptly upon discovering a factual basis for it based upon its ongoing investigation, and Debtors are not prejudiced, a key element under any Rule 15 analysis, because there has been no substantive adjudication of any merits issues in this or any of the related cases.

*Third*, it would obviously be a windfall to Debtors and their creditors should Debtors be permitted to profit from their fraud to the detriment of JPMC. *See*

*Rochez Bros., Inc.* v. *Rhoades*, 491 F.2d 404, 415 (3d Cir. 1973) (holding that "it is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them.") (citations omitted); *see also In re Kolstad*, 928 F.2d 171, 176 (5th Cir. 1991) ("[I]f IRS's amended claim is correct, its allowance will not be unfair to other creditors, for they would have achieved an undeserved windfall from a denial of the amendment."). Debtors' sole response to this is to assert that there can be no windfall because the "funds are the Debtors' Deposits . . . ." (Mot. at 18.) This argument misses the point and assumes they have won the substantive issue in dispute before it has ever been litigated. The issue raised in the proof of claim and in the fraud claim is that no valid deposit liability was created. Debtors did not have the ability legitimately to create a valid $3.67 billion deposit liability at WMB fsb, they never moved any actual funds to WMB fsb to support such a liability, and but for their deceit they would not even have been able to create the illusion of such a liability.

In any event, Debtors' motion to dismiss completely overlooks that even a new claim cut from entirely new cloth (which JPMC's fraud claim is not) would not be barred simply because it is raised after the Bar Date. New claims can always be maintained to set off any claims Debtors might have against JPMC. *See In re Philip Servs. (Del.), Inc.*, 267 B.R. 62, 69 (Bankr. D. Del. 2001) (holding that where a "creditor is precluded from asserting [a] claim affirmatively, it is not barred from raising its claim as a setoff"); *In re Calderone*, 166 B.R. 825, 830 (Bankr. W.D. Pa. 1994) (stating that a "holder of a disputed claim who fails to file a timely proof of claim need not file a proof of claim as a prerequisite to asserting set-off"). Courts

permit setoff in the absence of a timely proof of claim because a "creditor asserting set-off is not requesting distribution from the bankruptcy estate *res* but is seeking instead to satisfy the debt owed to it by debtor to the extent of the debt it owes to debtor." *Id.* at 830; *see also In re First New England Dental Ctrs., Inc.*, 291 B.R. 229, 235 (D. Mass. 2003) (recognizing that adversary proceeding defendants properly pleaded a fraud claim seeking setoff even though they had not filed a proof of claim alleging such fraud).

### B. The Fraud Claim is Plead With the Requisite Particularity.

Rule 9(b) requires plaintiffs to plead fraud with particularity, "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud,'" and by specifying "who made a misrepresentation to whom and the general content of the misrepresentation." *Lum* v. *Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (citations omitted). A "plaintiff need not go into great detail in the pleadings" beyond these requirements. *Abercrombie* v. *Andrew College*, 438 F. Supp. 2d 243, 273 (S.D.N.Y. 2006). In fact, "all that is required is to put the defendant on sufficient notice of the claims to which a response is necessary . . . . If the defendant can prepare an adequate answer to the complaint, the requirements of Rule 9(b) have been met." *S & C Rest. Corp.* v. *Sofia's Diner Rest., Inc.*, No. Civ. A. 98-5972, 1999 WL 627914, at *5 (E.D. Pa. Aug. 18, 1999). Debtors' argument that JPMC's fraud claim must be dismissed for failing to meet these pleading standards fails on two independent grounds.

*First*, Debtors focus on a single paragraph that briefly summarizes some of the more important false representations while ignoring numerous other allegations containing specific details to argue that JPMC's Counterclaims fail properly to plead affirmative misrepresentations.[10] (*Compare* B499-500, JPMC's Counterclaims, ¶ 95, *with* B495, 497, 499, JPMC's Counterclaims, ¶¶ 87, 91 & 94.) In doing so the Debtors ask the Court to overlook the allegations contained in JPMC's Counterclaims—including dates, places or time of the fraud, as well as the individuals involved in the misrepresentations and the general content of the misrepresentation—that put Debtors on notice of the precise misconduct being charged. *See Lum*, 361 F.3d at 224.

