IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> WASHINGTON MUTUAL, INC., et al.,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 08-12229 (MFW) <br><br> Jointly Administered |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> JPMORGAN CHASE BANK, NATIONAL ASSOCIATION <br><br> Defendant, Counterclaim and Cross-claim Plaintiff <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver, <br><br> Cross-claim Defendant. | Adv. Proc. No. 09-50394 (MFW) |

### SUPPLEMENTAL MEMORANDUM OF CROSS-CLAIM DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

M. Blake Cleary (Bar No. 3614)
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
(Additional counsel listed on signature page)
Attorneys for the FDIC-Receiver

Dated: September 11, 2009

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

Cross-claim defendant the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this supplemental memorandum in opposition to the motion for summary judgment of debtors and debtors-in-possession Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together, the "Debtors"). The deposition of the Debtors' lone fact witness, their affiant Doreen Logan, demonstrates the fundamental inadequacies of the Debtors' motion for summary judgment and further illustrates the significant need for discovery concerning the disputed accounts at issue and the circumstances surrounding numerous transactions involving those accounts.[2]

*First*, Ms. Logan's testimony underscores the Debtors' failure to provide *any* evidence that the alleged balances in the disputed deposit accounts are their property, even though under section 542 of the Bankruptcy Code it is their burden to make such a showing by *clear and convincing evidence*. *Makoroff v. Allegheny Graphics, Inc. (In re Allegheny Label, Inc.)*, 128 B.R. 947, 954 (Bankr. W.D. Pa. 1991); *see* FDIC-Receiver Mem. at 8. Ms. Logan testified that she has no personal knowledge as to the source of the funds allegedly held in the accounts and that she had conducted no investigation to determine if such funds did, in fact, belong to WMI. Logan Dep. at 69-70. The Debtors have provided no other witness or evidence on this central issue.

*Second*, Ms. Logan testified that she had no personal knowledge of several issues of material fact relating directly to the ownership of the funds in question. For example, she testified that she did not know the circumstances that led to the September 2008 transfer of $322 million in "tax payments" from Washington Mutual Bank ("WMB") to its holding

---

[2] The Debtors made Ms. Logan available for a deposition following the filing of papers in opposition to their motion for summary judgment, which included the motion of JPMorgan Chase Bank, N.A. ("JPMC") to strike Ms. Logan's affidavit due to the Debtors' prior refusal to make her available for a deposition. [D.I. 129]. This supplemental memorandum is limited to points arising from Ms. Logan's deposition testimony.

company WMI, or the persons who were responsible for the decision to make those transfers. Logan Dep. at 230-31. She further testified that she had no information regarding the additional $600 million in "tax payments" that were made from WMB to WMI the previous month. *Id.* at 56. Ms. Logan did not know whether WMI had ever before caused WMB to make payments that were similar in kind to these $922 million in "tax payments." *Id.* at 232. This testimony underscores the need for significant additional discovery into the circumstances surrounding these unusual "book entry" transfers, which occurred – apparently for the first time ever – in the weeks immediately preceding the WMB receivership.[3]

*Third*, Ms. Logan's testimony establishes the highly unusual circumstances surrounding the attempted movement of $3.67 billion from WMB to WMBfsb in the final days preceding the WMB receivership and the need for significant discovery to understand those events. According to Ms. Logan's testimony, WMI had never before maintained a deposit account at WMBfsb. *Id.* at 77. Ms. Logan never saw any documents authorizing the transaction, *id.* at 102, and never asked why she was being asked to "transfer the maximum amount of money" possible to "the more well capitalized bank within the consolidated group," *id.* at 96, 105; *see id.* at 115 ("I was acting on direction to move the deposit. So I didn't pause to ask the questions of why."). Internal accounting policies prohibited the establishment of a new general ledger account within the final 14 days of a month, so Ms. Logan was forced to find a work-around that would enable her to transfer the funds as soon as possible. *Id.* at 118-19.

Even then, however, to accomplish the alleged book entry transfer, the $15 billion limit on loans under the master note between WMB and WMBfsb had to be raised to $20 billion and

---

[3] Ms. Logan further acknowledged that the disputed accounts included at least $233 million in tax refunds that were received from the IRS into the 0667 account in late September 2008, *id.* at 233-34, admitted that she was "not familiar with how tax refunds were handled" among the members of the Washington Mutual consolidated tax group, *id.* at 232, and testified that she had "no knowledge of how the tax accounts work." *Id.* at 244.

the collateral requirement for all loans from WMBfsb to WMB had to be suspended. *Id.* at 181, 197. Ms. Logan testified that she has never seen signed documents approving either of these significant changes in policy. *Id.* at 181, 197. Nor was she aware of any prior occasion in which the collateral requirement was suspended. *Id.* at 220-21. These facts, alone, demonstrate the existence of genuine issues of material fact and strongly suggest that the attempted movement of funds was motivated by an intent to hinder, delay or defraud the FDIC or other creditors, not only requiring further discovery but also the denial of the Debtors' summary judgment motion.

## CONCLUSION

For the foregoing reasons, and for the reasons previously stated and those set forth in JPMC's submissions, the FDIC-Receiver respectfully submits that the Debtors' motion for summary judgment should be denied.

Dated: Wilmington, Delaware
September 11, 2009

Of Counsel:

Thomas R. Califano
John J. Clarke, Jr
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
thomas.califano@dlapiper.com
john.clarke@dlapiper.com

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

By: _____
Robert S. Brady (Bar No. 2847)
M. Blake Cleary (Bar No. 3614)
Jaime N. Luton (Bar No. 4936)

The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
mbcleary@ycst.com
jluton@ycst.com

Attorneys for the FDIC-Receiver