UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------ x | | |
| *In re* | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : | Case No. 08-12229 (MFW) |
| Debtors. | : | Jointly Administered |
| ------------------------------------------------ x | | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : | |
| Plaintiff and Counter Defendant, | : | Adversary Proceeding No. 09-50551 (MFW) |
| v. | : | |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : | |
| Defendant for all claims and Counterclaimants, | : | |
| -and- | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | |
| Additional Defendant for Interpleader Claim. | : | |
| ------------------------------------------------ x | | |

(Caption continued on next page)

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share the principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

```
------------------------------------------------- x
WASHINGTON MUTUAL, INC. AND                      :
WMI INVESTMENT CORP.,                            :
                                                 :
    Plaintiffs and Counter Defendants,           :
                                                 :  Adversary Proceeding No. 09-50934 (MFW)
            v.                                   :
                                                 :
JPMORGAN CHASE BANK, NATIONAL                    :
ASSOCIATION,                                     :
                                                 :
    Defendant, Counterclaimant and               :
    Cross-claimant.                              :
                                                 :
------------------------------------------------- x
```

## NOTICE OF DIVESTITURE OF JURISDICTION PENDING APPEALS

                Adam G. Landis (No. 3407)
                Matthew B. McGuire (No. 4366)
                LANDIS RATH & COBB LLP
                919 Market Street, Suite 1800
                Wilmington, Delaware 19899
                Tel: (302) 467-4400

                – and –

                Robert A. Sacks
                Hydee R. Feldstein
                SULLIVAN & CROMWELL LLP
                1888 Century Park East
                Los Angeles, California 90067
                Tel: (310) 712-6600

                Bruce E. Clark
                Stacey R. Friedman
                SULLIVAN & CROMWELL LLP
                125 Broad Street
                New York, New York 10004
                Tel: (212) 558-4000

September 18, 2009       *Counsel for JPMorgan Chase Bank,*
                *National Association*

JPMorgan Chase Bank, National Association ("JPMC") submits this Notice of Divestiture of Jurisdiction Pending Appeals (the "Notice") and states as follows:

1. This Notice is intended to immediately bring to this Court's attention its lack of jurisdiction to proceed with matters relating to the Adversary Proceedings,[2] pending disposition of JPMC's appeals. It is a fundamental principle of federal civil procedure that the *filing* of appeals—such as JPMC's appeals—divests this Court of jurisdiction over matters related to those appeals. As explained by the United States Supreme Court in *Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982):

> The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

This rule applies not only to appeals from final judgments, but equally to appeals brought pursuant to the collateral order doctrine. *United States* v. *Leppo*, 634 F.2d 101, 104 (3rd Cir. 1980); *In re Sacred Heart Hosp. of Norristown*, 204 B.R. 132, 142-43 (E.D. Pa. 1997), *aff'd*, 133 F.3d 237, 245 (3d Cir. 1998). It therefore applies here.

2. The jurisdictional issue arises from two related appeals to the United States District Court for the District of Delaware from two related Adversary Proceedings. The first appeal is from this Court's July 6, 2009 Order and contends that this Court erred in finding that the jurisdictional bar imposed by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), does not preclude this Court from exercising subject matter jurisdiction over claims asserted by or against

---

[2] The "Adversary Proceedings" are *JPMorgan Chase Bank, N.A.* v. *Washington Mutual, Inc.*, Adv. Pro. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding") and *Washington Mutual, Inc.* v. *JPMorgan Chase Bank, N.A.*, Adv. Pro. No. 09-50934 (MFW) (the "Turnover Proceeding").

JPMC in the Adversary Proceedings (the "July Appeal"). The second appeal is from this Court's September 14 Order and is being noticed today (the "September Appeal" and collectively the "Appeals"). The September Appeal argues that this Court erred with respect to the jurisdictional bar imposed by FIRREA and also argues that this Court was completely divested of subject matter jurisdiction as a result of the July Appeal, thus leaving this Court with no authority to act and, consequently requiring any of its actions in the Adversary Proceedings since the July Appeal to be vacated.

