# EXHIBIT F

# ACCOUNT SECURITY AGREEMENT

WM1-70
FA-002
MAY 31, 2002

THIS ACCOUNT SECURITY AGREEMENT ("Agreement") is made as of May 31, 2002, by and between Washington Mutual, Inc., a Washington corporation ("Debtor"), for the benefit of WASHINGTON MUTUAL BANK, FA a federal savings association ("Secured Party").

## RECITALS

Debtor is an affiliate of Secured Party. From time to time Secured Party may pay certain expenses and obligations incurred by one or more other affiliates of Debtor (other than Long Beach Mortgage Company, which has entered into a separate account security agreement with Secured Party) (each, an "Affiliate") for which such Affiliate will be obligated to repay Secured Party together with such interest thereon and charges incidental thereto, if any, as such Affiliate and Secured Party may agree from time to time. All such expenses, obligations, interest and charges for which such Affiliate is obligated to pay or repay Secured Party are referred to, collectively, as the "Inter-Company Obligations."

Debtor maintains a deposit account numbered 177-8911206 with Secured Party. Such account, however titled or maintained is referred to as the "Deposit Account." All funds from time to time on deposit in the Deposit Account are referred to, collectively, as the "Deposit Funds."

Secured Party is required by law to hold certain collateral for the Inter-Company Obligations.

NOW, THEREFORE, in consideration of the above and the mutual promises contained in this Agreement, the receipt and sufficiency of which are acknowledged, Debtor and Secured Party agree as follows:

## AGREEMENT

1. **Grant of Security Interest, Etc.** Debtor hereby assigns, transfers and pledges to Secured Party, and grants Secured Party a security interest in and lien upon, the Deposit Account and the Deposit Funds (collectively, the "Collateral") as security for all of the Inter-Company Obligations and for all obligations of Affiliates of Debtor to Secured Party under the terms of this Agreement. All obligations secured by this Agreement are referred to, collectively, as the "Secured Obligations."

2. **Default and Remedies.** It shall be an "Event of Default" under this Agreement if an Affiliate of Debtor at any time defaults in its obligation to timely pay or repay any of the Secured Obligations or fails to perform any obligation under the terms of this Agreement or if Debtor or such Affiliate becomes the subject of any bankruptcy, receivership or other insolvency proceeding. After the occurrence and during the continuance of an Event of Default, Secured Party in its sole and absolute discretion, may (i) apply the Collateral or any portion thereof to payment of the Secured Obligations; (ii) apply the Collateral or any portion thereof to reimburse Secured Party for any losses or expenses (including, without limitation, legal fees) suffered or incurred by Secured Party as a result of such Event of Default, and (iii) apply the Collateral or

1

any portion thereof in connection with exercising and exercise all rights and remedies available to Secured Party at law or in equity or under this Agreement.

     3. <u>Remedies Cumulative</u>. None of the rights and remedies conferred upon or reserved to Secured Party under this Agreement are intended to be exclusive of any other rights or remedies, and each and every such right shall be cumulative and concurrent, and may be enforced separately, successively, or together, and may be exercised from time to time as often as may be deemed necessary by Secured Party.

     4. <u>Successors and Assigns Bound</u>. This Agreement shall be binding upon Debtor and its successors and assigns, and shall inure to the benefit of, and may be enforced by Secured Party and its successors, transferees, and assigns.

     5. <u>Amendment and Waiver</u>. No amendment to this Agreement will be valid unless it is made in writing and executed by the parties to this Agreement. No specific waiver or forbearance for any breach of any of the terms of this Agreement shall be considered as a general waiver of that or any other term of this Agreement.

     6. <u>Entire Agreement</u>. This Agreement contains the complete and entire understanding of the parties and no changes shall be recognized as valid unless they are made in writing and signed by both Debtor and Secured Party.

     7. <u>Severability</u>. The invalidity, illegality, or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall remain in full force and effect.

     8. <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the state of Washington.

     **IN WITNESS WHEREOF**, the undersigned has executed this Agreement as of the day and year first above written.

**DEBTOR:**

Washington Mutual, Inc.

By:

Name:     RICHARD D LODGE

Title:     SENIOR VICE PRESIDENT & TREASURER

2

**ACPR**     CO     2 OP                MS **64000 ACTION SUCCESSFUL**
ACTION: **INQ**     (INQ NXT NXTCUS NXTACR NXTRMK ACDT ACDE)
COID     **2** PRD DDA ACCT 0177-0000891120-6        SSN/TID **91-1653725**  NO **1** LINE **1**
T WASHINGTON MUTUAL INC                   BALANCE          **52,600,201.01**
T FBO WASHINGTON MUTUAL BANK FA           SUB-PRD **U5** ST **99**  CURR
A WASHINGTON MUTUAL                       COST CTR       **9909** BRN     **9909**
A ROWENA LITTLE                           OPENED     **1020530** OFF1
A 1301 2ND AVE # WMC1411                   CLOSED             OFF2
C SEATTLE WA 98101-2005                    LST MNT    **1080331** EMP?       **N**
                                    CNTRY                       SENS **0**
                                                                LANG
ACTN: CUPR CUID        **R E L A T E D   C U S T O M E R S**        NEXT:     **1**
SEQ- COID CUSTOMER----------------------------- TIE-- REL----- APSP OWNER  %
**0001     2 *WASHINGTON MUTUAL INC                     10 N-I OWNE NNN  100.0000**

                       **R E L A T E D   A C C O U N T S**        NEXT:     **1**
SEQ- COID- PRD ACCOUNT----------------        REL----- APSP OWNER  %


                       **R E M A R K S**                      NEXT:     **1**
    TYPE       EFF        EXP
    TYPE       EFF        EXP
**PF:** 1-HELP 2-CONT 3-PLVL 4-DECR 5-INCR 7-END

C174

# EXHIBIT G

JOURNAL ENTRY REQUEST FORM

**DR**

| CO. | GL | CC | AMT | DESCRIPTION |
|---|---|---|---|---|
| 70 | 10441 | 9909 | 3,674,000,000.00 | WMI contributes to fsb |
| 02 | 52915 | 9347 | 3,674,000,000.00 | WMI contributes to fsb |
| 40 | 20601 | 9909 | 3,674,000,000.00 | WMI contributes to fsb |
| 01 | 49241 | 9331 | 3,674,000,000.00 | WMI contributes to fsb |

**CR**

| CO. | GL | CC | AMT | DESCRIPTION |
|---|---|---|---|---|
| 70 | 10450 | 9909 | 3,674,000,000.00 | WMI contributes to fsb |
| 02 | 45798 | 9909 | 3,674,000,000.00 | WMI contributes to fsb |
| 40 | 28201 | 9331 | 3,674,000,000.00 | WMI contributes to fsb |
| 01 | 52915 | 9347 | 3,674,000,000.00 | WMI contributes to fsb |

Total DR    $14,696,000,000.00

Balance check    $0.00

Requested by: Yolanda Noblezada    930338    9/24/2008
Approved by:
Posted by:

Total CR    $14,696,000,000.00

09/20/2008

C176

# EXHIBIT H

WASHINGTON MUTUAL
CHASE ELEVATION REPORT
INSTRUCTIONS

| | | | | CURRENT AS OF | RECONCILING ITEMS Aged 1 TO 30 DAYS | | RECONCILING ITEMS Aged 31 TO 60 DAYS | | | | RECONCILING ITEMS Aged OVER 90 DAYS | | | | | | ADJUSTED BALANCE | | RECON WMB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Additional Co-Lje accounts under common/any borrower, informed by the GL accounts listed:

| On-Lie Acct# | Acct Name | CO | Clts Cmt R | Balance | GL Co | GL Acct | Rc | GL Title |
|---|---|---|---|---|---|---|---|---|

SEAFIRST HOLDING CORP
WASHINGTON MUTUAL INC
BAYVIEW INDUSTRIES
HOLDING CORP
WASHINGTON HOLDINGS INC
WASHINGTON MUTUAL INC
REDECA VENTURES (SR)
LIMITED IN IXB
VAN HOME EQUITY TRUST I
WM PREFERRED FUNDING

WMI PREFERRED FUNDING
WHALE 2005 OA1-199
WAMU 2007 FLEX 1
PNS STREET HOLDINGS
WM HAWAII LLC
WESTERN SERVICE CO.

