# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
In re                                              :
                                                   :   Chapter 11
WASHINGTON MUTUAL, INC., et al.,¹                   :
                                                   :   Case No. 08-12229 (MFW)
                        Debtors.                    :
                                                   :   Jointly Administered
-------------------------------------------------- x
WASHINGTON MUTUAL, INC. AND                         :
WMI INVESTMENT CORP.,                               :
                                                   :   Adv. Proc. No. 09-50934
              Plaintiffs and Counter                :
              Defendants,                           :
                                                   :
          v.                                        :
                                                   :
JPMORGAN CHASE BANK, NATIONAL                       :
ASSOCIATION,                                        :
                                                   :
              Defendant and                         :
              Counterclaimant.                      x
-------------------------------------------------- 
JPMORGAN CHASE BANK, NATIONAL                       :
ASSOCIATION,                                        :
                                                   :   Adv. Proc. No. 09-50551
              Plaintiff and Counter                 :
              Defendant,                            :
          v.                                        :
                                                   :
WASHINGTON MUTUAL, INC. AND                         :
WMI INVESTMENT CORP.,                               :
                                                   :
              Defendants and                        :
              Counterclaimants.                     :
-------------------------------------------------- x
```

September 24, 2009

---

¹     The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

**DEBTORS' RESPONSE TO NOTICE OF DIVESTITURE
OF JURISDICTION PENDING APPEALS OF JPMORGAN CHASE BANK, N.A.**

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (with WMI, "Debtors")

respectfully submit this response to the so-called Notice of Divestiture of Jurisdiction Pending

Appeals (the "Notice") filed by JPMorgan Chase Bank, National Association ("JPMC") in the

adversary proceedings captioned, *Washington Mutual, Inc. et al*. v. *JPMorgan Chase Bank, N.A.*,

Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action"), and *JPMorgan Chase Bank, N.A. v.*

*Washington Mutual, Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary

Proceeding"; together with the Turnover Action, the "Adversary Proceedings").

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

I.     THE BANKRUPTCY CASES AND ADVERSARY PROCEEDINGS
COMMENCED THEREIN ................................................................................................... 3

      A.     This Court Denied JPMC's Motion to Stay and Rejected JPMC's
Arguments Concerning the FDI Act's Jurisdictional Bar ........................ 4

      B.     This Court Denied JPMC's Motion to Dismiss Debtors' Counterclaims .............. 4

ARGUMENT ................................................................................................... 5

I.     JPMC'S PUTATIVE APPEALS CONCERN INTERLOCUTORY, NON-
APPEALABLE ORDERS, AND THEREFORE THE PURPORTED NOTICES
OF APPEAL DO NOT DIVEST THIS COURT OF JURISDICTION ........................... 5

II.     THERE IS NO QUESTION THAT THIS COURT SHOULD PROCEED WITH
ADJUDICATION OF THE ADVERSARY PROCEEDINGS GIVEN THAT
THE PUTATIVE APPEALS CANNOT QUALIFY FOR THE COLLATERAL
ORDER DOCTRINE ................................................................................................... 7

      A.     This Court Should Proceed Given the Premature Nature of the Putative
Appeals ................................................................................................... 7

      B.     JPMC's Putative Appeals Do Not Qualify for the Collateral Order
Doctrine ................................................................................................... 9

III.     THIS COURT SHOULD PROCEED TO THE MERITS OF THE ADVERSARY
PROCEEDINGS EVEN IF THE ORDERS COULD BE DEEMED
COLLATERAL ................................................................................................... 16

CONCLUSION ................................................................................................... 23

# PRELIMINARY STATEMENT

More than two months have passed since JPMC filed its notices of appeal of this Court's orders entered on July 6, 2009 denying JPMC's motions to stay, transfer, and dismiss the Adversary Proceedings. In that interval and in connection with the matters before this Court, JPMC has, among other things, engaged with Debtors in extensive and regular negotiations for a discovery and trial schedule (as instructed by the Court), served document requests on Debtors and third-parties, presented and argued its motion to dismiss Debtors' counterclaims, filed two sets of opposition papers to Debtors' motion for summary judgment on the issue of $4 billion in deposits wrongfully withheld by JPMC, and requested and took the deposition of Debtors' affiant in connection with Debtors' summary judgment motion. In all this time, neither Debtors nor the Court heard so much as a peep concerning a claim of "divestiture of jurisdiction." On September 8, 2009, JPMC shifted course, previewing an argument that it would present to the Court in the form of a "Notice" on the day Debtors were filing their omnibus reply to JPMC's opposition to their summary judgment motion to recover their deposits (pursuant to a briefing schedule negotiated with and agreed to by JPMC). By its Notice, JPMC informed the Court that it supposedly has been stripped of jurisdiction to proceed with the Adversary Proceedings. JPMC's transparent behavior, obviously designed to disrupt the orderly disposition of these matters, finds no support in any precedent except in JPMC's persistent efforts to avoid the merits in these cases (*e.g.*, after commencing an action before this Court and filing more than 40 proofs of claim then erratically reversing course and filing its motion to withdraw the reference to this Court on the literal eve of the June 24, 2009 hearing on JPMC's own motion to stay the proceedings). JPMC's pattern of delay and gamesmanship sought to be imposed upon Debtors, their creditors, and the Court, should not be countenanced.

