# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | Case No. 08-12229 (MFW) |
| Debtors. | Jointly Administered |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | |
| Plaintiffs, | Adv. Proc. No. 09-50934 |
| v. | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | Re: Docket Nos. 1, 14, 15, 102, 163, 181<br>Objection Deadline: 10/22/09 @ 9:00 AM |
| Defendant. | |

## DEBTORS' OBJECTION TO MOTION FOR LEAVE TO FILE DECLARATIONS OF DANIEL P. COONEY AND ROBERT C. SCHOPPE

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (with WMI, "Debtors") respectfully submit this objection to the Motion (the "Motion") for Leave to File Declarations of Daniel P. Cooney and Robert C. Schoppe ("Schoppe") (Docket No. 181) filed by JPMorgan Chase Bank, National Association ("JPMC") in the above-captioned adversary proceeding.

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

## INTRODUCTION

It is becoming evident that JPMC regrettably will stop at nothing to avoid paying Debtors their deposits. JPMC's latest tactic is to seek to file two declarations purportedly in support of their opposition to Debtors' motion for summary judgment for turnover of their funds on deposit with JPMC ("Summary Judgment Motion") (Docket No. 14). The fact that these declarations were unveiled on a Friday night less than a week before the scheduled argument on the Summary Judgment Motion, four weeks after briefing was completed respecting that motion pursuant to a schedule JPMC agreed to with Debtors, and a full week after the very declaration JPMC now seeks to submit was signed, is reason alone to strike them.

JPMC's excuse for submitting the declarations at this time is that, purportedly, in Debtors' reply in support of their Summary Judgment Motion ("Reply") (Docket No. 163), Debtors raised "for the first time" the fact that pursuant to Schedule 3.5 ("Schedule 3.5") of the Purchase and Assumption Agreement (the "P&A Agreement"), JPMC acquired no claims against Debtors from Washington Mutual Bank, Henderson, Nevada ("WMB"), and therefore has no claims with which to exercise any purported setoff rights. (Motion at 1 citing to Debtors' Reply at 41.) That is false. Debtors' argument, based on the plain language of Schedule 3.5 which provides that JPMC did not purchase from the Federal Deposit Insurance Corp. (the "FDIC") "any interest, right, action, claim, or judgment against . . . any shareholder or holding company of [WMB]," was not only raised in Debtors' opening brief in support of their Summary Judgment Motion (Br. in Support of Summary Judgment Motion at 19-20) (Docket No. 15), but also in the complaint commencing this action filed on April 27, 2009. (Turnover Complaint at ¶ 49.) (Docket No. 1.) JPMC filed two briefs opposing the Summary Judgment Motion and more than 1,000 pages of accompanying papers – but chose to allocate only a single paragraph to Debtors' argument in which JPMC effectively conceded that Debtors' plain language interpretation was correct. (*See*

2

JPMC Opposition to Summary Judgment Motion at 58-59.) (Docket No. 102.) Thus, JPMC has no basis whatsoever to support its Motion. For this reason too, the declarations should be stricken from the record.

Notwithstanding the obvious strategic maneuvering, the plain fact is that the declarations add nothing to the record except further argument that could have been included (but was not) in JPMC's briefs – and in any event, the arguments are meritless. The P&A Agreement is an integrated contract and Schedule 3.5 is plain and unambiguous, and therefore Schoppe's post hoc extrinsic ruminations should be disregarded. Even if his post hoc material were considered, his declaration does not contain factual information about the parties' intent expressed at the time of drafting, but simply his made-for-litigation "interpretation" of how he supposedly thinks the Court should now construe Schedule 3.5. This is not evidence, and the declarations should be stricken for this third reason. *See Watkins v. Restorative Care Ctr., Inc.*, 831 P.2d 1085, 1092 (Wash. Ct. App. 1992) ("unilateral and subjective beliefs about the impact of a written contract do not constitute evidence of the parties' intent"); *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (focusing on the "objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties").

In any event, ironically, a close reading of the Schoppe declaration makes it clear that his strained interpretation does not change the fact that JPMC did not acquire the claims that it seeks to setoff against Debtors' deposits. In fact, Schoppe concedes that the FDIC "*retained the right to pursue WMB's claims against WMI* based on WMI's acts or omissions as WMB's holding company… [that] may be related to any loss … incurred by the Failed Bank." (Schoppe Decl. ¶ 5; emphasis added.) Thus, Schoppe's submission actually supports Debtors' plain-language reading of the P&A Agreement.