For example, Debtors ignore the following allegations in JPMC's Counterclaims which amply satisfy the requisite pleading standard:

- On "September 19, 2008" [the *date*] "senior management at WMI, including but not limited to Robert Williams, the current President and former Treasurer of WMI, and Thomas Casey, the Chief Financial Officer of WMI" [the *individuals*] "orally directed that a deposit liability of $3.67 billion recorded in the 0667 Account in the name of WMI be transferred to WMB fsb, without the transfer of good funds" [the *specific content of the misrepresentation*].[11] "The instructions

---

[10]    While Debtors assert that some of the alleged representations are not false, *see* Mot. at 26-27, truthfulness is a factual question that cannot be resolved on a motion to dismiss. *See Watson* v. *Abington Twp.*, No. Civ. A. 01-5501, 2002 WL 32351171, at *8 (E.D. Pa. Aug. 15, 2002) (denying motion to dismiss where "Defendants' only argument [was] that the alleged statements made by Defendants were not false" and holding, "[t]he truth or falsity of the statements . . . however, are factual issues."). At this stage, the allegations must be assumed to be true and all reasonable inferences drawn in favor of JPMC. *See Carino* v. *Stefan*, 376 F.3d 156, 159 (3d Cir. 2004) ("In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff.").

[11]    Debtors specifically argue that the opening of a deposit account without the delivery of good funds is not a misrepresentation, in part because the funds existed at WMB. (Mot. at 26.) It is of course a blatant and fraudulent

-29-

were relayed to administrative personnel, including Yolonda
Noblezada, a Senior Analyst at WMB, and Doreen Logan, a Controller
and Assistant Treasurer at WMB at WMB, who prepared records
purporting to reflect the transfer." (*See* B495, JPMC's Counterclaims,
¶ 87.)

- On "September 19, 2008" and "September 21, 2008" [the *dates*] "Mr.
Casey and Mr. Williams" [the *individuals*] respectively "directed that
other entries be booked to effect the immediate loan back of the same
$3.67 billion from WMB fsb to WMB via a credit revolver, dated
March 7, 2007, (the "Master Note") by "'approv[ing] an increase in
the size of the Master Note between Washington Mutual Bank (as
Borrower) and Washington Mutual Bank fsb (as lender) from $15
billion to $20 billion' . . . without additional collateral being posted to
protect WMB fsb and to support this extraordinary increase" [the
*specific content of the misrepresentation*]. (*See* B497, JPMC's
Counterclaims, ¶ 91.)

- On "August 19, 2008" [the *date*] "Mr. Williams and Mr. Casey" [the
*individuals*] directed that $922 million of "WMB funds be transferred
into WMI's name and then later used those same amounts to fund a
$500 million capital contribution from WMI and to WMB that was
finalized on or about September 10, 2008" while further "purport[ing]
to include these amounts in the $3.67 billion book entry transfer to
WMB fsb, without disclosing to WMB fsb that it had done so" [the
*specific content of the misrepresentation*]. (*See* B499, JPMC's
Counterclaims, ¶ 94.)

*Second*, JPMC has also adequately pleaded all the elements of a claim

for fraudulent concealment. *See, e.g.*, *Crown Kent, L.L.C.* v. *First Western*

*Investments, Inc.*, No. 40906-9-I, 1998 WL 808256, at *6 (Wash. Ct. App. Nov. 23,

1998) (citing *Oates* v. *Taylor*, 199 P.2d 924 (Wash. 1948)) ("[F]raud can also be

---

misrepresentation on the books of WMB fsb to record a deposit liability that was
never backed by, and could not be backed by, good funds. Debtors' suggestion that
WMB may have had the funds or maybe there were other sources of funds supporting
these purported liabilities is irrelevant. (*Id.*) These merits arguments not only appear
to be false—there are material issues of fact whether any such funds existed at
WMB—these arguments are misplaced given that Debtors are not permitted to
introduce their own factual allegations in an effort to support their motion to dismiss.

based on the willful concealment by one party to a transaction of a fact known to such party which is material for the other party to know."); *see also Dussault ex rel. Walker-Van Buren* v. *Am. Int'l Group, Inc.*, 99 P.3d 1256, 1261 (Wash. Ct. App. 2004) ("The law recognizes two distinct types of fraudulent misrepresentation: affirmative misrepresentation and silence when a duty of disclosure is owed."). To state a claim based upon concealment of facts that a defendant had a duty to disclose, "[i]t is enough under [Rule] 9(b) for the complaint to allege those facts that were not disclosed" because "conduct which never occurred cannot be described with greater particularity other than to state it did not occur." *Polycast Tech. Corp.* v. *Uniroyal, Inc.*, 728 F. Supp. 926, 950 (S.D.N.Y. 1989) (citing *Cottman Trans. Sys., Inc.* v. *Dubinsky*, 95 F.R.D. 351, 353 (E.D. Pa. 1982) (internal quotations omitted).