3. JPMC's Appeals challenge the threshold subject matter jurisdiction of this Court to act in the Adversary Proceedings. Because this Court has been divested of jurisdiction as a result of the Appeals, it may not act given the "age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists . . . ." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist," the power of the court to proceed ceases to exist. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). Accordingly, "in the absence of a finding that the [appeals are] frivolous, the [bankruptcy] court must suspend its proceedings once a notice of appeal is filed." *Leppo*, 634 F.2d at 105.

4. As of September 15, 2009, the parties have fully briefed the question of whether this Court is divested of subject matter jurisdiction to proceed on any basis with respect to the Adversary Proceedings. The relevant portions of the parties' briefs are attached as Exhibit A.

5. Debtors' primary response is to argue that JPMC's request amounts to a motion for a "stay." (Reply at 3.) JPMC has not and need not seek a stay. The timely filing of a

notice of appeal *automatically* divests the lower court of jurisdiction. "In the absence of the district court's reasoned finding of frivolousness or forfeiture, . . . the trial is automatically put off; it should not be necessary for the defendants to come to this court, hat in hand, seeking relief that is already theirs . . . ." *Apostol* v. *Gallion,* 870 F.2d 1335, 1339 (7th Cir. 1989).[3] To ensure that no further actions are taken by this Court after it has been divested of jurisdiction, JPMC respectfully submits this Notice.

## BACKGROUND

6.  On June 24, 2009, this Court orally denied motions by the FDIC and JPMC to stay or dismiss the Adversary Proceedings, holding that FIRREA does not provide for "a jurisdictional bar to the debtors' claims to property that is no longer in the hands of the FDIC as receiver, but are in the hands of JPMC." (June 24, 2008 Tr. 93:20-22.) On July 6, 2009, the Court entered four orders reflecting this decision (the "July 6 Orders"). JPMC and the FDIC timely filed their notices of appeal on July 10, 2009 (the "July Notices of Appeal").

7.  In addition, on June 18, 2009, JPMC moved to dismiss Debtors' counterclaims in the JPMC Adversary Proceeding. JPMC argued that despite the previous orders, this Court lacks subject matter jurisdiction over the counterclaims because they seek a determination of rights with respect to assets of a failed institution and directly challenge the acts or omissions of the FDIC. Debtors described these arguments as "déjà vu all over again." (Aug. 24, 2008 Tr. 100:15-18). At the August 24 hearing, the Court agreed with Debtors, stating it would deny JPMC's motion to dismiss as raising issues indistinguishable from the July 6

---

[3] Courts in the Third Circuit have likewise recognized jurisdictional divestiture as automatic. *See, e.g., Killeen* v. *Travelers Ins. Co.,* 721 F.2d 87, 90 n.7 ("The notice of appeal divested the district court of jurisdiction."); *Banks* v. *County of Allegheny,* Civ. A No. 05-781, 2008 WL 4279603, at *1 (W.D. Pa. Sept. 15, 2008); *Delaware County Safe Drinking Water Coal., Inc.* v. *McGinty,* Civ. A. No. 07-1782, 2008 WL 2229269, at*1 (E.D. Pa May 27, 2008).

Orders, without considering its lack of jurisdiction to enter such an order relating to a matter on appeal. On September 14, 2009, the Court entered an order denying JPMC's motion to dismiss.

8. While the parties should have addressed at the August 24 hearing the jurisdictional effect of the July Notices of Appeal, regrettably they did not.[4] Although lack of subject matter jurisdiction is not waivable, JPMC, quite frankly, did not focus on the Court's lack of jurisdiction due to the appeal given the attention being paid to the substantive FIRREA arguments raised in the motions. And neither Debtors nor the Court identified the issue either.