ONE CAPITAL PARTNERS, INC
WM LLC
WASHINGTON MUTUAL TRADE
SERVICE

WASHINGTON MUTUAL BANK
WASHINGTON CORPORATION
COMPANY
WASHINGTON MUTUAL FBAC
BANCA
WASHINGTON MUTUAL FSB

DUE FROM WMB FA-HO
MONEY MKT REV-AC-WMBFYA02

MONEY MKT REV-AC-WMBFYA02
DUE FROM WMB FA-AB/AAC
DUE FROM WMB FA-HC

DUE FROM WMB FA-HC
DUE FROM WMB FA-HC
DUE FROM WMB FA-HC
DUE FROM WMB FA-HC
DUE FROM WMB FA-HC
DUE FROM WMB FA-HC

DUE FROM WMB FA-HC
DUE FROM WMB FA-HC

DUE FROM WMB FA-HC

DUE FROM WMB FA-HC

DUE FROM WMB FA-HC

DUE FROM WMB-WBBOAHC
DUE FROM WMB FA-HC

Page 1 of 1

Legend
Reconciliations Printed Lt. = Manual, Known File, A=AUTO
A=Auto Code, B=High-to-Medium, C=Low
A=Auto#

FOOTNOTES

01/07/2009 09 AM

C178

WASHINGTON MUTUAL
CHASE ELEVATION REPORT
BROKERAGE

On the above signatures, ...
On the reverse signatures, ...
These to be reviewed by Branch Banker Department (CERIN1016) by the 20th of the month following the stated date.

FOOTNOTES

Page 1 of 1

Additional On-Us accounts details reconciling however, detailed at the On-Us account level.

| On-Us Acct# | Acct Name | CO | City Days | R | Balance | GL Co | GL Acct | Rs | GL Title |
|---|---|---|---|---|---|---|---|---|---|
| 100000004551 HOLDING CORP | BEAVER NORTHWEST | 2 | 18 1 | | $8,315,860.55 | 982 | 10450 | 000000 | DUE FROM WMB FA-HC |
| 177000000111128 WASHINGTON MUTUAL INC | | 2 | 18 1 | | $2,028,142.14 | 070 | 10512 | 000000 | MONEY MKT INV/C-HNBF-ABS |
| 177000008535 HOLDING CORP | BEAVER SECURITIES | 3 | 18 1 | | $115,602,600.36 | 920 | 12517 | 000000 | MONEY MKT INV/C-HNBF-ABS |
| 177000000057 WASHINGTON MUTUAL INC | | 2 | 18 1 | | $84,204,134.04 | 070 | 06040 | 000000 | DUE FROM WMB FA-HC |
| | BENSON FUNDING EXG | | | | | | | | |
| 98500002267214 WM HOME EQUITY TRUST I | | 3 | 18 1 | | $1,982,806.00 | 5040 | 06046 | 000000 | DUE FROM WMB FA-HC |
| 200000041760741 WM HOME EQUITY FUNDING | | 3 | 18 1 | | | 437 | 06046 | 000000 | DUE FROM WMB FA-HC |
| | | | | | | | | | |
| 990000017080895 LLC | | 2 | 18 1 | | $1,962,292,388.07 | 406 | 10450 | 000000 | DUE FROM WMB FA-HC |
| 314000197523 WAMU 2007-FLEX 1 | | 2 | 18 1 | | 0.00 | 592 | 10450 | 000000 | DUE FROM WMB FA-HC |
| 314000197578 PNC STREET HOLDINGS | | 3 | 18 1 | | 0.00 | 404 | 10450 | 000000 | DUE FROM WMB FA-HC |
| 314000197556 WAMU FUNDING LLC | | 3 | 20 1 | | 0.00 | 916 | 10450 | 000000 | DUE FROM WMB FA-HC |
| 441000003424 WESTERN SERVICE CO. | | 2 | 18 1 | | 0.00 | | 10450 | 000000 | DUE FROM WMB FA-HC |
| | | | | | | | | | |
| 441000000549 DIME CAPITAL PARTNERS INC | | 2 | 18 1 | | 0.00 | 341 | 10455 | 000000 | DUE FROM WMB FA-HC |
| 441000000542M WAMU TRADE | | 2 | 18 1 | | $406,979,643.77 | 311 | 10451 | 000000 | DUE FROM WTB-MMDA-HC |
| | WASHINGTON MUTUAL FINANCE | | | | | | | | |
| 441000000130 SERVICE | | 4 | 18 1 | | 16,662.59 | 411 | 10458 | 000000 | DUE FROM WMB FA-HC |
| 441000004110 | | 48 | 18 1 | | 3,857,345,175.00 | 079 | 10441 | 000000 | DUE FROM WTB-MMDA-HC |
| | CANADIAN OBLIGATION | | | | | | | | |
| 970000000517119 COMPANY | | 3 | 18 1 | | $1,282,767.88 | 575 | 10459 | 000000 | DUE FROM WMB FA-HC |
| | WASHINGTON MUTUAL | | | | | | | | |
| 810000001440 WASHINGTON MUTUAL FSB | | 3 | 18 4 | | 226,473.03 | 502 | 06017 | 000017 | DUE FROM WMB-MMDA-HC |
| 980000004770 WASHINGTON MUTUAL FSB | | 2 | 18 4 | | 271,300.98 | 940 | 10450 | 000000 | DUE FROM WMB FA-HC |

01/03/2008 9:00 AM

C180

# EXHIBIT I

**QUI Washington Mutual**

Spreadsheet ...

Company No:
Batch Number:
NOTE: BATCH NUMBER MUST BE FILLED IN!!!!!

Posting Date:

| | | | | Effective Date | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 21 | 1000 | | | | | 21,6xx.xx | xxxx | IRS Refund | |
| 22 | 61000 | 1002300 | | | | 21,9xx.xx | 6007 | IRS Refund | |

| Total Dr/Cr | 234,626,524.00 |
|---|---|

**PLEASE SIGN AND DATE:**

Prepared By: Shirley Xu

Approved By: Mike Norman

Posted By: Shirley Xu

Verified by:

Documentation Attached:   (YES)   No

Reason for entry: 2007 IRS Refund Allocation

Washington Mutual Inc. & Subsidiaries
2007 Return Payment Allocation
For Year Ended December 31, 2007

SETT 3D

| | Taxable Income Per 1120 | E&P | Taxable Income | Tax Liability (Refund) | (Payments) Refunds | Appl'ed Credits | Net Tax Liability (Refund) | Cash Applied | Refund Rate |
|---|---|---|---|---|---|---|---|---|---|

Estimated Tax Payments

| | | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter | Extension |
|---|---|---|---|---|---|---|

N/Zo' B

WMI RECEIVED (PAYS)

Washington Mutual Confidential

2007 Return Payment Allocation

## Koh, Rolando V.

**From:** Xu, Shirley
**Sent:** Monday, September 15, 2008 11:04 AM
**To:** Koh, Rolando V.
**Cc:** Norman, Michael W.
**Subject:** FW: 2007 Federal Return/Refund

Rolando,

We electronically filed 2007 WMI & Subs federal consolidated return on Friday, September 12th, 2008. We also requested a refund of $234,526,524. It should be received in approximately 2 to 3 weeks.