Putting aside the fact that the Notice was filed solely to delay and avoid trial while JPMC continues to withhold billions of dollars in Debtors' funds, it is also misleading. The Notice all but ignores that the orders being appealed from are non-appealable until a final ruling on the merits of the Adversary Proceeding. In other words, JPMC's notices of appeals are legal nullities. JPMC asserts that it has appealed pursuant to the collateral order doctrine – a narrow doctrine with stringent requirements designed to prevent a party, like JPMC, from abusing the judicial process with dilatory tactics. Notwithstanding the narrow scope and modest nature of the doctrine, JPMC incredibly states that its unilateral determination of the doctrine's applicability divests this Court of its jurisdiction and forecloses Debtors' right to continuing trial court jurisdiction. Unsurprisingly, no case so holds.

To the contrary, where a putative appeal is clearly premature, this Court must proceed. The U.S. Supreme Court has squarely held that orders requiring that a party defend itself in a specific forum – such as this Court's orders denying JPMC's motion to stay, transfer, and dismiss – do not trigger the collateral order doctrine. *See Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 501 (1989) (declining to hold collateral order doctrine applicable "*where a district court has denied a claim, not that the defendant has a right not to be sued at all, but that the suit against the defendant is not properly before the particular court because it lacks jurisdiction.*").[2] In other words, the U.S. Supreme Court has held that the type of orders JPMC seeks to appeal are simply not the type that can be qualified under the collateral order doctrine. The Third Circuit too has recognized that divesting jurisdiction based on such a premature appeal "would enable a litigant temporarily to deprive a [trial] court of jurisdiction at any non-critical or critical juncture including trial itself, thus bringing proceedings in the [trial] court to a standstill while a

---

[2]     A copy of *Lauro Lines* is attached hereto as <u>Exhibit A</u>.

non-appealable ruling wends its way through the appellate process." *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985). Indeed, even JPMC has itself tacitly acknowledged that it does not have unilateral power to invoke the collateral order doctrine or divest this Court of jurisdiction, as evinced by JPMC's filing "in the alternative" for leave to appeal with the District Court for the District of Delaware (the "District Court"). Premature appeals such as JPMC's do not divest this Court of jurisdiction.

Moreover, even if JPMC were seeking to appeal the type of orders that could be qualified under the collateral order doctrine (and these orders cannot), where an interlocutory appeal is dilatory and frivolous, jurisdiction is not divested. JPMC's obvious delay tactics and the existence of controlling, squarely on-point Third Circuit law on the inapplicability of FIRREA to the claims at issue in the Adversary Proceedings make JPMC's appeals both dilatory and frivolous. Thus, under any circumstance, JPMC's notices of appeals do not divest this Court of its jurisdiction to adjudicate the Adversary Proceedings commenced before it.

Having failed to obtain the stay or dismissal that JPMC originally requested of this Court, JPMC now seeks to "notice" the Court that by the ministerial act of filing its appeal, it has awarded itself the jurisdictional-based relief that this Court refused to grant. JPMC's transparent and presumptuous ploy should be swiftly rejected.

## FACTUAL BACKGROUND

## I.     THE BANKRUPTCY CASES AND ADVERSARY PROCEEDINGS COMMENCED THEREIN

On September 26, 2008, (the "Petition Date"), the Debtors commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

## A. This Court Denied JPMC's Motion to Stay and Rejected JPMC's Arguments Concerning the FDI Act's Jurisdictional Bar

JPMC and the Federal Deposit Insurance Corp., as receiver, (the "FDIC") filed motions to stay the Adversary Proceedings, in which both parties argued that the claims asserted therein are jurisdictionally barred under section 1821(d)(13)(D) of the FDI Act. The Court properly denied the motions. The Court, applying controlling Third Circuit authority, found that the FDI Act applies only to claims against the FDIC for assets in receivership, and that the Debtors' claims against a successor bank, JPMC, are appropriately before it. (Tr. 6/24/09 at 93-94.)

On July 10, 2009, JPMC and the FDIC filed notices of appeals of this Court's rulings with respect to both Adversary Proceedings, asserting that its appeals qualified under the collateral order doctrine or, in the alternative, seeking leave to appeal (the "July Putative Appeal"). Debtors filed an opposition, in which they cited overwhelming Supreme Court authority for the proposition that the Court's denial of JPMC's and the FDIC's motions to stay was a prototypical interlocutory order not subject to immediate appeal. The July Putative Appeal remains pending in the District Court.

## B. This Court Denied JPMC's Motion to Dismiss Debtors' Counterclaims

In the JPMC Adversary Proceeding, JPMC filed a motion to dismiss the Debtors' Counterclaims on June 18, 2009. JPMC's position was based on the identical argument that this Court rejected—*i.e.*, that section 1821(d)(13)(D) of the FDI Act supposedly bars the Debtors' counterclaims against JPMC. In light of the Court's ruling that the bar does not apply, the Debtors contacted JPMC, by email dated June 26, 2009, and requested that JPMC withdraw the motion to dismiss. JPMC declined to do so without explanation, and elected to continue to pursue an argument that the Court had specifically rejected. On August 24, 2009, the Court denied JPMC's motion to dismiss pursuant to the law of the case.

On September 18, 2009, JPMC filed a notice of appeal of this Court's ruling, again asserting that its appeals qualified under the collateral order doctrine or, in the alternative, seeking leave to appeal (the "September Putative Appeal," and with the July Putative Appeal, the "Putative Appeals"). Debtors will oppose this notice of appeal, just as they did the July Putative Appeal, demonstrating that JPMC must await a final order.