3

## OBJECTION

*The Court Should Not Consider the Schoppe Declaration Because Schedule 3.5 is Plain and Unambiguous*

JPMC submits the Declarations of Cooney and Schoppe, which focus mainly on supposed "intent."[2] But given that the plain language of Schedule 3.5 is clear and unambiguous that JPMC did not acquire claims against WMI, WMB's sole shareholder and holding company, the Court need not consider such extrinsic evidence. *Hearst*, 154 P.3d at 267 ("We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. We do not interpret what was intended to be written but what was written."); *see also Contractors Equip. Maint. Co. v. Bechtel Hanford, Inc.*, 514 F.3d 899, 904 (9th Cir. 2008) (applying Washington law, noting that "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used"). Moreover, the P&A Agreement contains an integration clause making clear that the parties' intent is to be evinced only by the agreement's plain language. (P&A Agreement at §13.1.)

Schoppe concedes that the FDIC retained, and that JPMC did not acquire, certain claims against WMI under the P&A Agreement, but asserts that these claims must be "'related to any loss . . . incurred by [WMB]' to the extent that 'the acts, omissions or other events giving rise to any such claim shall have occurred on or before'" the sale of WMB's assets to JPMC.[3] (Schoppe

---

[2] *See* Cooney Declaration at ¶ 2 (stating the Schoppe Declaration reflects the P&A Agreement's meaning "as it was understood by JPMC and intended by the parties"); Schoppe Declaration at ¶ 2 (regarding "the FDIC-Receiver's understanding of the provisions of the P&A Agreement).

[3] Paragraph 2 of Schedule 3.5 provides that JPMC did not purchase the following: "any interest, right, action, claim, or judgment against (i) any officer, director, employee, accountant, attorney, or any other Person employed or retained by the Failed Bank or any Subsidiary of the Failed Bank on or prior to Bank Closing arising out of any act or omission of such Person in such capacity, (ii) any underwriter of financial institution bonds, banker's blanket bonds or any other insurance policy of the Failed Bank, (iii) any

Declaration at ¶ 5.) Schoppe's interpretation is in conflict with all rules of contractual construction, including the last-antecedent rule of construction and its grammatical corollary. The last-antecedent rule of construction dictates that the language to which Schoppe refers modifies only subsection (iv), concerning claims against "any other Person" and not to the preceding subsections, including subsection (iii), concerning claims against "any shareholder or holding company." *See Stepnowski v. Comm'r*, 456 F.3d 320, 324 (3d Cir. 2006) ("The last-antecedent rule generally holds that qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote") (internal quotation omitted). Confirming this, the grammar corollary of this rule instructs that the fact there is no comma immediately preceding the "related to any loss" language means that it does not modify the preceding subsections. *See, e.g., Elliot Coal Mining Co. v. Dir.*, 17 F.3d 616, 630 (3d Cir. 1994) ("Th[e] use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase."); *see also In re Sehome Park Care Ctr., Inc.*, 903 P.2d 443, 447 (Wash. 1995) ("The last antecedent rule provides that, unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent. However, the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one.") (internal citation omitted). Moreover, Schoppe's interpretation that the claims referenced in subsections (i) – (iii) are

---

shareholder or holding company of the Failed Bank, or (iv) any other Person whose action or inaction may be related to any loss (exclusive of any loss resulting from such Person's failure to pay on a Loan made by the Failed Bank) incurred by the Failed Bank; <u>provided</u>, that for the purposes hereof, the acts, omissions or other events giving rise to any such claim shall have occurred on or before Bank Closing, regardless of when any such claim is discovered and regardless of whether any such claim is made with respect to a financial institution bond, banker's blanket bond, or any other insurance policy of the Failed Bank in force as of Bank Closing[.]"

required to "be related to any loss . . . incurred by [WMB]" just as the claims described in subsection (iv) are, would render subsections (i) – (iii) superfluous as each claim described in subsections (i) – (iii) would be included in the claims described by subsection (iv). Schoppe's reading is thus in conflict with well-settled contract law instructing courts to read contracts in a manner that gives meaning to each provision without rendering superfluous specific terms or provisions. *See United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005); *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987).