As detailed in JPMC's Counterclaims, WMI and its senior management, including Messrs. Williams and Casey, owed fiduciary duties to WMB fsb to ensure that WMB fsb was operated in a safe and sound manner. (*See* B501-02, JPMC's Counterclaims, ¶ 98; 12 C.F.R. § 563.161(a)(1) (requiring the safe and sound operation of the institution).) The duty here is broader than ordinary directors' duties. Directors at thrifts not only "have duties of care, loyalty, and candor" to the bank, the Office of Thrift Supervision specifically requires that when serving both a holding company and a bank "your duty to the [bank] is paramount to your duty to the holding company . . . [therefore,] [y]ou must take whatever steps are necessary to ensure that the [bank] maintains a corporate existence that is separate from its holding company, affiliates, and subsidiaries." OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF THE TREASURY, DIRECTORS' RESPONSIBILITY GUIDE 16 (2008). In light of these

-31-

duties, the extensive list of material omissions of WMI's senior management contained in JPMC's Counterclaims is more than sufficient to state a claim for fraudulent concealment. (*See* B500-01, JPMC's Counterclaims, ¶ 97) (listing omissions that include failing to seek the consent of WMB fsb regarding the $3.67 Billion Book Entry Transfer and failing to disclose to WMB fsb that the funds associated with the transfer did not belong to WMI and could be subject to claims by third parties).

### C. Reliance is Properly Pleaded Because the Interests of Messrs. Williams and Casey Were Adverse to the Interests of WMB fsb.

As the fraud claim explicitly alleges and explains, WMB fsb justifiably relied on misrepresentations by WMI senior management. (B500, JPMC's Counterclaims ¶ 96 ("WMB fsb had no knowledge that the representations were false, did rely upon the false representations, and had a right to rely on the false representations.").) Debtors nonetheless argue that reliance was not properly pleaded because the bad actors—Messrs. Williams and Casey—were officers and directors of WMB fsb and, therefore, their knowledge of the fraud should be imputed to WMB fsb such that WMB fsb cannot establish reliance. (*See* Mot. at 28-30.) Said differently, Debtors argue that corporate officers and directors can never defraud a company because their knowledge of the fraud and the rules of imputation would always operate to defeat reliance.

What Debtors fail to mention in their description of the law is the well-recognized rule that a corporation will not be charged with knowledge of facts known to its agent "when the interest of the officer or agent in the transaction is adverse to

the corporation."[12] *Post* v. *Maryland Cas. Co.*, 97 P.2d 173, 176 (Wash. 1939);

*accord Official Comm. of Unsecured Creditors* v. *R.F. Lafferty & Co., Inc.*, 267 F.3d

340, 359 (3d Cir. 2001) (recognizing "adverse interest exception" to imputation

principle).

Here, the adverse interest exception is more than adequately pleaded.

Messrs. Williams and Casey totally abandoned their fiduciary duties to WMB fsb in

order to benefit WMI. (*See* B501-02, JPMC's Counterclaims, ¶ 98.) As alleged,

"WMI, senior management at WMI, Mr. Williams and Mr. Casey directed [the $3.67

Billion Book Entry Transfer] for the benefit of WMI. WMI, senior management at

WMI, Mr. Williams and Mr. Casey took these actions with knowledge that the

transfer was to the detriment of WMB fsb and other banking subsidiaries, in disregard

for the safety and soundness of these institutions and with the intent to defraud these

institutions." (B495, JPMC's Counterclaims, ¶ 87.) It is beyond question that

disregarding the safety and soundness of WMB fsb, not to mention actively

---

[12]     Debtors' reliance on *Trenwick Am. Litig. Trust* v. *Ernst & Young, LLP*, 906 A.2d 168 (Del. Ch. 2006), is misplaced. In *Trenwick*, the plaintiff alleged that all the directors of a corporation had concealed facts from that corporation. 906 A.2d at 208. Where a corporation's directors participate generally in a purported misrepresentation, of course any alleged reliance by the corporation will seem "extremely odd." *Id.* at 207. That is not the case here, however, where WMI and its senior management, including one director and one officer of WMB fsb, concealed material facts from the rest of WMB fsb. To extend *Trenwick* at all beyond its factual circumstances would suggest that directors and officers can never commit fraud against their own corporation, if knowledge is always to be imputed to the injured corporation. Such a result would surely contravene well-established law. *See Delta Dev. & Inv. Co.* v. *Hsiyuan*, 2002 WL 31748937, at *6 (Wash. Ct. App. Dec. 9, 2002) (holding officer's and director's failure to disclose transfer of funds to be fraud against corporation); *cf. also Geddes* v. *Anaconda Copper Mining Co.*, 254 U.S. 590, 599 (1921) ("[T]ransactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged, the burden is upon those who would maintain them to show their entire fairness . . . .").

attempting to defraud WMB fsb of $3.67 billion, is diametrically opposed to the interests of WMB fsb. As such, the knowledge and actions of Messrs. Williams and Casey cannot legally be imputed to WMB fsb.