9. Despite the divestiture of jurisdiction, the Adversary Proceedings have continued. For example, Debtors have moved to dismiss JPMC's counterclaims in the Turnover Proceeding. On September 8, 2008, JPMC opposed that motion on the ground that (among other things) this Court lacks jurisdiction to rule on the motion. Debtors have characterized these actions as effectively waiving the right to object to subject matter jurisdiction. (Reply at 3.) But the law creates no such Hobson's choice when it comes to subject matter jurisdiction—a party need not respond in a timely manner to pending (albeit improper) proceedings *or* raise the lack of subject matter jurisdiction. Lack of subject matter jurisdiction cannot be waived. To put an end to such arguments, JPMC is filing this Notice, to address the divestiture of this Court's

---

[4] While the parties did not focus attention on this issue at the August hearing, because lack of jurisdiction is not a waivable defect and because this Court was without jurisdiction as a result of the July Notice of Appeal, the September Order was a nullity. *See Steel Co.*, 523 U.S. at 94 (holding that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). The September Order must, therefore, be vacated. *See In re Sacred Heart Hosp.*, 204 B.R. at 143 (vacating bankruptcy court order entered after appeal from collateral order divested bankruptcy court of jurisdiction), *aff'd*, 133 F.3d 237 at 241 (noting district court vacated post-appeal order of bankruptcy court "which dealt with the merits of the adversary proceeding"). While, under ordinary circumstances, JPMC would move for reconsideration of the September Order, rather than appeal, given that a jurisdictional defect is at issue, this Court is without power to reconsider (or even vacate) its previous ruling. *In re Butcher Boy Meat Market, Inc.*, 10 B.R. 258, 260 (Bankr. E.D. Pa. 1981).

jurisdiction and to have the Court confirm that it does not have jurisdiction to entertain further proceedings while the Appeals are pending.

## NOTICE

10. Upon JPMC's filing of the Appeals, this Court was immediately divested of jurisdiction. *Leppo*, 634 F.2d at 105; *Stewart v. Donges*, 915 F.2d 572, 575 (10th Cir. 1990). "[I]n the absence of a finding that the [appeals are] frivolous, the trial court must suspend its proceedings once a notice of appeal is filed." *Leppo*, 634 F.2d at 105; *In re Sacred Heart Hosp.*, 204 B.R. at 143, *aff'd*, 133 F.3d at 245. Any order entered after the Court is divested of jurisdiction must be vacated by the appellate court. *Id.*

### The Bankruptcy Court is Divested of Jurisdiction Over the Adversary Proceedings

11. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[5] *Griggs*, 459 U.S. at 58; *see also In re Mazzocone*, Civ. A. No. 94-5201, 1995 WL 113110, at *4 (E.D. Pa. Mar. 16, 1995) (same). This divestiture of jurisdiction occurs automatically upon the timely filing of a notice of appeal from final judgment or from a decision within the collateral order doctrine, without (as Debtors suggest) seeking a stay.[6] *Leppo*, 634 F.2d at 105. "In the absence of the district court's reasoned

---

[5] This "fundamental tenet of federal civil procedure"—that the filing of an appeal divests the lower court of jurisdiction over matters covered by the appeal—applies with equal force to appeals from bankruptcy courts. *In re AWC Liquidation Corp.*, 292 B.R. 239, 242 (D. Del. 2003) ("[T]he filing of a notice of appeal from the final judgment of a trial court divests the trial court of jurisdiction and confers jurisdiction upon the appellate court. This rule applies with equal force to bankruptcy cases.").

[6] JPMC, alternatively, sought leave to pursue an interlocutory appeal. No matter how much Debtors wish to focus on this alternative basis for appeal (Reply at 4-5), this does not change the fact that, as a matter of law, this Court is automatically divested of jurisdiction by the filing of the Appeals under the collateral order doctrine. And, if the District Court concludes that