Please let us know once you receive the refund.

Thanks,

**Shirley Xu**
WAMU Center
1301 2nd Avenue
Twenty-second Floor
Seattle, WA 98101
Phone: 206-500-5779
Fax: 206-377-3295

---

**From:** Norman, Michael W.
**Sent:** Monday, September 15, 2008 10:45 AM
**To:** Xu, Shirley
**Subject:** FW: 19 2007 returns yet to be filed

Can you notify the people in Treasury that we filed the federal return and it was electronically accepted on Friday?

In that notice please let them know we requested a refund of $234,526,524 and we should expect to receive that in approximately 2 to 3 weeks.

Thanks,
Mike

**Michael Norman, CPA**
V.P. and Senior Manager, Corporate Tax
206.500.5770 direct | 206.377.3295 fax

02/20/2009

# EXHIBIT J

# INDEMNIFICATION

## AND

## COLLATERAL ACCOUNT PLEDGE AND SECURITY AGREEMENT

This Indemnification and Collateral Account Pledge and Security Agreement is entered into as of March 1, 2006 by and between WASHINGTON MUTUAL, INC. ("**Owner**"), and WASHINGTON MUTUAL BANK, a federal association, ("**Secured Party**").

## RECITALS

A.      Owner owns all of the issued and outstanding capital stock of each of New American Capital, Inc., a Delaware corporation ("NACI"), and Long Beach Mortgage Company, a Delaware corporation ("Long Beach"). NACI owns all of the issued and outstanding capital stock of Secured Party.

B.      Owner and certain of its affiliates desire to enter into a reorganization which, among other effects, will result in Long Beach becoming for an interim period, a wholly owned subsidiary of Secured Party. This part of the reorganization will be accomplished through the following steps: (1) Owner forms a new interim federal savings association ("Interim Association"); (2) Owner contributes all of the capital stock of Long Beach to Interim Association, and as a result Long Beach becomes a wholly owned subsidiary of Interim Association; (3) Owner contributes all of the capital stock of Interim Association to NACI, and as a result Interim Association becomes a wholly owned subsidiary of NACI; and (4) Interim Association merges with and into Secured Party (the "Merger") and as a result Long Beach becomes a wholly owned subsidiary of Secured Party.

C.      Owner and certain of its affiliates have filed an application with the Office of Thrift Supervision (the "OTS") to approve steps (1) through (4) described in Recital B above. In connection with such application, Owner desires to agree to indemnify Secured Party in the event that, following the Merger, Secured Party suffers certain losses. In order to secure Owner's performance of such indemnity, the parties desire that Owner establish a deposit account with Secured Party and pledge and grant to Secured Party a perfected exclusive first-priority security interest in such account on the terms set forth herein.

In consideration of the foregoing, Owner and Secured Party agree as follows:

## AGREEMENT

1.      <u>Certain Definitions</u>. The following terms used herein shall have the following meanings:

"<u>Agreement</u>" means this Collateral Account Pledge and Security Agreement as now in effect and as it may be modified, extended, or renewed from time-to-time.

1

"Collateral" means: (1) all amounts from time-to-time on deposit in the Pledged Deposit Account; (2) all instruments, and other property from time-to-time received, receivable, or otherwise distributed in respect of, in renewal or replacement of, or in exchange for, any of the foregoing; and (3) all products and proceeds of the foregoing.

"Event of Default" means any one or more of the following:

(1) Any default or event of default in Owner's performance of the Obligations (as hereinafter defined); or

(2) Untruth or inaccuracy of any representation or warranty contained in this Agreement in any material respect; or

(3) Any failure by Owner to comply fully and timely with any provision of this Agreement; or

(4) Any levy, attachment, or execution on, or seizure of, any of the Collateral; or

(5) Dissolution, termination of existence, insolvency, or bankruptcy of Owner, or the appointment of a receiver to take possession of any of the Collateral.

"Obligations" means the indemnification obligations of Owner as described in Section 2 hereof.

"Pledged Deposit Account" means that certain blocked, non-interest bearing deposit account established with Secured Party under **Account No. 314-197966-3**, and in the name of or belonging to Owner, as provided in Section 3, below.

"UCC" means the Uniform Commercial Code as enacted in the state the law of which applies to the relevant Collateral.

2. Indemnification Obligation. Owner hereby agrees to indemnify and hold harmless Secured Party and its subsidiaries from and against any and all losses, damages, expenses, fees, liabilities, claims, demands and causes of action (collectively, "Liabilities") arising out of or resulting from facts and circumstances existing as of the effective time (the "Effective Time") of the Merger or from actions or omissions of Long Beach prior to the Effective Time but only to the extent that (i) such Liabilities are not disclosed in the financial records of Long Beach immediately prior to the Effective Time, or, if so disclosed, the reserves for such Liabilities in such financial records are not sufficient to cover the amount of the Liabilities incurred by Secured Party, on a consolidated basis, after the Effective Time, and (ii) such Liabilities do not result from actions or omissions prior to the Effective Time, such as in loan servicing, for which Secured Party is or was contractually liable to Long Beach.

3.      Pledged Deposit Account.

(a)      Owner hereby authorizes and directs Secured Party to establish and maintain the Pledged Deposit Account at one of Secured Party's branches or offices, as applicable, as a blocked, non-interest bearing account under Account No. 314-197966-3.

(b)      The Pledged Deposit Account shall be established in the name "Washington Mutual Bank, collateral account of Washington Mutual, Inc."

(c)      The Pledged Deposit Account and/or the Pledged Certificate(s) shall be subject to the sole and exclusive control of Secured Party and the only individuals having signature authority over the Pledged Deposit Account shall be officers of Secured Party.

(d)      Owner shall have no right to withdraw any funds from the Pledged Deposit Account unless and until Secured Party has become obligated to release all its liens on and security interests in the Collateral pursuant to Section 6 of this Agreement.

(e)      Promptly upon execution of this Agreement, Owner shall deposit funds into the Pledged Deposit Account in the amount of $10,000,000, whereupon such funds shall be subject to this Agreement

(f)      All income or other applicable taxes, if any, payable with respect to other income earned on deposits made to the Pledged Deposit Account shall be paid by Owner. The tax identification number associated with the Pledged Deposit Account shall be that of Owner.

4.      Pledge and Assignment of Security for Obligations. The Pledged Deposit Account and each deposit thereto made by Owner pursuant to this Agreement are hereby delivered, pledged, assigned, conveyed, and transferred to Secured Party, and Owner hereby pledges and assigns to Secured Party and grants to Secured Party an exclusive first-priority security interest in, and lien upon, all of Owner's right, title, and interest in and to the Pledged Deposit Account, and each and every deposit made thereto, and in and to all of the other Collateral, all as collateral security for the prompt payment and performance in full when due (including the payment of amounts that would become due but for the effect of any bankruptcy or insolvency proceedings) of the Obligations.

5.      Delivery of Collateral. All certificates, documents, and instruments, if any, representing or evidencing the Collateral shall be delivered to and held by or on behalf of Secured Party in the Pledged Deposit Account, and shall be in suitable form for transfer by delivery and shall be accompanied by Owner's indorsement, where necessary, or duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to Secured Party, in its sole discretion.

6.      Release of Lien. If, but only if, no Event of Default has occurred and is then continuing, Secured Party shall release its liens on and security interests in the Collateral at such time as the Obligations terminate.