## ARGUMENT

**I.  JPMC'S PUTATIVE APPEALS CONCERN INTERLOCUTORY, NON-APPEALABLE ORDERS, AND THEREFORE THE PURPORTED NOTICES OF APPEAL DO NOT DIVEST THIS COURT OF JURISDICTION**

Much of the caselaw cited by JPMC in its Notice is misplaced as it concerns judgments and orders that are final or deemed to be immediately appealable under narrow exceptions to the final judgment rule prohibiting interlocutory appeals. By contrast, the orders from which JPMC is appealing are clearly interlocutory. *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) ("a decision is not final, ordinarily, unless it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"). It is well-settled in this Circuit and across other Circuits that jurisdiction is retained by the lower court despite a putative appeal of a non-appealable order. *Mondrow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989) ("a premature notice of appeal does not divest the [trial] court of jurisdiction"); *United States v. Leppo*, 634 F.2d 101, 104-105 (3d Cir. 1980) (rejecting former "mechanical application" of divestiture of jurisdiction rule).[3] *See also Griggs v. Provident Consumer Discount Co.*, 459 U.S.

---

[3]   *See also United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc) ("We are persuaded that filing a notice of appeal from a nonappealable order should not divest the district court of jurisdiction and that the reasoning of the cases that so hold is sound. The contrary rule leaves the court powerless to prevent intentional dilatory tactics, forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process."); *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340-341 (10th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S. Ct. 1113, 51 L. Ed. 2d 543 (footnote continued)

56, 61 (1982) (holding improvident notices of appeal are nullities, stating "a premature notice of appeal 'shall have no effect'"). A "contrary conclusion would enable a litigant temporarily to deprive a [trial] court of jurisdiction at any non-critical or critical juncture including trial itself, thus bringing proceedings in the [trial] court to a standstill while a non-appealable ruling wends its way through the appellate process." *Venen*, 758 F.2d at 121.

The cases that JPMC cites do not hold otherwise. Contrary to JPMC's blatant mischaracterization, in *Griggs*, the Supreme Court found that the notice of appeal did *not* divest the district court of jurisdiction and observed that the district court was considering a pending motion to alter or amend judgment which rendered *the appeal* "a nullity." *Griggs*, 459 U.S. at 61 (1982). Indeed, immediately after JPMC's incomplete citation to *Griggs*, the Supreme Court concluded its point by citing with approval the decision in *Ruby v. Secretary of United States Navy*, 365 F.2d 385, 389 (9th 1966) (en banc), where the Ninth Circuit held that the notice of appeal from an unappealable order *does not divest* the district court of jurisdiction. *Griggs*, 459 U.S. at 59. In apparent recognition that its Putative Appeals are premature under these controlling legal principles, JPMC has filed two briefs with the District Court seeking "in the alternative" leave to appeal.[4]

---

(1977) (if notice of appeal deficient by reason of untimeliness, lack of essential recitals, reference to a nonappealable order, or otherwise, district court may ignore it and proceed); *Hodgson v. Mahoney*, 460 F.2d 326, 328 (1st Cir.), *cert. denied*, 409 U.S. 1039, 93 S. Ct. 519, 34 L. Ed. 2d 488 (1972); *Ruby v. Secretary of the United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc), *cert. denied*, 386 U.S. 1011, 87 S. Ct. 1358, 18 L. Ed. 2d 442 (1967).

[4]     A party must first receive permission to appeal any interlocutory order. 28 U.S.C. § 158(a)(3) ("The district courts of the United States shall have jurisdiction to hear appeals . . . *with leave of the court*, from other interlocutory orders and decrees.") (emphasis added). Under 28 U.S.C. § 158(a)(3), no appeal exists until leave has been granted. *In re Trimble*, 2008 Bankr. LEXIS 835 (Bankr. D.N.J. Mar. 18, 2008).

JPMC does not cite a single case that stands for the proposition set forth in the Notice

that (1) the filing of a putative appeal of an interlocutory order automatically divests the trial

court of jurisdiction, or (2) relatedly, that a bankruptcy or district court must await determination

of appealability from the appellate court. JPMC does not because it cannot. Under well-settled

case law, this Court can and should decide whether the orders are appealable; if not, this Court's

jurisdiction is unaffected notwithstanding JPMC's filing of notices of appeals.

## II. THERE IS NO QUESTION THAT THIS COURT SHOULD PROCEED WITH ADJUDICATION OF THE ADVERSARY PROCEEDINGS GIVEN THAT THE PUTATIVE APPEALS CANNOT QUALIFY FOR THE COLLATERAL ORDER DOCTRINE

JPMC's unilateral, ministerial act of filing the Putative Appeals does not divest this Court

of jurisdiction. In fact, the Third Circuit is clear that the trial court should proceed where the

collateral order doctrine is inapplicable to the putative appeal at issue. That is the case here.

JPMC's Putative Appeals plainly do not qualify for the doctrine as made clear by squarely on-

point Supreme Court case law. Thus, the Putative Appeals are clearly premature and the Court

should proceed to the merits of the Adversary Proceedings.

### A. This Court Should Proceed Given the Premature Nature of the Putative Appeals

JPMC contends that its assertion of the collateral order doctrine operates to strip this

Court of its jurisdiction and that this Court must cease adjudication of the Adversary

Proceedings. JPMC is wrong and none of the cases it has cited so holds where the putative

appeal is premature or otherwise defective. Rather, the case law holds that where the appeal is

defective, the lower court is not divested of jurisdiction and should proceed. *See Venen*, 758

F.2d at 121 ("[I]n both civil and criminal cases . . . the jurisdiction of the lower court to proceed

in a cause is not lost by the taking of an appeal from an order or judgment which is not

appealable . . . . An appeal from a non-appealable judgment or order is sometimes characterized

as a 'nullity'."); *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc), quoted

with approval in *United States v. Leppo*, 634 F.2d 101, 104-05 (3d Cir. 1980) (finding notice of

appeal to be "manifestly ineffective" and subsequently-issued trial court order to be valid); *Ruby,*

365 F.2d at 389 ("Where the deficiency in a notice of appeal, by reason of untimeliness, lack of

essential recitals, or reference to a non-appealable order, is clear to the [trial] court, it may

disregard the purported notice of appeal and proceed with the case, knowing that it has not been

deprived of jurisdiction.").