*FDIC's Practical Construction Confirms The Plain Meaning*

Even if Schedule 3.5 were ambiguous (and it is not), and even if the Schoppe declaration included relevant or admissible evidence (and it does not), the FDIC's conduct under, and practical construction of, the P&A Agreement leave no doubt that Debtors' interpretation is correct and forecloses the belated made-for-litigation position now being advanced. *Watkins*, 831 P.2d at 1092 (where extrinsic evidence is considered it will include the "subsequent conduct of the contracting parties"); *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Mastro*, 959 F.2d 239 (9th Cir 1992) (noting that Washington courts "consider the parties' course of conduct in performing a contract to be probative in determining the parties' intent in entering into an agreement"). *See also Capital Bus. Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 & n.3 (3d Cir. 1973) ("A contract must be interpreted in light of the meaning which the parties have accorded to it as evidenced by their conduct in its performance."). Here, in order to confirm the plain meaning of Schedule 3.5, the Court need look no further than the fact that the FDIC is asserting the very claims that JPMC claims it purchased from the FDIC and is seeking to setoff against Debtors' deposits. *See* FDIC Proof of Claim (asserting claims to, *inter alia*, tax refunds, trust preferred securities, and intercompany receivables); FDIC Counterclaims asserted in *WMI and WMI Investment v. FDIC*, No. 09-00533 (D.D.C.) (same).

Obviously, both JPMC and the FDIC cannot possess such claims. Without these claims, JPMC cannot even attempt to exercise any purported setoff rights.

*Schoppe's Interpretation Ultimately Confirms Debtors' Interpretation of the P&A Agreement*

In any event, even if Schoppe's interpretation were adopted, it would get JPMC nowhere. According to Schoppe, the FDIC "*retained the right to pursue WMB's claims against WMI* based on WMI's acts or omissions as WMB's holding company... [that] may be related to any loss ... incurred by the Failed Bank." (Schoppe Decl. ¶ 5; emphasis added.)[4] Each and every one of the claims that JPMC would like to setoff against Debtor's deposits (and that the FDIC is asserting concurrently) would necessarily be "related to any loss" of WMB and therefore not purchased by JPMC. Moreover, such claims would necessarily have to arise out of "acts, omissions or other events" that occurred on or before the date of the P&A Agreement – one day prior to Debtors' bankruptcy filing. Any claims that did not, would be irrelevant to the Summary Judgment Motion as they would plainly be inappropriate for setoff under the Bankruptcy Code which requires mutual, *prepetition* debts. 11 U.S.C. § 553. Thus, even if this Court agreed with Schoppe's strained interpretation of Schedule 3.5, it amounts to a distinction without a difference.

*JPMC's Litigation Tactics Should Not Be Countenanced by the Court and the Motion Should be Denied*

What the Motion does highlight is that after three sets of opposition papers, JPMC still fails to present to this Court anything on the primary issue before the court – the nature of Debtors' deposits. Realizing this, JPMC is scrambling to cure its last-ditch argument that its

---

[4] Schoppe asserts in paragraph 4 of his declaration that nothing divests JPMC of claims JPMC must assert to "protect *its interests* in assets that it purchased . . . ." (Schoppe Decl. ¶ 4; emphasis added). However, Schoppe conspicuously stops short of saying that JPMC's protectable "interests" extend to or include the right to assert any WMB-legacy claims which he says were retained by the FDIC.

purported setoff rights somehow allow it to continue to withhold Debtors' funds. JPMC's Motion should be denied because it is a transparent attempt to submit argument on a subject that JPMC has had more than ample opportunity to address and yet chose to disregard. Moreover, the timing of the Motion – both in relation to the filing of Debtors' Reply (4 weeks later), the signing of the Schoppe Declaration (one week later), and the hearing on Debtors' Summary Judgment Motion (less than one week prior) – raises further concerns with respect to JPMC's litigation tactics and presents yet another reason for denial. In any event, should the Court grant the Motion, the Schoppe Declaration should be seen for what it is and nothing more – a forced, post-hoc, made-for-litigation interpretation of clear and unambiguous contractual language that is designed, but fails, to afford JPMC a basis to continue to wrongfully withhold Debtors' funds.

For the reasons discussed, this Court should deny the Motion and strike the Declarations.

Dated: October 20, 2009  
Wilmington, Delaware

**ELLIOTT GREENLEAF**

*/s/ Rafael X. Zahralddin-Aravena*
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)  
Neil R. Lapinski (DE Bar No. 3645)  
Shelley A. Kinsella (DE Bar No. 4023)  
1105 North Market Street, Suite 1700  
Wilmington, Delaware 19801  
Telephone: (302) 384-9400  
Facsimile: (302) 384-9399  
E-mail: rxza@elliottgreenleaf.com  
E-mail: nrl@elliottgreenleaf.com  
E-mail: sak@elliottgreenleaf.com  

-and-

QUINN EMANUEL URQUHART  
OLIVER & HEDGES, LLP  
Peter E. Calamari  
Michael B. Carlinsky  
Susheel Kirpalani  
David Elsberg

51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Special Litigation and Conflicts Co-Counsel to Washington Mutual, Inc. and WMI Investment Corp.*