And, to the extent Debtors' arguments amount to a debate about the application of the "adverse interest exception" to this case, those arguments are inappropriate at this stage of the proceeding because they depend on issues of fact that must be resolved before the issue could be adjudicated in Debtors' favor. Because JPMC's Counterclaims sufficiently plead reliance, the merits debate about whether management acted adversely to the interests of the corporation is a question of fact that is inappropriate for resolution on a motion to dismiss. *See In re Astropower, Inc.*, 335 B.R. 309, 334 (Bankr. D. Del. 2005) (holding that questions of fact regarding a defense are not properly resolved via a motion to dismiss).

### D. The Fact-Intensive Affirmative Defense of *In Pari Delicto* Does Not Bar the Fraud Claim.

In a further effort to inject merits arguments into this motion to dismiss, Debtors emphasize that certain officers and directors participated in the fraud and therefore assert that the *in pari delicto* defense is a basis for dismissal of the fraud claim. (Mot. at 30-31.) This is an equitable defense that requires the Debtors to prevail on a number of fact-intensive issues, including whether WMB fsb, bears "at least substantially equal responsibility for the violations it seeks to redress." *Astropower Liquidating Trust* v. *KMPG LLP*, Civ. A. No. 06-469-JJF, 2007 WL 1549048, at *5 (D. Del. May 25, 2007). Generally, the affirmative defense of *in pari delicto* should not be considered on a motion to dismiss unless it is "establishe[d]

-34-

conclusively" on the face of the complaint. (Mot. at 30); *see also In re Norvergence, Inc.*, 405 B.R. 709, 749 (Bankr. D. N.J. 2009) (citing *Leveto* v. *Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)) (noting *in pari delicto* is an affirmative defense, which may be entertained on a motion to dismiss only if it "is established on the face of the complaint"). More specifically, there is no basis to assert this defense in connection with the operative complaint because the "adverse interest" allegations discussed above render the *in pari delicto* affirmative defense inapplicable and make dismissal inappropriate. *Lafferty*, 267 F.3d at 359 (in analyzing the *in pari delicto* doctrine, holding that "fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and 'not for the benefit of the corporation.'"); *see also Post*, 97 P.2d at 176 (Wash. 1939) (corporation will not be charged with knowledge of facts known to its agent "when the interest of the officer or agent in the transaction is adverse to the corporation").

Here, the officers or directors of WMB fsb are alleged to have acted against the interests of that entity and in favor of the interest of the Debtors. JPMC's Counterclaims expressly and sufficiently allege that Messrs. Williams and Casey defrauded WMB fsb. (*See* B495, 498-99, 500-02, JPMC's Counterclaims, ¶¶ 87, 93, & 97-98.) Because the wrongdoing by Messrs. Williams and Casey was adverse to interests of WMB fsb, WMB fsb does not bear "substantially equal responsibility for the violations it seeks to redress." *Lafferty*, 267 F.3d at 359; *Post*, 97 P.2d at 176 (Wash. 1939). Accordingly, Debtors cannot "establish conclusively" their *in pari delicto* defense and their motion to dismiss must be denied. *See In re Reading Broadcasting, Inc.*, 390 B.R. 532, 560 (Bankr. E.D. Pa. 2008) (denying motion to

dismiss where amended complaint "contain[ed] allegations that, if proven at trial, render application of the *in pari delicto* defense unwarranted").

### E. Damages Are Properly Pleaded In Accordance with Rule 9(b).

Leaving no stone unturned, Debtors also attack the fraud pleadings as not evidencing damages (Mot. at 21-25), despite the fact that general damages need not be pleaded with specificity. *See* Fed. R. Civ. P. 9(b); *Travelers Cas. & Sur. Co. of Am.* v. *A.G. Cullen Constr.*, Civ. A. No. 07-0765, 2008 WL 4816477, at *11 (W.D. Pa. Nov. 4, 2008) ("Only those damages that qualify as 'special' are required to be plead with specificity."); *see also Iadanza* v. *Mather*, 820 F. Supp. 1371, 1383 (D. Utah 1993) (finding that damages need not be pleaded with particularity).