finding of frivolousness or forfeiture, . . . the trial is automatically put off; it should not be necessary for the defendants to come to this court, hat in hand, seeking relief that is already theirs . . . ." *Apostol,* 870 F.2d at 1339; *see also Stewart,* 915 F.2d at 575 ("We begin with the unassailable general proposition that the filing of a notice of appeal, whether from a true final judgment or from a decision within the collateral order exception, is an event of jurisdictional significance . . . [that] divests the district court of its control over those aspects of the case involved in the appeal.") (internal quotations and citations omitted); *In re Sacred Heart Hosp.,* 204 B.R. at 143, *aff'd,* 133 F.3d 237 at 245 ("The fact that the order appealed from is a collateral order and not a traditionally final one makes no difference."). The Appeals here were timely filed pursuant to the collateral order doctrine, and squarely challenge this Court's subject matter jurisdiction over the Adversary Proceedings. As such, this Court is divested of jurisdiction over any aspect of the Adversary Proceedings involving its subject matter jurisdiction.[7] *See, e.g., In re Sacred Heart Hosp.,* 133 F.3d at 241 (expressly recognizing the district court's holding that

---

the Appeals should be considered discretionary interlocutory appeals, this Court would still be divested of jurisdiction to hear issues that are now before the District Court. *See, e.g., Jama* v. *Esmore Corr. Serv., Inc.,* No. Civ. 97-3093 DRD, 2005 WL 2901899, at *2 (D. N.J. Nov. 1, 2005) (holding that divestiture upon appeal "applies to interlocutory orders as well as final orders"); *Death Row Prisoners of Penn.* v. *Ridge,* 948 F. Supp. 1282, 1285 (E.D. Pa. 1996) ("If the law provides a party with a right to an interlocutory appeal . . . the normal rule of jurisdictional transfer will be applied with respect to those matters from which the appeal is taken.").

[7]     Some courts have found that an appeal from an order divests the bankruptcy court of the matter on appeal and all related matters as well. *See, e.g., Whispering Pines Estates, Inc.* v. *Flash Island, Inc.,* 369 B.R. 752, 761 (B.A.P. 1st Cir. 2007) (holding that subject matter of bankruptcy appeal "is not limited to the issues specifically defined in the appeal, but includes all of those matters that can directly affect the outcome of the appeal."); *In re Southold Dev. Corp.,* 129 B.R. 18, 21 (E.D.N.Y. 1991) ("In sum, the bankruptcy court in the case at bar was divested of jurisdiction regarding issues on appeal, as well as matters undeniably related to issues on appeal, upon the filing of the notice of appeal."); *In re Urban Dev. Ltd.,* 42 B.R. 741, 744 (Bankr. M.D. Fla. 1984) ("[T]his court should not interfere with the appeal process and entertain any request [sic] the Debtor which either directly or *indirectly* touches upon the issues involved in the pending appeal.") (emphasis added).

the "bankruptcy court lacked jurisdiction over the adversary proceeding after . . . [an appeal] pursuant to the collateral order" doctrine was brought).

12. An appeal of the Court's subject matter jurisdiction necessarily equates to divestiture of the Court's ability to proceed in the case. It is well settled under the divestiture rule that when an appeal concerns the fundamental right of a party not to have to proceed before the forum, then the matters "encompassed by the appeal" involve the very power of the lower court to act, thereby divesting the lower court of the authority to act while the appeal is pending. For example, lower courts are completely divested of jurisdiction when an appeal implicates the entire case below by questioning whether a party is immune from being subjected to a trial, such as under the doctrines of qualified and absolute immunity or double jeopardy. *See, e.g., Forsyth v. Kleindienst*, 700 F.2d 104, 105 (3d Cir. 1983) ("[A]bsolute immunity protects the right not to be subjected to trial—a right that is lost if appellate review awaits final adjudication. It follows therefore, that a stay must be granted or the defendant will be deprived of the benefits of adjudication before trial."); *Leppo*, 634 F.2d at 105 (finding in the context of an appeal concerning the denial of motion to dismiss an indictment based on double jeopardy, that "in the absence of a finding that the motion is frivolous, the trial court *must* suspend its proceedings once a notice of appeal is filed.") (emphasis added); *In re Sacred Heart Hosp.*, 204 B.R. at 143, *aff'd*, 133 F.3d at 245 (Because eleventh amendment immunity issue on appeal was a "complete defense" and would "end the lawsuit," "the 'aspects of the case' involved in th[e] appeal can only be characterized as the entire case.").