7.     Ownership of Collateral. Owner represents and warrants that Owner is and will be the owner of the Collateral, free and clear of any lien, claim, or security interest, except for the security interest in favor of Secured Party created by this Agreement, and Owner has and will have the full right, power, and authority to enter into this Agreement and to pledge the Collateral to Secured Party.

8.     Transfers and Other Liens. Owner agrees not to (a) sell, assign (by operation of law or otherwise), withdraw, or otherwise dispose of any of the Collateral or (b) create, or suffer to exist, any lien or security interest upon any of the Collateral, except for the security interest granted to Secured Party under this Agreement.

9.     Further Assurances. Owner agrees that from time-to-time, at the expense of Owner, Owner will promptly execute and deliver all further instruments and documents, and take all further action(s), that may be necessary or desirable, or that Secured Party may request (a) in order to create, perfect, and protect any security interest granted under this Agreement or (b) to enable Secured Party to exercise and enforce its rights and remedies under this Agreement with respect to the Collateral. Owner will, at Secured Party's request, appear in and defend any action or proceeding that may affect Owner's title to, or Secured Party's security interest in, the Collateral.

10.     Secured Party Appointed Attorney-in-Fact. Owner hereby irrevocably appoints Secured Party as Owner's attorney-in-fact, with full authority in the place and stead of Owner and in the name of Owner, Secured Party or otherwise, from time-to-time, in Secured Party's sole discretion, to take any action and to execute any instrument that Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement including, without limitation (a) to execute any documents necessary or appropriate to perfect the security interests granted in this Agreement and (b) to receive, indorse, and collect any instruments made payable to Owner representing any principal or interest payment, or other distribution, in respect of the Collateral. The foregoing power of attorney is coupled with an interest and shall be irrevocable until the Obligations have been fully and finally paid and performed and Secured Party has become obligated to release all its liens on and security interests in the Collateral.

11.     Secured Party May Perform. If Owner fails to perform any agreement contained in this Agreement, Secured Party may perform, or cause to be performed, such agreement, and the expenses of Secured Party so incurred shall be paid by Owner within ten days after demand by Secured Party or Secured Party, in its sole discretion, may debit the Pledged Account or exercise its right of offset against the Pledged Certificate(s), as applicable, for such expenses and Owner shall promptly deposit into the Pledged Account an amount sufficient to replenish the balance therein to its level immediately prior to Secured Party's debit.

12.     Remedies.

(a)     If any Event of Default occurs and is continuing, Secured Party may exercise, in addition to all other rights and remedies provided for in this Agreement or otherwise available to Secured Party, all rights and remedies of a secured party under the UCC (whether or not the UCC applies to the affected Collateral). If the proceeds of the Collateral are insufficient to pay the Obligations in full, Owner shall be liable for any deficiency.

128558.4

(b)     If any Event of Default occurs and is continuing, Secured Party shall have the right to set off and apply the following to the Obligations in such order as Secured Party may elect, in its sole discretion: (i) the Collateral; (ii) all deposits, including all deposits in the Pledged Account, and other property of Owner of every kind held by Secured Party or its subsidiaries, and (iii) all other liabilities and obligations of Secured Party, or its subsidiaries, to Owner.

13.     Continuing Security Interest. This Agreement shall create a continuing security interest in, lien on, assignment of, and pledge of the Collateral and shall: (a) remain in full force and effect until the performance in full of the Obligations and Secured Party has become obligated to release all its liens on and security interests in the Collateral; (b) be binding upon Owner and Owner's successors and assigns; and (c) inure to the benefit of Secured Party and its successors and assigns.

14.     Amendments, Etc. No amendment or waiver of any provision of this Agreement, or consent to any departure by Owner therefrom, shall be effective unless it is in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given and shall not be effective as to any other, or any subsequent, similar or different instance.

15.     Legal Expenses. In the event of any Event of Default, or in the event any dispute arises relating to the interpretation, enforcement, or performance of this Agreement, Secured Party shall be entitled to collect from Owner, on demand, all fees and expenses incurred in connection therewith including, but not limited to, fees and expenses of attorneys, paralegals, expert witnesses, arbitrators, mediators, and court reporters. Without limiting the generality of the foregoing, Owner shall pay all such fees and expenses incurred in connection with: (a) arbitration or other alternative dispute resolution proceedings, trial court actions, and appeals therefrom, (b) bankruptcy or other insolvency proceedings of Owner, of any guarantor, of any party liable for any of the Obligations, or of any party having any interest in any security for any Obligations, (c) judicial or non-judicial foreclosure on any security for any Obligations, (d) post-judgment collection proceedings, (e) all claims, counterclaims, cross-claims, and defenses asserted in any of the foregoing, whether or not they arise out of, or are related to, this Agreement, (f) all preparation for any of the foregoing, and (g) all settlement negotiations with respect to any of the foregoing.

16.     No Waiver; Remedies Cumulative. No failure or delay on the part of Secured Party in the exercise of any power, right, or privilege under this Agreement or under any other shall impair such power, right, or privilege, or be construed to be a waiver of any Event of Default or acquiescence therein, nor shall any single or partial exercise of any such power, right, or privilege preclude any other or further exercise thereof, or of any other power, right, or privilege. All rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available to Secured Party.

17.     Severability. If any provision of, or obligation under, this Agreement shall be invalid, illegal, or unenforceable in any jurisdiction, the validity, legality, and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

128558.4

18.     Captions. Section and subsection headings in this Agreement are for convenience of reference only and shall not constitute a part of this Agreement for any other purpose, or be given any substantive effect.

19.     Entire Agreement. This Agreement contains the final expression of the entire agreement of the parties with respect to the subject matter thereof. There are no oral agreements relating thereto.

20.     Governing Law; Venue, Jurisdiction. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington, without reference to the choice of law principles of the State of Washington. Exclusive venue for any legal action related to this Agreement ("Legal Proceeding") brought by any party shall be the United States District Court for the Western District of Washington or, if filed in state court, any Washington state court sitting in the city of Seattle, Washington (collectively, the "Washington Courts"). Each party waives, to the fullest extent it may effectively do so, any objection that it may now or hereafter have to the laying of the venue of any Legal Proceeding brought in the Washington Courts and any claim that such Legal Proceeding brought in the Washington Courts has been brought in an inconvenient forum. In addition, each party waives, to the fullest extent it may effectively do so, any objection that it may now or hereafter have to the transfer of any Legal Proceeding to the Washington Courts. Each party expressly submits to the jurisdiction of the Washington Courts.

21.     Jury Trial Waiver. EACH PARTY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY LEGAL PROCEEDING.

22.     Counterparts. This Agreement may be executed in one or more counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed an original, but all of which together shall constitute but one and the same instrument.

[Remainder of page intentionally left blank]

128558.4

DATED as of the date first written above.