    As the Court of Appeals for the Third Circuit explained, a court should continue to

exercise jurisdiction in the face of a clearly premature notice of appeal:

> We recognize that a district court may be reluctant to proceed
> when, in order to do so, it must in effect determine that the court of
> appeals has no jurisdiction. Nevertheless, such a procedure has the
> salutary effect of avoiding delay at the trial level during the
> pendency of an ineffective appeal. While this is not an invitation
> for district courts to resolve thorny issues of appellate jurisdiction,
> the application of the . . . rule [that a premature notice of appeal
> does not divest the district court of jurisdiction] is sufficiently
> clear, and the interest in expediting cases sufficiently strong, that
> the district courts should continue to exercise their jurisdiction
> when faced with clearly premature notices of appeal.[5]

    Consistent with the Third Circuit's articulation of the controlling principles of law, courts

routinely continue with proceedings where parties, such as JPMC here, have acted primarily to

delay trial on the merits. For example in *United States v. Sollenberger*, 2007 U.S. Dist. LEXIS

---

[5]    *Mondrow*, 867 F.2d at 800. District Courts in situations similar to this Court that have
determined to proceed to trial have recognized that their actions are not in any way in derogation
of the jurisdiction of the pertinent court of appeals. The appellate court maintains exclusive
authority to decide the merits of the appeal, and enjoys the discretion to stay further trial
proceedings should that court chose to do so pending its decision. *United States v. Sollenberger*,
2007 U.S. Dist. LEXIS 85627, *4 (M.D. Pa. Nov. 20, 2007); *Walsh v. United States*, 2006 U.S.
Dist. LEXIS 62244, *3 (M.D. Pa. Aug. 31, 2006).

85627, *4 (M.D. Pa. Nov. 20, 2007), the court determined to proceed to trial despite a notice of appeal, observing that "the only plausible explanation for the plainly deficient notice, and the sole possible effect of the appeal, is to delay the trial in the above-captioned action." *Id. (citing Venen*, 758 F.2d at 121) (recognizing the "great potential for disruption" posed by inappropriate appeals). After determining that invocation of interlocutory appellate jurisdiction would inhibit "the smooth and effective functioning of the judicial process," the court refused to "countenance [such] efforts." *Sollenberger* at *4.

JPMC's gamesmanship (described in greater detail below) similarly should not be countenanced and its transparent efforts to wield the Putative Appeals as a procedural sword should be deflected. This Court should allow the parties to complete discovery and to proceed to a trial on the merits.

**B.      JPMC's Putative Appeals Do Not Qualify for the Collateral Order Doctrine**

Acknowledging the general rule that appeals of non-final orders do not divest the trial court of jurisdiction, JPMC argues that it is entitled to appeal without leave of the court under the narrow exception to that general rule – known as the collateral order doctrine. The U.S. Supreme Court has made it clear that JPMC fails to qualify under this narrow exception.

As a starting point, the Supreme Court has emphasized the strong policy disfavoring piecemeal appeals, and that the collateral order doctrine serves as a "narrow exception" to the general rule against interlocutory appeals. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) ("[W]e have . . . repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.") (citation omitted); *In re Carco Electronics*, 536 F. 3d 211, 213-14 (3d Cir. 2008) ("The Supreme Court's decision in *Digital*

9

*Equipment* cautions that the collateral order doctrine is 'narrow' and that claims for its applicability should be subjected to 'broad scrutiny.'").

In *Will v. Hallock*, 126 S. Ct. 952, 958 (2006), the Supreme Court emphasized that it is a "narrow and selective" group of orders that fall within the collateral order doctrine. For an order to be subject to appeal as a collateral order, it must: (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) be "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Significantly, "[i]f the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception[.]" *Gulfstream Aerospace Corp. v. Maycamas Corp.*, 485 U.S. 271, 276 (1988). JPMC's claims are neither "important" nor "unreviewable on appeal from final judgment" and JPMC does not in the Notice to this Court even bother to assert that they are. Generally, only orders rejecting absolute and qualified immunity of a government official, Eleventh Amendment immunity of a state, or the double jeopardy of a defendant fall within the ambit of the collateral order doctrine. *Will,* at 958. That is, the doctrine has been generally limited to those situations where a party may possess the right not to be sued *at all*. By contrast, the Supreme Court, as discussed below, has already determined that where a party asserts a right not to be sued in a certain *forum*, such as JPMC here, the Putative Appeals do not qualify for the collateral order doctrine. *See Lauro*, 490 U.S. at 501 (noting that "an entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum.").

### 1. The Orders Fail The Collateral Order Doctrine's "Effectively Unreviewable" Prong

First and most obviously, the collateral order doctrine does not apply because this Court's denials of JPMC's motions to stay and dismiss are reviewable upon final judgment in the

Adversary Proceedings. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F. 3d 44 (3d. 2001) (holding that a motion to stay pending arbitration was interlocutory and there was "no reason to regard the order as final under the collateral order doctrine [because] even if it were not appealable, it effectively could be reviewed after entry of a final judgment in the [lower] court"). In addressing this requirement, the Supreme Court has repeatedly held that an order is "effectively unreviewable" *only* "where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Lauro*, 490 U.S. at 499 (citing *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 799 (1989)).