The damages here are simple. Count IV alleges that WMI's fraudulent conduct improperly "shift[ed] the burden of WMB's inevitable failure onto WMB fsb without disclosing to WMB fsb that it was doing so . . . ." (*See* B496, JPMC's Counterclaims, ¶ 89.) In so doing, WMB fsb was forced to incur a supposed $3.67 billion liability to WMI without any good funds in return. (*See id.*, B502, ¶ 99.) There can be no doubt that WMB fsb would be damaged by exposure to a multi-billion dollar deposit liability without good funds.

In response, Debtors attempt to inject their own contrary allegations into the Amended Complaint—allegations that maybe there were funds at WMB fsb or maybe there were good funds at WMB that JPMC later acquired. (Mot. at 21-22.) This tactic is wholly inappropriate (and, frankly, not supported by the current record before the Court on the summary judgment motion) and entirely dependent upon resolution of factual issues not suitable for determination on a motion to dismiss. The

fraud claim questions whether there were any funds in the disputed accounts at all and, if so, whether these funds belong to WMI. (*See* B496, 498-99, JPMC's Counterclaims, ¶ 89, 93.) As a matter of law, Debtors cannot re-write JPMC's Counterclaims with their own contrary allegations to bolster a motion to dismiss. *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 332 (S.D.N.Y. 2003) ("It must be remembered, however, that Plaintiffs are the master of their complaint and neither this Court nor the defendant have the right to redraft the complaint to include new claims.") (internal quotations omitted).

Likewise, Debtors' fraud has left WMB fsb exposed not just to a massive liability claim by WMI, but also to competing claims for these funds by third parties. Although the Debtors attempt to disavow the existence of these claims (Mot. at 23-24), these claims are quite real. The FDIC as Receiver is asserting rights to funds purportedly credited to the account held by WMB fsb. (*See* Proof of Claim of the FDIC, *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del. Mar. 30, 2009).) Various bondholders are also asserting rights to the same purported funds. (*See, e.g.*, Proof of Claim of Bank Bondholders, Claim No. 3071, *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del. Mar. 31, 2009).) To the extent the WMB fsb has to pay more than it received (if it received anything) to third parties, it has been damaged. (*See* B502, JPMC's Counterclaims, ¶ 99.)

Rather than fairly address the allegations in JPMC's Counterclaims, Debtors mostly spin a tale of how damages might be assessed after merits discovery given the later consolidation of WMB and WMB fsb under JPMC, based on their own

theories of setoff and mitigation, and based on their own views of events after the fraud. (Mot. at 21-25.) Although such fact-based arguments cannot be the foundation for a motion to dismiss, *In re Am. Bus. Financ. Serv., Inc.*, 384 B.R. 80, 90 (Bankr. D. Del. 2008), these arguments are unsound on the merits. Messrs. Casey and Williams approved the $3.67 Billion Book Entry Transfer to WMB fsb in a manner that concealed the fact that "no good funds were or could be transferred to WMB fsb to support the book entry." (*See* B498-99, JPMC's Counterclaims, ¶ 93.) Had WMB tried to scrape together $3.67 billion dollars in cash or cash equivalents in advance of September 19, 2008 to effectuate a real deposit—an amount of cash that according to company liquidity reports would have exceeded WMB's means—at the same time regulators were ringing alarm bells over the lack of cash to satisfy the withdrawals of ordinary depositors, WMI's accounting maneuver would never have gotten off the ground. Regulators would have put a stop to WMI's self-dealings or closed the bank. No purported transfer would have ever happened. The setoff and transfer issues Debtors are trying to stir up arise solely because of the fraud they perpetrated, in order to try to shift from themselves to WMB fsb the consequences of what they knew would be WMB's inevitable and imminent failure. The only conclusion that can be drawn from these factual disputes is that JPMC will be required to prove damages at trial for any detriment suffered by WMB fsb as a result of WMI's fraud. However, Debtors' merits arguments as to these matters are not a basis for a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Debtors' motion to dismiss JPMC's counterclaims should be denied.

Dated: September 8, 2009
      Wilmington, Delaware

Respectfully submitted,

  /s/ Matthew B. McGuire
Adam G. Landis (I.D. 3407)
Matthew B. McGuire (I.D. 4366)
LANDIS RATH & COBB LLP
919 Market Street Suite 1800
Wilmington, Delaware 19899
Tel: (302) 467-4400
Fax: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

– and –

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Tel: (310) 712-6600
Fax: (310) 712-8800
sacksr@sullcrom.com
feldsteinh@sullcrom.com

Bruce E. Clark
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
clarkb@sullcrom.com
friedmans@sullcrom.com

*Counsel for JPMorgan Chase Bank,*
*National Association*