13. Appeals under the collateral order doctrine result in complete divestiture of jurisdiction in other circumstances as well. Courts have routinely held that filing an appeal under the collateral order doctrine to enforce a statutorily imposed bar against having to proceed

in a lawsuit completely divests the lower court of jurisdiction on the grounds that the appeal is a challenge to the entire legal basis for the lawsuit. *See Ehleiter* v. *Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007) (holding that a collateral order appeal pursuant to the Federal Arbitration Act "automatically deprives the trial court of jurisdiction to proceed until such time as the appeal is fully litigated or determined to be frivolous or forfeited."); *Hallock* v. *Bonner*, No. 03-CV-195 (DNH/DRH), 2003 WL 22519644, at *2 (N.D.N.Y. Nov. 4, 2003) (holding that a collateral order doctrine appeal concerning the Federal Tort Claims Act divested the court of jurisdiction because "[h]ere, as with an appeal on an issue of qualified immunity, defendants' challenge the entire legal basis for plaintiffs' law suit. The pending appeal thus involves all aspects of this case."); *see also Ariav* v. *Mesch, Clark & Rothschild, P.C.*, 2005 WL 3008616, at *1 (D. Ariz. Nov. 8, 2005) (holding that a collateral order doctrine appeal concerning court's subject matter jurisdiction under the Family Medical Leave Act required a stay of proceedings because "[t]he issue of jurisdiction . . . is intertwined with the merits" and thus proceeding forward "would necessarily implicate the jurisdictional issue on appeal").

14. The issue presented by the Appeals here—essentially whether FIRREA bars this Court from exercising subject matter jurisdiction over the claims in the Adversary Proceedings—similarly involves the fundamental issue of whether JPMC and the FDIC have the right not to proceed before a particular forum or the right not to proceed to trial at all in these Adversary Proceedings. FIRREA provides an exclusive insolvency regime for bank failures. Congress drafted FIRREA expressly to divest all courts, except for two specified under the statute, of jurisdiction to hear claims relating to the assets of failed banks or the actions of the receivers for failed banks. 12 U.S.C. § 1821(d)(13)(D). Congress likewise affirmatively limited the recoveries available for claims falling within FIRREA. 12 U.S.C. § 1821(d)(6). At issue in

the Appeals, therefore, is whether JPMC, as a purchaser of a failed bank's assets, is immune from suit for claims within the scope of FIRREA that are presented outside of this Congressionally imposed framework.

15.     Because these Appeals directly challenge this Court's subject matter jurisdiction over the Adversary Proceedings, upon their filing the Court was automatically divested of jurisdiction and required to suspend all proceedings.[8] *Leppo*, 634 F.2d at 105 ("[I]n the absence of a finding that the [appeal] is frivolous, the trial court must suspend its proceedings once a notice of appeal is filed."); *In re Sacred Heart Hosp.*, 204 B.R. at 143, *aff'd*, 133 F.3d at 245 (same); *see also In re AWC Liquidation Corp.*, 292 B.R. at 242 (holding that, once a notice of appeal is filed, a bankruptcy court may not enter an order because it lacks jurisdiction over the case); *In re Butcher Boy*, 10 B.R. at 259 (same).