OWNER:                     **WASHINGTON MUTUAL, INC.**

By: _____
         Thomas W. Casey
         EVP, Chief Financial Officer

SECURED PARTY:        **WASHINGTON MUTUAL BANK**

By: _____
         Gregg Sherrington
         VP, Cash Management

128558.4

<table>
<tr><td colspan="2"><b><i>United States Bankruptcy Court District of Delaware</i></b></td><td><b>PROOF OF CLAIM</b></td></tr>
</table>

**Name of Debtor** *(check only one):*
☒ Washington Mutual, Inc. 08-12229 (MFW)          ☐ WMI Investment Corp. 08-12228 (MFW)

| | | |
|---|---|---|
| **Name and address of Creditor (and name and address where notices should be sent if different from Creditor):** | ☐ Check this box to indicate that this claim amends a previously filed claim. | **Your Claim is Scheduled as Follows:** |
| **JPMorgan Chase Bank, National Association** c/o Hydee R. Feldstein **Sullivan & Cromwell LLP** 1888 Century Park East Los Angeles, California 90067-1725 310.712.6600 feldsteinh@sullcrom.com | **With a copy to:** **JPMorgan Chase Bank, National Association** c/o Kevin G. Mruk 10 South Dearborn, Mail Code IL1-0080 Chicago, Illinois 60603-2003 312.732.7105 kevin.g.mruk@jpmchase.com | ☒ Date Stamped Copy Returned ☐ No self addressed stamped envelope ☐ No copy to return |
| | **Court Claim Number:** _____ *(If known)* **Filed on:** _____ | |

**Court Claim Number:** _____
*(If known)*
**Filed on:** _____

**Name and address where payment should be sent (if different from above):**

JPMorgan Chase Bank, National Association
c/o Joseph A. Giampapa
1111 Polaris Parkway, 4P0265
Columbus, Ohio 43271-0152
614.248.6056
joseph.a.giampapa@jpmchase.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

You have a claim scheduled against the Debtor listed above in the amount and priority set forth above. (This scheduled amount may be an amendment to a previously scheduled amount.) If you agree that you have a claim against the Debtor listed above and in the amount and priority set forth above and you have no other claim against that Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is DISPUTED, UNLIQUIDATED or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

**1. Type of Claim:**
☒ Claim existing as of the date case was filed. **Amount of Claim as of Date Case Filed:**   $ See Attachment A.

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority (other than under 11 U.S.C. § 507(a)(2)), complete Item 5.

☐ Check this box if claim is filed by a governmental unit.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

**2. Basis for Claim:**   See Attachment A.
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**   Federal Tax ID Number 3725
  **3a. Debtor may have scheduled account as:** _____
  (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.) See Attachment A.**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe:   See Attachment A.
Value of Property:   $ See Attachment A.   Annual Interest Rate   %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ See Attachment A.   Basis for perfection:   See Attachment A.
**Amount of Secured Claim:**   $ See Attachment A.   **Amount of Unsecured:**   $ See Attachment A.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier under 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan under 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use under 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units under 11 U.S.C. § 507(a)(8).

☒ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)( 9 ).

**Amount entitled to priority:**
$ See Attachment A

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*) DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Date:**
March 30, 2009

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Donald H. McCree III, Managing Director
JPMorgan Chase Bank, National Association
270 N. Park Ave., Floor 46
New York, New York 10017-2104; 212-270-4360

**FOR COURT USE ONLY**

RECEIVED

MAR 30 2009

KURTZMAN CARSON CONSULTANTS

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

01 REIT Trust Preferred (non-complaint)
WMI original


081222909033000000000296

## ATTACHMENT A

### *Trust Securities*

On September 26, 2008 (the "Petition Date"), Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). References herein to the "Debtor" or "Debtors" are intended to refer to WMI and WMI Investment Corp. as debtors and debtors-in-possession in their pending Chapter 11 cases. Prior to the Petition Date, on September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver (the "Receiver") for Washington Mutual Bank, Henderson, Nevada, a federal savings banking association ("WMB"), a subsidiary of the Debtors, and advised that the Receiver was immediately taking possession of WMB. On September 25, 2008, the FDIC, as Receiver and in its corporate capacity, also entered into a Purchase and Assumption Agreement Whole Bank (the "P&A Agreement") with JPMorgan Chase Bank, National Association ("JPMCB"), whereby JPMCB acquired substantially all of the assets of WMB's banking operations, including one of its subsidiaries, Washington Mutual Bank fsb ("WMBfsb" and collectively with WMB, the "Affiliated Banks"), and assumed the deposit liabilities and certain other liabilities of WMB's banking operations. The Affiliated Banks also had a number of direct and indirect subsidiaries that are now subsidiaries of or have been merged into JPMCB or one of its subsidiaries or affiliates. JPMCB asserts its claims herein on behalf of itself and its subsidiaries and affiliates. JPMCB believes that its claims are against WMI rather than WMI Investment, but because the intercompany relationships between the Debtors are not clear and because these are jointly administered cases, JPMCB files its claims against both Debtors out of an abundance of caution.

Although JPMCB purchased the assets of WMB, the Debtors have wrongfully refused to acknowledge that purchase in material respects, and have interfered with JPMCB's ability to use and enjoy the benefits of its purchase of those assets. On March 20, 2009, the Debtors jointly filed a complaint before the United States District Court for the District of Columbia (the "District Court") placing at issue a number of the claims and assets JPMCB acquired from the FDIC under the P&A Agreement (the "District Court Action"). On March 24, 2009, JPMCB filed its Complaint commencing Adversary Proceeding No. 09-50551-MFW (the "Adversary Proceeding") before the Bankruptcy Court seeking, among other things, declaratory relief regarding a number of the assets at issue in the District Court Action and to interplead any amounts that may be due from JPMCB to the Debtors. On March 30, 2009, JPMCB moved to intervene in the District Court Action.

JPMCB is submitting this and certain other proofs of claim to preserve JPMCB's right to distributions from the estate for (a) any amounts awarded as monetary damages to JPMCB in the District Court Action or the Adversary Proceeding; (b) the amounts paid or contributed by WMB or its subsidiaries on or prior to the Petition Date for the acquisition, creation or maintenance of various identified assets, including the assets at issue in the Adversary Proceeding; and (c) the amounts paid or contributed by JPMCB after the Petition Date on account of the assets at issue in the Adversary Proceeding or otherwise for costs and expenses arising on account of or relating to such estates, including without limitation, payments to or for

the benefit of participants in the pension, 401(k) and other benefit plans at issue. This claim, together with certain of the other claims of JPMCB that are filed in these Chapter 11 cases, is filed as (1) a secured claim under section 506(a) to the extent of any liabilities of JPMCB or any of its subsidiaries or affiliates to the Debtors or to the extent JPMCB or any of its subsidiaries or affiliates is secured, possesses a lien, or is entitled to a lien under contract, applicable non-bankruptcy law, or equity; (2) an administrative claim under section 503(b) for amounts paid by JPMCB or its subsidiaries, or damages to JPMCB resulting from acts or omissions of the Debtors, on or after the Petition Date; (3) a priority claim to the extent specified in each individual proof of claim; and (4) a general unsecured claim to the extent it is not deemed to be entitled to secured, priority or administrative status.

JPMCB believes that with respect to the assets at issue in the District Court Action or the Adversary Proceeding, ownership will be determined by the District Court or the Bankruptcy Court in those actions, as applicable. JPMCB hereby reserves all of its rights and remedies against the Debtors, including the right to continue the District Court Action and the Adversary Proceeding, to commence other actions or proceedings, to seek allowance and payment of administrative claims and amounts by application, motion or other appropriate proceeding before the Bankruptcy Court at any time, to request and seek adequate protection of JPMCB's interest in property, to seek relief from and request the lifting of the stay at any time, whether to permit the exercise of its rights of setoff, recoupment or other remedies or otherwise.

On January 30, 2006, WMB submitted a Notice of Establishment of an Operating Subsidiary (the "Notice") to the OTS and the FDIC regarding the establishment of a new operating subsidiary, Washington Mutual Preferred Funding LLC ("WMPF"), for the purpose of issuing preferred securities to investors. WMPF's assets consisted of indirect investments in various residential mortgages and home equity loans and other permitted investments. WMPF in turn issued preferred securities to certain issuer trusts (the "Issuing Trusts") formed by WMI and its affiliates that entitled the holders thereof to, among other things, a liquidation preference against the assets of WMPF. Between March 2006 and October 2007, the Issuing Trusts issued securities (the "Trust Securities") to investors in the aggregate face amount of approximately $4 billion. The holders of the Trust Securities, in effect, had a pass-through economic interest in the preferred securities of WMPF held by the Issuer Trusts.