JPMC asserts that "when an appeal concerns the fundamental right of a party not to have to proceed before the forum," the collateral order doctrine is applicable and jurisdiction is divested. (Notice at ¶ 12.) But the Supreme Court has disagreed, stating that courts are to view "claims of a 'right not to be tried' with skepticism, if not a jaundiced eye," for "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Digital Equip.*, 511 U.S. at 873.[6]

Significantly, where the issue is not whether an entity is protected from suit, but simply whether the entity is protected from suit in a certain forum (*e.g.*, if JPMC were correct that this Court lacks jurisdiction over the Adversary Proceedings, JPMC would by its own concession be subject to suit in the District of Columbia), the Supreme Court has already expressly ruled that such appeals do not divest the lower court of jurisdiction. In *Lauro*, the defendant, a cruise ship

---

[6]     JPMC's argument would cause every denial of a stay motion and every denial of a motion to dismiss to be subject to immediate appeal divesting courts of jurisdiction. *See Robinson v. Hartzell Propeller, Inc.*, 454 F. 3d 163, 168 (3d Cir. 2006) ("[S]imply characterizing a right as an irreparable entitlement not to stand trial is insufficient for an appeal to fall under the collateral order doctrine, as 'virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring 'a right not to stand trial.'" (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994))).

operator, sought immediate appeal under the collateral order doctrine from an order denying its motion to dismiss a damages action in federal district court in New York on the basis of a forum selection clause between the parties that required that all claims be brought in Italy. After acknowledging the application of the collateral order doctrine in situations where the issue was a right not to face trial altogether (such as double jeopardy, absolute immunity, and qualified immunity), the Supreme Court recognized that it had declined to hold the doctrine applicable *"where a district court has denied a claim, not that the defendant has a right not to be sued at all, but that the suit against the defendant is not properly before the particular court because it lacks jurisdiction."* *Lauro*, 490 U.S. at 499. The Supreme Court reasoned that "an entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum." *Id.* at 501. The Court held that immediate appeal was properly denied:

> If it is eventually decided that the District Court erred in allowing trial in this case to take place in New York, petitioner will have been put to unnecessary trouble and expense, and the value of its contractual right to an Italian forum will have been diminished. It is always true, however, that "there is value ... in triumphing before trial, rather than after it," and this Court has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order.

*Lauro*, 490 U.S. at 499 (internal citation omitted). Thus, while recognizing that the defendant might be forced to defend an action in a forum other than where it believed it should be subject to suit, the Court was satisfied that would-be appellant's claims could be adequately vindicated upon final disposition of the suit. *Id.*; see also *Van Cauwenberghe v. Biard*, 486 U.S. 517, 527-530 (1988) (holding that a refusal to dismiss for *forum non conveniens*, an interlocutory order, does not fall within the circumscribed collateral order exception to the firm final judgment rule generally governing federal court proceedings).

The situation here is governed by *Lauro*. Significantly, JPMC cannot claim that it is not subject to suit anywhere – rather, JPMC has argued that FIRREA deprives only *this* Court of jurisdiction over the Adversary Proceedings and that such proceedings should go forward in the District of Columbia pursuant to what the Third Circuit has called FIRREA's "*venue* provision."[7] *Hudson United Bank v. Chase Manhattan Bank, N.A.*, 43 F.3d 843, 844 (3d Cir. 1994) (emphasis added). However, the Supreme Court has already "declined to hold the collateral order doctrine applicable where a district court has denied a claim, not that the defendant has a right not to be sued at all, but that the suit against the defendant is not properly before the particular court because it lacks jurisdiction." *Lauro*, 490 U.S. at 500 (citing authority). As in *Lauro*, then, JPMC can pursue its position on appeal from a final judgment, and the collateral order doctrine does not apply.

Consistent with *Lauro,* courts routinely hold that jurisdictional rulings by a trial court do not qualify under the collateral order doctrine. *See Gulfstream Aerospace Corp. v. Mayacamas*

---

[7]      JPMC allocated a substantial portion of its argument at the hearing before this Court on June 24, 2009, and in many other instances, to its assertion that Debtors' claims against JPMC must go forward, not before this Court, but before the District Court for the District of Columbia. *See* Tr. 6/24/09 ("If Your Honor were to take concurrent jurisdiction over the same claim that must, under FIRREA, be adjudicated in D.C., you are raising starkly the possibility of inconsistent rulings." at 53:10-13; "But, fundamentally, in filing the adversary proceeding, our first request, our fundamental request is that these issues should be resolved, to the extent they are disputed, by the Court in D.C. as part of FIRREA's process. And only to the extent they are not resolved there, or in light of the outcome there, should there be a determination here." at 55:23-56:4; "the D.C. Court is the only Court that can resolve all of these issues. There are these limitations as to imposed by FIRREA on adjudicating these issues as to whether thee [sic.] are or are not assets of the bank." at 59:2-5; "The D.C. Court . . . is the only Court that can give complete relief to everybody in a single forum, given the FIRREA jurisdictional limitations that exist in any other Court." at 60:2-7; "We have suggested that the proper -- a preferable course may be to transfer these actions to D.C., so they can all be adjudicated together." at 60:12-13; "But, again, we are the ones arguing that this case should be adjudicated in that forum, because it is the only forum. . . . And so, either way, Your Honor, we think that both jurisdictionally this must be resolved in D.C., given the limitations imposed jurisdictionally by FIRREA." 62:14-21.).