### JPMC's Appeals are Meritorious

16.     JPMC's Appeals are meritorious. In any event, the grounds for JPMC's Appeals far surpass the "frivolity exception" to the divestiture of jurisdiction principle under the low standard imposed by the Third Circuit. Debtors' focus on whether the collateral order appeal is proper (Reply at 5-7) not only overlooks Third Circuit law holding that an appeal

---

[8]     The result of the divestiture rule here—the cessation of any proceedings by this Court that call upon it to exercise subject matter jurisdiction—is in accordance with the purposes behind that rule. Without proper application of the divestiture rule, JPMC must raise in response to every decision and every action by this Court its objection to subject matter jurisdiction and, as appropriate, pursue serial appeals of that issue again and again, which Debtors will describe as "déjà vu all over again." (Aug. 24, 2008 Tr. 100:15-18). These are, of course, necessary steps to protect JPMC's rights and should not be the subject of repeated motions or arguments, not because JPMC should waive its rights, but because the issue should not be heard by this Court again, until the pending appeal is resolved. "This rule is designed to prevent interference from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues." *See In re Sacred Heart Hosp.*, 204 B.R. at 143, *aff'd*, 133 F. 3d at 245.

involving the application of FIRREA is a proper collateral order doctrine appeal,[9] but misses the fundamental legal point. The "frivolity" exception does not apply "if *any* of the legal points are *arguable* on their merits." *Death Row Prisoners*, 948 F. Supp. at 1286 (emphasis added); *see also Ne. Women's Center, Inc. v. McMonagle*, 939 F.2d 57, 70 n.22 (3d Cir. 1991) (holding that an appeal is frivolous only if it "lacks any 'colorable arguments' in its favor or is 'totally without merit . . . .'"). In the absence of a finding that an appeal is frivolous, "the trial court must suspend its proceedings once a notice of appeal is filed." *Leppo*, 634 F.2d at 105; *In re Sacred Heart Hosp.*, 204 B.R. at 143 (same).

17. JPMC has attempted to persuade the Court that its exercise of jurisdiction is barred by FIRREA. Although the Court does not agree, another court recently did in a decision that highlights why the rationale for this Court's decision to exercise jurisdiction over the claims in the Adversary Proceedings is, respectfully, wrong. The Honorable Kenneth M. Hoyt's September 9, 2009 decision involving the issues presented in the Appeals demonstrates that JPMC's appellate arguments are correct or at least demonstrates they are "colorable." *See* Memorandum and Order Transferring Case, *American National Insurance Co. v. JPMorgan Chase & Co.*, No. 3:09-CV-000044 (S.D. Tex.) (D.I. 48) (attached as Exhibit B).

18. The *American National* plaintiffs asserted claims against JPMC relating to its acquisition of WMB's assets from the FDIC. The FDIC intervened, and both JPMC and the FDIC moved to transfer the Texas Action to the D.C. Court, arguing that the D.C. Court was one of the two exclusive venues specified in FIRREA for hearing such claims. Plaintiffs provided

---

[9] To the extent that Debtors are arguing the grounds for appeal pursuant to the collateral order doctrine are frivolous, they are wrong. The Third Circuit has held that an order that undermines the protections afforded in FIRREA is an order that is "effectively unreviewable" and therefore appealable under the collateral order doctrine. *Praxis Props., Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 58-60 (3d Cir. 1991). This case moots any argument of frivolity regarding application of the collateral order doctrine.

Judge Hoyt with this Court's reasoning and ruling and opposed the transfer "contend[ing] that FIRREA is inapplicable to their claims because their lawsuit is [against JPMC,] not against the FDIC." *Id.* at 4.

19. Flatly rejecting this argument, Judge Hoyt observed that "plaintiffs have either misread [FIRREA] or, in an effort to craft a suit that avoids the reach of the statute, ignored the 'well pleaded complaint rule.'" *Id.* In accordance with JPMC's arguments before this Court and in the Appeal,[10] Judge Hoyt went on to hold that "[i]n truth, the plaintiffs' suit is related to the actions taken by the FDIC-Receiver when it sold substantially all of the assets of WMB to JPMC Bank on September 25, 2008" and that "[i]n the case at bar, the plaintiffs failed to bring their suit in either of the permissible venues. Hence, the suit may be dismissed or transferred to the District whe[re] it could have been brought." *Id.* at 4-5.