Under the terms of the various agreements governing the Trust Securities, the Trust Securities were automatically exchangeable into depository shares representing preferred stock of WMI upon the OTS declaring the occurrence of an Exchange Event, which included WMB becoming undercapitalized or subject to receivership.

As set out below, the Trust Securities qualified as regulatory core capital of WMB under applicable banking laws and regulations on the basis of specific OTS approvals obtained and requirements imposed governing their issuance and treatment. In its Notice to the OTS and the FDIC, WMB sought confirmation from the OTS that the Trust Securities would qualify for inclusion in the core capital of WMB. In order for the Trust Securities to be treated as core capital of WMB when issued, the OTS required that the Trust Securities had to be structured in a manner that assured they would become property of the regulated institution upon the automatic exchange described above. On February 23, 2006, WMI committed to the OTS in writing to contribute the Trust Securities to WMB and stated that WMI "hereby undertakes that if, as a

2

result of a[n] [Exchange] Event," WMI exchanges its preferred stock for the Trust Securities, "WMI will contribute to WMB the [Trust Securities]." (John F. Robinson letter to Darrel Dochow, dated February 23, 2006.)

The next day, on February 24, 2006, the OTS approved the inclusion of the Trust Securities in the core capital of WMB. (Darrel Dochow letter to John F. Robinson, dated February 24, 2006.) WMI's written commitment to contribute the Trust Securities to WMB in exchange for including the Trust Securities in the core capital of WMB constituted a capital commitment to a federal depository institutions regulatory agency or its predecessor, which was deemed assumed as of the Petition Date under 11 U.S.C. section 365(o). That commitment also constituted a binding agreement (the "Contribution Agreement") of WMI. At all relevant times, it was the Contribution Agreement that permitted WMB to include the Trust Securities in its regulatory core capital. At all relevant times, WMB included the amount of the Trust Securities as regulatory core capital. The Trust Securities have at no time been beneficially owned by WMI because they have always been subject to WMI's unconditional obligation to contribute the Trust Securities to WMB at the direction of the OTS as a necessary corollary to the treatment of the Trust Securities as core capital of WMB. The issuance of the Trust Securities and the Contribution Agreement were duly authorized by all requisite corporate action on the part of WMI and WMB.

On September 25, 2008, in a letter to WMI, the OTS declared that an Exchange Event had occurred and directed an immediate exchange of the Trust Securities for WMI preferred stock. (Darrel Dochow letter to Steve Frank and Alan Fishman, dated September 25, 2008.) WMI responded to the OTS letter later on September 25, 2008, confirming the exchange and contribution. (Steve Rotella letter to John Bisset and Benjamin Franklin, dated September 25, 2008.)

As required by the Contribution Agreement, on September 25, 2008, WMI contributed the Trust Securities to WMB pursuant to an Assignment Agreement, which, among other things, provided that effective September 25, 2008, WMI irrevocably transferred "all of [WMI's] right, title and interest, whether now owned or hereafter acquired, in and to the [Trust] Securities" to WMB. Furthermore, upon execution, WMI assigned to WMB all present and future "rights and benefits arising out of the [Trust] Securities which come into the possession of [WMI]." (Assignment Agreement between WMB and WMI, effective September 25, 2008 at 3.)

Under the express terms of the P&A Agreement, JPMCB purchases "all right, title, and interest of the Receiver in and to all of the assets . . . of [WMB] whether or not reflected on the books of [WMB] as of Bank Closing," which includes WMB's and the Receiver's rights to receive the Trust Securities, a transfer that was effected on September 25, 2008. The Receiver thus sold the Trust Securities to JPMCB on September 25, 2008 under the P&A Agreement and therefore JPMCB is the sole owner of all equitable and beneficial right, title and interest in the Trust Securities.

To the extent WMI ever held or now holds any interest in the Trust Securities— and JPMCB asserts that WMI had and has no legally cognizable interest in them—that interest has never consisted of anything more than bare legal title (in accordance with 11 U.S.C. Section 541(d)) to the Trust Securities for the moment in time of the exchange and contribution.

3

C200

JPMCB understands that the automatic transfer of the Trust Securities to WMB that occurred on September 25, 2008 has not been evidenced by any recorded entries on the books and records of the Issuing Trusts and/or their trustees or the Depository Trust Company ("DTC"), as applicable. JPMCB is entitled to the ministerial remedy of correction of the books and records of the Issuing Trusts and/or their trustees or at DTC to properly reflect the completion of the Transfer prior to the filing of these Chapter 11 cases.

In addition, JPMCB is entitled to be indemnified and held harmless by WMI for any liabilities associated with the issuance, exchange, contribution or recovery of the Trust Securities, including without limitation any claims regarding authorization, enforceability, avoidability or inadequate disclosure. JPMCB also asserts a claim for unjust enrichment for the value recognized by the Debtors as a result of treatment of the Trust Securities as core capital.

The following documents are submitted in support of this claim:

- Exhibit A. List of the Trust Securities.

- Exhibit B. Letter from John F. Robinson (WMI) to Darrel Dochow (OTS), dated February 23, 2006.

- Exhibit C. Letter from Darrel Dochow (OTS) to John F. Robinson (WMI), dated February 24, 2006.

- Exhibit D. Letter from Darrel Dochow (OTS) to Steve Frank and Alan Fishman (WMI), dated September 25, 2008.

- Exhibit E. Letter from Steve Rotella (WMI) to John Bisset and Benjamin Franklin (OTS), dated September 25, 2008.

- Exhibit F. Assignment Agreement between WMB and WMI, effective September 25, 2008.

- Exhibit G. Relevant Minutes of WMI and WMB Board of Directors meetings, dated January 17, 2006, February 17, 2006, October 17, 2006, February 27, 2007, August 21, 2007 and October 16, 2007.

This proof of claim is submitted as a priority claim under section 507(a)(9) of the Bankruptcy Code because JPMCB's claim is based upon a commitment by WMI to the OTS of the Trust Securities to maintain the regulatory capital of WMB.

Assertion of this proof of claim, and any election, exercise or grant of any rights or remedies referred to, implied by or set forth in this claim does not, and is not intended to, preclude the election, exercise or grant of any other rights or remedies that may now or subsequently exist in law, in equity, by statute or otherwise. The identification or enumeration of JPMCB's rights and remedies set forth in this claim is not intended to be and should not be deemed to be exhaustive or to preclude JPMCB from asserting specific claims or counterclaims for as-yet unliquidated, unmatured or contingent claims currently known or unknown, including

4

without limitation, indemnification, contribution, and/or reimbursement from the Debtors for any claims of third parties that may be asserted against JPMCB.

JPMCB reserves all rights to amend, augment, supplement, reduce or withdraw, in whole or in part, this proof of claim, including, without limitation, to: cure a defect in the original claim, correct the claim amount or priority status, include additional supporting documents, describe the claim in greater detail, add additional claims presently unknown to JPMCB that, if known, could have affected this claim or resulted in the assertion of additional damages. In addition, nothing herein shall be deemed to waive or otherwise affect the rights of any other person, including without limitation, the FDIC, to make claims similar to or parallel with this claim.