*Corp.*, 485 U.S. 271 (1988) (holding that collateral order doctrine did not authorize appeal from an order denying a motion to stay or dismiss an action on *Colorado River* abstention grounds); *Catlin v. U.S.*, 324 U.S. 229, 236, (1945) ("the denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable"); *Bell Atlantic-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 343 (3d Cir. 2001) ("The denial of a motion to dismiss does not end the litigation and ordinarily is not a final order for § 1291 purposes."); *In re Magic Circle Energy Corp.*, 889 F.2d 950, 954 (10th Cir. 1989) ("Appellants' remedy is to challenge the bankruptcy court's exercise of jurisdiction by bringing an appeal from the final judgment ultimately rendered by that court."); *Queipo v. Prudential Bache Secs., Inc.*, 867 F.2d 721 (1st Cir. 1989) (holding that order denying motion to stay proceedings and compel arbitration was not appealable under collateral order doctrine; potential inconvenience of having to incur expense of court proceedings did not amount to irreparable harm to justify immediate review); *Delta Traffic Serv., Inc. v. Occidental Chem. Corp.*, 846 F.2d 911, 914 (3d Cir. 1988) (denial of defendant's motion for a stay and transfer to the Interstate Commerce Commission ["ICC"] was "not effectively unreviewable upon appeal from final judgment"; "[s]hould the case be appealed after a final order and this court determine that the district court erred in assessing the nature of the claims and defenses presented, those issues requiring the technical expertise of the ICC may then be remanded to that agency for consideration"); *Prosser v. Prosser*, No. 2009-09, 2009 WL 798842, *2 (D.V.I. March 23, 2009) (denying immediate appeal from a bankruptcy court order denying emergency motion to stay trial in a turnover action); *In re Trimble*, No. 07-2115, 2008 WL 782581, *3 (Bankr. D.N.J. March 18, 2008) (holding that collateral order doctrine did not authorize appeal from denial of a motion to stay pending arbitration).[8]

---

[8]     JMPC's reliance on the Third Circuit's *Leppo* decision and on the non-Third Circuit (footnote continued)

Furthermore, courts have consistently held that orders either transferring venue or refusing to do so fall short of qualifying for the collateral order doctrine.[9]

## 2. The Orders Also Fail The Collateral Order Doctrine's Requirement Of "Importance"

The Court's denial of JPMC's and the FDIC's motions to stay the Adversary Proceedings and JPMC's motion to dismiss the Debtors' counterclaims on the basis of FIRREA's jurisdictional bar is not an "important" issue as defined by this doctrine. An "important" issue under the collateral order doctrine is one that is "serious and unsettled." *In re Ford Motor Co.*, 110 F. 3d 954, 961 (3d Cir. 1997); *Nemours Found. v. Manganaro Corp.*, 878 F. 2d 98, 100 (3d Cir. 1989) (certification order not appealable under collateral order doctrine because "the type of 'important issue[s]' that the 'completely separate from the merits' requirement encompasses are

---

decisions in *Stewart* and *Sacred Heart* are misplaced as each of those decisions fall into the short list of types of orders which courts have deemed to fall under the doctrine, but which are inapplicable here. *See Will*, 126 S. Ct. at 958. Both *Leppo* and *Stewart* are irrelevant to the civil litigation context, because their holdings are limited to the context of double jeopardy criminal appeals in which the issue truly was whether a party had a right to avoid suit altogether. *See U.S. v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980) (concerning double jeopardy); *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) (same). Similarly, in *Sacred Heart*, the issue appealed, the defendant's right to sovereign immunity, was an unsettled matter appropriate for immediate appeal under the ambit of the collateral order doctrine. *In re Sacred Heart Hosp. of Norristown*, 204 B.R. 132, 143 (E.D. Pa. 1997). *Lauro* acknowledged cases such as these and found them critically distinct from cases such as the one at bar in which JPMC does not claim that Debtors have no right to sue it.

[9]     Transfer orders under sections 1404(a) and 1406(a) do not satisfy the requirements of the collateral order doctrine. *See, e.g., TechnoSteel, LLC v. Beers Constr. Co.*, 271 F.3d 151, 154 (4th Cir. 2001) (stating that section 1404(a) transfer order is not immediately appealable); *FDIC v. McGlamery*, 74 F.3d 218, 221 (10th Cir. 1996) ("The courts have almost universally agreed that transfer orders fall outside the scope of the collateral order exception."); *Carteret Sav. Bank v. Shushan*, 919 F.2d 225, 230 (3d Cir. 1990) (holding that section 1406(a) transfer for lack of personal jurisdiction was not an appealable collateral order); 15 Charles Alan Wright et al., Federal Practice & Procedure § 3827 (2d ed. 1986) ("An order of transfer under Section 1406(a) is interlocutory and not appealable. . . ."); *id.* § 3855 ("It is entirely settled that an order granting or denying a motion to transfer under 28 U.S.C.A. § 1404(a) is interlocutory and not immediately appealable. . . .").

those that are important in a jurisprudential sense."). Here, rather than rule on a jurisprudentially important and unsettled question of law, this Court straightforwardly (and correctly) applied settled Third Circuit law. This Court's decision was dictated by two reported decisions by the Third Circuit, *Rosa* and *Hudson*. *Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991) (FIRREA section 1821(d)(13)(D) does not bar an action against a successor bank concerning assets that it obtained out of receivership pursuant to a P&A Agreement with the RTC); *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994) (the jurisdictional bar under section 1821(d)(13)(D)(i) "applied only to claims against failed institutions while [section 1821(d)(13)(D)(ii)] applied to claims against the failed institutions specified in (i) as well as to claims against the receiver of such institutions"). Because the law on the inapplicability of FIRREA's jurisdictional bar to these actions is settled, there is nothing "important" about this Court's application of this law dictated by controlling authority.

*   *   *

In sum, JPMC's assertions that it is appealing pursuant to the collateral order doctrine are based upon its unilateral and blatantly errant presumptions that the Putative Appeals fit into what the Supreme Court has described as a "modest" and "narrow" doctrine. In doing so, JPMC ignores substantial bodies of law holding that motions to dismiss and motions to stay based upon jurisdictional grounds do not function to divest jurisdiction, including a decision squarely on-point from the Supreme Court concerning an appeal in which the appellant contested the right of plaintiff to sue it in a certain forum.