20. Judge Hoyt's opinion alone demonstrates the merit of JPMC's argument on Appeal. There is merit (as Judge Hoyt found) to the argument that the claims at issue in the Adversary Proceedings each seek a determination of rights with respect to assets of WMB and/or challenges the actions of WMB or the FDIC as receiver. Although this Court has not accepted JPMC's position that the plain language of FIRREA bars this Court from hearing such claims, 12 U.S.C. § 1821(d)(13)(D),[11] reasoned decisions from several Courts of Appeal (including the

---

[10] *See, e.g.*, Aug. 24, 2009 Tr. at 96:10-14 ("[FIRREA] says, though, if what you're looking for is a determination of rights to the assets of the receivership, or if your claim is related to the actions of the receiver, it says in those circumstances, you're jurisdictionally barred from proceeding here.").

[11] This Court's decision to erase the effect of the jurisdictional bar once assets are sold by the FDIC to a third-party purchaser is not only unsupported by the relevant provision of FIRREA, but it is also refuted by language Congress adopted elsewhere in FIRREA. Congress could easily have limited § 1821(d)(13)(D)'s jurisdictional bar with the language used in the immediately preceding subparagraph of the statute, which provides that "[n]o attachment or execution may issue by any court *upon assets in the possession of the receiver*." 12 U.S.C. § 1821(d)(13)(C) (emphasis added). This plain language demonstrates that Congress clearly

-11-

Sixth, Ninth and Eleventh Circuits) and other courts in similar circumstances strongly support JPMC's position.[12] If nothing else, these decisions, along with Judge Hoyt's holding in *American National*, demonstrate conclusively that JPMC's Appeals are not "frivolous" and, therefore, this Court "must suspend its proceedings." *Leppo*, 634 F.2d at 105; *In re Sacred Heart Hosp.*, 204 B.R. at 143 (same).

\* \* \*

---

knew how to limit FIRREA when it had determined it was relevant whether or not assets were still in the possession of the receivership. The fact that Congress chose not to narrow the FIRREA jurisdictional bar in this manner establishes the error in unilaterally adding such a limitation that was otherwise omitted by Congress. *Keene Corp.* v. *United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello* v. *United States*, 464 U.S. 16, 23 (1983)).

[12] *See, e.g.*, *Vill. of Oakwood* v. *State Bank and Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (claims against purchaser of failed bank assets from the FDIC were barred by 12 U.S.C. § 1821(d)(13)(D)(ii) as "directly related to acts or omissions of the FDIC as the receiver of [the failed bank]"); *diSibio* v. *Mission Nat'l Bank*, 127 F. App'x 950, 951 (9th Cir. 2005) ("The district court properly dismissed [plaintiffs'] claims against [the purchasing bank] that were based on [the failed bank's] actions; those claims are defaulted because they had to be raised before the [receiver] before the [plaintiffs] could proceed to federal [district] court."); *Am. First Fed., Inc.* v. *Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA. Thus, if Lake Forest is barred [by Section 1821(d)(13)(D)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF."); *Trinsey* v. *K. Hovnanian at Upper Merion, Inc.*, 841 F. Supp. 694, 695 (E.D. Pa. 1994) ("[Plaintiff] is seeking a determination of rights with respect to an asset previously owned by an institution for which the RTC was appointed receiver, and then disposed of through an act of the RTC. Accordingly, the above-cited jurisdictional provisions of the Act [, *i.e.*, 12 U.S.C. 1821(d)(13)(D),] appear to bar my consideration of [plaintiff's] claims for equitable relief.").

WHEREFORE, JPMC respectfully submits this Notice of Divestiture of Jurisdiction Pending Appeals and requests that the divestiture be enforced by the Court.

Dated: September 18, 2009
       Wilmington, Delaware

Respectfully submitted,

*(signature)*

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE 19899
Tel: (302) 467-4400
Fax: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

– and –

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Tel: (310) 712-6600
Fax: (310) 712-8800
sacksr@sullcrom.com
feldsteinh@sullcrom.com

Bruce E. Clark
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax (212) 558-3588
clarkb@sullcrom.com
friedmans@sullcrom.com

*Counsel for JPMorgan Chase Bank,
National Association*