In some instances, supporting documents identified herein as relating to claims have not been submitted herewith because (i) the specific documents identified are voluminous and either believed to already be in the Debtors' possession, or of such quantity that their submission herewith would be administratively impracticable, (ii) such documents are subject to confidentiality restrictions or some other agreement or restriction binding on JPMCB that prevents their lawful inclusion in a filing of this nature without additional steps being taken to assure they are provided under seal or otherwise in compliance with law and any agreements binding on JPMCB, and (iii) of JPMCB's limited familiarity at this point in time with the extensive books and records of WMB acquired from the FDIC and time constraints resulting from the claims deadline. In each such case, JPMCB includes herein a detailed reference, and in some cases a description and summary, of documents identified to date by JPMCB on which the claim is based. Any party in interest seeking additional access to or copies of such documents or other related information may contact Cecelia Rodine at JPMorgan Chase & Co., Legal & Compliance Department, 1 Chase Manhattan Plaza, 25th Floor, Mail Code: NY1-A425, New York, New York 10081 with respect thereto.

Nothing in this claim describing or in any way relating to property in which the Debtors now or hereafter may assert an interest shall be construed or deemed in any way as evidence that such assets are property of the estate or an admission that the Debtors have any rights in such property. This claim is submitted to assert and preserve this claim in the Debtors' pending bankruptcy cases, and neither the submission of this claim, nor any provision hereof or statement herein shall be construed or deemed to be evidence that JPMCB or any other person has waived or intends to waive any rights or claims afforded it under the P&A Agreement, any other agreement with persons other than the Debtors, or as may otherwise be available under applicable law, including, without limitation, the Bankruptcy Code.

5

# EXHIBIT A

## Trust Securities

- Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-cumulative Preferred Securities, Series A-1

- Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-cumulative Preferred Securities, Series A-2

- Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

- Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

- Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

- Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

# EXHIBIT B

CONFIDENTIAL TREATMENT REQUESTED

Washington Mutual

John F. Robinson
Executive Vice President
Corporate Risk Management

February 23, 2006

Darrel Dochow
Deputy Regional Director, West Region
Office of Thrift Supervision
101 Stewart Street, Suite 1010
Seattle, WA 98101-1048

Re: Washington Mutual Bank (Docket Number: 08551) – Request for
confirmation of capital treatment of two classes of preferred stock.

Dear Mr. Dochow:

On behalf of Washington Mutual, Inc. ("WMI"), I am writing with reference to the notice filed January 30, 2006 by Washington Mutual Bank ("WMB") to establish a new subsidiary, Washington Mutual Preferred Funding LLC ("WMPF"), for the purpose of issuing two classes of preferred securities to be eligible for inclusion in core capital of WMB (the "Notice"). You provided notice of the non-objection of the Office of Thrift Supervision ("OTS") to the establishment of WMPF by your letter dated February 9, 2006.

As you are aware, in the Notice WMB requested the OTS confirm that the sale of the Cayman Co. Preferred Securities and the Delaware Issuer Securities (as defined in the Notice) to outside investors constitutes the sale of the LLC Preferred Securities (as defined in the Notice) to outside investors and that the LLC Preferred Securities qualify for inclusion in core capital of WMB. In connection with that request, WMI hereby undertakes that if, as a result of a Supervisory Event (as defined in the Notice), WMI exchanges its Holding Company Shares (as defined in the Notice) for Cayman Co. Preferred Securities and the Delaware Issuer Securities, or if WMI subsequent to such exchange acquires the LLC Preferred Securities, WMI will contribute to WMB the Cayman Co. Preferred Securities and the Delaware Issuer Securities or, as appropriate, the LLC Preferred Securities.

If you have any questions regarding this letter, please call Robert Monheit at (212) 326-6104 or me at (206) 490-6100.

Sincerely,

John F. Robinson
Executive Vice President
Corporate Risk Management

1201 Third Avenue
WMT 1601
Seattle, WA 98101
phone   206.490.6100
fax      206.3715318

C206

# EXHIBIT C



**Office of Thrift Supervision**
Department of the Treasury

101 Stewart Street, Suite 1010, Seattle, WA 98101-2419
Telephone: (206) 829-2600 • Fax: (206) 829-2620

February 24, 2006

Mr. John F. Robinson
Executive Vice President
Corporate Risk Management
Washington Mutual Inc.
1201 Third Avenue, WMT 1601
Seattle, WA 98101

RECEIVED
FEB 2 8 2006
LEGAL DEPARTMENT

Dear Mr. Robinson:

This letter further responds to the notice filed January 30, 2006 advising that Washington Mutual Bank ("WMB") plans to establish a new subsidiary, Washington Mutual Preferred Funding LLC ("WMPF"), for the purpose of issuing two classes of Preferred Securities to be eligible for inclusion in core capital of WMB. By letter dated February 9, 2006, we took no objection to the establishment of the new operating subsidiary and the issuance of securities by WMPF.

Please be advised that OTS will not exercise its supervisory authority and discretion to exclude the Preferred Securities from core capital under 12 CFR 567.5(a)(1) (footnote 4) or the reservation of authority provision (12 CFR 567.11) of the OTS capital rule, and we hereby confirm that the Preferred Securities will qualify for inclusion in WMB core capital. This decision is based on the representations in the Notice, attachment thereto, and commitment detailed in your confidential letter dated February 23, 2006.

Notwithstanding the above, the OTS reserves the right, in its sole discretion, to exclude the Preferred Securities (or prospective issuances of Preferred Securities) if the terms are revised or it otherwise ceases to provide meaningful capital support and a realistic ability to absorb losses, or otherwise raises supervisory concerns. This may include OTS concerns about the capital mix or asset structure of the Subsidiary or WMB.

If you have any questions regarding this letter, please contact me at (206) 829-2601.

Sincerely,

Darrel W. Dochow
Regional Deputy Director

cc: William L. Lynch, Secretary, Washington Mutual

C208

# EXHIBIT D



**Office of Thrift Supervision**
Department of the Treasury

*West Region*

Seattle Office • (206) 829-2600 • Fax: (206) 829-2620
101 Stewart Street, Suite 1010
Seattle, WA 98101

September 25, 2008

Board of Directors
Mr. Steve Frank, Chairman
Mr. Alan Fishman, Chief Executive Officer
Washington Mutual, Inc.
1301 Second Avenue
Seattle, WA 98101

Members of the Board or their Representative:

The deposit outflows from Washington Mutual Bank over the past two weeks and reduction in availability of alternative funding sources have created significant liquidity pressures for the institution. The September 7, 2008 OTS Memoranda of Understanding ("MOU") the bank entered into with OTS requires WaMu to provide OTS with an analysis of the earnings, profitability and stability of all existing and projected business lines. In addition, the MOU places limitations on the ability of the bank to pay dividends.

Pursuant to the conditional exchange provision in the prospectus of the REIT preferred offerings of the bank, OTS concludes an "Exchange Event" has occurred and therefore directs an exchange of WaMu REIT Preferred Securities to a like amount of preferred stock in Washington Mutual Incorporated.

Please let me know if you have any questions.

Sincerely,

Darrel W. Dochow
Regional Director

# EXHIBIT E

Mailstop: WMC 3301
1301 Second Avenue
Seattle, WA 98101

206-500-8302 direct phone
steve.rotella@wamu.net



*Via Electronic Mail*

September 25, 2008

Office of Thrift Supervision
Examinations
Attn: John Bisset
Attn: Benjamin Franklin

WMI will issue a press release on September 26, 2008 announcing that each Conditional Exchange will occur at 8:00 a.m. New York time on September 26, 2008. Pursuant to Section 2 of each Exchange Agreement, the Conditional Exchange will then occur automatically at that time, and WMI will become the owner of all the Delaware issuer trust securities, and all the Preferred Securities issued by Washington Preferred Funding (Cayman) I Ltd. (the "Cayco Preferred Securities"). The occurrence of the Conditional Exchange has the effect of dissolving each of the Delaware issuer trusts, so that the WMPF Preferred Securities held by the trusts will be owned by WMI as a result of such dissolution. In any event, effective September 25, 2008, WMI has assigned to WMB all of its right, title and interest to the Delaware trust securities, the Cayco Preferred Securities and the WMPF Preferred Securities, and upon receipt of the Delaware trust securities, the Cayco Preferred Securities and the WMPF Preferred Securities, WMB will immediately contribute and transfer same to WMB, and such contribution and transfer will occur regardless of any events which may occur prior to such contribution and transfer.