## III. THIS COURT SHOULD PROCEED TO THE MERITS OF THE ADVERSARY PROCEEDINGS EVEN IF THE ORDERS COULD BE DEEMED COLLATERAL

As discussed above, where trial courts determine that an order is not the type that can qualify for the collateral order doctrine, the Third Circuit is clear that the courts should retain

jurisdiction and proceed. The Third Circuit has additionally held that even where an order is of the type that could qualify for the collateral order doctrine (*e.g.*, double jeopardy, 11th amendment immunity), the trial courts should still proceed where the putative appeals are frivolous on the merits and a product of dilatory tactics. Here, the Court must retain jurisdiction due to the dilatory tactics of JPMC and the frivolous nature of the Putative Appeals. Similar to the principles discussed in section II *supra* concerning plainly premature appeals, this tenet derives from the judicial concern to prevent parties from abusing and expanding the narrow collateral order doctrine as a means to disrupt and delay proceedings. *See Abney v. United States*, 431 U.S. 651, 662 n.8 (1977); *Leppo* 634 F.2d at 104. The Court of Appeals for the Seventh Circuit articulated this concern as follows:

> During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined. Most deferments will be unnecessary. The majority of [these] appeals-like the bulk of all appeals-end in affirmance. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. Defendants may take [these] appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings . . . in fact not presenting genuine claims of immunity create still further problems.

*Apostol*, 870 F.2d at 1338-39.

Judge Aldisert in *Leppo* likewise rejected "[a] ritualistic application of the divestiture rule" in favor of the exercise by the trial court of "reasoned choice." *Leppo*, 634 F.2d at 104. In *Leppo*, the court ultimately found that even if a trial court might otherwise be divested of jurisdiction (because the order is of the type that could be deemed collateral, such as double jeopardy), if the trial court found that the appeal was frivolous and dilatory it should proceed to the merits, sharing jurisdiction with the court of appeals. *Leppo*, 634 F.2d at 104 (stating that

divestiture of jurisdiction is "not based on statutory provisions or the rules of procedure. Rather, it is a judge-made rule designed to avoid confusion or waste of time that might flow from putting the same issues before two courts at the same time . . . . the rule should not be employed to defeat its purpose or to induce needless paper shuffling.) (internal citation omitted).[10] Thus, where an appeal is taken in bad faith and would result in unwarranted delay, courts may proceed to the trial on the merits. *Apostol*, 870 F.2d at 1339 ("We have no doubt, however, that defendants who play games with the district court's schedule forfeit their entitlement to a pre-trial appeal. A district court may certify that a defendant has surrendered the entitlement to a pre-trial appeal and proceed with trial."); *United States v. Wilkes*, 368 F. Supp. 2d 366, 367 (M.D. Pa. 2005). *See also U.S. v. Rodgers*, 101 F. 3d 247, 251-52 (2d Cir. 1996) ("The divestiture of jurisdiction rule is, however, not a per se rule. . . . Whatever the superficial attractiveness of a per se rule that filing of a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and [the] application of the divestiture rule must be faithful to the principle of judicial economy from which it springs."). Here JPMC's tactics evince clear dilatory intent. Since filing its putative notice of appeal in connection with the July Putative Appeals, without a word concerning this Court's jurisdiction, JPMC has:

- Agreed to a briefing schedule and discussed hearing dates for Debtors' summary judgment motion;

- Filed two briefs in Opposition to Plaintiffs' Motion for Summary Judgment;

---

[10]  See also *United States v. Head*, 697 F.2d 1200, 1204 n.4 (4th Cir. 1982); *United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982); *United States v. Cannon*, 715 F.2d 1228 (7th Cir. 1983); *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir. 1982). This "dual jurisdiction" rule has been approved by the Supreme Court. *Behrens v. Pelletier*, 516 U.S. 299, 310, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996).

- Filed an initial and amended motion to strike the affidavit of Doreen Logan;

- Requested and taken the deposition of Doreen Logan;

- Engaged in regular negotiations with Debtors concerning a protective order and discovery and briefing schedule in connection with the Adversary Proceedings;

- Served document requests on Debtors and third-parties;

- Filed an answer and counterclaims to Debtors' complaint in the Turnover Action;

- Filed an opposition to Debtors' initial motion to dismiss JPMC's counterclaims in the Turnover Action;

- Filed an answer and amended counterclaims to Debtors' complaint in the Turnover Action;

- Filed an opposition to Debtors' motion to dismiss JPMC's amended counterclaims in the Turnover Action; and

- Presented and argued its motion to dismiss the Debtors' counterclaims in the JPMC Adversary Proceeding.[11]

In sum, JPMC has proceeded for months as if it believed jurisdiction was proper before this Court, the pendency of its Putative Appeals notwithstanding. Clearly, JPMC's selective invocation of this argument is intended only to delay trial on the merits so that it may continue to

---

[11]   The extent of JPMC's gamesmanship is perhaps made most clear by its decision to pursue its motion to dismiss Debtors' counterclaims after filing the July Putative Appeals from this Court's denial of its stay motion. If the filing of the July Putative Appeals divested the Court of its jurisdiction, as JPMC insists, then the Court would have had no authority to rule on JPMC's motion to dismiss. Yet JPMC presented and argued its motion on August 24, 2009. Debtors suspect that had the Court granted JPMC's motion and dismissed Debtors' counterclaims, JPMC might have conveniently chosen to overlook its purported, errant revelation that the Court has not had jurisdiction since it filed the July Putative Appeals. JPMC is making a mockery of the judicial process by seeking to pick and choose when this Court can and cannot exercise its jurisdiction at the expense of Debtors, their creditors, and the federal court system.