Sincerely,

WASHINGTON MUTUAL, INC.

By: _____
Name: Steve Rotella
Title: President and Chief Operating Officer

C212

# EXHIBIT F

**ASSIGNMENT AGREEMENT**

between

**WASHINGTON MUTUAL BANK,**
**as Assignee**

and

**WASHINGTON MUTUAL, INC.,**
**as Assignor**

**Effective as of September 25, 2008**

17535196 05129267

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (as amended, modified or supplemented from time to time after the date hereof, the "Agreement") is effective as of September 25, 2008, and is made by and between WASHINGTON MUTUAL BANK, a federally-chartered savings association, as Assignee (the "Assignee"), and WASHINGTON MUTUAL, INC., a Washington corporation, as Assignor (the "Assignor").

### RECITALS

(A)     Assignor wishes to assign to Assignee certain securities, and Assignee wishes to accept such assignment, which Securities shall be assigned upon the execution of this Agreement.

### AGREEMENT

In consideration of the premises and the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignee and Assignor agree as follows:

### ARTICLE I

### DEFINITIONS; GENERAL INTERPRETIVE PRINCIPLES

Section 1.01.  Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Agreement: This Assignment Agreement, including all exhibits hereto, and all amendments hereof and supplements hereto.

Certificate:  Any instrument constituting evidence of ownership of a Security.

Effective Date: September 25, 2008.

Code: The Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder and rulings issued thereunder.  Section references to the Code are to the Code, as in effect as the date of this Agreement and any subsequent provisions of the Code, amendatory thereof, supplemental thereto or substituted therefore.

Assignment: The assignment to Assignee by Assignor of Securities pursuant to this Agreement.

Delivery:  Is deemed to occur as of September 25, 2008.

**Person**: Any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

**Assignee**: Washington Mutual Bank, a federally-chartered savings association, and its successors and assigns.

**Securities**: The securities listed in Exhibit A that are the subject of this Agreement. The term "Securities" includes, without limitation, such securities, any Certificates corresponding to such securities, and all other rights, benefits, proceeds and obligations of the owner of such securities arising from or in connection with such securities, whether now owned or hereafter acquired.

**Assignor**: Washington Mutual, Inc., a Washington corporation, and its successors and assigns.

Section 1.02. General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

c) references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

d) a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

e) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

f) the term "include" or "including" shall mean without limitation by reason of enumeration.

# ARTICLE II

## ASSIGNMENT OF SECURITIES

Section 2.01. Assignment of Securities.

With respect to the Securities listed on Exhibit A attached hereto, Assignor hereby contributes, transfers, assigns, sets over and conveys to Assignee, without recourse, but subject to the terms of this Agreement, all of Assignor's right, title and interest, whether now owned or hereafter acquired, in and to the Securities.

Upon execution and delivery of this Agreement by Assignor and Assignee, all rights and benefits arising out of the Securities which come into the possession of Assignor, including but not limited to funds which may be received by Assignor on or in connection with the Securities, and the ownership of all records and documents with respect to the Securities which are prepared by or which come into the possession of Assignor, shall immediately vest in Assignee.

Assignee acknowledges that the assignment by Assignor to Assignee under this Agreement are intended to qualify as tax-free transactions under Section 351 of the Code.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

Section 3.01. Mutual Representations and Warranties. Each party hereby represents and warrants to the other that it has all requisite power and authority to enter into and perform its obligations under this Agreement.

It is understood and agreed that the representations and warranties set forth in this Article V shall survive delivery of the respective Securities to the Assignee, and shall continue throughout the term of this Agreement.

## ARTICLE IV

## COSTS

Section 4.01. Costs.

Each party shall bear its own costs and expenses. All other costs and expenses incurred in connection with the transfer and delivery of the Securities, including without limitation recording and filing fees, shall be paid by Assignee.

Each remittance or distribution made pursuant to this Agreement shall be made in the manner agreed to by the parties. To the extent that the amount of a remittance or distribution made pursuant to this Agreement is greater than the amount that was supposed to be made, each party agrees to give prompt written notice thereof to the other party after discovery thereof, including the amount of such remittance or distribution that was paid in error, and to refund such overpayment immediately.

## MISCELLANEOUS PROVISIONS

Section 5.01. Amendment.

This Agreement may be amended from time to time only by written agreement signed by Assignor and Assignee.

Section 5.02. Governing Law.

This Agreement shall be construed in accordance with the internal laws of the State of Washington, except to the extent preempted by federal law and without reference to the choice of law doctrine of such state, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Section 5.03. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered or certified mail, postage prepaid, to (a) in the case of Assignor,

Washington Mutual, Inc.
1301 Second Avenue, WMC 1411
Seattle, Washington 98101
Attention: Corporate Secretary

or such other address as may hereafter be furnished by Assignor to Assignee in writing; and

b) in the case of Assignee,

Washington Mutual Bank
1301 Second Avenue, WMC 1411
Seattle, Washington 98101
Attention: Corporate Secretary

or such other address as may hereafter be furnished by Assignee to Assignor in writing.

Section 5.04. Merger; Severability of Provisions.

This Agreement, and the documents and instruments referred to herein, constitute the entire agreement of and is the final and complete expression of the parties relating to the subject matter of this Agreement, and supersedes all prior or contemporaneous negotiations and agreements, whether oral or written, relating to the subject matter hereof.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants,

4

agreements, provisions or terms shall be deemed severable from the remaining covenants; agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate in good faith to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such inability.

### Section 5.05. Execution: Successors and Assigns.

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement. This Agreement shall inure to the benefit of and be binding upon Assignor and Assignee and their respective successors and assigns.

[Signatures on Following Page]

C219

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized officers on the dates shown below, to be effective as of the effective date first set forth above.

WASHINGTON MUTUAL BANK

By: 
Name: Patricia Schulte
Title: Senior Vice President

WASHINGTON MUTUAL, INC.

By: 
Name: Todd Baker
Title: Executive Vice President

17535196 05129267

C220

## EXHIBIT A

## SECURITIES

(i) Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-cumulative Preferred Securities, Series A-1

(ii) Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-cumulative Preferred Securities, Series A-2

(iii) Washington Mutual Preferred Funding Trust Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(iv) Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(v) Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(vi) Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(vii) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2006-A

(viii) Washington Mutual Preferred Funding LLC 7.25% Perpetual Non-cumulative Preferred Securities, Series 2006-B

(ix) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2006-C

(x) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2007-A

(xi) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2007-B

(xii) Any and all right, title and interest of the Washington Mutual, Inc. in and to Washington Mutual Preferred (Cayman) I Ltd. ("WaMu Cayman"), Washington Mutual Preferred Funding Trust ("WaMu Delaware I"), Washington Mutual Preferred Funding Trust II ("WaMu Delaware II"), Washington Mutual Preferred Funding Trust III ("WaMu Delaware III") and Washington Mutual Preferred Funding Trust IV ("WaMu Delaware IV" and, together with WaMu Cayman, WaMu Delaware I, WaMu Delaware II and WaMu Delaware III, the "Trusts"), including any interests of the Trusts in any of the Securities

# EXHIBIT G