withhold (wrongfully) Debtors' deposits, avoid liability on myriad other issues raised in the Adversary Proceeding, and inflict maximum costs upon Debtors' estates.

Moreover, the Putative Appeals are plainly frivolous given the fact that this Court's orders are based upon, and in fact dictated by, clear and controlling Third Circuit law. The Third Circuit in *Rosa* specifically held that the jurisdictional bar under FIRREA does not apply to claims asserted against a successor bank. *Rosa*, 938 F.2d at 393. Furthermore, in *Hudson*, the Third Circuit reaffirmed this holding, stating repeatedly that the only claims barred under FIRREA are those asserted either against a failed institution or the receivership. 43 F.3d at 852. In view of these controlling decisions, the Putative Appeals must be considered frivolous. *United States v. Wecht*, 2008 U.S. Dist. LEXIS 34957 (W.D. Pa. Apr. 29, 2008) (foreclosing divestiture argument because appeal had "no factual support on the record and no legal authority that might plausibly justify" success; court to continue with the pretrial and trial proceedings).

JPMC asserts that a case arising out of the Southern District of Texas "alone demonstrates the merits of JPMC's arguments on Appeal." (Notice at ¶ 20.) JPMC is wrong. First, as a threshold matter, the *American National* decision was decided in the Southern District of Texas, and the court was not bound by, and did not rely upon, the decision in *Rosa*. As this Court has already recognized (and as to which JPMC continues to turn a blind eye), that Third Circuit decision is of course controlling in these Adversary Proceedings. It is also notable that the *American National* court, where Debtors are not a party, never addressed the arguments that Debtors presented to this Court. Indeed, without the benefit of briefing and argument from Debtors, the court based its decision on the *FDIC's* "right to defend suits against it at specific locations," claiming that "plaintiffs' case is not unlike WMI's suit against the *FDIC-Receiver* that is currently pending in the District Court of Columbia." (*American National* at 4-5.) (emphasis

added).  The court thus ignored that plaintiffs had in fact commenced suit solely against JPMC, and not the FDIC.[12]

*American National* is further puzzling in that it cites *Hudson* for the unremarkable proposition that FIRREA contains a limitation on the venues in which suits may be brought against the FDIC, while ignoring *Hudson's* specific explanation that section 1821(d)(13)(D) is not a bar to claims against third-parties.  *Hudson,* 43 F.3d at 848 n.10 (the jurisdictional bar under section 1821(d)(13)(D)(i) "applied only to claims against failed institutions while [section 1821(d)(13)(D)(ii)] applied to claims against the failed institutions specified in (i) as well as to claims against the receiver of such institutions").   Further, the *American National* court does not reference this Court's earlier ruling, which was consistent with both *Rosa* and *Hudson*, notwithstanding that the *American National* plaintiffs filed a supplemental notice of authority.  In sum, the 5-page *American National* decision was rendered in a jurisdiction where *Rosa* does not control, and the court's reasoning, in any event, failed to address the key points that drove this Court to reach its correct determination that FIRREA was not applicable to the claims at issue.  Thus, *American National* does nothing to enhance their meritless nature.

Finally, in determining whether this Court should proceed to exercise its jurisdiction, it should consider to what extent divestiture of this Court's jurisdiction would prejudice the Debtors' estates.  *See Sullivan*, 935 F.2d at 727 (declining to adopt a broad divestiture of jurisdiction rule in light of perceived effect of "severely hamper[ing] the bankruptcy court's ability to administer its cases in a timely manner"); see also *In re Mazzocone*, 1995 U.S. Dist. LEXIS 3218 (E.D. Pa. Mar. 15, 1995) ("most courts have also held that bankruptcy courts retain jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the

---

[12]      In fact, the FDIC filed a plea of intervention.

subject of pending appeals, as long as that enforcement and implementation does not require redeciding issues that are on appeal"); *In re Prudential Lines*, 170 B.R. 222, 243-45 (S.D.N.Y. 1994) ("The application of this distinction [between enforcing a judgment and expanding or altering a judgment] is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment"). Here, the Adversary Proceedings represent two of the largest sources of recovery in the Debtors' bankruptcy cases, including $4 billion of the Debtors' deposits. If JPMC were allowed to divest this Court of jurisdiction so that its frivolous and dilatory Putative Appeals may first be resolved, it would accomplish its goal of continuing to saddle its adversaries with cost and delay and the Debtors' and their creditors will suffer tremendous harm.

The Court clearly got it right when it denied JPMC's motions to stay and dismiss. It is respectfully submitted that the Court should swiftly reject JPMC's high-handed contention that by the ministerial act of filing the Putative Appeals it has awarded itself the relief that has already been twice refused by this Court.

*(Remainder of page intentionally left blank)*

## CONCLUSION

For the reasons discussed, this Court has not been divested of its jurisdiction to adjudicate the Adversary Proceedings.

Dated: September 24, 2009
Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
E-mail: rxza@elliottgreenleaf.com
E-mail: nrl@elliottgreenleaf.com
E-mail: sak@elliottgreenleaf.com

-and-

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
Peter E. Calamari
Michael B. Carlinsky
Susheel Kirpalani
David Elsberg
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
E-mail: petercalamari@quinnemanuel.com
E-mail: michaelcarlinsky@quinnemanuel.com
E-mail: susheelkirpalani@quinnemanuel.com
E-mail: davidelsberg@quinnemanuel.com

*Special Litigation and Conflicts Co-Counsel to Washington Mutual, Inc. and WMI Investment Corp.*